# EXHIBIT A

## COMMONWEALTH OF MASSACHUSETTS

**NORFOLK, SS.**

**SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT**
**CIVIL ACTION NO.:** 2582CV00122

**NEW ENGLAND PROPERTY
SERVICES GROUP, LLC,**
                *Plaintiff,*

:
:
:
:
:
:
:
:
:
:

**THE TRAVELERS HOME AND
MARINE INSURANCE COMPANY,
A SUBSIDIARY OR AFFILIATE OF
THE TRAVELERS INDEMNITY
COMPANY**
                *Defendant.*

**JURY TRIAL DEMANDED**

## COMPLAINT

### PARTIES

1.    The Plaintiff, New England Property Services Group, LLC, (hereinafter "NEPSG") is a Massachusetts Limited Liability Company with a usual place of business at 1822 North Main Street, Second Floor, Annex Suite #001 Fall River, Massachusetts, 02720.

2.    The Defendant, The Travelers Home and Marine Insurance Company ("TRAVELERS") is a foreign company with its principal offices located at One Tower Square, Suite 2MS, Hartford, CT 06183, and is properly licensed to do business in Massachusetts.

### JURISDICTION AND VENUE

3.    This Court has jurisdiction over this matter pursuant to M.G.L. c. 212 § 3. The amount in controversy is in excess of the minimum jurisdictional limits of the Court.

4.    Venue is proper in this Court pursuant to M.G.L. c. 223 § 1.

**FACTUAL BACKGROUND**

5.    TRAVELERS issued homeowner's insurance policy number 614262907-633-1("Policy") to Avrom Honig ("Policyholder") and Jessica Honig ("Policyholders"), who paid the premium for the Policy. (A copy of the Policy is attached hereto as *Exhibit 1*).

6.    The Policy insures the Policyholders' financial interest in the home located at 41 Pleasant Street, Bellingham, Massachusetts ("Subject Premises").

7.    At all times relevant hereto, the Policy was actively insuring Policyholders' interest in the Subject Premises.

8.    On or about July 10, 2023, the Subject Premises sustained a direct physical loss from storm related damage to the interior and roof.

9.    On or about the same date, owner and sole member of NEPSG, Steven Ceceri ("Mr. Ceceri") conducted an inspection of the Subject Premises for storm related damage.

10.    On or about July 10, 2023, Policyholder submitted a claim to TRAVELERS for the storm related damage to the Subject Premises, who accepted the claim and assigned it claim number IMV8022 ("Claim").

11.    On or about July 11, 2023, the Policyholders executed a Home Restoration Contract ("Contract") with NEPSG, which contained an irrevocable assignment of insurance claim benefits and rights clause, whereby Policyholders transferred their rights and benefits in the post loss Claim to NEPSG, and in return NEPSG agreed to perform the necessary repairs to restore the Subject Premises to its pre-loss condition. (A copy of the Contract is attached hereto as *Exhibit 2*).

12.    Upon execution of the Contract, NEPSG became the lawful claimant and equitable owner

of the Claim, with all rights and benefits appurtenant thereto, including the right to demand

appraisal (reference) and the right to receive payment.

13.    On or about July 11, 2023, the Policyholder initiated a group text message with

TRAVELERS claim representative My Phan ("Ms. Phan"), and Mr. Ceceri, wherein Mr.

Ceceri notified TRAVELERS that NEPSG was the lawfully assigned claimant of the

Claim, pursuant to the Contract. (A copy of Mr. Ceceri's Claim assignment notification

text message is attached hereto as *Exhibit 3*).

14.    On or about July 11, 2023, Ms. Phan responded to Mr. Ceceri and the Policyholder via text

message to note that TRAVELERS would retain Scott Chase ("Mr. Chase") of Chase

Building and Remodeling, who was allegedly a HAAG Certified roof installer, to inspect

the Subject Premises for Claim related damage.

15.    Ms. Phan further requested that Mr. Ceceri and Mr. Chase schedule an inspection of

Subject Premises for storm-related damage to the roof and interior the next morning, July

12, 2023, at 8:00 a.m.

16.    Mr. Ceceri responded, noting that he was unavailable on July 12, 2023, at 8:00 am and

further notifying TRAVELERS that no inspections of the Subject Premises were to take

place without NEPSG present as the lawful claimant of the Claim.

17.    On or about July 12, 2023, despite having knowledge of Mr. Ceceri's unavailability, Mr.

Chase entered onto the property without the permission or consent of the Policyholders or

NEPSG and conducted an inspection of the roof of the Subject Premises.

18. On or about July 12, 2023, the Policyholder checked his voicemail around 8:30 p.m. and discovered that Mr. Chase had called at or around 7:19 a.m. that morning, indicating that he was already present at the Subject Premises and was going to inspect the roof.

19. At no time did the Policyholders give permission or consent for Mr. Chase to enter onto the property to inspect the roof, nor were the Policyholders notified that Mr. Chase would be conducting an inspection on July 12, 2023, other than Mr. Chase's voice message noting that he was already present at the Subject Premises.

20. On or about July 12, 2023, Policyholders contacted Mr. Chase, providing Mr. Ceceri's contact information and requesting that a re-inspection be conducted with Mr. Ceceri present.

21. On or about July 12, 2023, Ms. Phan scheduled an interior inspection of the Subject Premises with NEPSG and the Policyholders for July 14, 2023, at 11:00 a.m., with an exterior inspection if the weather permitted.

22. On or about July 13, 2023, NEPG requested that any and all reports, findings, and/or photographs produced by Mr. Chase regarding the unauthorized July 12, 2023, inspection of the Subject Premises be provided to NEPSG.

23. As of the date of this filing, NEPSG has not received any reports or findings from Mr. Chase's July 12, 2023, inspection, despite multiple requests to TRAVELERS for copies of any inspection reports.

24. On or about July 14, 2023, Mr. Chase, TRAVELERS claim supervisor Stephen O'Leary ("Mr. O'Leary"), Ms. Phan, and Mr. Ceceri conducted an interior and exterior inspection of the Subject Premises for Claim related damage.

25.   Upon information and belief, Mr. Chase failed to conduct a legitimate and accurate inspection for wind damage pursuant to HAAG requirements, including but not limited to failing to properly set up the necessary ladder to inspect the roof in a manner consistent with OSHA, failing to physically climb onto the roof of the Subject Premises to fully inspect the entire roof surface, and failing to take photographs of all damage to the Subject Premises.

26.   During the July 14, 2023, inspection, NEPSG provided Ms. Phan with an executed copy of the Contract. (See *Exhibit 2*).

27.   On or about July 14, 2023, TRAVELERS sent a Reservation of Rights letter for the Claim directly to the Policyholders, in violation of the Policy and despite TRAVELERS' knowledge of the Contract. (A copy of the letter correspondence is attached hereto as *Exhibit 4*).

28.   On or about July 17, 2023, TRAVELERS sent an estimate and amount of loss ("TRAVELERS July 17, 2023, Estimate") to the Policyholder based upon the July 14, 2023, inspection of the Subject Premises. (A copy of the TRAVELERS July 17, 2023, Estimate is attached hereto as *Exhibit 5*).

29.   The TRAVELERS July 17, 2023, Estimate accounts for interior damage only, finding no damage to the roof, and detailing a Replacement Cost Value ("RCV") and an Actual Cash Value ("ACV") totaling $1,496.80, plus additional mitigation costs with an RCV and ACV totaling $2,670.03. The $900 deductible was then applied for a Net Claim Value totaling $3,266.83. (See *Exhibit 5*).

30.   Additionally, on or about July 17, 2023, TRAVELERS issued a check totaling $3,266.83 directly to and naming only the Policyholder, thereby excluding NEPSG, despite having knowledge of the Contract.

31.   On or about July 17, 2023, TRAVELERS also sent a Claim payment letter directly to the Policyholder, thereby excluding NEPSG. (See *Exhibit 4*).

32.   The TRAVELERS July 14, 2023, Reservation of Rights letter; July 17, 2023, Estimate; July 17, 2023, check for Claim proceeds; and July 17, 2023, Claim payment letter were all sent and addressed only to the Policyholder, thereby excluding NEPSG in violation of the terms of the Policy and despite TRAVELERS' knowledge and possession of the Contract.

33.   On or about July 24, 2023, NEPSG sent TRAVELERS a letter, requesting information and reports in response to the July 14, 2023, Claim Reservation of Rights letter and the July 17, 2023, Claim payment letter. (See *Exhibit 4*).

34.   In the July 24, 2023 letter, NEPSG further attached a copy of the Direction to Pay clause contained in the Contract, again notifying TRAVELERS that NEPSG was the assignee and lawful claimant of the Claim, with all associated rights and benefits thereto, including the right to receive payment. (See *Exhibit 4*).

35.   As of the date of this filing, TRAVELERS has failed and/or refused to provide the information requested by NEPSG on both July 13, 2023, and July 24, 2023.

36.   Thereafter, NEPSG and TRAVELERS failed to agree as to the amount of loss for the Claim, so on or about August 14, 2023, NEPSG sent TRAVELERS a Demand for Reference ("Demand") under the Policy's Arbitration provision and M.G.L. c. 175 § 99. (See *Exhibit 4*).

37.   The Arbitration Provision of the Policy states in pertinent part:

6

7. Arbitration. If there is a **disagreement as to the dollar amount of the loss** under the Property Coverage Section, Massachusetts law provides a method for settling the disagreement. **If requested, the dispute shall be referred to a three-member board of referees**. They are selected and **must act according to procedures set by the law. Their decision as to the amount of loss will be binding.** This board does not make decisions about matters of coverage or fault. (See *Exhibit 1*). (Emphasis added.)

38.  M.G.L. c. 175, § 100 states in pertinent part:

Section 100…**[I]f the parties fail to agree as to the amount of loss, the company shall, within ten days after receiving a written demand from the insured for the reference of the amount of loss to three referees** as provided in such policy, **submit in writing the names and addresses of three persons to the insured, who shall, within ten days after receiving such names, notify the company in writing of his choice of one of the said persons** to act as one of said referees.

The **insured shall submit in writing the names and addresses of three persons to the company,** which shall, **within ten days after receiving such names, notify the insured in writing of its choice of one of said persons** to act as one of said referees.

If, **at the expiration of ten days from the choice of the second referee, the two referees chosen as hereinbefore provided,** shall not have **agreed upon and selected a person to act as the third referee,** then either of the said referees or parties may make written application on oath to the commissioner in such form as he may prescribe… (Emphasis added).

39.  On or about August 14, 2023, TRAVELERS sent a letter to the Policyholders, acknowledging NEPSG's demand for reference and providing three referee nominees for NEPSG's consideration, pursuant to the Policy. (See *Exhibit 4*).

40.  TRAVELERS addressed and sent the August 14, 2023, letter directly to the Policyholder, thereby excluding NEPSG in violation of the Policy and despite having notice of the Contract.

41.  TRAVELERS' August 14, 2023, letter failed to address any of the requests for information and documentation made by NEPSG on both July 13, 2023, and July 24, 2023.

42.  Upon information and belief, TRAVELERS failed or refused to provide NEPSG with requested relevant Claim information and documentation in an effort to prolong the Claim settlement process to avoid remitting further payment on the Claim in bad faith.

43.  On or about August 18, 2023, NEPSG sent a written Demand for Relief pursuant to the Massachusetts Consumer Protection Act, M.G.L. c. 93A §§ 2 and 9 ("93A Demand"), detailing TRAVELERS' violations of M.G.L. c. 176D § 3(9) in handling the Claim and making a demand of $250,000. (See *Exhibit 4*).

44.  On or about August 21, 2023, NEPSG selected appraiser Ed Odell ("Mr. Odell") from TRAVELERS' submitted referee list and provided three (3) potential referee names in return, pursuant to the Policy. (A copy of NEPSG's August 21, 2023 email is attached hereto as *Exhibit 6*).

45.  NEPSG subsequently retained CLS Mold Testing, LLC ("CLS") to perform a mold test at the Subject Premises and prepare a report.

46.  On or about August 24, 2023, CLS collected five (5) air samples at the Subject Premises for mold testing purposes.

47.  On or about August 29, 2023, TRAVELERS selected Chris Yerkes ("Mr. Yerkes") from NEPSG's proposed list of referees, pursuant to the Policy.

48.  Mr. Odell and Mr. Yerkes subsequently agreed upon James Trudeau ("Mr. Trudeau") to serve as the third referee, pursuant to the Policy and Massachusetts law. (Mr. Yerkes, Mr. Odell, and Mr. Trudeau collectively the "reference panel").

49.  On or about August 31, 2023, CLS provided NEPSG with a Mold Analysis Report ("CLC Mold Report"), confirming that mold was present at the Subject Premises. (A copy of the CLS Mold Report is attached hereto as *Exhibit 7*).

8

50.    Due to the presence of mold at the Subject Premises and health problems suffered by the Policyholders and their children due to the mold, the Policyholders were unable to safely occupy the Subject Premises.

51.    At or around August of 2023, the Policyholders began residing in a renovated trailer on the lawn of the Subject Premises due to the presence of mold inside the house, where they continue to reside as of the date of this filing.

52.    Thereafter, mitigation, remediation, and restoration work began at the Subject Premises.

53.    On or about September 18, 2023, TRAVELERS responded to the 93A Demand, accusing NEPSG of public adjusting without a license and rejecting the 93A Demand. (See *Exhibit 4*).

54.    At no time has NEPSG acted as a public adjuster in the present matter, nor has NEPSG ever held itself out as a public adjuster acting on behalf of the Policyholders.

55.    On or about September 21, 2023, former NEPSG in-house legal counsel, Angela Tieng, Esq. ("Attorney Tieng"), notified TRAVELERS' legal counsel William Schneider, Esq. of Morrison Mahoney ("Attorney Schneider") by email that NEPSG was temporarily suspending and holding in abeyance the reference proceeding in order to allow the Superior Court, via a declaratory judgment action, to determine the extent of NEPSG's legally afforded rights as assignee of the Claim. (A copy of Attorney Tieng's September 21, 2023 email correspondence is attached hereto as *Exhibit 8*).

56.    On or about September 21, 2023, Attorney Schneider replied to Attorney Tieng's email notice, rejecting suspension of the reference proceedings and asserting that NEPSG lacked the authority to unilaterally declare that the reference would be held in abeyance. (A copy of Attorney Schneider's September 21, 2023 email is attached hereto as *Exhibit 9*).

9

57.    On or about November 1, 2023, Mr. Ceceri sent Mr. O'Leary an email, notifying Mr.
       O'Leary that mitigation work on the Subject Premises was progressing and also requesting
       that TRAVELLERS negotiate the settlement of the exterior portion of the Claim with
       NEPSG. (A copy of Mr. Ceceri's email correspondence is attached hereto as *Exhibit 10*).

58.    On or about November 2, 2023, Mr. O'Leary replied and requested that NEPSG submit
       itemized proposals of repairs and photographs to support said proposals for review. (See
       *Exhibit 10*).

59.    TRAVELERS' November 2, 2023, email omitted any reference to NEPSG's November 1,
       2023 request to negotiate the settlement of the exterior portion of the Claim. (See *Exhibit
       10*).

60.    On or about December 1, 2023, Attorney Schneider sent a letter to the Commissioner of
       the Division of Insurance, requesting a replacement of the referees. (See *Exhibit 4*).

61.    On or about December 1, 2023, NEPSG requested the reference panel be disbanded, based
       upon Attorney Schneider's December 1, 2023 letter and TRAVELERS' suspected failure
       and/or refusal to communicate with all members of the reference panel. (A copy of
       NEPSG's December 1, 2023 disbandment email is attached hereto as *Exhibit 11*).

62.    On or about December 19, 2023, after receiving no response to their November 28, 2023
       letter, Policyholders sent another letter to TRAVELERS, again requesting that
       TRAVELERS resolve the Claim with NEPSG and remit payment of the Claim proceeds
       required to restore the Subject Premises to its pre-loss condition. (See *Exhibit 4*).

63.    On or about December 21, 2023, Mr. Ceceri emailed Mr. O'Leary, notifying TRAVELERS
       of a newly discovered interior water leak location reportedly caused by the pre-existing

roof damage and restating NEPSG's concern that Mr. Chase failed to perform a skillful, competent and full inspection consistent with HAAG requirements. (See *Exhibit 10*).

64.   In the December 21, 2023, email, Mr. Ceceri further requested to negotiate the settlement of the Claim, offering to submit invoices for work already completed on the Subject Premises and requesting to revisit the scope of work and estimated amount of loss for roof damage. (See *Exhibit 10*).

65.   On or about December 26, 2023, Mr. Ceceri again emailed Mr. O'Leary, following up on the December 21, 2023, email after receiving no response from TRAVELERS to said request to settle the Claim. (See *Exhibit 10*).

66.   On or about January 2, 2024, after receiving no response from TRAVELERS to the December 21, 2023, and December 26, 2023, emails, Mr. Ceceri again followed up with Mr. O'Leary, noting that the Policyholders were experiencing adverse health issues as a result of the mold present in the Subject Premises and again requesting that TRAVELERS negotiate the settlement of the Claim with NEPSG. (See *Exhibit 10*).

67.   On or about January 2, 2024, Mr. O'Leary responded to Mr. Ceceri's requests, declining to negotiate the settlement of the Claim but suggesting that TRAVELERS would re-inspect the Subject Premises. (See *Exhibit 10*).

68.   On or about January 2, 2024, TRAVELERS representative John Leonard ("Mr. Leonard") contacted NEPSG, informing Mr. Ceceri that he had been assigned to handle the Claim and requesting to schedule a re-inspection of the Subject Premises. (See *Exhibit 10*).

69.   TRAVELERS subsequently retained engineers Leonard Morse-Fortier ("Mr. Morse-Fortier") and Stephen Condren ("Mr. Condren") of Simpson, Gumpertz and Heger, to investigate the causation of interior water damage to the Subject Premises.

70. On or about January 5, 2024, Mr. Ceceri, Mr. Morse-Fortier, Mr. Condren, Mr. Leonard, TRAVELERS claim manager Robert Tucker ("Mr. Tucker"), and TRAVELERS representative Marc Krzywicki inspected the Subject Premises for interior damage.

71. On or about January 9, 2024, Mr. Tucker sent the Policyholder a letter, noting that TRAVELERS was waiting on the report of Mr. Morse-Fortier and Mr. Condren based upon the January 5, 2024, inspection and requesting information from the Policyholders. (See *Exhibit 4*).

72. TRAVELERS' January 9, 2024, letter further asserted that each different date of water intrusion into the Subject Premises would be considered a different "occurrence," for which the Policyholders would need to submit a separate Claim. (See *Exhibit 4*).

73. Further, TRAVELERS' January 9, 2024, letter was sent directly to the Policyholders, in violation of the Policy and despite having knowledge and possession of the Contract.

74. On or about January 9, 2024, Mr. Ceceri emailed Mr. Tucker, requesting TRAVELERS' Policy definition of "occurrence" and asserting that future communication should be made exclusively to NEPSG regarding the Claim, pursuant to the terms of the Contract. (A copy of Mr. Ceceri's January 9, 2024, email is attached hereto as *Exhibit 12*).

75. The Policy defines the term "occurrence" in DEFINITIONS as follows:

> "12. **"Occurrence"** means an accident, **including continuous or repeated exposure to substantially the same general harmful conditions**, which **results during the policy period, in**:
>
> a. "Bodily injury"; or
> b. **"Property damage"**." (See *Exhibit 1*). (Emphasis added.)

76. The Subject Premises experienced multiple points of water intrusion due to the continuous exposure of the damaged roof to rain and inclement weather, thereby causing interior property damage.

77.    The bodily injury of the Policyholders due to mold and the damage to the property as a result of rain and inclement weather occurred due to continuous exposure to substantially the same general harmful conditions.

78.    Upon information and belief, TRAVELERS incorrectly asserts that each date of water intrusion into the Subject Premises must be submitted as separate Claims in an effort to prolong the Claim process, to avoid remitting further payment on the Claim, and to apply the Policy's deductible to multiple Claims in bad faith.

79.    On or about January 12, 2024, Mr. Tucker sent a letter to NEPSG in response to Mr. Ceceri's January 9, 2024, email, again asserting that each date of water intrusion into the Subject Premises must be submitted as a separate claim, in contradiction to the Policy's unambiguous definition of "occurrence". (See *Exhibit 4*).

80.    January 12, 2024, letter also requested estimates, proof of loss, and repair contracts for claimed damage to the Subject Premises. (See *Exhibit 4*).

81.    On or about February 9, 2024, Mr. Tucker sent a further letter to NEPSG, denying Mr. Ceceri's request for a copy of Mr. Morse-Fortier and Mr. Condren's engineering report based upon the January 5, 2024, inspection until TRAVELERS received estimates, photographs, or other documents from NEPSG. (See *Exhibit 4*).

82.    TRAVELERS' February 9, 2024, letter again requested to "re-inspect" the Subject Premises. (See *Exhibit 4*).

83.    On or about February 14, 2024, NEPSG prepared an estimate and scope of loss ("NEPSG Estimate") listing an RCV and Net Claim Value totaling $202,909.76. (A copy of the NEPSG Estimate is attached hereto as *Exhibit 13*).

13

84.  On or about February 14, 2024, NEPSG completed and signed a Notarized Proof of Loss for the Claim ("NEPSG Proof of Loss"), claiming an amount of loss to the Subject Premises totaling $202,909.76. (A copy of the NEPSG Proof of Loss is attached hereto as *Exhibit 14*).

85.  Mr. Ceceri provided Mr. Tucker with a copy of the NEPSG Estimate and NEPSG Proof of Loss on or about February 14, 2024.

86.  On or about March 5, 2024, Mr. Tucker sent NEPSG a letter, rejecting the NEPSG Proof of Loss, again asserting that each date of water intrusion was a different occurrence under the Policy, and again requesting a re-inspection of the Subject Premises. (See *Exhibit 4*).

87.  On or about March 5, 2024, Mr. Ceceri responded to Mr. Tucker's letter, again requesting TRAVELERS' definition of the term "occurrence" and inquiring as to why NEPSG was not being provided with inspection reports, engineering reports, or other findings from TRAVELERS relevant to the Claim's amount of loss. (A copy of Mr. Ceceri's March 5, 2024 email is attached hereto as *Exhibit 15*).

88.  On or about March 7, 2024, Mr. Tucker responded to Mr. Ceceri's March 5, 2024, email, stating that TRAVELERS did not understand what information NEPSG was seeking with Mr. Ceceri's request for TRAVELERS' definition of the term "occurrence" in the Policy. (A copy of Mr. Tucker's March 7, 2024 email is attached hereto as *Exhibit 16*).

89.  Mr. Tucker's March 7, 2024, email stated that no information would be provided to NEPSG until TRAVELERS' requests for information and to re-inspect the Subject Premises had been completed. (See *Exhibit 16*).

90.    However, NEPSG had already provided TRAVELERS with information relevant to the valuation of the Claim on or about February 14, 2024 in both the NEPSG Estimate and NEPSG Proof of Loss.

91.    Further, NEPSG had already allowed access to TRAVELERS to inspect the Subject Premises on two (2) previous occasions, July 14, 2023, and January 5, 2024, through multiple parties, including two engineers.

92.    Further, Mr. Chase had also previously conducted an unauthorized and unplanned inspection of the Subject Premises on behalf of TRAVELERS on July 12, 2023, without the knowledge or permission of NEPSG or the Policyholders.

93.    On April 9, 2024 and June 5, 2024, TRAVELERS sent additional letters to NEPSG, restating its requests for information and reinspection.

94.    On or about June 7, 2024, NEPSG responded to the April 9, 2024 and June 5, 2024 letters, again requesting expert reports and findings before NEPSG would perform a re-inspection. (See a copy of the June 7, 2024 letter attached hereto as *Exhibit 17*).

95.    The June 7, 2024 letter further noted that NEPSG would not be filing separate claims for each date of water intrusion, as the damage resulted from the same occurrence. (See *Exhibit 17*).

96.    As of the date of this filing, TRAVELERS has refused to provide NEPSG with any engineering reports, estimates, inspection notes, or any other relevant information regarding the Claim.

97.    Upon information and belief, TRAVELERS' bad faith refusal to provide relevant Claim documents and its requests to conduct unlimited inspections of the Subject Premises are a

coordinated effort to prolong the Claim settlement process and avoid remitting further payment for Claim proceeds.

<u>**COUNT I**</u>
<u>**Violation of M.G.L. c. 93A**</u>

98. Plaintiff NEPSG repeats and realleges each and every allegation made in paragraphs 1 through 97 of the Complaint, as if fully set forth herein.

99. At all relevant times hereto, Defendant TRAVELERS was engaged in trade or commerce.

100. Defendant TRAVELERS had the statutory duty, under M.G.L. c. 176D § 3(9)(a), to properly represent pertinent facts or insurance policy provisions relating to coverages at issue.

101. Defendant TRAVELERS had a statutory duty, under M.G.L. c. 176D § 3(9)(b), to acknowledge and act reasonably promptly upon communications with respect to the claims arising under insurance policies.

102. Defendant TRAVELERS had a statutory duty, under M.G.L. c. 176D § 3(9)(c), to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies.

103. Defendant TRAVELERS had the statutory duty, under M.G.L. c. 176D § 3(9)(d), to conduct a reasonable investigation based upon all available information before refusing to remit payment on the Claim.

104. Defendant TRAVELERS had the statutory duty, pursuant to M.G.L. c. 176D § 3(9)(f), to engage in the prompt, fair and equitable settlement of the Claim with Plaintiff NEPSG where liability had become reasonably clear.

105. Defendant TRAVELERS had a statutory duty, under M.G.L. c. 176D § 3(9)(g), to not force Plaintiff NEPSG to file litigation to recover amounts due under the Policy by offering

substantially less than the amounts ultimately recovered through litigation.

106.    Defendant TRAVELERS had a statutory duty, under M.G.L. c. 176D § 3(9)(n), to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

107.    Defendant TRAVELERS committed willful and intentional violations of M.G.L. c. 93A § 2 and M.G.L. c. 176D §§ 3(9)(a), (b), (c), (d), (f), (g) and (n). These violations include but are not limited to: misrepresenting the Policy definition of "occurrence" to require separate claims for each date of water intrusion; failing or refusing to answer Plaintiff NEPSG's requests for information and requests to settle on multiple occasions; failing to adopt and implement reasonable standards for the prompt investigation of the Claim by sending an inspector to the Subject Premises without prior notification or permission; refusing to pay Claim proceeds without conducting a reasonable investigation based on all available information; failing to effectuate prompt, fair, and equitable settlement of the Claim by refusing to recognize Plaintiff NEPSG as the lawful claimant of the Claim and refusing to provide Plaintiff NEPSG with relevant Claim documents and information, unduly delaying the settlement and resolution of the Claim, and compelling Plaintiff NEPSG to institute litigation to collect Claim proceeds.

108.    Defendant TRAVELERS' conduct during the settlement of the Claim constitutes a violation of its duty of good faith and fair dealing as well as its statutory mandate to fairly investigate and promptly settle the Claim, all causing unreasonable delay in the settlement of the Claim.

109.    The acts of Defendant TRAVELERS described herein constitute unfair or deceptive acts or practices within the meaning of M.G.L. c. 93A, §§ 2 and 9 and M.G.L. c. 176D §§

3(9)(a), (b), (c), (d), (f), (g) and (n) and were performed willfully and knowingly.

110.   As a result of Defendant TRAVELERS' above described unfair or deceptive acts or practices, Plaintiff NEPSG has suffered damages, including but not limited to being denied payment of sufficient funds required to restore the Subject Premises to its pre-loss condition.

111.   The damages suffered by the Plaintiff NEPSG was a foreseeable consequence of Defendant TRAVELERS's breach of the Policy and violations of M.G.L. c. 93A, §§ 2 and 9 and M.G.L. c. 176D §§ 3(9)(a), (b), (f), (g), (n), and (n). and (g).

112.   As a result of Defendant TRAVELERS' above described unfair or deceptive acts or practices, the Plaintiff NEPSG has suffered damages.

## COUNT II
## Breach of Contract

113.   Plaintiff NEPSG repeats and realleges each and every allegation made in paragraphs 1 through 112 of the Complaint, as if fully set forth herein.

114.   Defendant TRAVELERS had a contractual obligation to negotiate the settlement of the Claim with the Plaintiff NEPSG according to the legal principles of good faith and fair dealing.

115.   Defendant TRAVELERS breached its duty of good faith and fair dealing during the settlement of the Claim. These breaches include but are not limited to: failing to properly investigate and settle the Claim by refusing to settle the roof portion of the Claim; sending an inspector to inspect the Subject Premises without notification or consent from the Plaintiff NEPSG or the Policyholder; misrepresenting Policy provisions by refusing to

recognize the Contract to pay and communicate exclusively with the Plaintiff NEPSG; requiring different claim submissions for each date of water intrusion, unduly delaying the settlement and resolution of the Claim; and compelling Plaintiff NEPSG to institute litigation to collect Claim proceeds.

116. Defendant TRAVELERS' conduct during the settlement of the Claim constitutes a breach of the terms of the Policy and a violation of its duty of good faith and fair dealing as well as its statutory mandate to fairly investigate and promptly settle the Claim.

117. As a direct and proximate result of Defendant TRAVELERS's breach of the Policy and its implied duty of good faith and fair dealing, the Plaintiff NEPSG suffered damages.

118. The damages suffered by the Plaintiff NEPSG was a foreseeable consequence of Defendant TRAVELERS' breach of the Policy and violation of its duty of good faith and fair dealing.

119. Solely as a result of Defendant TRAVELERS' breach of its contractual obligations under the Policy, the Plaintiff NEPSG has suffered damages, including but not limited to, being denied payment of sufficient funds required to restore the Subject Premises to its pre-loss condition.

## **DEMAND FOR JUDGMENT**

WHEREFORE, on Counts I and II Plaintiff NEPSG, respectfully requests this Honorable Court:

- Enter judgment for the Plaintiff NEPSG and against the Defendant TRAVELERS;
- Award damages to the Plaintiff NEPSG, in an amount to be determined at trial;
- Treble such amount as provided by M.G.L. c. 93A § 9;
- Award interest, costs, and attorney fees to NEPSG; and,
- Award any such other relief as this Court deems equitable and appropriate.

19

**PLAINTIFF DEMANDS TRIAL BY JURY ON ALL COUNTS**

New England Property Services Group, LLC
By its attorney,

/s/ Brittany J. Strojny
Brittany J. Strojny, BBO#681435
New England Property Services Group, LLC
1822 North Main Street
Second Floor Annex, Suite 001
Fall River, MA 02720
(508) 567-5738 Ext. 106 - Phone
(401) 556-4423 – Fax
brittany@newenglandpropertyservicesgroup.com

# EXHIBIT 1

INS MARKETING AGENCIES
306 MAIN STREET THE DAY BLDG
WORCESTER, MA 01608
0000 0DJW34

AVROM HONIG
41 PLEASANT ST
BELLINGHAM, MA 02019-2220

PL-50003 (03-12)



July 9, 2023

**Your Policy**


**614262907-633-1**
**41 PLEASANT ST**
06/27/2023 to 06/27/2024

 Log in to MyTravelers.com to manage your policy and billing details.

AVROM HONIG
41 PLEASANT ST
BELLINGHAM, MA 02019-2220

# Welcome to Travelers!

As a Travelers insurance customer, you have more than 150 years of experience, financial stability and superior claim service behind you, so you can feel protected – especially when you need us most.

## Review your policy documents

No one understands your needs better than you. So please take a moment to review and confirm your new insurance policy details, including:

- Your Declarations page, listing the coverage you purchased, your coverage limits and deductibles
- Insurance policy and endorsements
- Other important documents, including our privacy notice, billing options and more

If you decide to rent, sell, vacate or remodel this property, please notify your agent or Travelers representative immediately to maintain the coverage you need.

## Superior Service

At Travelers, we provide fast, efficient claim service and 24/7 claim reporting. We're proud to put our talent, expertise and resolution excellence to work for you.

On behalf of INS MARKETING AGENCIES, thank you for choosing Travelers to help you protect what matters. It's Better Under the Umbrella®.

Sincerely,

*Michael Klein*

Michael Klein
President
Travelers Personal Insurance

### A faster, easier way to manage your account

Visit **MyTravelers.com** or open the camera on your smartphone and scan the QR code below to download our mobile app, where you can:

- Manage your policy and bills
- Submit and monitor a claim



**Contact Information**
Policy questions or changes: 1.508.753.7233
24-hour claim service: 1.800.252.4633

### Additional Benefits

As a valued customer, you may be eligible for certain programs for which you may receive goods, services, or other types of benefits. Visit travelers.com/additionalbenefits to learn more!

---

**Take advantage of our other coverage options and multi-policy discount**


AUTO


BOAT & YACHT


UMBRELLA


VALUABLES

**Call your agent or Travelers representative at 1.508.753.7233 to find out more!**

PL-50352 (08-21)

YOUR AGENCY
**INS MARKETING AGENCIES**
306 MAIN STREET THE DAY BLDG
WORCESTER, MA 01608
PHONE: 1.508.753.7233 | FAX: (508) 754-0487



**YOUR POLICY**

 614262907-633-1
41 PLEASANT ST
Jun 27, 2023 to Jun 27, 2024

ⓘ **Log in to MyTravelers.com to manage your policy and billing details.**

# You're insured!

This document is intended to help you better understand your homeowners insurance. Your policy is effective from **June 27, 2023** to **June 27, 2024**. For a complete description of your coverage, please refer to your policy.



**COVERAGE A**
**Dwelling** and attached structures such as garages and decks
YOUR LIMIT
**$450,000**

**COVERAGE B**
**Other structures** such as detached garages and sheds
YOUR LIMIT *
**$45,000**

**COVERAGE C**
**Personal property** such as furniture and clothing
YOUR LIMIT *
**$225,000**

**COVERAGE E**
**Personal liability** for property damage and bodily injury to others
YOUR LIMIT
**$500,000**

**COVERAGE D**
**Loss of use** or access to your dwelling
YOUR LIMIT *
**$90,000**

**Deductibles**
Amount of a covered claim that is your responsibility
All Perils                                    $1,000

**COVERAGE F**
**Medical payments** to others
YOUR LIMIT
**$5,000**

## You're receiving five discounts for a total savings of $1,680.00

- ✅ Multi-Policy
- ✅ Good Payer
- ⭕ Water Protective Device
- ✅ Early Quote
- ✅ Fire Protective Device
- ⭕ Green Home
- ✅ Loss Free
- ⭕ Theft Protective Device
- ⭕ Windstorm Mitigation

**12-month total premium**

# $3,213.00

Go to **MyTravelers.com/discounts** and use product code QH2 to learn about all the discounts available to you.

* Your Coverage B, C, and D limits are maintained as a percentage of your Coverage A limit. If your Coverage A limit changes, your Coverage B, C, and D limits will be adjusted accordingly.

**This is not a policy document and does not change any provisions of your policy. There are exclusions, limitations, and conditions that apply to each coverage. If there is any conflict between your policy and this information, the provisions of your policy will apply.**

PL-50374 (05-17)                                                                                    Page 1 of 2

**TRAVELERS**
As of July 9, 2023

## What does your policy typically cover?

Your policy helps protect you from a number of things that can go wrong. Here are some of the most common:



**Weather**
Hail, lightning, and other weather events can damage your roof, windows, siding, and more – so can falling branches and other debris.



**Fire**
Whether it's smoke damage from a small kitchen fire or extensive damage from a large, accidental fire, your policy can help you repair or rebuild your property.



**Theft or vandalism**
Your policy typically covers theft or vandalism of your property. See your policy for special limits on things such as collectibles, jewelry, and money.

**Take steps to protect your property and call us as soon as damage occurs.**
**For more tips, go to MyTravelers.com/prepare-prevent.**

## What isn't covered?

Your policy covers you for many types of loss or damage, but it can't protect you from everything. Some examples:



**Floods are not covered**
Your policy does not cover flood damage. Please review the Important Information About Flood Damage page for more details and resources.



**Earthquake coverage is optional**
Damage from earthquakes is not covered, unless you specifically purchase coverage for it. Check under the Optional Coverages and Packages section of your Policy Declarations. If you do not see this coverage listed and think you need it, please contact your agent or Travelers representative.



**It's not for home maintenance**
Repairs due to wear and tear or lack of upkeep are not typically covered under your policy.

## When circumstances change, we need to know

Review your Policy Declarations to be sure the information we have is accurate. If your property, circumstances, or needs change, let us know immediately to maintain the coverage you need. Not informing us may result in a denied claim.

Contact your agent or Travelers representative if:

- Your mailing address changes
- Someone named on the policy moves out
- Someone named on the policy passes away
- Someone moved onto your property

- You rent, sell, temporarily relocate, vacate or buy a new home
- Business is conducted on your property
- You renovate or build an addition
- You replace your roof

---

This is not a policy document and does not change any provisions of your policy. There are exclusions, limitations, and conditions that apply to each coverage. If there is any conflict between your policy and this information, the provisions of your policy will apply.

## How Your Dwelling Coverage Compares to Your Estimated Reconstruction Cost

As your home insurance provider, Travelers takes the time to understand your coverage needs. Based on the information you provided to us, your current coverage is an amount greater than the estimated cost to rebuild your home. We derive these estimates by using your home attributes such as total living area, style of your home, construction type, and more.

Industry standards recommend a dwelling be insured to 100% of its estimated reconstruction cost. No one knows your home better than you, so it's up to you to decide on the right amount of insurance coverage you need.

Please review the following information carefully and consider whether your current coverage amount is appropriate.

**Current Coverage: $450,000**
**Estimated Reconstruction Cost: $403,000**

Some key information used to calculate the estimated reconstruction cost is listed on your Declarations Page, under "Information About Your Property".

For more information about reconstruction costs, please visit www.MyTravelers.com/CostToRebuild.

If you have any questions, please contact your agent or Travelers representative. If we don't hear from you, your current coverage amount will remain unchanged for this policy period.

PL-50418 (05-17)



**TRAVELERS**

# Homeowners Policy Declarations

**Named Insured and Mailing Address**
AVROM HONIG
41 PLEASANT ST
BELLINGHAM, MA 02019-2220
AVROM18@GMAIL.COM

**Your Agency's Name and Address**
INS MARKETING AGENCIES
306 MAIN STREET THE DAY BLDG
WORCESTER, MA 01608

**Residence Premises**
41 PLEASANT ST
BELLINGHAM, MA 02019-2220

## Policy Information

| | | | |
|---|---|---|---|
| **Your Policy Number** | 614262907 633 1 | **For Policy Service** | 1.508.753.7233 |
| **Your Account Number** | | **For Claim Service** | 1.800.252.4633 |

**Your Insurer:** THE TRAVELERS HOME AND MARINE INSURANCE COMPANY
a subsidiary or affiliate of The Travelers Indemnity Company
One Tower Square, Hartford, CT 06183

**The policy period is from June 27, 2023 at 12:01 A.M. STANDARD TIME to June 27, 2024 at 12:01 A.M. STANDARD TIME at the residence premises.**

| Total Premium for this Policy: | $3,213.00 |
|---|---|
| This is not a bill. You will be billed separately for this transaction. | |

## Discounts

The following discounts reduced your premium:

| | | |
|---|---|---|
| Multi-Policy | Early Quote | Loss Free |
| Good Payer | Fire Protective Device | |

**Savings Reflected in Your Total Premium:** $1,680.00

## Coverages and Limits of Liability

| **Property Coverage Section** | **Limit** |
|---|---|
| Coverage A – Dwelling | $450,000 |
| Coverage B – Other Structures | $45,000 |
| Coverage C – Personal Property | $225,000 |
| Coverage D – Loss of Use | $90,000 |

| **Liability Coverage Section** | **Limit** |
|---|---|
| Coverage E – Personal Liability - Bodily Injury and Property Damage (each occurrence) | $500,000 |
| Coverage F – Medical Payments to Others (each person) | $5,000 |

PL-50355 MA (05-17)                    Insured Copy                    Page D-1
011/0DJW34



## Deductibles

| Peril Deductible | Deductible |
|---|---|
| Property Coverage Deductible (All Perils) | $1,000 |

*In case of loss under the Property Coverage Section, only that part of the loss over the applicable deductible will be paid (up to the coverage limit that applies).*

## Special Limits and Additional Coverages
### Coverage Level: Travelers Protect Premier®

*The limit shown for each of the Special Limits of Liability and Additional Coverages is the total limit for each loss in that category.*

| Personal Property – Special Limits of Liability | Limit |
|---|---|
| a. Money, bank notes, coins, stored value cards | $2,000 |
| b. Securities, accounts, passports, tickets, stamps | $5,000 |
| c. Comic books and trading cards | $5,000 |
| d. Collectibles, figurines, glassware, marble, porcelains, statuary | $5,000 |
| e. Theft, misplacing or losing of jewelry, watches, precious stones | $5,000 |
| f. Theft, misplacing or losing of furs | $5,000 |
| g. Theft, misplacing or losing of silverware, goldware, pewterware | $10,000 |
| h. Theft, misplacing or losing of firearms and related equipment | $10,000 |
| i. Theft of tools and their accessories | $5,000 |
| j. Theft of rugs, tapestries and wall hangings | $5,000 |
| k. Business property on the residence premises | $15,000 |
| l. Business property away from the residence premises | $5,000 |
| m. Trailers or semitrailers not used with watercraft | $5,000 |
| n. Motor vehicle parts or equipment not attached to motor vehicle | $2,500 |
| o. Electronic apparatus while in or upon a motor vehicle or watercraft | $5,000 |

*The Special Limits of Liability do not increase your Coverage C – Personal Property Limit.*

| Property – Additional Coverages | | Limit |
|---|---|---|
| Debris Removal (Additional % of damaged covered property limit) | | 5% |
| Tree Removal | Per Tree $500 Per Loss | $1,000 |
| Trees, Shrubs and Other Plants (5% of Coverage A - Dwelling Limit) | Per Tree $500 Per Loss | $22,500 |
| Fire Department Service Charge | | $2,500 |
| Credit Card, Fund Transfer, Forgery and Counterfeit Money | | $10,000 |
| Loss Assessment | | Pkg |
| Landlord Furnishings | | $2,500 |
| Ordinance or Law (25% of Coverage A - Dwelling Limit) | | $112,500 |
| Personal Records and Data Replacement | | $5,000 |
| Limited Fungi or Other Microbes Remediation | | $50,000 |

*The applicable policy deductible applies unless otherwise noted.*



| Named Insured | AVROM HONIG | Policy Number | 614262907 633 1 |
|---|---|---|---|
| Policy Period | June 27, 2023 to June 27, 2024 | Issued On Date | July 9, 2023 |

### Liability – Additional Coverages | Limit

| | |
|---|---|
| Damage to Property of Others | $10,000 |
| Loss Assessment | Pkg |
| Limited Fungi or Other Microbes Liability Coverage | |
|     Coverage E – Aggregate Limit of Liability | $100,000 |
|     Coverage F – Sub Limit of Liability | $5,000 |

*Please review your policy for other Personal Property Special Limits of Liability and Additional Coverages that may apply.*

## Optional Coverages and Packages

| Optional Coverages | Endorsement | Limit | Premium |
|---|---|---|---|
| Functional Replacement Cost Loss Settlement | HQ-825 MA (05-17) | | Included* |

| Optional Packages | Endorsement | Limit | Premium |
|---|---|---|---|
| **Enhanced Water Package** | | | Included* |
|     Water Back Up and Sump Discharge or Overflow Coverage | HQ-208 MA (08-20) | $20,000 | |
|     Limited Hidden Water or Steam Seepage or Leakage Coverage | HQ-209 MA (08-18) | $20,000 | |
| **Decreasing Deductible and Loss Forgiveness Package** | | | Included* |
|     Decreasing Deductible | HQ-900 MA (05-17) | | |
|     Loss Forgiveness | | | |
| **Roof and Siding Matching Package** | | | Included* |
|     Matching of Undamaged Roof Surfacing Additional Coverage | HQ-700 MA (05-18) | $20,000 | |
|     Matching of Undamaged Siding Additional Coverage | HQ-701 MA (05-18) | $20,000 | |
| **Additional Coverage Package** | | | Included* |
|     Special Personal Property Coverage | HQ-015 MA (02-21) | | |
|     Personal Injury Coverage | HQ-082 MA (02-19) | | |
|     Personal Property Replacement Cost Loss Settlement | HQ-290 MA (02-21) | | |
|     Additional Replacement Cost Protection Coverage | HQ-420 MA (11-18) | $225,000 | |
|         50% of Coverage A - Dwelling Limit | | | |
|     Refrigerated Property Coverage | HQ-498 MA (05-17) | $500 | |
|     Loss Assessment | Increased Limit | $5,000 | |
| **Buried Utility Lines and Equipment Breakdown Package** | | | $84.00 |
|     Equipment Breakdown Coverage | HQ-855 MA (05-17) | $50,000 | |
|     Buried Utility Lines Coverage | HQ-856 MA (08-20) | $20,000 | |

***Note:** The additional cost or premium reduction for any optional coverage or package shown as "Included" is contained in the Total Policy Premium Amount.*

## Required Forms and Endorsements Included in Your Policy: | Form: 633

| | |
|---|---|
| Policy Quick Reference | HQ-T77 CW (05-17) |
| Agreement, Definitions & Policy Conditions | HQ-D77 MA (05-17) |
| Property Coverage Section | HQ-P03 MA (05-17) |
| Liability Coverage Section | HQ-L77 MA (05-17) |



| **Required Forms and Endorsements Included in Your Policy: (Continued)** | | **Form: 633** |
|---|---|---|
| Signature Page | HQ-S99 MA (05-17) | |
| Limited Fungi or Other Microbes Liability Coverage | HQ-829 MA (05-17) | |
| Special Provisions - Massachusetts | HQ-300 MA (07-22) | |
| Additional Benefits | HQ-860 MA (08-18) | |

> The Declarations along with the Optional Coverages, Optional Packages and Required Forms and Endorsements listed above form your Homeowners Insurance Policy.
> Please keep these documents for reference.

## Information About Your Property

There are many factors that determine the premium on your policy, some of which are displayed below. If you would like a policy review, please contact your agent or Travelers Representative.

| | | |
|---|---|---|
| Year Built: 1910 | Garage Type: Attached | Pool: No |
| # of Families: 1 Family | Square Footage: 1454 | Age of Roof: 12 |
| # of Stories: 2 | Construction Type: Frame | Roof Material Type: Architectural Shingle |
| # of Bathrooms: 2 | Siding Type: Vinyl | |
| # of Employees: 00 | Foundation Type: Slab | |
| Garage - Number of Cars: 2 | Finished Basement: 00 | |

Issued on 07-09-2023
Countersignature (Agent Use Only): _____

## For Your Information

For information about how Travelers compensates independent agents and brokers, please visit www.Travelers.com or call our toll free telephone number 1-866-904-8348. You may also request a written copy from Marketing at One Tower Square, 2GSA, Hartford, Connecticut 06183.

We want to make sure we are using accurate information to rate your policy. Because you are the most familiar with your home we need your help to make sure that the information on your Declarations is accurate and complete. If any of the information on your Declarations has changed, appears incorrect or is missing, please advise your agent or Travelers representative. We also need you to check our website at www.mytravelers.com/discounts to ensure that you are receiving all of the discounts for which you are eligible. Once at the website, type in your policy number 6142629076331 and product code QH2 to view all available discounts. Should you have any questions about the information on your Declarations or your discounts, please call your agent or Travelers representative.

If you have recently replaced your roof it is important that you inform your Travelers Representative.

In case of fire notify the company or its local agent at once in writing.

HQ-T77 CW (05-17)

# TRAVELERS INSURANCE POLICY

## YOUR HOMEOWNERS POLICY QUICK REFERENCE

|   | Beginning on Page |
|---|---|
| **HOMEOWNERS POLICY DECLARATIONS** | D-1 |
| NAMED INSURED AND MAILING ADDRESS | |
| LOCATION OF YOUR RESIDENCE PREMISES | |
| YOUR AGENCY'S NAME AND ADDRESS | |
| MORTGAGEE NAME AND ADDRESS | |
| POLICY INFORMATION | |
| DISCOUNTS | |
| COVERAGES AND LIMITS OF LIABILITY | |
| DEDUCTIBLES | |
| | |
| **AGREEMENT** | A-1 |
| **DUTY TO REPORT CHANGES IN EXPOSURE** | A-1 |
| **DEFINITIONS** | A-1 |
| **POLICY CONDITIONS** | A-4 |
| | |
| **PROPERTY COVERAGE SECTION** | |
| PROPERTY COVERAGE A – DWELLING | P-1 |
| PROPERTY COVERAGE B – OTHER STRUCTURES | P-1 |
| PERILS INSURED AGAINST | |
|     PROPERTY COVERAGE A – DWELLING | |
|     PROPERTY COVERAGE B – OTHER STRUCTURES | P-1 |
| PROPERTY COVERAGE C – PERSONAL PROPERTY | P-3 |
| PERILS INSURED AGAINST | |
|     PROPERTY COVERAGE C – PERSONAL PROPERTY | P-5 |
| PROPERTY COVERAGE D – LOSS OF USE | P-6 |
| PROPERTY – ADDITIONAL COVERAGES | P-7 |
| PROPERTY – EXCLUSIONS | P-11 |
| PROPERTY – CONDITIONS | P-14 |
| | |
| **LIABILITY COVERAGE SECTION** | |
| LIABILITY COVERAGE E – PERSONAL LIABILITY | L-1 |
| LIABILITY COVERAGE F – MEDICAL PAYMENTS TO OTHERS | L-1 |
| LIABILITY – ADDITIONAL COVERAGES | L-1 |
| LIABILITY – EXCLUSIONS | L-3 |
| LIABILITY – CONDITIONS | L-8 |
| | |
| **SIGNATURE PAGE** | S-1 |

© The Travelers Indemnity Company. All rights reserved.

HQ-D77 MA (05-17)

# TRAVELERS INSURANCE POLICY

**The Travelers Home And Marine Insurance Company**
One Tower Square, Hartford, Connecticut 06183
(A Stock Insurance Company)

## AGREEMENT, DEFINITIONS & POLICY CONDITIONS

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DUTY TO REPORT CHANGES IN EXPOSURE

You or an "insured" must notify us when:

1. There is a change to the mailing or "residence premises" address shown in the Declarations; and

2. A named "insured" no longer resides on the "residence premises" or a person or persons begin to reside on the "residence premises";

3. A named "insured" dies;

4. Title to or ownership of the "residence premises" changes;

5. There is a change to the use of the "residence premises" with respect to "business" conducted or rental activity;

6. An addition, alteration or renovation is made to a dwelling or other building on the "residence premises"; or

7. A named "insured" acquires a replacement or additional residential property.

If you fail to report a change relating to the insured property within 60 days, it may result in denial of coverage under this policy.

## DEFINITIONS

In this policy, you and your refer to:

a. The named "insured" shown in the Declarations; and

b. The spouse if a resident of the same household. The term spouse includes, if a resident of the same household:

   (1) The civil partner of the named "insured", provided such civil union was obtained in a state where a civil union is legally recognized; or

   (2) The domestic partner of the named "insured", provided such domestic partner was in a continuing spouse-like relationship with the named "insured" for the purpose of a domestic life. Both persons must be 18 years of age or older and may not be related to each other by blood. Neither may be married to another person, or be a domestic partner or partner by civil union of any other person.

In this policy, we, us and our refer to the member company of Travelers providing this insurance and shown as Your Insurer in the Declarations.

In this policy, certain words and phrases are in quotes. Those words and phrases are defined as follows:

1. "Aircraft" means any device used or designed for flight, including any:

   a. Unmanned flying device, self-propelled missile or spacecraft; and

   b. Accessory, equipment or part for such device, whether or not attached to the device.

   Under Property Coverage C – Personal Property, Liability Coverage E – Personal Liability, Liability Coverage F – Medical Payments to Others and Liability – Additional Coverages, "aircraft" does not include any unmanned flying device that:

   a. Is used or operated for recreational purposes only; and

   b. Weighs less than 10 pounds with or without any accessory, equipment or part attached.

2. "Aircraft Liability", "Hovercraft Liability", "Motor Vehicle Liability" and "Watercraft Liability" mean liability for "bodily injury" or "property damage" arising out of the:

HQ-D77 MA (05-17)

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

a. Ownership of such vehicle or craft by an "insured";

b. Maintenance, occupancy, operation, use, loading or unloading of such vehicle or craft by any person;

c. Entrustment of such vehicle or craft by an "insured" to any person;

d. Failure to supervise or negligent supervision of any person involving such vehicle or craft by an "insured"; or

e. Vicarious liability, whether or not imposed by law, for the actions of a child or minor involving such vehicle or craft.

For the purpose of this definition:

a. Aircraft means an "aircraft" as defined in Definitions **1.**;

b. Hovercraft means a self-propelled motorized ground effect vehicle and includes flarecraft and air cushion vehicles;

c. Motor vehicle means a "motor vehicle" as defined in Definitions **11.**; and

d. Watercraft means a craft principally designed to be propelled on or in water by wind, engine power or electric motor.

3. "Apartment" means a single room or set of rooms, rented or held for rental, that is part of a covered building and is intended as a place to stay or reside, regardless of the length of the habitation.

4. "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

5. "Business" means:

a. A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

b. Any other activity engaged in for money or other compensation, except the following:

(1) Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

(2) Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

(3) Providing home day care services to a relative of an "insured".

6. "Employee" means an employee of an "insured", or an employee leased to an "insured" by a labor leasing firm under an agreement between an "insured" and the labor leasing firm, whose duties are other than those performed by a "residence employee".

7. "Fuel system" means:

a. One or more containers, tanks or vessels which have a total combined fuel storage capacity of 100 or more U.S. gallons; and

(1) Are, or were, used to hold fuel; and

(2) Are, or were, located on any one location;

b. Any pumping apparatus, which includes the motor, gauge, nozzle, hose or pipes that are, or were, connected to one or more containers, tanks or vessels described in **7.a.**;

c. Filler pipes and flues connected to one or more containers, tanks or vessels described in **7.a.**;

d. A boiler, furnace or a water heater, the fuel for which is stored in a container, tank or vessel described in **7.a.**;

e. Fittings and pipes connecting the boiler, furnace or water heater to one or more containers, tanks or vessels described in **7.a.**; or

f. A structure that is specifically designed and built to hold escaped or released fuel from one or more containers, tanks or vessels described in **7.a.**

A "fuel system" does not include any fuel tanks that are permanently affixed to a "motor vehicle" or watercraft owned by an "insured", used for powering the "motor vehicle" or watercraft and not used at any time or in any manner for "business".

8. "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by "fungi".

Under the Liability Coverage Section, this does not include any "fungi" that are, are on, or are contained in, products or goods intended for consumption.

9. "Insured" means:

a. You and residents of your household who are:

(1) Your relatives; or

(2) Other persons under the age of 21 and in the care of any person named above;

b. A student enrolled in school full-time, as defined by the school, who was a resident of your household before moving out to attend

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

school, provided the student is under the age of:

**(1)** 24 and your relative; or

**(2)** 21 and in your care or the care of a person described in **9.a.(1)**; or

**c.** Any Additional Insured named in the Declarations, but only with respect to Coverages A, B, E and F if applicable to your policy and only for the "residence premises".

**d.** Under the Liability Coverage Section:

**(1)** With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in **9.a.** or **b.**

"Insured" does not mean a person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner; or

**(2)** With respect to any vehicle to which this policy applies:

**(a)** Persons while engaged in your employ or that of any person included in **9.a.** or **b.**; or

**(b)** Other persons using the vehicle on an "insured location" with your consent.

Under both the Property and Liability Coverage Sections of this policy, when the word <u>an</u> immediately precedes the word "insured", the words an "insured" together mean one or more "insureds".

**10.** "Insured location" means:

**a.** The "residence premises";

**b.** The part of other premises, other structures and grounds used by you as a residence and:

**(1)** Which is shown in the Declarations; or

**(2)** Which is acquired by you during the policy period for your use as a residence;

**c.** Any premises used by you in connection with a premises described in **10.a.** and **b.**;

**d.** Any part of a premises:

**(1)** Not owned by an "insured"; and

**(2)** Where an "insured" is temporarily residing;

**e.** Vacant land, other than farm land, owned by or rented to an "insured";

**f.** Land owned by or rented to an "insured" on which a one or two family dwelling is being built as a residence for an "insured";

**g.** Individual or family cemetery plots or burial vaults of an "insured";

**h.** Any part of a premises occasionally rented to an "insured" for other than "business" use;

**i.** Any premises owned by you and rented to others for use as a residence by not more than four families, if shown in the Declarations as an Additional Residence Rented to Others; or

**j.** Any other structure on the "residence premises" rented to others as a private residence if a limit of liability is shown in the Declarations as Structures Rented to Others.

**11.** "Motor vehicle" means:

**a.** A self-propelled land or amphibious vehicle; or

**b.** Any trailer or semi-trailer which is being carried on, towed by or hitched for towing by a vehicle described in **11.a.**

"Motor vehicle" does not include model, hobby or children's toy vehicles.

**12.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results during the policy period, in:

**a.** "Bodily injury"; or

**b.** "Property damage".

**13.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, waste and any unhealthful or hazardous building materials. Waste includes materials to be recycled, reconditioned or reclaimed.

**14.** "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

**15.** "Residence employee" means:

**a.** An employee of an "insured", or an employee leased to an "insured" by a labor leasing firm under an agreement between an "insured" and the labor leasing firm, if the employee's duties are related to the maintenance or use of the "residence premises", including household or domestic services; or

**b.** One who performs similar duties elsewhere not related to the "business" of an "insured."

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

HQ-D77 MA (05-17)

A "residence employee" does not include a temporary employee who is furnished to an "insured" to substitute for a permanent "residence employee" on leave or to meet seasonal or short-term workload conditions.

16. "Residence premises" means:

    **a.** The one family dwelling or unit where you reside; or

    **b.** The two, three or four family dwelling where you reside in at least one of the family units;

and which is shown as the "residence premises" in the Declarations.

"Residence premises" also includes other structures and grounds at that location.

17. "Vacant" means the dwelling or unit lacks the necessary amenities, adequate furnishings or utilities and services required to sustain normal occupancy. A dwelling or unit being constructed is not considered "vacant".

## POLICY CONDITIONS

**1. Liberalization Clause.** If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadenings and restrictions of coverage, whether that general program revision is implemented through introduction of:

    **a.** A subsequent edition of this policy form; or

    **b.** An amendatory endorsement.

**2. Waiver or Change of Policy Provisions.** A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

**3. Duty to Cooperate and Inform.** The coverage provided by this policy and the premium charged for this policy are based on information you have given us. You agree:

    **a.** To cooperate with us in determining if this information is correct and complete;

    **b.** To inform us of any change in title, use or occupancy of the "residence premises"; and

    **c.** That if within 90 days of the policy effective date this information changes, is incorrect or incomplete, we may adjust your coverage and premium accordingly by giving you notice. This notice may be delivered to you, electronically transmitted to you, if permissible by law, or mailed to you at your mailing address shown in the Declarations. The notice will contain the changed, incorrect or incomplete information along with the resulting premium change.

**4. Cancellation.** This policy may be cancelled during the policy period as follows:

    **a.** A named "insured" shown in the Declarations may cancel this policy by:

        **(1)** Returning this policy to us; or

        **(2)** Giving us advance written notice of the date cancellation is to take effect.

    We may accept another form of notice from a named "insured". The cancellation by a named "insured" will be binding on any other named "insured".

    **b.** We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, electronically transmitted to you, if permissible by law, or mailed to you at your mailing address shown in the Declarations. Proof of mailing or electronic transmission will be sufficient proof of notice. We will also deliver or mail a copy of the notice to any Additional Insured named in the Declarations.

        **(1)** When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect;

        **(2)** When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect; or

        **(3)** When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

            **(a)** If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

            **(b)** If the risk has changed substantially since the policy was issued.

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

This can be done by letting you know at least 30 days before the date cancellation takes effect.

If specific Cancellation provisions apply in your state, they will appear in the **Special Provisions Endorsement** that is part of this policy.

c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

d. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

5. **Nonrenewal.** We may elect not to renew this policy. We may do so by delivering to you, electronically transmitting to you, if permissible by law, or mailing to you at the mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing or electronic transmission will be sufficient proof of notice. We will also deliver or mail a copy of the notice to any Additional Insured named in the Declarations.

If we offer to renew and you or your representative do not accept, this policy will automatically terminate without notice of termination at the end of the current policy period. Failure to pay the required renewal premium when due shall mean that you have not accepted our offer.

If specific Nonrenewal provisions apply in your state, they will appear in the **Special Provisions Endorsement** that is part of this policy.

6. **Assignment.** Assignment of this policy is void unless we give our written consent. We, as the non-assigning party, will not recognize any assignment of this policy unless our written consent is provided.

7. **Subrogation.** An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

Subrogation does not apply under the Liability Coverage Section to Medical Payments to Others or Damage to Property of Others.

8. **Death.** If any person named in the Declarations or the spouse, if a resident of the same household, dies:

a. We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death; and

b. "Insured" will then also include:

(1) An "insured" who is a member of your household at the time of your death, but only while a resident of the "residence premises"; and

(2) With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

HQ-P03 MA (05-17)

# TRAVELERS HOMEOWNERS INSURANCE POLICY

## PROPERTY COVERAGE SECTION

## PROPERTY COVERAGE A - DWELLING

1.  We cover:

    a.  The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and

    b.  Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises".

2.  We do not cover land, including land on which the dwelling is located.

## PROPERTY COVERAGE B – OTHER STRUCTURES

1.  We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line or similar connection. It also includes other structures that are not buildings, including driveways, walkways and patios.

2.  We do not cover:

    a.  Land, including land on which the other structures are located;

    b.  Other structures rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage. We do cover other structures rented to others as a private residence for which a limit of liability is shown in the Declarations for Structures Rented to Others;

    c.  Other structures from which any "business" is conducted; or

    d.  Other structures used to store "business" property. We do cover a structure that contains "business" property solely owned by an "insured" or a tenant of the dwelling provided that "business" property does not include gaseous or liquid fuel, other than fuel in a permanently installed fuel tank of a vehicle or craft parked or stored in the structure.

## PERILS INSURED AGAINST
## PROPERTY COVERAGE A – DWELLING
## PROPERTY COVERAGE B – OTHER STRUCTURES

1.  We insure against direct physical loss to property described in Property Coverages A and B.

2.  We do not insure for loss:

    a.  Excluded under Property - Exclusions;

    b.  Involving collapse or danger of collapse, except as provided in Property - Additional Coverage 9. Collapse; or

    c.  Caused by:

        (1) Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion does not apply if you have used reasonable care to:

            (a) Maintain heat in the building; or

            (b) Shut off the water supply and drain all systems and appliances of water.

        If the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

        For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or any other system designed to remove surface or subsurface water or subsurface water, roof drain, gutter, downspout or similar fixtures or equipment;

        (2) Freezing, thawing, pressure or weight of water, ice or snow, whether driven by wind or not, to a:

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

(a) Fence, pavement or patio;

(b) Outdoor spa or hot tub, outdoor sauna or outdoor swimming pool and any related equipment;

(c) Footing, foundation, bulkhead, wall, or any other structure or device that supports all or part of a building or other structure;

(d) Retaining wall or bulkhead that does not support all or part of a building or other structure; or

(e) Pier, wharf or dock.

This exclusion applies whether any item identified in **(2)(a)** through **(e)** of this exclusion is wholly or partially above or below ground;

(3) Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

(4) Vandalism and malicious mischief, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been "vacant" for more than 60 consecutive days immediately before the loss regardless of the policy's inception or renewal date;

(5) Theft or vandalism and malicious mischief in or to a dwelling while rented to others by an "insured" for a rental term of less than 30 consecutive days; or

(6) Any of the following:

(a) Wear and tear, marring, scratching or deterioration;

(b) Mechanical breakdown, latent defect, inherent vice or any quality in property that causes it to damage or destroy itself;

(c) Smog, rot, rust or other corrosion;

(d) Smoke from agricultural smudging or industrial operations;

(e) Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against under Property Coverage C;

(f) Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings. This exclusion applies whether any item is wholly or partially above or below ground;

(g) Birds, bats, vermin, rodents, raccoons, skunks, arachnids or insects;

(h) Nesting or infestation, or discharge or release of waste products or secretions, by any animals;

(i) Animals owned or kept by an "insured" or "residence employee"; or

(j) Presence, pressure or intrusion of any root system.

## Exception to c.(6)

Unless the loss is otherwise excluded, we cover loss to property covered under Property Coverages A and B resulting from an accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, that causes damage to a building on the "residence premises", if the accidental discharge or overflow of water or steam originates from within a system or appliance:

**a.** On the "residence premises"; or

**b.** Off the "residence premises", if located on a premises adjacent to the "residence premises".

This includes the cost to tear out and replace any part of a building, or other structure, on the "residence premises", but only when necessary to repair the system or appliance from which this water or steam escaped.

We do not cover loss:

**a.** To the system or appliance from which this water or steam escaped;

**b.** Caused by accidental discharge or overflow of water or steam from within a storm drain whether located on or off the "residence premises"; or

**c.** Caused by accidental discharge or overflow of water or steam from within a steam or sewer pipe located off the "residence premises".

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or any other system designed to remove surface or

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

subsurface water, roof drain, gutter, down spout or similar fixtures or equipment.

Under Perils Insured Against **2.b.** and **c.**, any ensuing loss to property described in Property Coverages A and B not excluded by any other provision in this policy is covered.

## PROPERTY COVERAGE C – PERSONAL PROPERTY

1. **Covered Property.** We cover personal property owned or used by an "insured" while it is anywhere in the world. At your request, we will cover personal property owned by:

   a. Others while the property is on the part of the "residence premises" occupied by an "insured"; or

   b. A guest or a "residence employee", while the property is in any residence occupied by an "insured".

This request may be made after a loss.

2. **Limit for Property at Other Locations.**

   a. **Other Residences.**

      Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises", is 10% of the limit of liability for Property Coverage C, or $1,000, whichever is greater. This limitation does not apply to personal property:

      (1) Moved from the "residence premises" because the "residence premises" is:

         (a) Being repaired, renovated or rebuilt; and

         (b) Not fit to live in or store property in;

      (2) Removed, for a period of 60 days or less, from the "residence premises" endangered by a Peril Insured Against; or

      (3) In a newly acquired principal residence for 60 days from the time you begin to move the property there.

   b. **Storage Facilities.**

      Our limit of liability for personal property owned or used by an "insured" and located in a storage facility is 10% of the limit of liability for Property Coverage C, or $1,000, whichever is greater. This limitation does not apply to personal property:

      (1) Moved from the "residence premises" because the "residence premises" is:

         (a) Being repaired, renovated or rebuilt; and

         (b) Not fit to live in or store property in;

      (2) Removed, for a period of 60 days or less, from the "residence premises" endangered by a Peril Insured Against; or

      (3) Usually located in an "insured's" residence, other than the "residence premises".

3. **Special Limits of Liability.** The following categories of personal property are covered only up to the Special Limits of Liability indicated below or shown in the Declarations. The special limit for each category described below is the total limit for each loss for all property in that category. These special limits do not increase the Property Coverage C limit of liability.

   a. Money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, coins, medals, scrip, stored value cards, smart cards, gift certificates, digital currency and any related currencies used in place of money.

   b. Securities, accounts, deeds, evidence of debt, letters of credit, notes other than bank notes, manuscripts, passports, tickets and stamps. This limit includes the cost to research, replace or restore information from the lost or damaged material.

   c. Comic books and trading cards, including sport cards, game cards and non-sports cards.

   d. Collectibles, including figurines, glassware, marble, porcelains, statuary and similar articles.

   e. Loss by theft of jewelry, watches, precious and semiprecious stones.

   f. Loss by theft of furs.

   g. Loss by theft of silverware, silver-plated ware, goldware, gold-plated ware, platinumware, platinum-plated ware and pewterware. This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold, platinum or pewter.

   h. Loss by theft of firearms and related equipment.

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

i.   Loss by theft of tools and their accessories.

j.   Loss by theft of any rugs, carpets, tapestries, wall hangings or other similar articles. This limit does not apply to wall-to-wall carpet.

k.   Covered property, on the "residence premises", used primarily for "business" purposes.

l.   Covered property, away from the "residence premises", used primarily for "business" purposes. This limit does not apply to loss to electronic apparatus and accessories while in or upon a "motor vehicle".

m.   Trailers or semitrailers not used with watercraft.

n.   "Motor vehicle" accessories, equipment or parts while not attached to, located in or upon or while removed from any "motor vehicle".

o.   Electronic apparatus and accessories, while in or upon a "motor vehicle" or watercraft, but only if the apparatus is equipped to be operated by power from the "motor vehicle's" or watercraft's electrical system while still capable of being operated by other power sources.

p.   $500 for tapes, records, discs, antennas, wires, electronic music and movies or other media that can be used with any electronic apparatus and accessories while in or upon a "motor vehicle" or watercraft.

q.   $1,500 for watercraft, including their trailers, furnishings, accessories, equipment, parts and outboard engines or motors.

   This limit does not apply to non-motorized personal craft under 20 feet in length, such as kayaks, surf boards, canoes, paddle boards, row boats, wind surfers or kite boards.

r.   $250 for legally obtained or prescribed marijuana.

s.   $1,000 for fine arts, including paintings, etchings, drawings, lithographs, photographs, sculptures and other bonafide works of art of rarity, historical value or artistic merit.

4.   **Property Not Covered.**

   We do not cover:

a.   Articles separately described and specifically insured, regardless of the limit for which they are insured, in this or other insurance;

b.   Animals, birds or fish;

c.   "Motor vehicles".

   (1)   This includes:

      (a)   Accessories, equipment and parts; or

      (b)   Electronic apparatus and accessories designed to be operated solely by power from the electrical system of the "motor vehicle".

      The exclusion of property described in **4.c.(1)(a)** and **(b)** applies only while such property is attached to or located in or upon the "motor vehicle";

   (2)   We do cover "motor vehicles" not required to be registered for use on public roads or property, which are:

      (a)   Used to service an "insured's" residence; or

      (b)   Designed to assist the handicapped;

d.   "Aircraft";

e.   Hovercraft, including accessories, equipment and parts, whether or not attached to the hovercraft. Hovercraft means a self-propelled motorized ground effect vehicle and includes flarecraft and air cushion vehicles;

f.   Property of roomers, boarders, tenants and other occupants who provide compensation to an "insured" for use of all or part of the "residence premises". This includes property of guests of any such roomer, boarder, tenant or other occupant.

   We do cover property of roomers, boarders, tenants, other occupants and guests of any such roomer, boarder, tenant and other occupants related to an "insured";

g.   Property in an "apartment" rented or held for rental to others by an "insured", except as provided under Property - Additional Coverage **11.** Landlord's Furnishings;

h.   Property rented or held for rental to others off the "residence premises";

i.   "Business" or personal records or data, including such data stored in:

   (1)   Books of account, drawings or other paper records;

   (2)   Computers and related or similar equipment; or

   (3)   Digital, electronic or virtual form;

   except as provided in Property – Additional Coverage **14.** Personal Records and Data Replacement.

   We do cover the cost of blank recording or storage media and of prerecorded computer programs available on the retail market;

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**j.** Credit cards, electronic fund transfer cards or access devices used solely for deposit, withdrawal or transfer of funds except as provided in Property - Additional Coverage **7.** Credit Card, Electronic Fund Transfer Card or Access Device, Forgery and Counterfeit Money;

**k.** Grave markers, except as provided in Property - Additional Coverage **13.** Grave Markers; or

**l.** Water or steam.

## PERILS INSURED AGAINST
## PROPERTY COVERAGE C – PERSONAL PROPERTY

We insure for direct physical loss to the property described in Property Coverage C caused by any of the following perils, unless the loss is excluded in Property - Exclusions.

**1. Fire or Lightning.**

**2. Windstorm or Hail.**

This peril includes loss to watercraft and their trailers, furnishings, accessories, equipment, parts and outboard engines or motors, only while inside a fully enclosed building.

This peril does not include loss to property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building, causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

**3. Explosion.**

**4. Riot or Civil Commotion.**

**5. Aircraft.**

This peril includes remotely operated, unmanned flying device, self-propelled missile or spacecraft.

**6. Vehicles.**

**7. Smoke.**

This peril means sudden and accidental damage from smoke, including the emission or puffback of smoke, soot, fumes or vapors from a boiler, furnace or related equipment.

This peril does not include loss caused by smoke from the manufacture of controlled substances, agricultural smudging or industrial operations.

**8. Vandalism or Malicious Mischief.**

This peril does not include loss to property caused by vandalism and malicious mischief, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been "vacant" for more than 60 consecutive

days immediately before the loss regardless of the policy's inception or renewal date.

**9. Theft.**

**a.** This peril includes attempted theft and loss of property from a known place when it is likely that the property has been stolen.

**b.** This peril does not include loss caused by theft:

(1) Committed by an "insured";

(2) In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

(3) From that part of a "residence premises" rented by an "insured" to someone other than another "insured";

(4) Anywhere on the "residence premises" when any portion is rented by an "insured" to someone other than another "insured" for a continuous period of less than 30 days; or

(5) That occurs off the "residence premises" of:

(a) Trailers, semitrailers and campers;

(b) Watercraft, including their furnishings, accessories, equipment, parts and outboard engines or motors; or

(c) Property while at any other residence owned by, rented to or occupied by an "insured", except while an "insured" is temporarily living there. Property of an "insured", who is a student, is covered while at the residence the student occupies to attend school as long as the student has been there at any time during the 90 days immediately before the loss.

**10. Falling Objects.**

This peril does not include loss to property contained in a building unless the roof or an

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

**11. Weight of Ice, Snow or Sleet.**

This peril means weight of ice, snow or sleet which causes damage to property contained in a building.

**12. Accidental Discharge or Overflow of Water or Steam.**

   **a.** This peril means accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance, if the accidental discharge or overflow of water or steam originates from within a system or appliance:

     **(1)** On the "residence premises"; or

     **(2)** Off the "residence premises", if located on a premises adjacent to the "residence premises".

   **b.** This peril does not include loss:

     **(1)** To the system or appliance from which the water or steam escaped;

     **(2)** Caused by or resulting from freezing except as provided in Peril Insured Against **14.** Freezing;

     **(3)** Caused by accidental discharge or overflow of water or steam from within a storm drain whether located on or off the "residence premises"; or

     **(4)** Caused by accidental discharge or overflow of water or steam from within a steam or sewer pipe located off the "residence premises".

   **c.** In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or any other system designed to remove surface or subsurface water, roof drain, gutter, downspout or similar fixtures or equipment.

   **d.** Property – Exclusion **3.** Water, paragraphs **a.** and **c.** that apply to surface water and water below the surface of the ground do not apply to loss by water covered under this peril.

**13. Sudden and Accidental Tearing Apart, Cracking, Burning or Bulging.**

This peril means sudden and accidental tearing apart, cracking, burning or bulging of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system or an appliance for heating water.

This peril does not include loss caused by or resulting from freezing except as provided in Peril Insured Against **14.** Freezing.

**14. Freezing.**

   **a.** This peril means freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance but only if you have used reasonable care to:

     **(1)** Maintain heat in the building; or

     **(2)** Shut off the water supply and drain all systems and appliances of water.

If the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

   **b.** In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or any other system designed to remove surface or subsurface water, roof drain, gutter, downspout or similar fixtures or equipment.

**15. Sudden and Accidental Damage from Artificially Generated Electrical Current.**

## PROPERTY COVERAGE D – LOSS OF USE

The limit of liability for Property Coverage D is the total limit for the coverages in **1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use.

**1. Additional Living Expense.** If a loss covered under the Property Coverage Section makes that part of the "residence premises" where you reside not fit to live in, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the lesser of:

   **a.** The shortest time required to:

     **(1)** Repair or replace the damage; or

     **(2)** Settle your household elsewhere, if you permanently relocate; or

   **b.** 24 months.

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**2. Fair Rental Value.** If a loss covered under the Property Coverage Section makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the amount of fair rental value of such premises lost, less any expenses that do not continue while it is not fit to live in.

Coverage under Fair Rental Value will only apply when that part of the "residence premises" is held for rental or rented to others for a term of 6 consecutive months or more by the same roomer, boarder, tenant or other occupant who provides compensation to an "insured".

Payment will be for the shortest time required to repair or replace such premises, but for no more than 24 months.

Written proof that part of the "residence premises" is rented, was held for rental at the time of loss or has been rented within the 12 months prior to the date of loss is required.

**3. Civil Authority Prohibits Use.** If a civil authority prohibits you from use of the "residence premises" as a result of direct physical damage to neighboring premises caused by a Peril Insured Against under this policy, we cover resulting **1.** Additional Living Expense and **2.** Fair Rental Value as provided above for no more than 30 days. Neighboring premises means a premises in sufficient proximity to the "residence premises" that there exists a reasonable risk that the damage affecting the neighboring premises could endanger either the "residence premises" or the safety of its occupants while in the "residence premises".

The periods of time under **1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use above are not limited by expiration of this policy.

**4. Loss or Expense Not Covered.** We do not cover loss or expense due to cancellation of a lease or agreement.

## PROPERTY - ADDITIONAL COVERAGES

Unless otherwise stated, the following coverages are additional insurance and are subject to the applicable deductible.

**1. Debris Removal.** We will pay your reasonable expense for the removal of debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss.

This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional percentage, as shown in the Declarations for this Property – Additional Coverage, of that limit is available for such expense.

We do not pay for the removal of trees except as provided under Property – Additional Coverage **2.** Tree Removal. We also do not pay for:

**a.** Extraction of "pollutants" from land or water; or

**b.** Removal, restoration or replacement of polluted land or water.

**2. Tree Removal.** We will pay your reasonable expense, up to the limit shown in the Declarations for this Property - Additional Coverage, for the removal of trees fallen on the "residence premises" as a result of a Peril Insured Against, provided the tree(s):

**a.** Damage(s) a covered structure; or

**b.** Do(es) not damage a covered structure, but:

**(1)** Block(s) a driveway on the "residence premises" which prevent(s) a "motor vehicle", that is registered for use on public roads or property, from entering or leaving the "residence premises"; or

**(2)** Block(s) a ramp or other fixture designed to assist a person to enter or leave the dwelling building.

The Per Loss Limit shown in the Declarations for this Property – Additional Coverage is the most we will pay in any one loss regardless of the number of fallen trees. No more than the Per Tree Limit shown in the Declarations for this Property - Additional Coverage will be paid for the removal of any one tree.

**3. Reasonable Repairs.**

**a.** We will pay the reasonable cost incurred by you for the necessary measures taken solely to protect covered property that is damaged by a Peril Insured Against from further damage.

**b.** If the measures taken involve repair to other damaged property, we will pay only if that property is covered under this policy and the damage is caused by a Peril Insured Against.

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

This coverage does not increase the limit of liability that applies to the covered property or relieve you of your duties described in Property – Conditions **2.d.** Duties After Loss.

4. **Trees, Shrubs and Other Plants.** We cover trees, shrubs, plants or lawns, on the "residence premises", for loss caused by the following Perils Insured Against:

   **a.** Fire or Lightning;

   **b.** Explosion;

   **c.** Riot or Civil Commotion;

   **d.** Aircraft;

   **e.** Vehicles not owned or operated by a resident of the "residence premises";

   **f.** Vandalism or Malicious Mischief; or

   **g.** Theft.

   We will pay up to the percentage of Property Coverage A shown in the Declarations for this Property – Additional Coverage for all damaged trees, shrubs, plants or lawns. No more than the Per Tree Limit shown in the Declarations for this Property – Additional Coverage will be paid for any one tree, shrub or plant. We do not cover property illegally grown or grown for "business" purposes.

5. **Fire Department Service Charge.** We will pay up to the limit shown in the Declarations for this Property - Additional Coverage for reasonable and necessary fire department charges incurred by you when the fire department is called to save or protect covered property from a Peril Insured Against.

   No deductible applies to this coverage.

6. **Property Removed.** We insure covered property against direct loss from any cause while being removed from or returned to a premises endangered by a Peril Insured Against and for no more than 60 days while removed. This coverage does not change the limit of liability that applies to the removed property.

7. **Credit Card, Electronic Fund Transfer Card or Access Device, Forgery and Counterfeit Money.**

   **a.** We will pay up to the limit shown in the Declarations for this Property - Additional Coverage for:

   **(1)** The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

**(2)** Loss resulting from theft or unauthorized use of an electronic fund transfer card or access device used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

**(3)** Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

**(4)** Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

No deductible applies to this coverage.

**b.** All loss resulting from a series of acts:

**(1)** Committed by any one person or group of persons acting in concert; or

**(2)** In which any one person or group of persons acting in concert is concerned or implicated;

is considered to be one loss.

**c.** We do not cover:

**(1)** Use of a credit card, electronic fund transfer card or access device:

**(a)** By a resident of your household;

**(b)** By a person who has been entrusted with either type of card or access device; or

**(c)** If an "insured" has not complied with all terms and conditions under which the cards are issued or the devices accessed; or

**(2)** Loss arising out of "business" use or dishonesty of an "insured".

**d.** If the coverage in **7.a.** applies, the following defense provisions also apply:

**(1)** We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

**(2)** If a suit is brought against an "insured" for liability under **7.a.(1)** or **(2)**, we will provide a defense at our expense by counsel of our choice.

**(3)** We have the option to defend, at our expense, an "insured" or an "insured's" bank against any suit for the enforcement of payment under **7.a.(3)**.

8. **Loss Assessment.**

   **a.** We will pay up to the limit shown in the Declarations for this Property - Additional Coverage for your share of loss assessment

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

charged during the policy period against you, as owner or tenant of the "residence premises", by a corporation or association of property owners. The assessment must be made as a result of direct loss to property, owned by all members collectively, of the type that would be covered by this policy if owned by you, caused by a Peril Insured Against under Property Coverage A.

This coverage does not apply to assessments made as a result of damage caused by earthquake and other earthquake shocks, including land shock waves or tremors before, during or after volcanic activity.

We do cover loss caused directly by fire, explosion or theft resulting from earthquake and other earthquake shocks.

The limit shown in the Declarations is the most we will pay with respect to any one loss, regardless of the number of assessments. We will apply only one deductible, per unit, to the total amount of any one loss to the property described above, regardless of the number of assessments.

**b.** We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

**c.** Property – Condition **16.** Policy Period does not apply to this coverage.

**9. Collapse.**

   **a.** With respect to this Property – Additional Coverage:

     **(1)** Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose.

     **(2)** A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

     **(3)** A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

     **(4)** A building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**b.** We insure for direct physical loss to covered property involving abrupt collapse of a building or any part of a building if the collapse was caused by one or more of the following:

     **(1)** A Peril Insured Against under Property Coverage C;

     **(2)** Decay that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse or there are visible signs of damage and the "insured" has not taken prompt action to prevent further damage;

     **(3)** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an "insured" prior to collapse;

     **(4)** Weight of contents, equipment, animals or people;

     **(5)** Weight of rain which collects on a roof; or

     **(6)** Use of defective material, methods or faulty, inadequate workmanship in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

**c.** Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, footing, foundation, wall, floor, retaining wall, bulkhead, pier, wharf or dock, whether any item is wholly or partially above or below ground, is not included under **9.b.(2)** through **(6)**, unless the loss is a direct result of the collapse of a building or any part of a building.

**d.** This coverage does not increase the limit of liability that applies to the damaged covered property.

**10. Glass or Safety Glazing Material.**

   **a.** We cover:

     **(1)** The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window; and

     **(2)** The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

   **b.** This coverage does not include loss:

     **(1)** To covered property which results because the glass or safety glazing

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

HQ-P03 MA (05-17)

material has been broken, except as provided in **10.a.(2)**; or

(2) On the "residence premises" if the dwelling has been "vacant" for more than 60 consecutive days immediately before the loss.

c. This coverage does not increase the limit of liability that applies to the damaged property.

11. **Landlord's Furnishings.** We will pay up to the limit shown in the Declarations for this Property - Additional Coverage for your appliances, carpeting and other household furnishings, in each "apartment" on the "residence premises" rented or held for rental to others by an "insured", for loss caused by a Peril Insured Against in Property Coverage C, other than Theft.

This limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishings involved in the loss.

This coverage does not increase the limit of liability that applies to the damaged covered property.

12. **Ordinance or Law.**

a. You may use up to the percentage of Property Coverage A shown in the Declarations for this Property - Additional Coverage for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

(1) The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

(2) The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

(3) The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

b. You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the

construction, demolition, remodeling, renovation, repair or replacement of property as stated in **12.a.**

c. We do not cover:

(1) Stigma damage or any actual or perceived reduction or diminution in value to any covered building or other structure due to the requirements of any ordinance or law; or

(2) The costs to comply with any ordinance or law which requires an "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants" in or on any covered building or other structure.

d. The most we will pay for any increased costs to comply with any ordinance or law that becomes effective after the date of loss is $5,000.

13. **Grave Markers.** We will pay up to $5,000 for grave markers, including mausoleums, on or away from the "residence premises" for loss caused by a Peril Insured Against under Property Coverage C.

This coverage does not increase the limits of liability that apply to the damaged covered property.

14. **Personal Records and Data Replacement.** We will pay up to the limit shown in the Declarations for this Property – Additional Coverage to research, replace or restore personal records or data lost as a result of a Peril Insured Against. This limit includes replacing or restoring information from the lost or damaged material, including blank recording, storage media and prerecorded computer programs available on the retail market.

We will pay only when the records or data are replaced or recreated.

15. **Inflation Coverage.** We may adjust the limits of liability for Property Coverage A at the beginning of each successive policy term to reflect estimated increases in rebuilding costs for your dwelling. We may also adjust the limits of liability for Property Coverages B, C and D. The rules then in use by us will determine the new amounts for these coverages.

Payment of the required premium when due for the successive policy term will be sufficient to indicate your acceptance of the adjusted increased limits.

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

We will also adjust the limits of liability at the time of a loss by the same percentage pro-rated from the effective date of the policy period or the effective date of change if you have requested a change to the limit of liability for Property Coverage A during the policy period.

**16. Limited "Fungi" or Other Microbes Remediation.**

   **a.** If a loss covered under the Property Coverage Section results in "fungi" or other microbes, we will pay up to the limit shown in the Declarations for this Property - Additional Coverage for:

      **(1)** Remediation of the "fungi" or other microbes. This includes payment for the reasonable and necessary cost to:

         **(a)** Remove the "fungi" or other microbes from covered property or to repair, restore or replace that property; and

         **(b)** Tear out and replace any part of the building as needed to gain access to the "fungi" or other microbes;

      **(2)** Any reasonable and necessary:

         **(a)** Increase in living expense you incur; or

         **(b)** Loss of fair rental value;

      as covered under Property Coverage D – Loss of Use, if the "fungi" or other microbes makes the "residence premises" not fit to live in; and

      **(3)** Any reasonable and necessary testing or monitoring of air or property to confirm the absence, presence or level of the "fungi" or other microbes, performed prior to, during and after removal, repair, restoration or replacement.

   **b.** We will pay under this Property - Additional Coverage only if:

      **(1)** The covered loss occurs during the policy period;

      **(2)** All reasonable means were used to save and preserve the property at the time of and after the covered loss; and

      **(3)** We receive prompt notice of the covered cause of loss that is alleged to have resulted in "fungi" or other microbes.

   **c.** The most we will pay under this Property - Additional Coverage is the limit of liability shown in the Declarations for Limited "Fungi" or Other Microbes Remediation. This is the most we will pay for the total of all loss or costs during the policy period regardless of the:

      **(1)** Number of locations or items of property insured under this policy; or

      **(2)** Number of losses or claims made.

      Any amount payable under Property Coverage D as described in **16.a.(2)** of this Property – Additional Coverage is included within the limit of liability shown in the Declarations for Limited "Fungi" or Other Microbes Remediation.

   **d.** If there is covered loss or damage to covered property, not caused, in whole or in part, by "fungi" or other microbes, loss payment will not be limited by the terms of this Property – Additional Coverage, except to the extent that "fungi" or other microbes cause an increase in the loss. Any such increase in the loss will be subject to the terms of this Property – Additional Coverage.

   **e.** This coverage does not increase the limit of liability that applies to:

      **(1)** The damaged property; or

      **(2)** Property Coverage D – Loss of Use.

All other provisions of this policy apply to Property – Additional Coverages.

---

## PROPERTY – EXCLUSIONS

**A.** We do not insure for any direct or indirect loss or damage caused by, resulting from, contributing to or aggravated by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

These exclusions apply whether or not the loss event:

   **(1)** Results in widespread damage;

   **(2)** Affects a substantial area; or

   **(3)** Occurs gradually or suddenly.

These exclusions also apply whether or not the loss event arises from:

   **(1)** Any acts of nature;

   **(2)** Any human action or inaction;

   **(3)** The forces of animals, plants or other living or dead organisms; or

   **(4)** Any other natural or artificial process.

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

1. **Ordinance or Law,** meaning any ordinance or law:

   a. Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This exclusion, **A.1.a.**, does not apply to the amount of coverage that may be provided for under Property - Additional Coverage **12.** Ordinance or Law;

   b. The requirements of which result in stigma damage or any actual or perceived reduction or diminution in value to property; or

   c. Requiring an "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

   This exclusion applies whether or not the property has been physically damaged.

2. **Earth Movement,** meaning:

   a. Earthquake and other earthquake shocks, including land shock waves or tremors before, during or after volcanic activity;

   b. Volcano activity, including:

      (1) Volcanic eruption;

      (2) Volcanic explosion;

      (3) Effusion of volcanic material; or

      (4) Lava flow;

   c. Mudslide, including mudflow, debris flow, landslide, avalanche or sediment;

   d. Sinkhole;

   e. Subsidence;

   f. Excavation;

   g. Erosion; or

   h. Any expansion, shifting, rising, sinking, contracting or settling of the earth, soil or land.

   This exclusion applies whether or not the earth, soil or land is combined or mixed with water or any other liquid or natural or man-made material.

   We do cover loss caused directly by fire, explosion or theft resulting from any earth movement.

3. **Water,** meaning any:

   a. Flood, surface water, ground water, subsurface water, storm surge, waves, wave wash, tidal water, tsunami, seiche, overflow of a body of water or spray from any of these, whether a result of precipitation or driven by wind;

   b. Water or water borne material that enters through or backs up from a sewer or drain, or which discharges or overflows from a sump, sump pump, related equipment or any other system designed to remove surface or subsurface water which is drained from the foundation area;

   c. Water or water borne material located below the surface of the ground including water or water borne material:

      (1) Which exerts pressure on, seeps, leaks or flows into:

         (a) Any part of the dwelling or other structures;

         (b) The foundation of the dwelling or other structures;

         (c) Any paved surface located on the "residence premises"; or

         (d) Any spa, hot tub or swimming pool; or

      (2) Which causes earth movement; or

   d. Overflow, release, migration or discharge of water in any manner from a dam, levee, dike, hurricane barrier or any water or flood control device.

   We do cover loss caused directly by fire, explosion or theft resulting from water.

4. **Power Failure,** meaning the failure of power or other utility service if the failure takes place off the "residence premises".

   If the failure results in a loss from a Peril Insured Against, on the "residence premises", we will pay for the loss caused by that peril.

5. **Neglect,** meaning neglect of an "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

6. **War,** including the following and any consequence of any of the following:

   a. Declared or undeclared war, civil war, insurrection, rebellion or revolution;

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**b.** Warlike act by a military force or military personnel; or

**c.** Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon, even if the discharge is accidental, will be deemed a warlike act.

**7. Nuclear Hazard,** meaning any nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

Loss caused by nuclear reaction, radiation or radioactive contamination is not considered loss caused by fire, explosion or smoke.

We do cover loss caused directly by fire resulting from any nuclear hazard.

**8. Illegal Activities or Operations,** meaning:

**a.** Illegal growing of plants or the illegal raising or keeping of animals; or

**b.** Illegal manufacture, production, operation or processing of chemical, biological, animal or plant materials or any other natural or synthetic substance.

This exclusion applies whether or not the illegal activities or operations described above were known to or within the control of an "insured".

We do cover loss caused directly by fire or explosion resulting from any illegal activities or operations described in **8.a.** and **b.**

**9. Intentional Loss,** meaning any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

In the event of such loss, no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the loss.

**10. Governmental Action,** meaning the destruction, confiscation or seizure of property described in Property Coverages A, B or C by order of any governmental or public authority.

This exclusion does not apply to such acts ordered by any governmental or public authority that are taken at the time of a fire to prevent its spread, if the loss caused by fire would be covered under this policy.

**11. "Fungi" or Other Microbes,** meaning any loss or cost resulting from, arising out of, caused by, consisting of or related to "fungi", other microbes or rot. This exclusion does not apply to:

**a.** "Fungi" or other microbes remediation coverage that may be afforded under Property – Additional Coverage **16.** Limited "Fungi" or Other Microbes Remediation; or

**b.** "Fungi" or other microbes that results from fire or lightning.

**12. Seepage or Leakage,** meaning constant or repeated seepage or leakage of water or steam, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of weeks, months or years.

This exclusion applies regardless of the source from which the water, steam or condensation seeped or leaked.

**B.** We do not insure for loss to property described in Property Coverages A and B caused by any of the following. However, any ensuing loss to property described in Property Coverages A and B not excluded by any other provision in this policy is covered.

**1.** Weather conditions. This exclusion applies only if weather conditions contribute in any way with a cause or event excluded in Property - Exclusion **A.** to produce the loss.

**2.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**3.** Faulty, inadequate or defective:

**a.** Planning, zoning, development, surveying or siting;

**b.** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading or compaction;

**c.** Materials used in repair, construction, renovation or remodeling; or

**d.** Maintenance;

of part or all of any property whether on or off the "residence premises".

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

## PROPERTY - CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

   a. To an "insured" for more than the amount of such "insured's" interest at the time of loss; or

   b. For more than the applicable limit of liability.

2. **Duties After Loss.** In case of a loss to covered property, we have no duty to provide coverage under this policy if the following duties are not performed. These duties must be performed either by you, an "insured" seeking coverage or a representative of either.

   a. Give us prompt notice. With respect to a loss caused by the peril of windstorm or hail, that notice must occur no later than one year after the date of loss;

   b. Notify the police in case of loss by theft;

   c. Notify the credit card or electronic fund transfer card or access device company in case of loss as provided for in Property - Additional Coverage **7. Credit Card, Electronic Fund Transfer Card or Access Device, Forgery and Counterfeit Money;**

   d. Protect the property from further damage. If repairs to the property are required, you must:

      (1) Make reasonable and necessary repairs to protect the property; and

      (2) Keep an accurate record of repair expenses;

   e. Cooperate with us in the investigation of a claim;

   f. Prepare an inventory of damaged personal property showing the quantity, description, value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

   g. As often as we reasonably require:

      (1) Show the damaged property;

      (2) Provide us with records and documents we request and permit us to make copies; and

      (3) Submit to examination under oath, while not in the presence of another "insured", and sign the same; and

   h. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

      (1) The time and cause of loss;

      (2) The interest of all "insureds" and all others in the property involved and all liens on the property;

      (3) Other insurance which may cover the loss;

      (4) Changes in title or occupancy of the property during the term of the policy;

      (5) Specifications of damaged buildings and detailed repair estimates;

      (6) The inventory of damaged personal property described in **2.f.;**

      (7) Receipts for additional living expenses incurred and records that support the fair rental value loss; and

      (8) Evidence or affidavit that supports a claim under Property - Additional Coverage **7. Credit Card, Electronic Fund Transfer Card or Access Device, Forgery and Counterfeit Money,** stating the amount and cause of loss.

3. **Loss Settlement.** In this Property - Condition, repair or replace and replacement cost do not include the increased costs incurred to comply with the enforcement of any ordinance or law, except to the extent that coverage for these increased costs is provided in Property - Additional Coverage **12. Ordinance or Law.** Covered property losses are settled as follows:

   a. Property of the following types:

      (1) Personal property;

      (2) Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings;

      (3) Structures that are not buildings; and

      (4) Grave markers, including mausoleums;

      at actual cash value at the time of loss but not more than the amount required to repair or replace.

   b. Buildings covered under Property Coverages A or B at replacement cost without deduction for depreciation, subject to the following:

      (1) If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the replacement cost, without deduction

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

for depreciation, but not more than the least of the following amounts:

**(a)** The limit of liability under this policy that applies to the building;

**(b)** The replacement cost of that part of the building damaged with materials of like kind and quality and for like use; or

**(c)** The necessary amount actually spent to repair or replace the damaged building.

If the building is rebuilt at a new premises, the cost described in **3.b.(1)(b)** is limited to the cost which would have been incurred if the building had been built at the original premises.

**(2)** If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

**(a)** The actual cash value of that part of the building damaged; or

**(b)** That proportion of the replacement cost, without deduction for depreciation, for that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

**(3)** To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, we will not include the value of:

**(a)** Excavations, footings, foundations, piers or any other structures or devices that support all or part of the building, which are below the undersurface of the lowest basement floor;

**(b)** Those supports described in (3)(a) which are below the surface of the ground inside the foundation walls, if there is no basement; and

**(c)** Underground flues, pipes, wiring and drains.

**(4)** We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual

repair or replacement is complete, we will settle the loss as noted in Property Condition **3. Loss Settlement b.(1)** and **b.(2)**.

If the replacement cost is less than $2,500, we will settle the loss as noted in Property – Condition **3. Loss Settlement b.(1)** and **b.(2)** whether or not actual repair or replacement is complete.

**(5)** You may disregard Property – Condition **3. Loss Settlement b.** and make claim under this policy for loss to buildings on an actual cash value basis. You may then make claim for any additional liability according to the provisions of this Property - Condition **3. Loss Settlement**, provided you notify us, within 180 days after the date of loss, of your intent to repair or replace the damaged building.

**c.** The amount we will pay to settle a covered loss does not include:

**(1)** Compensation for stigma damage or any actual or perceived reduction or diminution in value of such property that may remain after repair or replacement; or

**(2)** The cost to replace undamaged roofing materials due to any mismatch between the existing undamaged roof on a building and new materials used to repair or replace the damaged roof on a building because of:

**(a)** Wear and tear, marring, scratching or deterioration;

**(b)** Fading, weathering, oxidizing or color;

**(c)** Texture or dimensional differences; or

**(d)** Obsolescence or discontinuation.

**(3)** The cost to replace undamaged siding materials due to any mismatch between the existing undamaged siding on a building and new materials used to repair or replace the damaged siding on a building because of:

**(a)** Wear and tear, marring, scratching or deterioration;

**(b)** Fading, weathering, oxidizing or color;

**(c)** Texture or dimensional differences; or

**(d)** Obsolescence or discontinuation.

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**4. Loss Deductible.** Unless otherwise stated in this policy, the following deductible provision applies:

    **a.** Subject to the policy limits that apply, we will pay only that part of the total of all loss payable under the Property Coverage Section that exceeds the deductible amount shown in the Declarations.

    **b.** If two or more deductibles under this policy apply to the same loss, the total amount of all deductibles applied to the loss will not exceed the amount of the largest applicable deductible.

**5. Loss to a Pair or Set.** In case of loss to a pair or set, we may elect to:

    **a.** Repair or replace any part to restore the pair or set to its value before the loss; or

    **b.** Pay the difference between actual cash value of the property before and after the loss.

Property - Condition **3.** Loss Settlement **c.(1)** does not apply to this Condition.

**6. Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

    **a.** Reach an agreement with you;

    **b.** There is an entry of a final judgment; or

    **c.** There is a filing of an appraisal award with us.

**7. Appraisal.** If you and we fail to agree on the amount of loss, either party may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

    **a.** Pay its own appraiser; and

    **b.** Bear the other expenses of the appraisal and umpire equally.

**8. Other Insurance and Service Agreement.** If a loss covered by this policy is also covered by:

    **a.** Other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss; or

    **b.** A service agreement, the coverage provided under this policy is excess over any amounts payable under any such agreement. Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance.

**9. Suit Against Us.** No action can be brought against us unless there has been full compliance with all of the terms under the Property Coverage Section of this policy and the action is started within two years after the date of loss.

**10. Our Option.** If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with material or property of like kind and quality.

**11. Abandonment of Property.** We need not accept any property abandoned by an "insured".

**12. Mortgage Clause.**

    **a.** If a mortgagee is named in this policy, any loss payable under Property Coverages A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

    **b.** If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

        **(1)** Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

        **(2)** Pays any premium due under this policy on demand if you have neglected to pay the premium; and

        **(3)** Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Property Conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

    **c.** If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**d.** If we pay the mortgagee for any loss and deny payment to you:

    **(1)** We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

    **(2)** At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

**e.** Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

**13. No Benefit to Bailee.** We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

**14. Recovered Property.** If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

**15. Salvage.** We have the option to take the salvage or remnant part of any covered property for which we have made a loss payment for the actual cash value or the replacement cost of the damaged covered property. At our option, we may allow you to retain damaged property and will adjust any loss payment by the agreed or appraised value of the salvage or remnant portion of the damaged property.

**16. Policy Period.** This policy applies only to loss which occurs during the policy period.

**17. Concealment or Fraud.** We provide coverage to no "insureds" under this policy if, whether before or after a loss, an "insured" has:

**a.** Intentionally concealed or misrepresented any material fact or circumstance;

**b.** Engaged in fraudulent conduct; or

**c.** Made false statements;

relating to this insurance.

**18. Premises Alarm, Security or Fire Protection System.** When Protective Devices Credit is shown in the Declarations, you agree to maintain any alarm, security or automatic protection systems, including fire and sprinkler system(s), in working order. You also agree to advise us promptly of any change, including removal, made to any of these system(s).

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

HQ-L77 MA (05-17)

## LIABILITY COVERAGE SECTION

## LIABILITY COVERAGE E - PERSONAL LIABILITY

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the "occurrence" is exhausted by the payment of a judgment or settlement.

## LIABILITY COVERAGE F - MEDICAL PAYMENTS TO OTHERS

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury". Medical expenses means reasonable charges for medical, surgical, x-ray, optical, dental, ambulance, hospital, professional nursing, prosthetic devices, chiropractic, rehabilitative, extended care and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees". As to others, this coverage applies only:

1. To a person on an "insured location" with the permission of an "insured"; or

2. To a person off an "insured location", if the "bodily injury":

   a. Arises out of a condition on an "insured location" or the ways immediately adjoining;

   b. Is caused by the activities of an "insured";

   c. Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured"; or

   d. Is caused by an animal owned by or in the care of an "insured".

## LIABILITY – ADDITIONAL COVERAGES

Unless otherwise stated, we cover the following in addition to the Liability Coverage E and Liability Coverage F limits of liability:

1. **Claim Expenses.** We pay:

   a. Expenses we incur and costs taxed against an "insured" in any suit we defend;

   b. Premiums on bonds required in a suit we defend, but not for bond amounts more than the Coverage E limit of liability. We need not apply for or furnish any bond;

   c. Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit; and

   d. Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

2. **First Aid Expenses.** We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to an "insured".

3. **Damage to Property of Others.** We will pay replacement cost per "occurrence" for "property damage" to property of others caused by an "insured", up to the limit shown in the Declarations for this Liability – Additional Coverage.

   We will not pay for "property damage":

   a. To the extent of any amount recoverable under the Property Coverage Section of this policy;

   b. Caused intentionally by an "insured" who is 13 years of age or older;

   c. To property owned by an "insured";

   d. To property owned by or rented to a roomer, boarder, tenant or other occupant who provides compensation to an "insured" for

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

use of all or part of the "residence premises" including property of any guests of any roomer, boarder, tenant or other occupant;

**e.** To property owned by or rented to a resident in your household; or

**f.** Arising out of:

**(1)** A "business" engaged in by an "insured";

**(2)** Any act or omission in connection with a premises owned, rented or controlled by an "insured", other than an "insured location"; or

**(3)** The ownership, maintenance, occupancy, operation, use, loading or unloading of "aircraft", hovercraft, watercraft or "motor vehicles".

Exclusion f.(3) does not apply to a "motor vehicle" that is:

**(a)** Designed for recreational use off public roads;

**(b)** Not owned by an "insured"; and

**(c)** At the time and place of an "occurrence", is not required by law, or regulation issued by a government agency, to have been registered for it to be used at the place of the "occurrence".

**4.** **Loss Assessment.** We will pay up to the limit shown in the Declarations for this Liability - Additional Coverage for your share of loss assessment charged against you, as owner or tenant of the "residence premises", during the policy period by a corporation or association of property owners, when the assessment is made as a result of:

**a.** "Bodily injury" or "property damage" not excluded under the Liability Coverage Section of this policy; or

**b.** Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided such person:

**(1)** Is elected by the members of a corporation or association of property owners; and

**(2)** Serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

Liability - Condition **9.** Policy Period does not apply to this coverage.

Regardless of the number of assessments, the limit shown in the Declarations for this Liability -

Additional Coverage is the most we will pay for loss arising out of:

**a.** One accident, including continuous or repeated exposure to substantially the same general harmful condition;

**b.** A covered act involving one or more than one director, officer or trustee; or

**c.** Repeated acts by one or more than one director, officer or trustee.

Repeated acts will be considered a single covered act.

We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

**5.** **Property Damage Coverage for Military Personnel and United States Government Employees.**

If an "insured" is a:

**a.** United States government employee; or

**b.** Member of the United States Military;

we agree to pay for "property damage" to United States government property, for which an "insured" is legally responsible under applicable rules or regulations.

We will pay no more than replacement cost for "property damage" arising out of an "occurrence". Replacement cost is the amount necessary to repair or replace the damaged property without deduction for depreciation, subject to the limit of liability for this Liability – Additional Coverage.

The most we will pay for all damages resulting from any one "occurrence" will not exceed two months military basic pay or government issued salary for the "insured", as of the time of the "occurrence".

We will not pay for "property damage" to:

**a.** "Aircraft";

**b.** Hovercraft;

**c.** "Motor vehicles";

**d.** Watercraft; or

**e.** Weapons.

We will not pay for "property damage":

**a.** To the extent of any amount payable under the Property Coverage Section of this policy; or

**b.** Caused intentionally by any "insured" who is 13 years of age or older.

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

HQ-L77 MA (05-17)

## LIABILITY - EXCLUSIONS

**A. Liability Coverage E – Personal Liability and Coverage F – Medical Payments to Others.**

Liability Coverages E and F do not apply to the following:

1.  "Aircraft Liability".

    This exclusion does not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured".

2.  "Bodily injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured".

    Exclusion **A.2.** applies to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed or implied to be provided because of the nature of the "business".

    Exclusion **A.2.** does not apply to:

    **a.** The rental or holding for rental of an "insured location":

    (1) Used, in whole or in part, as a temporary place to stay for a total of 30 days or less during the 12 consecutive months prior to an "occurrence";

    (2) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers, boarders or tenants;

    (3) In part, as an office, studio or private garage;

    (4) If the "insured location" is shown in the Declarations as an Additional Residence Rented to Others; or

    (5) If the "insured location" is shown in the Declarations as Structures Rented to Others;

    **b.** The rental or holding for rental of the "residence premises" on a regular basis if Unit Owners Rental is shown in the Declarations;

    **c.** An "insured" under the age of 18 years involved in a part-time or occasional, self-employed "business" with no employees; or

    **d.** One or more activities, for which no "insured" receives more than $5,000 in total

compensation during the 12 consecutive months prior to an "occurrence".

3.  "Bodily injury" or "property damage" arising out of the actual, alleged or threatened transmission of a communicable disease or illness by an "insured". This exclusion applies whether the transmission was voluntary or involuntary or whether an "insured" knew or should have known that the infected person was infected with the disease or illness.

4.  "Bodily injury" or "property damage" caused by an animal owned by or in the care, custody or control of an "insured" or a guest of an "insured" or, in the care, custody or control of a roomer, boarder, tenant, resident, "residence employee" or guest of such roomer, boarder, tenant or other occupant of the "residence premises" that is:

    **a.** Wild by birth or by nature or a species not customarily domesticated;

    **b.** Illegal to acquire, own or keep;

    **c.** A bird of prey;

    **d.** Venomous or poisonous; or

    **e.** A non-human primate.

5.  "Bodily injury" or "property damage" which is expected or intended by an "insured" even if the resulting "bodily injury" or "property damage" is:

    **a.** Of a different kind, quality or degree than initially expected or intended; or

    **b.** Sustained by a different person, entity, real or personal property, than initially expected or intended.

    This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force by an "insured" to protect persons or property.

6.  "Bodily injury" or "property damage" arising out of the escape or release of fuel from a "fuel system". This exclusion applies to any:

    **a.** Supervision, instructions, recommendations, warnings or advice given in connection with the above;

    **b.** Obligation to share damages, losses, costs, payments or expenses with or repay someone else who must make payment because of such "bodily injury" or "property damage", damages, loss, cost, payment or expense; or

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

c. Request, order or requirement to test for, monitor, abate, mitigate, remediate, contain, remove, dispose of, or in any way respond to or assess the effects of fuel in any form.

This exclusion does not apply to "bodily injury" or "property damage" arising out of fire or explosion that results from such escaped or released fuel.

7. "Bodily injury" or "property damage" arising out of the actual or alleged presence of or actual, alleged or threatened dispersal, release, ingestion, inhalation, contact with or exposure to, whether directly or indirectly, by "fungi" or other microbes. This includes any:

a. Supervision, instruction, disclosures, or failures to disclose, recommendations, warnings, or advice given, or that allegedly should have been given, in connection with "bodily injury" or "property damage" arising out of, whether directly or indirectly, "fungi" or other microbes, or the activities described in **7.c.** below;

b. Obligation to share with or repay another who must pay damages because of "bodily injury" or "property damage" damage of the type described in this exclusion. This applies regardless of any other cause that contributed directly or indirectly, concurrently or in any sequence to the "bodily injury" or "property damage";

c. Request, order or requirement to test for, monitor, abate, mitigate, remediate, contain, remove, dispose of, or in any way respond to or assess the effects of "fungi" or other microbes; and

d. Liability imposed upon any "insured" by any governmental authority for "bodily injury" or "property damage" arising out of, whether directly or indirectly, "fungi" or other microbes.

8. "Bodily injury" or "property damage" arising out of any oral, written, electronic, digital or other means of communication, publication or physical action that:

a. Is directed at or to an individual or group of individuals; and

b. Includes content, material or action that is or is perceived as:

(1) Bullying, harassing, degrading, intimidating, threatening, tormenting or otherwise abusive; or

(2) Causing or having caused emotional or psychological distress or fear of imminent harm or death.

This exclusion applies whether or not the communication, publication or action is:

a. Composed, created, sent or performed by an "insured";

b. Part of a series of communications, publications or actions;

c. Directed at or to the person who suffered "bodily injury" or "property damage";

d. Expected or intended to cause emotional, mental or physical harm to an individual; or

e. Intended to be public or private.

9. "Hovercraft Liability".

This exclusion does not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured".

10. "Bodily injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Illegal or Controlled Substances include but are not limited to cocaine, heroin, LSD, methamphetamines, marijuana and all narcotic drugs.

This exclusion does not apply to the lawful use of prescription drugs by a person following the orders of a licensed healthcare provider.

11. "Bodily injury" or "property damage" arising out of the:

a. Illegal growing of plants or the illegal raising or keeping of animals; or

b. Illegal manufacture, production, operation or processing of chemical, biological, animal or plant materials.

This exclusion applies whether or not the illegal activities described above were within the control or knowledge of an "insured".

12. "Bodily injury" or "property damage" arising out of the actual or alleged presence of or actual, alleged or threatened dispersal, release, ingestion, inhalation or absorption of lead, lead pigment, lead compounds or lead in any form which is or was contained or incorporated into any material or substance. This exclusion applies to any:

a. Supervision, instructions, recommendations, warnings or advice given in connection with the above;

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**b.** Obligation to share damages, losses, costs, payments or expenses with or repay someone else who must make payment because of such "bodily injury" or "property damage", damages, loss, cost, payment or expense;

**c.** Request, order or requirement to test for, monitor, abate, mitigate, remediate, contain, remove, dispose of, or in any way respond to or assess the effects of lead, lead pigment, lead compounds or materials or substances containing lead in any form; or

**d.** Loss, cost, payment or expense related to any claim, suit, order, defense, demand or investigation of any kind incurred in connection with the above.

**13.** "Bodily injury" or "property damage" arising out of a premises:

**a.** Owned by an "insured";

**b.** Rented to an "insured"; or

**c.** Rented to others by an "insured";

that is not an "insured location".

This exclusion does not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured".

**14.** "Bodily injury" or "property damage" arising out of "motor vehicle liability" if, at the time and place of an "occurrence", the involved "motor vehicle" is:

**a.** Registered for use on public roads or property;

**b.** Not registered for use on public roads or property, but such registration is required by a law, or regulation issued by a government agency, for it to be lawfully used at the place of the "occurrence"; or

**c.** Being:

**(1)** Operated in, or practicing for, any prearranged or organized race, speed contest or other competition;

**(2)** Rented to others;

**(3)** Used by a roomer, boarder, tenant or other occupant who provide compensation to an "insured" for use of all or part of the "residence premises" including guests of any such roomers, boarders, tenants or other occupants;

**(4)** Used, or during the period of time it is available for hire, as a public or livery conveyance whether or not there is:

**(a)** A passenger in, upon, or getting in, on, out or off the vehicle; or

**(b)** Property being transported for a fee in or upon the vehicle; or

**(5)** Used for any other "business" purpose except for a motorized golf cart used for incidental "business" entertainment while on a golfing facility.

If "motor vehicle liability" is not excluded under Liability – Exclusion **14.a.-c.** Liability Coverages E and F still do not apply to "motor vehicle liability" unless at the time of an "occurrence", the involved "motor vehicle" is:

**i.** In dead storage on an "insured location";

**ii.** Used solely to service an "insured's" residence;

**iii.** Designed to assist the handicapped and, at the time of an "occurrence", it is:

**(1)** Being used to assist a handicapped person; or

**(2)** Parked on an "insured location";

**iv.** Designed for recreational use off public roads and:

**(1)** Not owned by an "insured"; or

**(2)** Owned by an "insured" provided the "occurrence" takes place:

**(a)** On an "insured location"; or

**(b)** Off all "insured locations" and the "motor vehicle" is:

**(i)** Designed as a toy vehicle to be ridden in or upon by children under 7 years of age;

**(ii)** Powered by one or more batteries; or

**(iii)** Not built or modified after manufacture to exceed a speed of 5 miles per hour on level ground; or

**v.** A motorized golf cart that is owned by an "insured", designed to carry up to 4 persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground and, at the time of an "occurrence", is within the legal boundaries of:

**(1)** A golfing facility and is parked or stored there, or being used by an "insured" to:

**(a)** Play the game of golf or for other recreational or leisure activity allowed by the facility;

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

(b) Travel to or from an area where "motor vehicles" or golf carts are parked or stored; or

(c) Cross public roads at designated points to access other parts of the golfing facility; or

(2) A private residential community, including its public roads upon which a motorized golf cart can legally travel, which is subject to the authority of a property owners association and contains an "insured's" residence.

This exclusion does not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured".

**15.** "Bodily injury" or "property damage" arising out of the rendering of or failure to render professional services.

**16.** "Bodily injury" or "property damage" arising out of sexual molestation, corporal punishment or physical or mental abuse.

**17.** "Bodily injury" or "property damage" caused directly or indirectly by war, including the following and any consequence of any of the following:

a. Declared or undeclared war, civil war, acts of terrorism, insurrection, rebellion or revolution;

b. Warlike act by a military force or military personnel; or

c. Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon, even if the discharge is accidental, will be deemed a warlike act.

**18.** "Watercraft liability" if, at the time and place of an "occurrence", the involved watercraft is being:

a. Operated in, or practicing for, any prearranged or organized race, speed contest or other competition. This exclusion does not apply to a sailing vessel or a predicted log cruise;

b. Rented to others;

c. Used by a roomer, boarder, tenant or other occupant who provides compensation to an "insured" for use of all or part of the "residence premises" including guests of any such roomers, boarders, tenants or other occupants;

d. Used, or during the period of time it is available for hire, as a public or livery conveyance whether or not there is:

(1) A passenger in, upon, or getting in, on, out or off the watercraft; or

(2) Property being transported for a fee in or upon the watercraft; or

e. Used for any other "business" purpose.

If "watercraft liability" is not excluded under Liability - Exclusion **18.a.-e.**, Liability Coverages E and F still do not apply to "watercraft liability" unless, at the time of an "occurrence", the involved watercraft is:

**i.** Stored;

**ii.** A sailing vessel, with or without auxiliary power that is:

(1) Less than 26 feet in overall length; or

(2) 26 feet or more in overall length and not owned by or rented to an "insured";

**iii.** Not a sailing vessel and is powered by:

(1) An inboard or inboard-outdrive engine or motor, including those that power a water jet pump, of:

(a) 50 horsepower or less and not owned by an "insured"; or

(b) More than 50 horsepower and not owned by or rented to an "insured"; or

(2) One or more outboard engines or motors with:

(a) 50 total horsepower or less;

(b) More than 50 horsepower if the outboard engine or motor is not owned by an "insured";

(c) More than 50 horsepower if the outboard engine or motor is owned by an "insured" who acquired it during the policy period; or

(d) More than 50 horsepower if the outboard engine or motor is owned by an "insured" who acquired it before the policy period, but only if:

(1) You declare them at policy inception; or

(2) Your intent to insure them is reported to us in writing within 45 days after you acquire them.

The exceptions in **18.iii.(2)(c)** and **(d)** apply for the policy period.

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Horsepower means the maximum power rating assigned to the engine or motor by the manufacturer.

This exclusion does not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured".

**B. Liability Coverage E - Personal Liability.**

Liability Coverage E does not apply to the following:

1. Liability:

   a. For any loss assessment charged against you as a member of an association, corporation or community of property owners, except as provided in Liability - Additional Coverage 4. Loss Assessment;

   b. Under any contract or agreement entered into by an "insured". This exclusion does not apply to written contracts:

      (1) That directly relate to the ownership, maintenance or use of an "insured location"; or

      (2) In which the liability of others is assumed by the "insured" prior to an "occurrence";

      unless excluded in **1.a.** or elsewhere in this policy;

2. "Property damage" to property owned by an "insured". This includes costs or expenses incurred by an "insured" or others to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an "insured location";

3. "Property damage" to property rented to, occupied or used by or in the care of an "insured". This exclusion does not apply to "property damage" caused by fire, smoke, water or explosion;

4. "Bodily injury" to any person eligible to receive any benefits voluntarily provided or required to be provided by an "insured" under any:

   a. Workers' compensation law;

   b. Non-occupational disability law; or

   c. Occupational disease law;

5. "Bodily injury" or "property damage" for which an "insured" under this policy:

   a. Is also an insured under a nuclear energy liability policy issued by the:

      (1) Nuclear Energy Liability Insurance Association;

      (2) Mutual Atomic Energy Liability Underwriters;

      (3) Nuclear Insurance Association of Canada;

      or any of their successors; or

   b. Would be an insured under that policy but for the exhaustion of its limit of liability;

6. "Bodily injury" to you or an "insured" as defined in Definition **9.a.** or **b.**

   This exclusion also applies to any claim made or suit brought against you or an "insured" to:

   a. Repay; or

   b. Share damages with;

   another person who may be obligated to pay damages because of "bodily injury" to an "insured"; or

7. "Bodily injury" to an "employee", "residence employee" or a temporary employee furnished to the "insured" to substitute for a permanent "residence employee" arising out of or in the course of the employee's employment by any Additional Insured named in the Declarations.

**C. Liability Coverage F - Medical Payments to Others.**

Liability Coverage F does not apply to "bodily injury":

1. To a "residence employee" if the "bodily injury":

   a. Occurs off an "insured location"; and

   b. Does not arise out of or in the course of the "residence employee's" employment by an "insured";

2. To any person eligible to receive benefits voluntarily provided or required to be provided under any:

   a. Workers' compensation law;

   b. Non-occupational disability law; or

   c. Occupational disease law;

3. From any:

   a. Nuclear reaction;

   b. Nuclear radiation; or

   c. Radioactive contamination;

   all whether controlled or uncontrolled or however caused; or

   d. Any consequence of any of these; or

4. To any person, other than a "residence employee" of an "insured", residing on any part of an "insured location".

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

## LIABILITY - CONDITIONS

1. **Limit of Liability.** Our total liability under Liability Coverage E for all damages resulting from any one "occurrence" will not be more than the limit of liability for Liability Coverage E shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions will be considered to be the result of one "occurrence".

   Our total liability under Liability Coverage F for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Liability Coverage F limit of liability shown in the Declarations.

2. **Severability of Insurance.** This insurance applies separately to each "insured". This Liability - Condition will not increase our limit of liability for any one "occurrence".

3. **Duties After "Occurrence".** In the event of an "occurrence", you or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if you fail to comply with the following duties:

   a. Give us written notice as soon as is practical, which sets forth:

      (1) The identity of the policy and the named "insured" shown in the Declarations;

      (2) Reasonably available information on the time, place and circumstances of the "occurrence"; and

      (3) Names and addresses of any claimants and witnesses;

   b. Cooperate with us in the investigation, settlement or defense of any claim or suit;

   c. Promptly forward to us every notice, demand, summons or other process relating to the "occurrence";

   d. At our request, help us:

      (1) To make settlement;

      (2) To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

      (3) With the conduct of suits and attend hearings and trials; and

      (4) To secure and give evidence and obtain the attendance of witnesses;

   e. With respect to Liability - Additional Coverage 3. Damage to Property of Others, submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in an "insured's" control;

   f. With respect to Liability - Additional Coverage 5. Property Damage Coverage for Military Personnel and United States Government Employees, submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in an "insured's" control; and

   g. No "insured" will, except at such "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury".

4. **Duties of an Injured Person - Liability Coverage F - Medical Payments to Others.**

   a. The injured person or someone acting for the injured person will:

      (1) Give us written proof of claim, under oath if required, as soon as is practical; and

      (2) Authorize us to obtain copies of medical reports and records.

   b. The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

5. **Payment of Claim - Liability Coverage F - Medical Payments to Others.** Payment under this coverage is not an admission of liability by an "insured" or us.

6. **Suit Against Us.** No action can be brought against us unless there has been full compliance with all of the terms under the Liability Coverage Section of this policy.

   No one will have the right to join us as a party to any action against an "insured".

   Also, no action with respect to Liability Coverage E can be brought against us until the obligation of such "insured" has been determined by final judgment or agreement signed by us.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

8. **Other Insurance.** This insurance is excess over other valid and collectible insurance except

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

insurance written specifically to cover as excess over the limits of liability that apply in this policy.

9. **Policy Period.** This policy applies only to "bodily injury" or "property damage" which occurs during the policy period.

10. **Concealment or Fraud.** We do not provide coverage to an "insured" who, whether before or after a loss, has:

a.  Intentionally concealed or misrepresented any material fact or circumstance;

b.  Engaged in fraudulent conduct; or

c.  Made false statements;

relating to this insurance.

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

## SIGNATURE PAGE

This policy is signed for the member company of Travelers which is the insurer under this policy.

Wendy C. Skjerven
Corporate Secretary

Michael Klein
President
Personal Insurance

In witness whereof, this company has executed and attested these presents.

© 2018 The Travelers Indemnity Company. All rights reserved.

HQ-015 MA (02-21)

## SPECIAL PERSONAL PROPERTY COVERAGE

**This Endorsement Changes The Policy. Please Read It Carefully.**

**PROPERTY COVERAGE SECTION**

**PROPERTY COVERAGE C – PERSONAL PROPERTY**

The following replaces the categories of personal property under **3. Special Limits of Liability:**

**3. Special Limits of Liability.**

   **e.** Loss by theft, misplacing or losing of jewelry, watches, precious and semiprecious stones.

   **f.** Loss by theft, misplacing or losing of furs.

   **g.** Loss by theft, misplacing or losing of silverware, silver-plated ware, goldware, gold-plated ware, platinumware, platinum-plated ware and pewterware. This includes flatware, holloware, tea sets, trays and trophies made of or including silver, gold, platinum or pewter.

   **h.** Loss by theft, misplacing or losing of firearms and related equipment.

**PROPERTY – PERILS INSURED AGAINST**

The following replaces Perils Insured Against under Property Coverages A, B (if applicable) and C, except this change does not apply to:

**1.** Perils Insured Against, Property Coverage A – Dwelling and Property Coverage B – Other Structures, paragraph **2.c.(6)(e)** in form **HQ-P03;**

**2.** Perils Insured Against, Property Coverage A – Dwelling, paragraph **2.c.(6)(e)** in form **HQ-P06;**

**3.** Property – Additional Coverage **9.** Collapse, paragraph **b.(1);** or

**4.** Motorized Golf Cart Coverage form **HQ-028.**

Any reference to a Peril Insured Against in such provisions applies without regard to this Special Personal Property Coverage.

We insure against direct physical loss to property described in Property Coverages A, B (if applicable) and C.

We do not insure for loss:

**1.** Under Property Coverages A, B (if applicable) and C:

   **a.** Excluded under Property - Exclusions;

   **b.** Involving collapse or danger of collapse, except as provided in Property - Additional Coverage **9.** Collapse; or

   **c.** Caused by:

   **(1)** Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion does not apply if you have used reasonable care to:

      **(a)** Maintain heat in the building; or

      **(b)** Shut off the water supply and drain all systems and appliances of water.

      If the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

      For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or any other system designed to remove surface or subsurface water, roof drain, gutter, downspout or similar fixtures or equipment;

   **(2)** Freezing, thawing, pressure or weight of water, ice or snow, whether driven by wind or not, to a:

      **(a)** Fence, pavement or patio;

      **(b)** Outdoor spa or hot tub, outdoor sauna, outdoor swimming pool and any related equipment;

      **(c)** Footing, foundation, bulkhead, wall, or any other structure or device that supports all or part of a building or other structure;

      **(d)** Retaining wall or bulkhead that does not support all or part of a building or other structure; or

      **(e)** Pier, wharf or dock;

      This exclusion applies whether any item identified in **(2)(a)** through **(e)** of this exclusion is wholly or partially above or below ground;

   **(3)** Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

© 2022 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

(4) Vandalism or malicious mischief, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been "vacant" for more than 60 consecutive days immediately before the loss regardless of the policy's inception or renewal date;

(5) Theft or vandalism and malicious mischief in or to a dwelling while rented to others by an "insured" for a rental term of less than 30 consecutive days; or

(6) Any of the following:

(a) Wear and tear, marring, scratching or deterioration;

(b) Mechanical breakdown, latent defect, inherent vice or any quality in property that causes it to damage or destroy itself;

(c) Smog, rot, rust or other corrosion;

(d) Smoke from agricultural smudging or industrial operations;

(e) Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against under Property Coverage C;

(f) Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings. This exclusion applies whether any item is wholly or partially above or below ground;

(g) Birds, bats, vermin, rodents, raccoons, skunks, arachnids or insects;

(h) Nesting or infestation, or discharge or release of waste products or secretions, by any animals;

(i) Animals owned or kept by an "insured" or "residence employee"; or

(j) Presence, pressure or intrusion of any root system.

**Exception to c.(6)**

Unless the loss is otherwise excluded, we cover loss to property covered under Property Coverages A, B (if applicable) or C resulting from an accidental discharge or overflow of water or steam from within a

plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, that causes damage to a building on the "residence premises", if the accidental discharge or overflow of water or steam originates from within a system or appliance:

**a.** On the "residence premises"; or

**b.** Off the "residence premises", if located on a premises adjacent to the "residence premises".

This includes the cost to tear out and replace any part of a building, or other structure, on the "residence premises", but only when necessary to repair the system or appliance from which this water or steam escaped.

We do not cover loss:

**a.** To the system or appliance from which this water or steam escaped; or

**b.** Caused by accidental discharge or overflow of water or steam from within a storm drain whether located on or off the "residence premises"; or

**c.** Caused by accidental discharge or overflow of water or steam from within a steam or sewer pipe located off the "residence premises".

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or any other system designed to remove surface or subsurface water, roof drain, gutter, down spout or similar fixtures or equipment.

Under Perils Insured Against **1. b.** and **c.**, any ensuing loss to property described in Property Coverages A, B (if applicable) and C not excluded by any other provision in this policy is covered.

**2.** Under Property Coverage C caused by:

**a.** Breakage of:

(1) Eyeglasses, glassware, statuary or marble; and

(2) Bric-a-brac, porcelains and similar fragile articles other than jewelry, watches, bronzes, cameras and photographic lenses.

There is coverage for breakage of the property by or resulting from:

(1) Fire or Lightning;

(2) Windstorm or Hail;

© 2022 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

(3) Explosion;

(4) Riot or Civil Commotion;

(5) Aircraft;

(6) Vehicles;

(7) Smoke, other than smoke from the manufacture of controlled substances, agricultural smudging or industrial operations;

(8) Vandalism or Malicious Mischief;

(9) Theft or attempted theft;

(10) Collapse of a building or any part of a building;

(11) Water not otherwise excluded; or

(12) Sudden and Accidental Tearing Apart, Cracking, Burning or Bulging of:

   (a) A steam or hot water heating system;

   (b) An air conditioning or automatic fire protective sprinkler system; or

   (c) An appliance for heating water;

**b.** Dampness of atmosphere or extremes of temperature unless the direct cause of loss is rain, snow, sleet or hail;

**c.** Refinishing, renovating or repairing property other than watches, jewelry and furs;

**d.** Collision, other than collision with a land vehicle, sinking, swamping or stranding of watercraft, including their trailers, furnishings, equipment and outboard engines or motors;

**e.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body; or

**f.** Error in computer programming or instructions to any computer.

Any ensuing loss to property described in Property Coverage C not excluded by any other provision in this policy is covered.

**PROPERTY – EXCLUSIONS**

The following is added under **3.** Water:

**3. Water,** meaning:

Water damage to property described in Property Coverage C away from a premises or location owned, rented, occupied or controlled by an "insured" is covered.

Water damage to property described in Property Coverage C on a premises or location owned, rented, occupied or controlled by an "insured" is excluded even if weather conditions contribute in any way to produce the loss.

The following replaces Property – Exclusions provision **B.** in forms **HQ-P03** and **HQ-P06**:

**B.** We do not insure for loss caused by any of the following. However, any ensuing loss not excluded by any other provision in this policy is covered.

   **1.** Weather conditions. This exclusion applies only if weather conditions contribute in any way with a cause or event excluded in Property – Exclusions **1.** through **12.** of your policy to produce the loss.

   **2.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

   **3.** Faulty, inadequate or defective:

      **a.** Planning, zoning, development, surveying or siting;

      **b.** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading or compaction;

      **c.** Materials used in repair, construction, renovation or remodeling; or

      **d.** Maintenance;

   of part or all of any property whether on or off the "residence premises".

All other provisions of the policy apply.

© 2022 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

HQ-082 MA (02-19)

## PERSONAL INJURY COVERAGE

### This Endorsement Changes The Policy. Please Read It Carefully.

**DEFINITIONS**

For purposes of this Personal Injury Coverage only, the following definition is added:

"Personal injury" means injury arising out of one or more of the following offenses, but only if the offense was committed during the policy period:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor; or

**d.** Oral, written, electronic, digital or other means of communication or publication of material that:

**(1)** Slanders or libels a person or organization;

**(2)** Disparages a person's or organization's goods, products or services; or

**(3)** Violates a person's right of privacy.

**LIABILITY COVERAGE SECTION**

**LIABILITY COVERAGE E – PERSONAL LIABILITY**
(In form **HQ-L77**)

**LIABILITY COVERAGE E – PREMISES LIABILITY**
(In form **HQ-L88**)

The following is added under Liability Coverage E:

**Personal Injury Coverage.**

If a claim is made or suit is brought against an "insured" for damages resulting from an offense, defined under "personal injury", to which this coverage applies, we will:

**1.** Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

**2.** Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the offense is exhausted by payment of a judgment or settlement.

**LIABILITY – ADDITIONAL COVERAGES**

For purposes of this Personal Injury Coverage only, the following replaces **4.** Loss Assessment in form **HQ-L77** and **3.** Loss Assessment in form **HQ-L88**:

**Loss Assessment.** We will pay up to the limit shown in the Declarations for Loss Assessment Coverage for your share of any loss assessment charged against you, as an owner or tenant of the "residence premises", during the policy period by a corporation or association of property owners, when the assessment is made as a result of covered "personal injury".

Regardless of the number of assessments, the limit shown in the Declarations for Loss Assessment Coverage is the most we will pay for loss arising out of "personal injury".

We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

**LIABILITY – EXCLUSIONS**

For purposes of this Personal Injury Coverage only, the following replaces Liability – Exclusions **A.**, **B.** and **C.**:

Personal Injury Coverage does not apply to:

**1.** "Personal injury":

**a.** Caused by or at the direction of an "insured" with the knowledge that the act would violate the rights of another and would inflict "personal injury";

**b.** Arising out of oral, written, electronic, digital or other means of communication or publication of material:

**(1)** If done by or at the direction of an "insured" with knowledge of its falsity; or

**(2)** Whose first publication took place before the beginning of the policy period;

**c.** Arising out of a criminal act committed by or at the direction of an "insured";

**d.** Arising out of the use or operation of any "aircraft";

**e.** Arising out of liability assumed by an "insured" under any contract or agreement except any indemnity obligation assumed by an "insured" under a written contract directly relating to the ownership, maintenance or use of the premises;

© 2019 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

f.   Sustained by any person as a result of an offense directly or indirectly related to the employment of this person by an "insured";

g.   Arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured";

Exclusion **1.g.** applies to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed or implied to be provided because of the nature of the "business";

Exclusion **1.g.** does not apply to:

(1)  The rental or holding for rental of an "insured location":

   (a)  Used, in whole or in part, as a temporary place to stay for a total of 30 days or less during the 12 consecutive months prior to an "occurrence";

   (b)  In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers, boarders or tenants when this Personal Injury Coverage is used with form **HQ-L77**; or

   In whole or in part when this Personal Injury Coverage is used with form **HQ-L88**; or

   (c)  In part, as an office, studio or private garage;

(2)  The rental or holding for rental of the "residence premises" on a regular basis if Unit Owners Rental is shown in the Declarations; or

(3)  An "insured" under the age of 18 years involved in a part-time or occasional, self-employed "business" with no employees;

h.   Arising out of civic or public activities performed for pay by an "insured";

i.   To you or an "insured" as defined under Definition **9.a.** or **b.** in form **HQ-D77** and Definition **8.a.** or **b.** in form **HQ-D88**;

This exclusion also applies to any claim made or suit brought against you or any "insured":

(a)  To repay; or

(b)  Share damages with;

another person who may be obligated to pay damages because of "personal injury" to an "insured"; or

j.   Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants", at any time.

2.   Any loss, cost or expense arising out of any:

a.   Request, demand or order that an "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of, "pollutants"; or

b.   Claim or suit by or on behalf of governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of "pollutants".

## LIABILITY – CONDITIONS

For purposes of this Personal Injury Coverage only, the following replaces **1.** Limits of Liability, **2.** Severability of Insurance and **3.** Duties After "Occurrence":

1.   **Limit of Liability.** Our total liability under Personal Injury Coverage for all damages resulting from any one offense will not be more than the limit of liability for Coverage E – Personal Liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or suits brought.

2.   **Severability of Insurance.** This insurance applies separately to each "insured". This Liability – Condition will not increase our limit of liability for any one offense.

3.   **Duties After Offense.** In the event of loss from a covered offense, you or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if you fail to comply with the following duties:

a.   Give us written notice as soon as is practical, which sets forth:

(1)  The identity of the policy and named "insured" shown in the Declarations;

(2)  Reasonably available information on the time, place and circumstances of the offense; and

(3)  Names and addresses of any claimants and witnesses;

b.   Cooperate with us in the investigation, settlement or defense of any claim or suit;

© 2019 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

HQ-082 MA (02-19)

**c.** Promptly forward to us every notice, demand, summons or other process relating to the offense;

**d.** At our request, help us:

    **(1)** To make settlement;

    **(2)** To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

    **(3)** With the conduct of suits and attend hearings and trials; and

    **(4)** To secure and give evidence and obtain the attendance of witnesses;

**e.** No "insured" will, except at such "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "personal injury".

For purposes of this Personal Injury Coverage only, **9.** Policy Period does not apply.

All other provisions of the policy apply.

© 2019 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

HQ-208 MA (08-20)

## WATER BACK UP AND SUMP DISCHARGE OR OVERFLOW COVERAGE

**This Endorsement Changes The Policy. Please Read It Carefully.**

**PROPERTY COVERAGE SECTION**

**PROPERTY – PERILS INSURED AGAINST**

For purposes of the Water Back Up and Sump Discharge or Overflow Coverage only, Perils Insured Against provision:

1.  Property Coverage A – Dwelling and Property Coverage B – Other Structures, paragraph **2.c.(6)(b)** in form **HQ-P03 MA;**

2.  Property Coverage A – Dwelling, paragraph **2.c.(6)(b)** in form **HQ-P06 MA;**

3.  Property Coverages A, B (if applicable) and C, paragraph **1.c.(6)(b)** in Special Personal Property Coverage form **HQ-015 MA;** and

4.  **Property Coverages A and B** (if applicable), paragraph **2.c.(6)(b)** in **Special Coverage** form **HQ-003 MA;**

    is replaced by the following:

    Latent defect, inherent vice or any quality in property that causes it to damage or destroy itself;

**PROPERTY – ADDITIONAL COVERAGES**

The following additional coverage is added under Property – Additional Coverages:

**Water Back Up and Sump Discharge or Overflow Coverage. We** will pay up to the limit of liability shown in the Declarations under this Water Back Up and Sump Discharge or Overflow Coverage, for direct physical loss, not caused by the negligence of an "insured", to property covered under the Property Coverage Section of this policy, caused by water or water borne material, that:

a.  Enters through or backs up from a sewer or drain located within the dwelling or other building structures on the "residence premises"; or

b.  Discharges or overflows from a:

    (1)  Sump or sump pump;

    (2)  Related equipment; or

(3)  Any other system designed to remove subsurface water which is drained from the foundation area;

located within the dwelling or other building structures on the "residence premises" even if such discharge or overflow results from mechanical breakdown.

This additional coverage does not apply to:

a.  Direct physical loss of the sump, sump pump, related equipment or any other system designed to remove subsurface water which is caused by mechanical breakdown; or

b.  Loss caused as a direct or indirect result of flood, surface water, storm surge, waves, wave wash, tidal water, tsunami, seiche, overflow of a body of water or spray from any of these, whether a result of precipitation or driven by wind.

This coverage does not increase the limits of liability for any property covered under the Property Coverage Section of this policy.

**PROPERTY – EXCLUSIONS**

For purposes of this Water Back Up and Sump Discharge or Overflow Coverage only, the following is added under **3. Water,** paragraph **b.** (this is Property – Exclusion **A.3.** in forms **HQ-P03 MA** and **HQ-P06 MA**):

3.  **Water,** meaning any:

    b.  This paragraph **b.** does not apply to the extent that coverage is provided under the Water Back Up and Sump Discharge or Overflow Coverage.

For purposes of this Water Back Up and Sump Discharge or Overflow Coverage only, the following is added under **4.** Power Failure (this is Property – Exclusion **A.4.** in forms **HQ-P03 MA** and **HQ-P06 MA**):

4.  **Power Failure.**

    This exclusion does not apply to the extent that coverage is provided under the Water Back Up and Sump Discharge or Overflow Coverage.

All other provisions of the policy apply.

© 2020 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

HQ-209 MA (08-18)

## LIMITED HIDDEN WATER OR STEAM SEEPAGE OR LEAKAGE COVERAGE

### This Endorsement Changes The Policy. Please Read It Carefully.

**PROPERTY COVERAGE SECTION**

**PROPERTY – ADDITIONAL COVERAGES**

The following additional coverage is added under Property – Additional Coverages:

**Limited Hidden Water or Steam Seepage or Leakage Coverage.** We will pay, up to the limit shown in the Declarations under this Limited Hidden Water or Steam Seepage or Leakage Coverage, for damage, including deterioration or rot, to covered property caused by the constant or repeated, seepage or leakage of water or steam from within a:

**a.** Plumbing system;

**b.** Heating system;

**c.** Air conditioning system;

**d.** Automatic fire protective sprinkler system; or

**e.** Household appliance.

The constant or repeated seepage or leakage of water or steam must be hidden.

This includes the cost to tear out and replace any part of a building, or other structure, on the "residence premises", but only when necessary to repair the system or appliance from which this water or steam escaped.

For purposes of this Limited Hidden Water or Steam Seepage or Leakage Coverage only, hidden means the seepage or leakage of water or steam is within the walls, floors or ceilings or underneath the floors of a structure.

For purposes of this Limited Hidden Water or Steam Seepage or Leakage Coverage only, a plumbing system or household appliance does not include a sump, sump pump or related equipment or any other system designed to remove surface or subsurface water, roof drain, gutter, downspout or similar fixtures or equipment.

We do not cover loss:

**a.** If an "insured" knew, suspected or should have known of the seepage or leakage of water or steam;

**b.** If there were visible signs of seepage or leakage that occurred over a period of weeks, months or years; or

**c.** To the system or appliance from which this water or steam escaped.

All damage resulting from constant or repeated seepage or leakage of water or steam from the same system or appliance shall be considered one loss.

If a constant or repeated seepage or leakage of water or steam loss causes damages during the policy period and any other policy period(s) under a policy issued to you by us, the maximum limit of our liability under all policy periods shall not exceed the amount of the highest applicable limit under any one policy period.

This coverage does not increase the limit of liability that applies to the damaged covered property.

**PROPERTY – EXCLUSIONS**

For purposes of this Limited Hidden Water or Steam Seepage or Leakage Coverage only, the following is added under Property – Exclusion **12.** Seepage or Leakage (this is Property – Exclusion **A.12.** in forms **HQ-P03** and **HQ-P06**):

**12. Seepage or Leakage.**

This exclusion does not apply to the extent that coverage is afforded under the Limited Hidden Water or Steam Seepage or Leakage Coverage.

All other provisions of the policy apply.

© 2018 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

HQ-290 MA (02-21)

## PERSONAL PROPERTY REPLACEMENT COST LOSS SETTLEMENT

**This Endorsement Changes The Policy. Please Read It Carefully.**

PROPERTY COVERAGE SECTION
PROPERTY – CONDITIONS

For purposes of this Personal Property Replacement Cost Loss Settlement only, the following replaces **3.** Loss Settlement paragraph **a.**:

**3.  Loss Settlement.**

   **a.**  Property of the following types:

     **(1) Eligible Property.** Covered losses to the following property are settled at replacement cost at the time of the loss:

       **(a)** Property described in Property Coverage C – Personal Property; and

       **(b)** Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings, if covered in this policy.

     **(2) Eligible Property with form HQ-61B.** Covered losses to the following Classes of Personal Property are settled at replacement cost at the time of the loss if Valuable Items Plus Coverage form **HQ-61B** is part of your policy and a limit of liability is shown in the Declarations for that Class of Personal Property:

       **(a)** Jewelry, including articles of personal adornment composed at least partially of silver, gold, platinum or other precious metals or alloys, whether or not containing pearls, jewels or precious or semi-precious stones.

       This does not include bullion, gold, silver and other precious metals or unmounted gems;

      **(b)** Silverware, including:

        **(i)** Silver-plated ware, goldware, gold-plated ware, platinumware, platinum-plated ware and pewterware; and

       **(ii)** Flatware, holloware, tea sets, trays and trophies made of or including silver, gold, platinum or pewter.

       This does not include pens, pencils, flasks, smoking implements or accessories or jewelry;

      **(c)** Fine arts, including paintings, etchings, drawings, lithographs, photographs, sculptures and other bona fide works of art of rarity, historical value or artistic merit;

      **(d)** Furs and garments trimmed with fur or consisting principally of fur;

      **(e)** Computers, hardware, software, data storage media and related equipment;

      **(f)** Firearms and related equipment;

      **(g)** Cameras, projection machines and related articles of equipment;

      **(h)** Musical instruments and related equipment; and

      **(i)** China, ceramic ware or porcelain dinnerware and crystal comprised of clear, colorless glass.

**Replacement Cost Loss Settlement.** With respect to all property described under Eligible Property **3.a.(1)** and Eligible Property with form **HQ-61B 3.a.(2)**, we will pay no more than the least of the following amounts:

   **(a)** Replacement cost at the time of loss without deduction for depreciation;

   **(b)** The full cost of repair at the time of loss;

   **(c)** The limit of liability that applies to Property Coverage C – Personal Property, if applicable;

   **(d)** Any applicable Special Limits of Liability stated in this policy; or

   **(e)** For loss to any Class of Personal Property described under Eligible Property **3.a.(2)(a)** through **3.a.(2)(i)**, the limit of liability that applies to the Class of Personal Property.

If the replacement cost for the property described above is more than $2,500, we will pay no more than the actual cash value for the loss until the actual repair or replacement is complete.

You may make a claim for loss on an actual cash value basis and then make claim for any additional liability according to the provisions of this endorsement, provided you notify us, within 180 days

© 2022 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

after the date of loss, of your intent to repair or replace the damaged property.

**(3) Ineligible Property.** Property listed below is not eligible for replacement cost loss settlement. Any loss will be settled at actual cash value at the time of loss but not more than the amount required to repair or replace:

**(a)** Structures that are not buildings;

**(b)** Grave markers, including mausoleums;

**(c)** Antiques and similar articles of rarity or antiquity which cannot be replaced;

**(d)** Memorabilia, souvenirs and similar articles whose age or history contribute to their value;

**(e)** Collectibles, including figurines, glassware, marble, porcelains, statuary and similar articles;

**(f)** Articles not maintained in good or workable condition; and

**(g)** Articles that are outdated or obsolete and are stored or not being used.

All other provisions of the policy apply.

© 2022 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

## SPECIAL PROVISIONS – MASSACHUSETTS

### This Endorsement Changes The Policy. Please Read It Carefully.

In this policy, the following is added under any provision which uses the term actual cash value:

Actual cash value means the value of the covered property at the time of loss or damage.

When calculating actual cash value using the estimated cost to repair or replace such property, with a reasonable deduction for depreciation that occurred before such loss or damage, we may apply depreciation to all components of the estimated cost, including the following:

**a.** Materials;

**b.** Labor;

**c.** Overhead and profit; and

**d.** Any applicable tax.

The deduction for depreciation may include such considerations as:

**a.** Age;

**b.** Condition, such as wear and tear or deterioration;

**c.** Reduction in useful life; and

**d.** Obsolescence.

### DEFINITIONS

The Definition "fuel system" is replaced with the following (this is Definition **7.** in form **HQ-D77 MA** and Definition **6.** in form **HQ-D88 MA**):

"Fuel system" means:

**a.** Fuel supply line, which is a line from a tank to a burner in which oil is supplied to the burner;

**b.** Fuel return line, which is a line that returns unused fuel oil back to the tank;

**c.** Oil burner, which is a device for burning oil in heating appliances, including boilers, furnaces, water heaters or ranges;

**d.** Oil safety valve, which is a device that prevents the flow of oil if a fuel supply line breaks; and

**e.** Tank, which is a liquid fuel tank in which heating oil is stored and from which heating oil is delivered or pumped through a fuel supply line to an oil burner, whether located within a dwelling or other structure, including tanks installed at or below grade level, or located outdoors but excluding underground tanks wherever located.

A "fuel system" does not include any fuel tanks that are permanently affixed to a "motor vehicle" or watercraft.

### POLICY CONDITIONS

**4.** **Cancellation** paragraphs **a.**, **b.** and **d.** are replaced by the following:

**4.** **Cancellation.**

**a.** A named "insured" shown in the Declarations may cancel this policy by:

   **(1)** Returning this policy to us; or

   **(2)** Giving us advance notice of the date cancellation is to take effect.

**b.** We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect and the reason for cancellation. This cancellation notice may be delivered to you or mailed to you at your mailing address shown in the Declarations or to your last address known to us by first class mail. A United Sates Postal Service certificate of mailing showing your name and that address will be sufficient proof of notice. We will also deliver or mail a copy of the notice to any Additional Insured named in the Declarations.

   **(1)** When you have not paid the premium, whether payable to us or to our agent or under any finance or credit plan, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

   **(2)** When this policy has been in effect for less than 60 days, we may cancel for any reason, other than nonpayment of premium, by letting you know at least 5 days before the date cancellation takes effect.

   **(3)** When this policy has been in effect for 60 days or more, or after 60 days from any anniversary date, we may cancel for one or more of the following reasons:

      **(a)** Conviction of an act which increases the chances of loss under the policy;

      **(b)** Discovery of fraud or material misrepresentation by the "insured" in obtaining this policy;

© 2022 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**(c)** Discovery of willful or reckless acts or omissions by the "insured" increasing the hazard insured against;

**(d)** Physical changes in the property insured, which result in the property becoming uninsurable; or

**(e)** A determination by the commissioner that continuation of the policy will violate or place the insurer in violation of the law.

This can be done by letting you know at least 5 days before the date cancellation takes effect.

**d.** If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it when ascertained.

Where the stated reason is nonpayment of premium, you may continue the coverage and avoid the effect of the cancellation by payment at any time prior to the effective date of cancellation.

**5. Nonrenewal** is replaced by the following:

**5. Nonrenewal.** Ordinarily, we will renew this policy automatically and send you the renewal notice. Our notice will explain what you should do if you do not want to continue this policy.

We may elect not to renew this policy. We may do so by delivering to you or mailing to you at the mailing address shown in the Declarations or to your last address known to us by first class mail, written notice at least 45 days before the expiration date of this policy. Proof of mailing by United Sates Postal Service certificate showing your name and that address will be sufficient proof of notice. We will also deliver or mail a copy of the notice to any Additional Insured named in the Declarations.

However, if your policy was executed on our behalf, in whole or in part, by or on behalf of your insurance agent or our insurance broker, we will send this notice only to that agent or broker. The insurance agent or broker receiving this notice will, within 15 days of its receipt, send a copy to you unless the agent or broker has replaced the insurance.

If you do not want to renew this policy, you should notify your agent or us.

The following is added under **POLICY CONDITIONS**:

**Premium.** The premium shown in the Declarations is the initial premium for this policy. On each renewal, continuation or anniversary of the effective date of this policy, the premium will be computed by us in accordance with rules and rates in effect.

## PROPERTY COVERAGE SECTION
## PROPERTY – EXCLUSIONS

**9. Intentional Loss** is replaced by the following:

**9. Intentional Loss.**

**a.** We will not pay for loss or damage arising out of any act committed:

**(1)** By or at the direction of the "insured"; and

**(2)** With the intent to cause a loss.

**b.** However, this exclusion does not apply to an innocent coinsured who does not commit or conspire to commit any act that results in loss or damage by fire and the innocent coinsured making a claim:

**(1)** Did not cooperate in or contribute to the creation of the loss; and

**(2)** Cooperates in any investigation relating to the loss.

**c.** If we pay a claim pursuant to paragraph **9.b.** of this provision, our payment to the "insured" is limited to that "insured's" insurable interest in the property. In no event will we pay more than the applicable limit of liability.

**11. "Fungi" or Other Microbes** is replaced by the following:

**11. "Fungi", Other Microbes or Rot,** meaning any loss or cost resulting from, arising out of, caused by, consisting of or related to "fungi", other microbes or rot.

This exclusion does not apply to:

**a.** "Fungi" or other microbes remediation coverage that may be afforded under Property – Additional Coverage **16.** Limited "Fungi" or Other Microbes Remediation (this is Property – Additional Coverage **11.** Limited "Fungi" or Other Microbes Remediation in forms **HQ-P53 MA** and **HQ-P56 MA**); or

**b.** "Fungi", other microbes or rot that results from fire or lightning.

## PROPERTY – CONDITIONS

When this Special Provision – Massachusetts is used with forms **HQ-P02 MA, HQ-P03 MA, HQ-P04 MA**

© 2022 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

and **HQ-P06 MA, 2. Duties After Loss** paragraphs **d., f., g.** and **h.** are replaced by the following:

**2. Duties After Loss.**

    **d.** Protect the property from further damage; make reasonable and necessary repairs required to protect the property; keep an accurate record of repair expenditures. Some or all of these expenses may be reimbursable under this policy;

    **f.** Prepare an inventory of damaged personal property; show in detail, the quantity, description, actual cash value and amount of loss. Attach to the inventory when available all pertinent bills and documents that substantiate the figures in the inventory;

    **g.** We may reasonable require you to:

        **(1)** Exhibit the damaged property;

        **(2)** Provide us with records and documents pertinent to the loss and permit us to make copies; and

        **(3)** Submit to an examination under oath, while not in the presence of another "insured", and sign the same;

    **h.** Submit to us, within 60 days after we request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

        **(1)** The time and cause of loss;

        **(2)** The interest of all "insureds" and all others in the property involved and all encumbrances on the property;

        **(3)** Other insurance which may cover the loss;

        **(4)** Changes in title or occupancy of the property during the term of the policy;

        **(5)** Detailed estimates for repair of the damage;

        **(6)** An inventory of damaged personal property described in **2.f.;**

        **(7)** Receipts for additional living expenses incurred and records supporting the fair rental value loss; and

        **(8)** Evidence or affidavit supporting a claim under Property – Additional Coverage **7.** Credit Card, Electronic Fund Transfer Card or Access Device, Forgery and Counterfeit Money, stating the amount and cause of loss.

When this Special Provision – Massachusetts is used with forms **HQ-P53 MA** and **HQ-P56 MA, 2. Duties After Loss** paragraphs **c., e., f.** and **g.** are replaced by the following:

**2. Duties After Loss.**

    **c.** Protect the property from further damage; make reasonable and necessary repairs required to protect the property; keep an accurate record of repair expenditures. Some or all of these expenses may be reimbursable under this policy;

    **e.** Prepare an inventory of damaged personal property; show in detail, the quantity, description, actual cash value and amount of loss. Attach to the inventory when available all pertinent bills and documents that substantiate the figures in the inventory;

    **f.** We may reasonable require you to:

        **(1)** Exhibit the damaged property;

        **(2)** Provide us with records and documents pertinent to the loss and permit us to make copies; and

        **(3)** Submit to an examination under oath, while not in the presence of another "insured", and sign the same;

    **g.** Submit to us, within 60 days after we request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

        **(1)** The time and cause of loss;

        **(2)** The interest of all "insureds" and all others in the property involved and all encumbrances on the property;

        **(3)** Other insurance which may cover the loss;

        **(4)** Changes in title or occupancy of the property during the term of the policy;

        **(5)** Detailed estimates for repair of the damage;

        **(6)** An inventory of damaged personal property described in **2.e.;**

        **(7)** Receipts for additional living expenses incurred and records supporting the fair rental value loss; and

        **(8)** Evidence or affidavit supporting a claim under Property – Additional Coverage **7.** Credit Card, Electronic Fund Transfer Card or Access Device, Forgery and Counterfeit Money, stating the amount and cause of loss.

When this Special Provisions – Massachusetts is used with forms **HQ-P02 MA, HQ-P03 MA** and **HQ-P53 MA, 3. Loss Settlement** paragraphs **c.(2)** and **c.(3)** are deleted.

© 2022 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

HQ-300 MA (07-22)

**6.** **Loss Payment** is replaced by the following:

**6.** **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable within 30 days after we receive your proof of loss.

All applicable sales taxes are considered a part of any loss under this policy.

We will pay you interest at the rate of one percent over the prime interest rate on the agreed figure commencing 30 days after the date of an executed proof of loss for such figure is received by us. This interest is to continue as long as the claim remains unpaid.

**7.** **Appraisal** is replaced by the following:

**7.** **Arbitration.** If there is a disagreement as to the dollar amount of loss under the Property Coverage Section, Massachusetts law provides a method for settling the disagreement. If requested, the dispute shall be referred to a three member board of referees. They are selected and must act according to procedures set by the law. Their decision as to the amount of loss will be binding. This board does not make decisions about matters of coverage or fault.

**9.** **Suit Against Us** is replaced by the following:

**9.** **Suit Against Us.** No action can be brought against us unless there has been full compliance with all of the terms under this policy and the action is started within two years after the date of loss occurs.

If a court prevents the start or continuance of the action, but at a later date allows the action to resume, it must be resumed within one year of the court order. If a disagreement about the amount of loss has been referred to a board of referees within two years of the date of loss, any action against us must be started within 90 days after the board's decision.

**10.** **Our Option** is replaced by the following:

**10.** **Our Option.** If we give you written notice within 15 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with material or property of like kind or quality.

**12.** **Mortgage Clause,** paragraph **c.,** is replaced by the following (this Property – Condition is not applicable in form **HQ-P04 MA**):

**12.** **Mortgage Clause.**

   **c.** If we decide to cancel or not to renew this policy, the mortgagee shown in the Declarations will be notified at least:

     **(1)** 20 days before the date cancellation takes effect; or

     **(2)** 10 days before the date nonrenewal takes effect.

     A United States Postal Service certificate of mailing, showing the name and address of the mortgagee, will be sufficient proof of notice.

The following are added under **PROPERTY – CONDITIONS:**

**Vacancy.** Unless otherwise provided in writing, we will not be liable for loss caused by fire or lightning occurring while a described building is vacant, whether intended for occupancy by owner or tenant, beyond a period of 60 consecutive days for residential purposes of three units or less and 30 consecutive days for other residential purposes.

**City or Town Liens.** We are required by Massachusetts law to notify the local inspector of buildings or Board of Health at least 10 days before we make a payment of $1,000 or more for loss to a building or structure.

We must also give notice if there is damage which makes a building a health or safety hazard, or dangerous or unsafe for occupancy, regardless of the amount of our payment.

If prior to payment we receive official notice of a pending existing lien against your premises, we must delay payment until the matter is settled. If we are required to pay all or part of the amount of the lien, we will not be obligated to pay that amount to you or anyone else.

**Municipal Lien Certificates.** Massachusetts law requires that before paying any claim for loss or damage to real property (other than owner-occupied one, two, three or four family dwellings) from any hazard, where the amount of the loss payable under this policy equals or exceeds $5,000, we must first require that you submit to us a certificate of municipal liens from the collector of taxes of the city or town in which such property is located.

We are required to pay to the city or town any amounts shown on the certificate of municipal liens as outstanding on the date of loss and upon which interest is accruing as of the date of loss,

© 2022 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

arising from the provisions of chapters 40, 49, 60, 80, 83 and sections 58B through 58F, inclusive, of chapter 164 of the Massachusetts General Laws, to the extent of the amount of loss payable under this policy. We will send a copy of any such transaction to you and any mortgagees named on this policy. If we make payment to a city or town of all or part of the amount of the loss payable under this policy, we will not be obligated to pay that amount to you or anyone else.

**LIABILITY COVERAGE SECTION**

**LIABILITY – EXCLUSIONS**

When this Special Provisions – Massachusetts is used with form **HQ-L77 MA, 12.** under **A. Liability Coverage E – Personal Liability and Coverage F – Medical Payments to Others**, is deleted, and when this Special Provisions – Massachusetts is used with form **HQ-L88 CW, 13.** under **A. Liability Coverage E – Premises Liability and Coverage F – Medical Payments to Others**, is deleted.

**LIABILITY – CONDITIONS**

3. **Duties After "Occurrence"** paragraph **d.(1)** is deleted.

4. **Duties of an Injured Person – Liability Coverage F – Medical Payments to Others** is replaced by the following:

4. **Duties of an Injured Person – Liability Coverage F – Medical Payments to Others.** The injured person or someone acting for the injured person will:

   **a.** Give us written proof of claim, under oath if required, as soon as is practicable; and

   **b.** Execute authorization to allow us to obtain copies of pertinent medical reports and records.

   The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require. We will pay for the cost of the examination.

All other provisions of the policy apply.

© 2022 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

HQ-420 MA (11-18)

## ADDITIONAL REPLACEMENT COST PROTECTION COVERAGE

**This Endorsement Changes The Policy. Please Read It Carefully.**

(Applies only when loss to the dwelling exceeds the Property Coverage A
Limit of Liability shown in the Declarations)

**PROPERTY COVERAGE SECTION**

**PROPERTY – CONDITIONS**

If Functional Replacement Cost Loss Settlement form **HQ-825** is part of this policy, the defined term "functional replacement cost" replaces any reference to replacement cost in this Additional Replacement Cost Protection Coverage.

To the extent that coverage is provided, we agree to provide an additional amount of insurance under Property Coverage A only in accordance with the following provisions:

**A.** If you have:

   **1.** Allowed us to adjust the Property Coverage A limit of liability and the premium in accordance with:

      **a.** The property evaluations we make; and

      **b.** Any increases in inflation; and

   **2.** Notified us, within 30 days of completion, of any improvements, alterations or additions to the dwelling insured under Property Coverage A which increase the replacement cost of the dwelling by 5% or more;

   the provisions of this Additional Replacement Cost Protection Coverage will apply after a loss, provided you repair or replace the damaged dwelling.

**B.** If there is a loss to the dwelling insured under Property Coverage A that exceeds the Property Coverage A limit of liability shown in the Declarations, for purposes of settling only that loss to the dwelling:

   **1.** We will provide an additional amount of insurance up to the percentage of Property Coverage A shown in the Declarations; and

   **2.** The following replaces **3.** Loss Settlement, paragraph **b.** However, if Roof Systems Payment Schedule Windstorm or Hail Losses form **HQ-646** is part of this policy, this change does not apply to loss or damage by the peril of windstorm or hail to which the Roof Systems Payment Schedule Windstorm or Hail Losses form **HQ-646** applies:

      **b.** The dwelling covered under Property Coverage A at replacement cost without

deduction for depreciation, subject to the following:

   **(1)** We will pay the replacement cost without deduction for depreciation, but not more than the least of the following amounts:

      **(a)** The limit of liability under this policy that applies to the dwelling covered under Property Coverage A, plus any additional amount of insurance provided under **B.1.** of the Additional Replacement Cost Protection form **HQ-420;**

      **(b)** The replacement cost of that part of the dwelling damaged with materials of like kind and quality and for like use (or, if Functional Replacement Cost Loss Settlement form **HQ-825** is part of this policy, functionally equivalent materials and methods as defined in that endorsement); or

      **(c)** The necessary amount actually spent to repair or replace the damaged dwelling.

   If the dwelling is rebuilt at a new premises, the cost described in **b.(1)(b)** is limited to the cost which would have been incurred if the dwelling had been built at the original premises.

   **(2)** We will pay no more than the actual cash value of the damage until actual repair or replacement is complete.

   **(3)** You may disregard Property – Condition **3.** Loss Settlement **b.** and make claim under this policy for loss to the dwelling on an actual cash value basis. You may then make claim for any additional liability according to the provisions of this Property – Condition **3.** Loss Settlement, provided you notify us, within 180 days after the date of loss, of your intent to repair or replace the damaged dwelling.

All other provisions of the policy apply.

© 2018 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

## REFRIGERATED PROPERTY COVERAGE

**This Endorsement Changes The Policy. Please Read It Carefully.**

### DEFINITIONS

For purposes of the Refrigerated Property Coverage only, the following definition is added:

"Loss of power" means the complete or partial interruption of electric power due to conditions beyond an "insured's" control.

### PROPERTY COVERAGE SECTION

### PROPERTY – ADDITIONAL COVERAGES

The following additional coverage is added under Property - Additional Coverages:

**Refrigerated Property Coverage.** We insure, up to the limit shown in the Declarations under this Refrigerated Property Coverage, covered property stored in freezers or refrigerators on the "residence premises" for direct loss caused by:

**a.** "Loss of power" to the refrigeration unit. "Loss of power" must be caused by damage to:

**(1)** Generating equipment; or

**(2)** Transmitting equipment; or

**b.** Mechanical failure of the unit which stores the property.

Refrigerated Property Coverage will apply only if you have maintained the refrigeration unit in proper working condition immediately prior to the loss.

This coverage does not increase the limit of liability for Property Coverage C – Personal Property.

### PROPERTY – EXCLUSIONS

For purposes of the Refrigerated Property Coverage only, **4.** Power Failure does not apply.

### PROPERTY – CONDITIONS

For purposes of the Refrigerated Property Coverage only, the following is added under **4.** Loss Deductible:

**4. Loss Deductible.**

We will pay only that part of the total of all loss payable under Refrigerated Property Coverage that exceeds $100.

No other deductible applies to this coverage.

All other provisions of the policy apply.

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

HQ-700 MA (05-18)

# MATCHING OF UNDAMAGED ROOF SURFACING
## ADDITIONAL COVERAGE

**This Endorsement Changes The Policy. Please Read It Carefully.**

**PROPERTY COVERAGE SECTION**

**PROPERTY – ADDITIONAL COVERAGES**

The following additional coverage is added under Property – Additional Coverages:

**Matching of Undamaged Roof Surfacing.** If a portion of the roof of your Dwelling or Other Structure sustains covered damage and payment is due or has been issued on the claim under the Property Coverage Section of this policy:

**a.** We will pay, subject to paragraph **c.**, the reasonable cost incurred by you to replace any part of that roof surfacing not included in the coverage afforded for the claim under the Property Coverage Section of this policy;

**b.** Under this Property – Additional Coverage, we will not pay to repair or replace any roof surfacing other than that which is on the roof for which coverage is afforded in paragraph **a.**;

**c.** The most we will pay under this Property – Additional Coverage is the limit of liability shown in the Declarations for this Matching of Undamaged Roof Surfacing Additional Coverage. This is the most we will pay for the total of all loss or costs during the policy period regardless of the:

**(1)** Number of locations insured under this policy; or

**(2)** Number of losses or claims made.

This Matching of Undamaged Roof Surfacing Additional Coverage does not increase the limit of liability that applies to the damaged covered property.

**PROPERTY – CONDITIONS**

For purposes of this Matching of Undamaged Roof Surfacing Additional Coverage only, **3.** Loss Settlement provision **c.(2)** does not apply.

All other provisions of the policy apply.

© 2018 The Travelers Indemnity Company. All rights reserved.

HQ-701 MA (05-18)

# MATCHING OF UNDAMAGED SIDING
## ADDITIONAL COVERAGE

**This Endorsement Changes The Policy. Please Read It Carefully.**

**PROPERTY COVERAGE SECTION**

**PROPERTY – ADDITIONAL COVERAGES**

The following additional coverage is added under Property – Additional Coverages:

**Matching of Undamaged Siding.** If a portion of the siding on your Dwelling or Other Structure sustains covered damage and payment is due or has been issued on the claim under the Property Coverage Section of this policy:

**a.** We will pay, subject to paragraph **c.**, the reasonable cost incurred by you to replace any part of that siding not included in the coverage afforded for the claim under the Property Coverage Section of this policy;

**b.** Under this Property – Additional Coverage, we will not pay to repair or replace any siding on any other dwelling or structure other than the siding for which coverage is afforded in paragraph **a.**;

**c.** The most we will pay under this Property – Additional Coverage is the limit of liability shown in the Declarations for this Matching of Undamaged Siding Additional Coverage. This is the most we will pay for the total of all loss or costs during the policy period regardless of the:

**(1)** Number of locations insured under this policy; or

**(2)** Number of losses or claims made.

This Matching of Undamaged Siding Additional Coverage does not increase the limit of liability that applies to the damaged covered property.

**PROPERTY – CONDITIONS**

For purposes of this Matching of Undamaged Siding Additional Coverage only, **3.** Loss Settlement provision **c.(3)** does not apply.

All other provisions of the policy apply.

© 2018 The Travelers Indemnity Company. All rights reserved.

HQ-825 MA (05-17)

# FUNCTIONAL REPLACEMENT COST LOSS SETTLEMENT

## This Endorsement Changes The Policy. Please Read It Carefully.

**DEFINITIONS**

The following definition is added:

"Functional replacement cost" means the amount which it would cost to repair or replace the damaged building with less costly common construction materials and methods which are functionally equivalent to obsolete, antique or custom construction materials and methods used in the original construction of the building.

**PROPERTY COVERAGE SECTION**

**PROPERTY – CONDITIONS**

The following replaces **3. Loss Settlement** provision **b.**, unless Additional Replacement Cost Protection Coverage form **HQ-420** is part of your policy in which case this change does not apply:

**3.   Loss Settlement.**

  **b.**   Buildings covered under Property Coverages A or B:

   **(1)**   If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the "functional replacement cost" of the building immediately before the loss and you contract for repair or replacement of the damaged building for the same use, within 180 days of the damage unless we and you otherwise agree, we will pay, without deduction for depreciation, the lesser of the following amounts:

     **(a)**   The limit of liability under this policy that applies to the building; or

     **(b)**   The necessary amount actually spent to repair or replace the damaged building on a "functional replacement cost" basis.

   **(2)**   If you do not make claim under **3.b.(1)**, we will pay, without deduction for depreciation, the least of the following amounts:

     **(a)**   The limit of liability under this policy that applies to the building;

     **(b)**   The actual cash value of the damaged part of the building; or

     **(c)**   The amount which it would cost to repair or replace the damaged building on a "functional replacement cost" basis.

   **(3)**   If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the "functional replacement cost" of the building immediately before the loss, we will pay that proportion of the cost to repair or replace that part of the building damaged without deduction for depreciation, which the total amount of insurance in this policy on the damaged building bears to 80% of the "functional replacement cost" of the building, but not more than the limit of liability under this policy that applies to the building.

   **(4)**   To determine the amount of insurance required to equal 80% of the "functional replacement cost" of the building immediately before the loss, we will not include the value of:

     **(a)**   Excavations, footings, foundations, piers or any other structures or devices that support all or part of the building, which are below the undersurface of the lowest basement floor;

     **(b)**   Those supports in **(4)(a)** which are below the surface of the ground inside the foundation walls, if there is no basement; and

     **(c)**   Underground flues, pipes, wiring and drains.

   **(5)**   If the actual cash value of the damage is less than the "functional replacement cost" then:

     **(a)**   We will pay no more than the actual cash value of the damage until replacement is complete. Once replacement is complete, we will settle the loss according to the provisions of **3.b.(1)** and **(3)**.

     If the cost to functionally repair the damage is both:

      **(i)**   Less than 5% of the amount of insurance in this policy on the building; and

      **(ii)**   Less than $2,500;

     we will settle the loss according to the provisions of **3.b.(1)** and **(3)** whether or not replacement is complete.

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

HQ-825 MA (05-17)

**(b)** You may disregard Property — Condition **3.** Loss Settlement **b.** "functional replacement cost" and make claim under this policy for loss to buildings on an actual cash value basis.

You may then make claim for any additional liability according to the provisions of this Property - Condition **3.** Loss Settlement, provided you notify us within 180 days after the date of loss, of your intent to repair or replace the damaged building.

All other provisions of the policy apply.

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

HQ-829 MA (05-17)

# LIMITED FUNGI OR OTHER MICROBES LIABILITY COVERAGE

**This Endorsement Changes The Policy. Please Read It Carefully.**

## DEFINITIONS

The following definition is added:

"Fungi liability hazard" means "bodily injury" or "property damage" arising out of the actual or alleged presence or actual, alleged or threatened dispersal, release, ingestion, inhalation, contact with or exposure to, whether directly or indirectly, by "fungi" or other microbes. This includes any:

**a.** Supervision, instruction, disclosures, or failures to disclose, recommendations, warnings, or advice given, or that allegedly should have been given, in connection with "bodily injury" or "property damage" arising out of, whether directly or indirectly, "fungi" or other microbes, or the activities described in **c.** below;

**b.** Obligation to share with or repay another who must pay damages because of "bodily injury" or "property damage" damage of the type described in this Limited Fungi or Other Microbes Liability Coverage. This applies regardless of any other cause that contributed directly or indirectly, concurrently or in any sequence to the "bodily injury" or "property damage";

**c.** Request, order or requirement to test for, monitor, abate, mitigate, remediate, contain, remove, dispose of, or in any way respond to or assess the effects of "fungi" or other microbes; and

**d.** Liability imposed upon any "insured" by any governmental authority for "bodily injury" or "property damage" arising out of, whether directly or indirectly, "fungi" or other microbes.

## LIABILITY COVERAGE SECTION
## LIABILITY – EXCLUSIONS

For purposes of this Limited Fungi or Other Microbes Liability Coverage only, Liability - Exclusion **A.7.** does not apply.

## LIABILITY – CONDITIONS

For purposes of this Limited Fungi or Other Microbes Liability Coverage only, the following sentence is added to both the first and second paragraphs of **1.** Limit of Liability:

**1. Limit of Liability.**

Damages for "bodily injury" or "property damage" included in the "fungi liability hazard" are not included in this limit.

For purposes of this Limited Fungi or Other Microbes Liability Coverage only, the following paragraphs are added:

**Liability Coverage E - Aggregate Limit of Liability.** Our total limit of liability under Liability Coverage E for damages because of "bodily injury" or "property damage" from all "occurrences" combined included in the "fungi liability hazard" during the policy period will be no more than the aggregate limit of liability shown in the Declarations for this Limited Fungi or Other Microbes Liability Coverage.

**Liability Coverage F - Sub-Limit of Liability.** Subject to the Liability Coverage E - Aggregate Limit of Liability described above, our total limit of liability under Liability Coverage F for all medical expense payable for "bodily injury" to one person as the result of all accidents combined included in the "fungi liability hazard" during the policy period will not be more than the Liability Coverage F - Sub-Limit of Liability shown in the Declarations for this Limited Fungi or Other Microbes Liability Coverage. This Sub-Limit of Liability does not increase the Liability Coverage E - Aggregate Limit of Liability.

For purposes of this Limited Fungi or Other Microbes Liability Coverage only, the following sentence is added to **2.** Severability of Insurance:

**2. Severability of Insurance.**

With respect to the "fungi liability hazard", this condition shall not increase the Liability Coverage E Aggregate Limit of Liability or the Liability Coverage F Sub-Limit of Liability.

All other provisions of the policy apply.

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

HQ-855 MA (05-17)

## EQUIPMENT BREAKDOWN COVERAGE

### This Endorsement Changes The Policy. Please Read It Carefully.

**DEFINITIONS**

For purposes of the Equipment Breakdown Coverage only, the following definitions are added:

"Equipment breakdown":

**a.** Means direct physical damage to "covered equipment" from an unexpected event caused by or resulting from:

    **(1)** Failure of pressure or vacuum equipment;

    **(2)** Mechanical failure;

    **(3)** Electrical failure, including arcing or insulation breakdown; or

    **(4)** Rupture, bursting, bulging, implosion or steam explosion;

    that necessitates repair or replacement of the "covered equipment".

**b.** Does not include damage caused by or resulting from:

    **(1)** Defects, erasures, errors, limitations, viruses, malware, omissions or incorrect instructions in "computer equipment", "data", "media" or programs including the inability to recognize and process any date or time or provide instructions to "covered equipment".

    It does include "equipment breakdown" resulting from **b.(1)**;

    **(2)** The functioning of any safety or protective device;

    **(3)** Seepage or leakage of any valve, fitting, seal, joint or connection; or

    **(4)** Malfunction due to adjustment, alignment, calibration, cleaning or modification.

"Computer equipment" means programmable electronic equipment that is used to store, retrieve and process data and any associated equipment. This includes laptops, monitors, keyboards, printers and modems. "Computer equipment" does not include "media".

"Covered equipment":

**a.** Means equipment or appliances usual to the occupancy, maintenance or use of a dwelling that generate, transmit or utilize energy to operate including:

    **(1)** Central air conditioning systems;

    **(2)** Central vacuum systems;

    **(3)** Home entertainment systems, "computer equipment" and televisions;

    **(4)** Electric vehicle charging stations;

    **(5)** Heating systems, including boilers and water heaters;

    **(6)** Well water pumps and sump pumps;

    **(7)** Water treatment systems;

    **(8)** Home automation and security systems;

    **(9)** Saunas, hot tubs and therapeutic baths;

    **(10)** Swimming pool pumps and filtration systems;

    **(11)** Stoves, wall ovens and refrigerators; and

    **(12)** Outdoor maintenance equipment including lawn mowers, garden tractors, snow removal equipment and chain saws.

**b.** Does not include:

    **(1)** "Media";

    **(2)** Vessels and piping buried below ground and require the excavation of materials to inspect, remove, repair or replace;

    **(3)** Structure, foundation, cabinet, casing or compartment supporting or containing all or part of the "covered equipment"; or

    **(4)** "Motor vehicle", except as provided in **a.(12)**, "aircraft", hovercraft and watercraft including any "covered equipment" mounted on or used solely with any such equipment.

    **(5)** Excavation or construction equipment with more than 25 total horsepower including any "covered equipment" mounted on or used solely with any such equipment.

"Data" means information, files, records or programs stored on "media".

"Green" means products, materials, methods and processes that conserve natural resources, reduce energy or water consumption, avoid toxic or other polluting emissions or otherwise minimize environmental impact.

"Green authority" means a recognized authority on "green" building or "green" products, materials or processes.

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

HQ-855 MA (05-17)

"Media" means material on which data is recorded or stored regardless of the medium on which the information exists. "Media" does not include any drive that is an internal component of "computer equipment".

## PROPERTY COVERAGE SECTION
## PROPERTY – ADDITIONAL COVERAGES

The following additional coverage is added under Property – Additional Coverages:

**Equipment Breakdown Coverage.** We will pay up to the limit shown in the Declarations for this Equipment Breakdown Coverage for direct physical loss to "covered equipment" caused by "equipment breakdown".

This Equipment Breakdown Coverage does not increase the limit of liability that applies to the damaged property.

**Equipment Breakdown Coverage Extensions:**

1. **Pollutants Expense.** We will pay reasonable cost to abate, mitigate, remediate, contain, remove, dispose of or respond in any way to "pollutants" on the "residence premises" that result from an "equipment breakdown" loss.

   We will pay up to $3,000 for Pollutants Expense incurred as a result of a covered loss under this Equipment Breakdown Coverage.

   This Pollutants Expense coverage does not increase the limit of liability shown in the Declarations under this Equipment Breakdown Coverage.

2. **Expediting Expense.** We will pay the reasonable extra cost you incur for expediting expense resulting from "equipment breakdown". Extra cost includes such items as overtime and the extra cost of express or other rapid means of transportation. We will pay reasonable extra cost to:

   **a.** Make temporary repairs;

   **b.** Expedite permanent repairs; and

   **c.** Expedite permanent replacement.

   We will pay up to $3,000 for Expediting Expense covered under this Equipment Breakdown Coverage.

   This Expediting Expense coverage does not increase the limit of liability shown in the Declarations under Equipment Breakdown Coverage.

3. **Environmental, Safety and Efficiency Improvements.** If "covered equipment" requires replacement due to "equipment breakdown", we will replace damaged "covered equipment" with equipment of like kind and quality, which is better for the environment, safer or more efficient than the equipment being used.

   The most we will pay for the additional cost incurred for Environmental, Safety and Efficiency Improvements, in any one loss, under this Equipment Breakdown Coverage, is an additional 25% of the amount we would otherwise pay to repair or replace the specific piece of "covered equipment" that was lost or damaged. We will not pay such cost until actual repair or replacement is complete.

   This Environmental, Safety and Efficiency Improvements coverage does not increase the limit of liability shown in the Declarations under Equipment Breakdown Coverage.

4. **Green Alternatives.** If "covered equipment" requires repair or replacement due to "equipment breakdown", we will pay the additional reasonable and necessary expense incurred by you:

   **a.** For an accredited professional certified by a "green authority" to participate in the repair or replacement of damaged "covered equipment";

   **b.** For the certification or recertification of the repaired or replaced "covered equipment"; and

   **c.** For removal, disposal or recycling of damaged "covered equipment";

   that qualifies as "green".

   We will pay up to $3,000 for Green Alternatives covered under this Equipment Breakdown Coverage.

   This Green Alternatives coverage does not increase the limit of liability shown in the Declarations under Equipment Breakdown Coverage.

## PROPERTY – EXCLUSIONS

For purposes of the Equipment Breakdown Coverage only, the following are added under Property – Exclusions:

We do not insure for "equipment breakdown" caused by:

**a.** Explosion;

**b.** Riot or Civil Commotion;

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

c.  Aircraft;

d.  Vehicles;

e.  Smoke;

f.  Vandalism or Malicious Mischief;

g.  Theft;

h.  Falling Objects;

i.  Weight of Ice, Snow or Sleet;

j.  Water or Steam;

k.  Freezing; or

l.  Collapse.

Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

These exclusions apply whether or not the loss event:

   **(1)** Results in widespread damage;

   **(2)** Affects a substantial area; or

   **(3)** Occurs gradually or suddenly.

We do cover "equipment breakdown" on the "residence premises" resulting from an electrical surge or other electrical disturbance caused by:

a.  Fire;

b.  Explosion;

c.  Riot or Civil Commotion;

d.  Aircraft;

e.  Vehicles;

f.  Smoke;

g.  Vandalism or Malicious Mischief; or

h.  Theft;

that occurs away from the "residence premises".

We do not insure for loss to "covered equipment" directly or indirectly caused by any of the following perils:

a.  Wear and tear, marring, scratching or deterioration;

b.  Latent defect, inherent vice or any quality in property that causes it to damage or destroy itself; or

c.  Smog, rot, rust or other corrosion.

We will pay for "equipment breakdown" that results from **a.**, **b.** and **c.** above.

We will not pay for any "business" "data" lost as a result of "equipment breakdown".

We will not pay for property stored in freezers or refrigerators on or off the "residence premises" when the property stored is damaged by fluctuation in temperature.

## PROPERTY — CONDITIONS

For purposes of the Equipment Breakdown Coverage only, the following is added under **4.** Loss Deductible:

**4.  Loss Deductible.**

   We will only pay that part of the total of all loss payable under this Equipment Breakdown Coverage that exceeds $500. No other deductible applies to this coverage.

The following Property — Condition is added to your policy:

   Any insurance provided by this Equipment Breakdown Coverage will be excess over any other collectible insurance under this policy.

All other provisions of the policy apply.

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

HQ-856 MA (08-20)

## BURIED UTILITY LINES COVERAGE

**This Endorsement Changes The Policy. Please Read It Carefully.**

### DEFINITIONS

For purposes of this Buried Utility Lines Coverage only, the following definitions are added:

"Buried utility line(s)" means the following property that you own or are legally liable to repair or replace:

**a.** Underground pipes, including any underground connections, valves or equipment associated with such underground pipes; or

**b.** Underground wires, including any underground connections or equipment associated with such underground wires;

that provide a utility service such as water, sewage, drainage, electricity, gas, steam or communication services to or from the dwelling or other structure on the "residence premises".

"Buried utility line(s)" does not include any:

**a.** Part of any underground pipes or underground wires that is beneath or within:

  **(1)** A body of water, including swimming pools, ponds, lakes or streams; or

  **(2)** The dwelling or other structure on the "residence premises";

    This does not apply to any part that is beneath a driveway, walkway or patio;

**b.** Underground pipes used to supply water to outdoor property, including swimming pools, hot tubs, fountains or ponds; or

**c.** Underground pipes or underground wires that are not connected and ready for use.

"Disruption" means a leak, break, tear, rupture, collapse or electrical arcing of a "buried utility line" caused by or resulting from any of the following:

**a.** Wear and tear, marring or deterioration;

**b.** Mechanical breakdown, latent defect or inherent vice ;

**c.** Rust or other corrosion;

**d.** Vermin, insects, arachnids, rodents or any other animals;

**e.** Presence, pressure or intrusion of any root system;

**f.** Artificially generated electrical current, including insulation breakdown;

**g.** Freezing, including frost heave and thaw; or

**h.** Weight of equipment, vehicles, animals or people.

"Disruption" does not mean an obstruction or improper pressure of a "buried utility line(s)". To the extent that any perils listed in **a.** through **h.** above are excluded elsewhere in the policy, such exclusions do not apply to the coverage provided by this Buried Utility Lines Coverage.

"One disruption" means all "disruptions" that are the result of the same event. If an initial "disruption" causes other "disruptions", all will be considered "one disruption".

### PROPERTY COVERAGE SECTION

### PROPERTY – ADDITIONAL COVERAGES

The following additional coverage is added under Property – Additional Coverages:

**Buried Utility Lines.**

**a.** We will pay up to the limit shown in the Declarations for this Buried Utility Lines Coverage for direct physical loss or damage to your "buried utility line(s)" located at the "residence premises" caused by a "disruption" which necessitates its repair or replacement. This includes coverage for the following due to such "disruption":

  **(1)** Reasonable and necessary excavation costs required to repair or replace the damaged "buried utility line(s)";

  **(2)** Reasonable expediting costs to make temporary repairs or to expedite permanent repairs or replacement of your "buried utility line(s)";

  **(3)** Direct physical loss or damage to outdoor property damaged from a "disruption" to your "buried utility line(s)" or damaged in the course of repair or replacement of your "buried utility line(s)" damaged by a "disruption";

© 2020 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

(4) New generation costs incurred to repair or replace your damaged "buried utility line(s)" with materials that are safer, conserve natural resources, reduce energy or water consumption, avoid toxic or other polluting emissions or otherwise minimize the environmental impact. We will pay up to an additional 50% of the cost to repair or replace the "buried utility line(s)" using materials of like kind or quality to those being replaced; or

(5) Additional Living Expense and Fair Rental Value as described under Property Coverage D – Loss of Use.

**b.** We do not cover loss or damage to any:

(1) Septic systems, including leach fields, cesspools, septic tanks, pumps, motors or any pipes that run from a septic tank to any leach field except that part of piping that runs from the dwelling or other structure to the septic tank;

(2) Wells, including well casing, pumps or motors;

(3) Sprinkler system pumps, motors or heads;

(4) Heating and cooling systems, including heat pumps except ground loop piping for geothermal heating applications; or

(5) Fuel tanks.

**c.** With respect to a "disruption" under this Buried Utility Lines Coverage, we will not pay for any loss under Property Coverage D – Loss of Use, except as provided under this Buried Utility Lines Coverage.

**d.** The most we will pay for loss, damage or expense from any "one disruption" is the amount shown in the Declarations under this Buried Utility Lines Coverage. This coverage does not increase the limits of liability stated in this policy.

## PROPERTY – EXCLUSIONS

For purposes of this Buried Utility Lines Coverage only, the following are added under Property – Exclusions:

We will not pay for loss or damage caused by:

**a.** Hazardous waste or sewage, including any cost to cleanup or remove such waste;

**b.** Aircraft or objects falling from aircraft;

**c.** Riot or civil commotion; or

**d.** Smoke.

## PROPERTY – CONDITIONS

For purposes of this Buried Utility Lines Coverage only, the following is added under Property – Condition 4. Loss Deductible:

**4. Loss Deductible.**

We will pay only that part of loss, damage or cost that exceeds $500.

All other provisions of the policy apply.

© 2020 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

HQ-860 MA (08-18)

## ADDITIONAL BENEFITS

**This Endorsement Changes The Policy. Please Read It Carefully.**

**POLICY CONDITIONS**

For purposes of this Additional Benefits only, the following policy condition is added:

**Additional Benefits.** From time to time we may provide you or allow others to provide you, or another person insured under this policy with:

**a.** Goods and services, devices, equipment, memberships, merchandise, points, rewards, gift cards, redemption codes, coupons, vouchers, airline miles, special offers, classes, seminars, other program benefits or other items of value; or

**b.** Make charitable contributions, donations or gifts on your behalf.

These Additional Benefits may be provided in any form. If one or more of our benefit programs apply, you or another person insured under this policy may be eligible to receive benefits specific to that program depending on the terms of the program and Additional Benefit provided.

You are under no obligation to pursue any of these Additional Benefits.

We do not warrant the merchantability, fitness or quality of any goods or services provided under this endorsement or assume any additional obligation related to any Additional Benefits provided.

We have the right to modify or discontinue benefits provided under this endorsement without notice to you.

All other provisions of the policy apply.

© 2018 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

HQ-900 MA (05-17)

## DECREASING DEDUCTIBLE

**This Endorsement Changes The Policy. Please Read It Carefully.**

**PROPERTY COVERAGE SECTION**

**PROPERTY - CONDITIONS**

The following is added under Property – Conditions:

**Decreasing Deductible.** We will subtract the available Decreasing Deductible credit amount from the deductible amount that applies to a covered loss.

**Decreasing Deductible Credit Amount.** We will determine the Decreasing Deductible credit amount as of the time of loss in accordance with our filed rating manual. We will apply the following principles in determining the amount:

**a.** The initial Decreasing Deductible credit amount is $100.

**b.** At each renewal, we will increase the Decreasing Deductible credit amount by $100.

**c.** We will decrease the Decreasing Deductible credit amount by any amounts we applied under this endorsement to reduce the deductible amount that applies to covered losses.

**Additional Terms and Conditions.**

**a.** If all or part of the Decreasing Deductible credit amount is applied to reduce a deductible amount for a loss, that amount is not available for another loss to which this endorsement applies.

**b.** The Decreasing Deductible credit amount determined by us as of the time of the loss is the most we will reduce the applicable deductible amounts regardless of:

(1) The applicable deductible amount; or

(2) The number of:

    (a) Losses;

    (b) Claims made; or

    (c) Deductibles that apply.

**c.** If this endorsement ceases to be part of this policy, a Decreasing Deductible credit will not apply to any subsequent loss.

**d.** The Decreasing Deductible credit has no cash value. You have no right to a refund of the Decreasing Deductible credit amount if:

(1) This endorsement is removed;

(2) The policy is cancelled; or

(3) The policy is not renewed.

All other provisions of the policy apply.

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Effective as of  06/27/2023
Policy #  614262907-633-1

# Information about your policy feature(s)*

You have selected the **Decreasing Deductible**® **and Loss Forgiveness Package**. Below you will find a description of some great features, how they work, and when they can be used.

*Decreasing Deductible* **(See Endorsement HQ-900 for full terms and conditions)**

Travelers *Decreasing Deductible* credit** is your benefit for being a loyal customer. At each renewal, a *Decreasing Deductible* credit is earned even if you had a loss. This credit amount will be used to save you money by reducing your deductible in the event of a covered claim. If you move, any earned credit can be carried forward to a new replacement policy when the feature is purchased on the new policy.

Your credit amount as of 06/27/2023:  $100.00

**Loss Forgiveness**

We know even the most responsible homeowners and renters have a loss from time to time. With Loss Forgiveness, we'll forgive one loss every five years[+]– and that loss will stay forgiven as long as you keep the feature on your policy. If you move and the feature is purchased on the new policy, any forgiven loss will continue to be forgiven. This could mean significant savings if you have a loss.

You are eligible for forgiveness for a loss that occurs on or after 06/27/2023.

**QUESTIONS?**

Please call 1.508.753.7233

---

* This document is only intended to provide basic information about your policy feature(s). It is not part of your policy, and it does not alter the terms of your policy or the provisions of our rating manual. In the event of any conflict, the terms of your policy and provisions of our rating manual prevail.

** The *Decreasing Deductible* credit has no cash value. You have no right to a refund of the *Decreasing Deductible* credit amount if:
1.  This feature is removed from your policy;
2.  Your policy is cancelled; or
3.  Your policy is not renewed.

[+] Losses forgiven under the above feature are forgiven for rating purposes only and may still be used in the determination of policy eligibility.

PL-50663 (05-19)

## Important Information About Flood Damage

Many people find out too late their property is at risk of flooding, or that their property insurance does not cover flood damage.

> **YOUR TRAVELERS HOMEOWNERS POLICY <u>DOES NOT</u> COVER FLOOD LOSS TO YOUR HOME AND ITS CONTENTS.**

While we don't offer flood insurance, we believe it's up to you to decide if you need the specialized coverage it offers to help protect your home or condo.

**If you think you need flood insurance:**

- Contact your insurance agent
- Learn more about the National Flood Insurance Program at <u>www.floodsmart.gov</u>
- Even if you already have a flood policy, you may want to ensure it is up to date

**PL-50369 (05-17)**

**This information is intended for general education purposes only. All statements herein are subject to the provisions, exclusions and conditions of the applicable policy. For an actual description of all coverages, terms and conditions, refer to the insurance policy.**

## IMPORTANT NOTICE – HOMEOWNERS INSURANCE

**LEAD POISONING EXCLUSION AND COVERAGE OPTION – NOTICE TO PERSONS APPLYING FOR INSURANCE AND NOTICE TO POLICYHOLDERS**

This is a discussion of the Massachusetts lead poisoning exclusion that may apply to the residential building or residential unit you own insured under the policy that you are applying for or have just received.

It gives you information about:

- the conditions that pertain to the exclusion and the availability of an option that overrides the exclusion, and
- the requirements that pertain to the optional coverage.

No coverage is provided by this summary nor can it be construed to replace any provisions of your policy. You should read the policy for complete information regarding the lead poisoning exclusion and, if purchased, the Lead Poisoning Coverage Endorsement. If there is any conflict between the policy and this notice, **THE PROVISIONS OF THE POLICY SHALL PREVAIL.**

### 1.   LEAD POISONING EXCLUSION – COVERAGE E

**A.** Coverage E in the Homeowners policy excludes bodily injury arising from lead poisoning caused by the presence or exposure of lead in or on a residential unit, including the common areas used in connection with such unit, **that you own and rent to others.**

**B.** If you own a one to four family residential building or a residential condominium or cooperative unit and/or occupy a residential unit in any residential building, located in Massachusetts, the lead poisoning exclusion may not apply to you. Read the following to determine whether this is the case.

   **1)** If the residential building was built in or after 1978, the exclusion does **not** apply; **the rest of this notice does not apply to you.**

   **2)** If the residential building was built before 1978 and no residential unit is rented or held for rental by you to others, the exclusion does **not** apply; **the rest of this notice does not apply to you.**

   **3)** If the residential building was built before 1978, and:

      **(a)** one or more residential units, in the residential building, or residential units you own in the condominium or cooperative residential building is rented, or held for rental, to others by you; and/or

      **(b)** you own and rent, or hold for rental, to others one or more other structures at the same location as the residential building described in (3)(a); and a Letter of Interim Control or a Letter of Compliance is issued for units or other structures described in (3)(a) or (b) above, the exclusion does **not** apply to that unit or other structure, that you own and do not occupy, but will apply with respect to other units and/or other structures that you own and do not occupy. IT IS IMPORTANT THAT YOU LET US KNOW, AS SOON AS PRACTICABLE, THAT YOU HAVE RECEIVED A LETTER OF INTERIM CONTROL OR A LETTER OF COMPLIANCE AND THAT, UPON OUR REQUEST, YOU SEND US A COPY OF YOUR LETTER OF INTERIM CONTROL OR COMPLIANCE IF YOU HAVE NOT ALREADY DONE SO.

      THROUGHOUT THIS NOTICE, A LETTER OF INTERIM CONTROL OR A LETTER OF COMPLIANCE INCLUDES ANY OTHER EQUIVALENT LETTER ISSUED BY A LEAD INSPECTOR AUTHORIZED TO DO SO UNDER THE MASSACHUSETTS LEAD LAW.

      Please note, however, that if you have or obtain a Letter of Interim Control for a unit and/or other structure and it expires before you obtain a Letter of Compliance for that unit and/or other structure, THE EXCLUSION APPLIES TO THAT UNIT OR OTHER STRUCTURE UNTIL THE LETTER OF COMPLIANCE IS OBTAINED.

      **Send a copy of the Letter to your agent.**

   **4)** If the residential building, other structure or condominium or cooperative unit is newly purchased by you, the exclusion does not apply during a period ending 90 days from the date you took title to such

real property. However, this provision applies only if you, within 90 days of taking title to the property, obtain a Letter of Interim Control or Compliance.

    **5)** If the residential building was built before 1978, and one or more residential units are rented or held for rental to others, and you, or your managing agent, is notified by an authorized lead inspector of the need to bring any unit in the residential building into compliance with the provisions of the previously granted Letter of Interim Control, the exclusion does **not** apply to that unit for a period of 14 days, **the rest of this Notice does not apply to you with respect to that unit for a period of 14 days. After that time the exclusion applies to that unit, subject to B.(6) below.** IT IS IMPORTANT THAT YOU LET US KNOW, AS SOON AS PRACTICABLE, THAT YOU HAVE RECEIVED A LETTER OF INTERIM CONTROL AND THAT YOU SEND US, UPON OUR REQUEST, A COPY OF YOUR LETTER OF INTERIM CONTROL IF YOU HAVE NOT ALREADY DONE SO.

    **6)** If the 14 day period described in B.(5) above is extended by the lead poisoning control director, local code enforcement agency or board of health, or by judicial order, the exclusion does not apply to that unit during this extension, except that the exclusion does apply with respect to bodily injury for which you are held strictly liable under the Massachusetts Lead Law.

  **C.** If the conditions described in B.(1) through B.(6) above do not apply to a given unit in the residential building or other structure located in Massachusetts that you own and are renting or holding for rental to others, **then the exclusion applies to that unit.**

## 2. COVERAGE OPTION AND LEAD POISONING LIMITS

  **A.** You may buy coverage to override the lead poisoning exclusion for all residential units for which you have not obtained a Letter of Interim Control or Letter of Compliance.

  **B.** **1)** If this is a **NEW** or **RENEWAL POLICY** with us and you did not choose this coverage before, you may do so at anytime.

    **2)** Unless you and we agree otherwise, if you request coverage for lead poisoning within 30 days of receipt of this NOTICE, coverage will be effective on the inception date of this policy; if your request for lead poisoning coverage is made after 30 days of your receipt of this NOTICE, coverage will become effective as of the date of your request.

  **C.** The lead poisoning limit we offer is $100,000. The lead poisoning limit can be less than the Coverage E limit of liability stated on the Declarations page of your policy subject to the limit noted above.

## 3. MORE THAN ONE LOCATION

Only one lead liability limit will apply regardless of the number of dwellings or residential units covered under your policy.

# PRIVACY NOTICE

## Privacy Statement for Individual U.S. Personal Insurance Consumers

Your privacy is important to us. When we quote or sell an insurance policy to a person, we get information about the people and property that we're insuring. This Privacy Notice describes the types of information about you ("personal information") we collect, where we get it, and how we use, share and protect it. It applies to current and former Travelers personal insurance customers in the United States.

A few key points include:

- We collect personal information from you, your agent, and from third parties
- We will not share your personal information with others for their marketing purposes without your permission
- We maintain safeguards designed to help prevent unauthorized use, access and disclosure of personal information

| What type of information do we collect? | You give us most of what we need in the application process. To make sure what we have is correct, or to obtain additional information, we may need to check back with you. For example, you may be asked to give us more details in writing, via e-mail or over the phone. In addition, we may obtain other information, including but not limited to the following: |
|---|---|
| | • Information from consumer reporting agencies and other insurance support organizations to the extent permitted by law. This may include items such as credit history, credit-based insurance score, driving record, accident and motor vehicle conviction history, and claim history. Information given to us by an insurance support organization, including consumer reporting agencies, may be retained by them and disclosed to others. |
| | • Your past insurance history, including information about your policies and claims, from insurance support organizations or your former insurers. |
| | • Information regarding your property. We may obtain this through third party reports and through a property inspection. We or an independent inspector may visit the property to inspect its condition, or we may use an unmanned aircraft system. We may obtain geospatial information, and take pictures or video. If we need more details about the property, we may need to schedule an interior inspection. |
| | • Information from government agencies or independent reporting companies. |
| | • Other third party data relating to the insured risk, such as possible drivers and vehicles associated with your household and odometer readings associated with any vehicle(s). |
| | • In some instances, we may need to know about your health. For example, if we need to know whether a physical limitation will affect your ability to drive, we may ask for a statement from your doctor. |

| How do we use your personal information? | We use the personal information we collect to sell, underwrite and rate, service and administer insurance; to handle claims; to create and market products and services; to prevent and detect fraud; to satisfy legal or regulatory requirements; and for other business purposes and as otherwise allowed by law. |
|---|---|
| | Once you're insured with us, we will retain details about your policy(ies). This may include, among other things, bill payment, transaction or claim history and details, as well as other information. |
| | When you give us a telephone number, you consent to being contacted at that number, including if the number is for a cell phone or other wireless device. We may contact you in person, by recorded message, by the use of automated dialing equipment, by text (SMS) message, or by any other means your device is capable of receiving, to the extent permitted by law and for reasonable business purposes, including to service your policy or alert you to other relevant information. |
| How do we share your personal information? | We do not give or sell your personal information to nonaffiliated third parties for their own marketing purposes without your prior consent. |
| | We may give the personal information we collect to others to help us conduct, manage or service our business. When we do, we require them to use it only for the reasons we gave it to them. We may give, without your past permission and to the extent permitted by law, personal information about you to certain persons or organizations such as: your agent or insurance representative; our affiliated property and casualty insurance companies; independent claim adjusters or investigators; persons or organizations that conduct research; insurance support organizations (including consumer reporting agencies); third party service providers; another insurer; law enforcement; state insurance departments or other governmental or regulatory agencies; or as otherwise required or permitted by law. Information we share with insurance support organizations, such as your claims history, may be retained by them and disclosed to others. |
| | We may also share your personal information: to comply with legal process; to address suspected fraud or other illegal activities; or to protect our rights, privacy, safety or property, and/or that of you or others. |
| How do we protect your personal information? | We maintain physical, electronic and administrative safeguards designed to help protect personal information. For example, we limit access to personal information and require those who have access to use it only for legitimate business purposes. |

| **How can I review and correct the personal information you have about me?** | If you have questions about what personal information we maintain about you, please make your request in writing and include your full name, mailing address, phone number and policy number. When we receive your written request, we will respond within thirty (30) business days. We will describe the personal information we maintain, whom we know we've shared it with in the last two (2) years, and how you may request a correction, if necessary. If we requested a consumer report, we will tell you the name and address of the consumer reporting agency. |
|---|---|
|  | You may also see and copy the information we have, except for certain documents about claims and lawsuits. If you believe our information is incorrect, let us know in writing. We will review it, and, if we agree, we will correct it, notify you, and send a correction letter to anyone who received the original information. If we do not agree, you are allowed to file a letter with your comments. |
|  | For questions about the right of access or correction to your information, please write to: Travelers, One Tower Square, Hartford, CT 06183, Attn: Privacy Office. |

This notice is given by The Travelers Indemnity Company and its personal insurance property casualty affiliates.

This notice may be amended at any time. The most current version will be posted on Travelers.com.

A statement concerning our use of Insurance Score is available on request for Oregon residents.

Last revised December 2016

## Important Notice about Consumer Reporting

Thank you for trusting us with your insurance. We are committed to providing you excellent service at a competitive price. A lot of information is used to determine your price, including information about your credit and claim history(ies). We are required to tell you that based on the information we received, you did not receive our best rating classification. Your price is competitive and accurate based on your unique characteristics. Please refer to the reverse side of this page for the details from your credit history affecting your price.

The consumer reporting agency(ies) that provided information about you:

Insurance Score (Credit History) Information:     Claim History Information:
TransUnion National Disclosure Center            LexisNexis Consumer Center
P.O. Box 1000                                    P.O. Box 105108
Chester, PA 19022                                Atlanta, GA 30348-5108
Telephone: 1.800.645.1938                        Telephone: 1.800.456.6004
Web Address: www.transunion.com                  Web Address: www.consumerdisclosure.com

**Remember:**

- You have the right to a free copy of the consumer report(s) listed above. Simply contact the agency(ies) listed above within 60 days of receipt of this notice.

- You have the right to dispute the accuracy or completeness of any information in a consumer report. Simply contact the agency to discuss or dispute any information in the report.

- The consumer reporting agency(ies) did not make the pricing determination and cannot answer questions regarding your Travelers policy.

- Notify us if your information changes. We will reevaluate your situation, which could save you money.

The information from your credit report is used to create an insurance score. Your insurance score was impacted by:

* Number of customer initiated credit inquiries (non-auto and non-mortgage inquiries) within the past 2 years.
* Number of customer initiated mortgage credit inquiries within the past 2 years.
* Total balance to limit ratio on revolving accounts or no revolving info available.
* Recent delinquency (within the past 7 years).

To learn more about how your credit relates to your insurance policy please contact our Insurance Score Resource Center at 1.800.550.7717. For any other questions, please contact your Travelers agent or representative.

Please note: this information does not necessarily reflect a poor or average credit standing.

PL-50351 (05-17)

# Important Notice about Billing Options and Disclosures

This notice contains important information about our billing options and charges.

You have chosen to pay your insurance premium in monthly installments and will be billed by mail / email. Please note that a service charge of $5.00 will apply per installment. Other charges that may apply include a $10.00 late charge and a $25.00 fee for payments returned by your bank. If a payment is late we may require the total balance on your account be paid, in order to continue coverage.

To sign up for AutoPay or change your Bill Plan option, visit MyTravelers.com, Mobile App or contact your Travelers insurance representative or agent.

| Bill Plan | Monthly | Pay in Full |
|---|---|---|
| Electronic Funds Transfer (EFT) | $2.00 | No Charge |
| Recurring Credit Card (RCC) | $4.00 | No Charge |
| Bill by Mail / Email | $5.00 | No Charge |

Late Charge: $10.00 per occurrence
Payments returned by your bank: $25.00 per occurrence

In the event two payments are returned during a 12 month period you will be required to pay with guaranteed funds for 182 days from the date of the last returned payment. Guaranteed funds are credit card, bank check, money order or home banking payments. Other forms of payment will be returned. You will not be eligible to use our Electronic Funds Transfer (EFT) or Recurring Credit Card (RCC) payment plans.

You have an option to enroll in an AutoPay EFT or RCC payment plan without registering for MyTravelers.com by visiting amp.travelers.com.

When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction.

If you have multiple policies with us you may be able to combine those policies into a single billing account. If you have selected one of our monthly billing options, and you combine your policies into a single billing account, you will be charged just one service charge per installment, and not per individual account.

To add this policy to an existing billing account or if you have other questions about this notice, please call your insurance representative at 1-508-753-7233.

# EXHIBIT 2

**New England Property Services Group, LLC**
1822 North Main Street, Second Floor Annex Suite 001
Fall River, Massachusetts 02720
**Cell:** (401) 419-1781 **Office:** (508) 567-5738
**Email:** Steven@NewEnglandPropertyServicesGroup.com
**Website:** www.NewEnglandPropertyServicesGroup.com
*MA HIC Reg # 186957 - Expiration February 7, 2025
*RI Contractor Reg # 41504 - Expiration October 1, 2023
*CT HIC Reg # 0650997 - Expiration March 31, 2024



| MASSACHUSETTS CONTRACT | 7.11.2023 |
|---|---|

CUSTOMER

PROPERTY PHOTO

Avrom Honig
Jessica Rose Waterman Honig
41 Pleasant Street
Bellingham, MA  02019
Avrom's Cell: (508) 735-8452
Avrom's Email: Avrom18@gmail.com
Jessica's Email: JRoseWaterman@gmail.com



## PARTIES TO CONTRACT:

   This Agreement is made this **11ᵗʰ day of July 2023** by and between **New England Property Services Group, LLC** (hereinafter referred to as "NEPSG" or "Contractor"), whose address is 1822 North Main Street, Suite 001 Fall River, MA 02720, a Massachusetts Home Improvement Contractor (HIC # 186957), and **Avrom Honig - Owner** (hereinafter referred to as "Customer", "Client", "Insured", or "Assignor") with contact information provided above.  This Agreement shall be referred to herein as the "Contract" or "Agreement".

## CUSTOMER / OWNER ACKNOWLEDGEMENT:

   Customer represents and warrants to NEPSG that the person(s) signing this Contract are all the owners of the Property and/or are acting on behalf of said owner(s) with the full power and authority to bind said owners to this Contract, or if the Property is owned by an entity, is authorized by said entity to enter into this Agreement on behalf of the entity.

## CONTRACT AMOUNT:

   Unless otherwise provided in this Agreement, the fee to be paid by or on behalf of the Customer to the Contractor for the services performed hereunder (the "Contract Amount") shall be the insurance proceeds paid by the insurance company for the Claim/s hereinafter described.

**Page 1**

*AH*
AH

*Jh*
Jh

**New England Property Services Group, LLC**
1822 North Main Street, Second Floor Annex Suite 001
Fall River, Massachusetts 02720
**Cell:** (401) 419-1781 **Office:** (508) 567-5738
**Email:** Steven@NewEnglandPropertyServicesGroup.com
**Website:** www.NewEnglandPropertyServicesGroup.com
*MA HIC Reg # 186957 - Expiration February 7, 2025
*RI Contractor Reg # 41504 - Expiration October 1, 2023
*CT HIC Reg # 0650997 - Expiration March 31, 2024



## CONTRACT TIME:

        NEPSG agrees that it will begin assisting with the proposed Scope of Work noted herein on or around <u>July 11, 2023</u> (the "Start Date") unless otherwise agreed by the parties hereto.  NEPSG shall complete the Work on or before <u>July 11, 2026</u> (the "Completion Date").  In the event NEPSG is delayed, obstructed, hindered or interfered with in the commencement, prosecution or completion of the Work by any cause including, but not limited to, any act, omission, neglect, negligence or default of Customer, or by damage caused by fire or other casualty or by any other cause beyond the control of and not due to any fault, neglect, act or omission of NEPSG including, but not limited to, an inability to obtain required permit(s), shortages or delays in obtaining materials, strikes, fires, war, terrorist acts, acts of God, unworkable weather conditions, labor shortages and the like, NEPSG shall be entitled to an extension of time for a period equivalent to the time lost by reason of any and/or all of the aforesaid causes.  If the Work is delayed as a result of any act or omission by Customer, NEPSG shall also be entitled to additional compensation for the delay(s).

        Work that requires NEPSG to bring in Equipment, Supplies, Labor, and/or anyone or anything else that would have a charge for its application and/or use, shall not begin until this Agreement is signed by NEPSG and Customer and NEPSG provides Customer with a signed copy of this Agreement and work may not begin until Customer provides NEPSG with a Deposit, if required by the Contract terms.

        Any modification or change to the Start Date and/or the Completion Date shall be effective only upon a writing being signed or sent by both NEPSG and Customer, which can be in the form of a handwritten document, an email that is sent by NEPSG and agreed to by Customer, a faxed confirmation of a written request, or any other mode of written communication not previously noted that represents the agreement of both parties.

## SCOPE OF WORK:

        NEPSG, as the general contractor, will diligently carry out the following Scope of Work, which includes mitigation, remediation, and/or restoration activities described as follows:  <u>**1)** Repairing exterior damage, including repairing damage caused by the rear roof section over the 1st floor bathroom as well as the roof area over the kitchen, which allowed water to enter the home from a recent storm-related event.**2)** When calculating the roof repair and/or replacement, the roof assembly is considered a unified system and the repair and/or replacement process may result in damage to the attic space below the roof assembly and/or installed insulation. Similarly, the</u>

AH

Jh

**New England Property Services Group, LLC**
1822 North Main Street, Second Floor Annex Suite 001
Fall River, Massachusetts 02720
**Cell:** (401) 419-1781 **Office:** (508) 567-5738
**Email:** Steven@NewEnglandPropertyServicesGroup.com
**Website:** www.NewEnglandPropertyServicesGroup.com
*MA HIC Reg # 186957 - Expiration February 7, 2025
*RI Contractor Reg # 41504 - Expiration October 1, 2023
*CT HIC Reg # 0650997 - Expiration March 31, 2024



replacement of vinyl siding can have consequential impacts on fixtures attached in close proximity or in direct contact with the siding, such as decks, staircases, and fences. These fixtures may need to be removed and/or replaced during the repair of the vinyl siding. These consequential damages must be accounted for in any repair estimate. **3)** NEPSG shall make and assessment of all work relevant to restoring the property to its pre-loss condition in accordance with Replacement Cost Value (RCV) coverage. NEPSG reserves the right to conduct site visits as needed, potentially leading to changes in this Scope of Work, if new information is discovered. Regardless of NEPSG's Scope of Work, the Insurance Carrier is liable up to the coverage limits described in the relevant insurance policy, as the Insurance Carrier collects and processes the premium payment(s) that establish such coverage and policy limits. If NEPSG's cost to perform the Scope of Work exceeds the amount of coverage and/or policy limit that the Insurance Carrier is obligated to pay, NEPSG will be responsible for completing the Scope of Work beyond the maximum coverages, at its own expense. At the outset, it is assumed that the cost required to complete NEPSG's Scope of Work and restore the property to its pre-loss condition will equal or exceed the current policy limit for Coverage A, including any applicable coverages associated with Coverage A, such as coverages for additional structures not attached to the dwelling. **4)** NEPSG aims to draft and/or establish a Scope of Work, utilizing Xactimate and/or other reasonable estimating methods, that ensures the property is restored to its pre-loss condition. The Scope of Work will incorporate the necessary materials and installation methods to ensure compliance with the applicable state Building Code. **5)** NEPSG will provide General Contracting services to restore the property to its pre-loss condition, as described herein.  *The Scope of Work is subject to change if any previously unknown or unaddressed damage is discovered by NEPSG.*

In its performance of the Scope of Work, NEPSG will use materials of like kind and quality as the materials that are being replaced. Any other contracting work that Customer is having done at the Property by other contractor(s) shall be separately permitted by Customer or the other contractor(s) performing such work. NEPSG is not liable and will not be held liable for work performed by other contractors hired by Customer.

If the Scope of Work includes repair, remediation, or mitigation, this Contract may be subject to cancellation rights as required by Federal and/or state law. However, if such repair, remediation, or mitigation is necessary to address a bona fide immediate personal emergency of the Customer, the Customer may waive the right to cancel within three business days. The Customer can waive the right to cancel by providing Contractor with a written request to waive the right to cancel (e.g. by email, fax, or text) or by providing an in-person signed and dated personal statement in the Customer's handwriting (or typed letter). The statement should describe the bona fide personal emergency requiring immediate remedy and explicitly acknowledge and waive the right to cancel within three

AH

Jh

**New England Property Services Group, LLC**
1822 North Main Street, Second Floor Annex Suite 001
Fall River, Massachusetts 02720
**Cell:** (401) 419-1781 **Office:** (508) 567-5738
**Email:** Steven@NewEnglandPropertyServicesGroup.com
**Website:** www.NewEnglandPropertyServicesGroup.com
*MA HIC Reg # 186957 - Expiration February 7, 2025
*RI Contractor Reg # 41504 - Expiration October 1, 2023
*CT HIC Reg # 0650997 - Expiration March 31, 2024



business days.

The Scope of Work may be based upon the Customer's Property Insurance Carrier and/or the Responsible Party's Responsible Insurance Carrier's approved written estimate and/or a repair estimate approved by Customer. For investigative and/or ancillary work performed by NEPSG as agreed upon by the Customer, which, for example, may be to assist the Responsible Insurance Carrier(s) or its representatives in determining whether there is coverage under the Customer's policy in addition to determining the scope of work for which the Responsible Insurance Carrier(s) and/or the Customer will be responsible, if any, Customer shall pay NESPG based on an agreed upon amended Scope of Work that will detail the ancillary work required along with the cost to complete the ancillary work. If the insurance proceeds are insufficient to complete the investigatory and/or ancillary work, NESPG and Customer shall execute a Change Order (non-insurance related or where any other party is obligated to pay on behalf of Customer) increasing the Contract Amount before NEPSG performs any ancillary work in excess of the Contract Amount. If Customer refuses to execute any such Change Order in a timely fashion, NEPSG may suspend and/or terminate its performance and demand payment for ancillary and/or investigative work completed to date.

Contractor agrees that Customer has the final choice of which actual type of material is used in each stage of work that involves replacement of damaged items, including but not limited to cabinetry, flooring, exterior siding, and/or roof shingle selection. Alterations, deviations, and/or upgrades to the agreed Scope of Work, including, but not limited to, any work required by the local building department and/or another entity that has control over the work that requires additional work, will not be performed unless Contractor and Customer execute a Change Order that incorporates the additional work into the Contract and includes an appropriate adjustment in the Contract Amount.

## TERMS AND CONDITIONS:

Customer has assigned the claim/s hereinafter described to the Contractor, and in furtherance of said assignment, Customer hereby recognizes that **New England Property Services Group, LLC** will share its specialized knowledge with the Customer to provide Customer with an adequate education and understanding, in its sole discretion, in matters relative to the technical aspects of the mitigation/remediation and/or renovation/restoration of damages sustained to Customer's real property, whose location is also described herein.  The technical aspects generally refer to meeting with

AH
Jh

**New England Property Services Group, LLC**
1822 North Main Street, Second Floor Annex Suite 001
Fall River, Massachusetts 02720
**Cell:** (401) 419-1781 **Office:** (508) 567-5738
**Email:** Steven@NewEnglandPropertyServicesGroup.com
**Website:** www.NewEnglandPropertyServicesGroup.com
*MA HIC Reg # 186957 - Expiration February 7, 2025
*RI Contractor Reg # 41504 - Expiration October 1, 2023
*CT HIC Reg # 0650997 - Expiration March 31, 2024



the insurance company representative(s) to go over the physical damage to the property and to provide a written Scope of Work with a written estimate that provides the costs associated with the identified Scope of Work.

   Customer also recognizes Contractor's right to initiate any Appraisal and/or other legal proceedings involving the insurance claim/s described below.  This authorization includes the right of the Contractor to appoint legal counsel to represent the Customer regarding said insurance claim, **the fees of said legal counsel to be paid by the Contractor**.  Customer agrees to sign any additional documentation, including an engagement letter with legal counsel, which will allow Contractor to pursue said Appraisal and/or other legal proceedings.  Customer acknowledges that Customer may be named as a party along with the Contractor in said Appraisal and/or other legal proceedings.

   Customer represents that a claim has been or will be filed and where if a claim has not been filed, customer authorizes NEPSG to file a claim with the proper respective insurance company, including but not limited to the Customer's Insurance Carrier, the Master Condominium Responsible Insurance Carrier, and/or the Responsible Party's Insurance Carrier.  Customer agrees to work with Contractor, as needed, to ensure that the Customer's applicable Insurance Carrier(s), including but not limited to the Master Condominium Responsible Insurance Carrier and/or Responsible Party's Insurance Carrier will respond to losses through the policy number and/or claim number(s) shown herein, which may be subject to change (if listed) based on any information not presently available, such as identifying coverage via a Responsible Party not known at the time of signing this Agreement. If the Customer has not filed a claim, then Customer will either file a claim or authorize a claim to be filed with the applicable Responsible Insurance Carrier(s), including but not limited to the Master Condominium Responsible Insurance Carrier and/or Responsible Party's Insurance Carrier.  The Customer agrees to provide Contractor with all necessary claim information immediately upon receipt.

   Customer shall pay Contractor the Full Replacement Cost Value (RCV) paid by the Customer's insurer(s), if any, in full or partial consideration of the Contract Amount, which shall be based upon either an approved estimate from the Responsible Insurance Carrier(s) and/or from a Restoration Estimate that has been prepared by and/or for NEPSG and which has been agreed to between Contractor and Customer.  An approved estimate from the Responsible Insurance Carrier(s) shall represent the RCV that the Insurance Company will be paying based on the scope of work identified within their estimate.  The RCV may increase with further discussions with the Responsible Insurance Carrier(s) based on possible missing elements from the already approved scope of work, which may have been identified prior to issuance of the Approved RCV and/or identified after the project is started.  An example of this would be finding "hidden rot" within a wall cavity, which was not identified

**Page 5**

AH

Jh

**New England Property Services Group, LLC**
1822 North Main Street, Second Floor Annex Suite 001
Fall River, Massachusetts 02720
**Cell:** (401) 419-1781 **Office:** (508) 567-5738

**Email:** Steven@NewEnglandPropertyServicesGroup.com
**Website:** www.NewEnglandPropertyServicesGroup.com
*MA HIC Reg # 186957 - Expiration February 7, 2025
*RI Contractor Reg # 41504 - Expiration October 1, 2023
*CT HIC Reg # 0650997 - Expiration March 31, 2024



during the initial visits, but where the Responsible Insurance Carrier will provide a Supplemental Payment for the additional work.  If the additional work is added to this Contract by Change Order, Customer shall also pay the Supplemental Payment to Contractor in full or partial consideration of the revised Contract Amount.

NEPSG will not be obligated to perform any services or work unless NEPSG is satisfied with the Responsible Insurance Carrier's Approved Estimate that details the specific scope of work associated with any mitigation, remediation, and/or renovation that has been identified and therefore, NEPSG will continue to work with the Responsible Insurance Carrier to confirm an acceptable Scope of Work that NEPSG believes is required to comply with Building Code and other industry standards, including but not limited to the Institute of Inspection Cleaning and Restoration Certification (IICRC), the EPA, OSHA, and/or any other relevant authority that needs to be acknowledged.

NEPSG shall use all necessary resources and documentation in working on getting an Approved Estimate in place from the Responsible Insurance Carrier and as such, an extension of time to the contract term may be necessary.  NEPSG believes in full transparency and completing any project in the most professional manner possible, which at foundation of this is to ensure compliance with acceptable industry standards and Building Codes, which the Responsible Insurance Carrier may be obligated to comply with, even if they do not initially include such project compliance components in their Approved Estimate.

NEPSG will not be obligated to undertake or begin any services or work where the necessary Scope of Work is not acceptable to NEPSG so as to allow NEPSG to provide a Warranty for all components of a project.  Since all aspects of the project have an associated cost, NEPSG will work diligently to have the Responsible Insurance Carrier confirm acceptance of the Scope of Work being provided by NEPSG before the related services and/or work begins.  Further, it is the right of the Insurance Carrier to conduct inspections from time to time, which may be months apart from one another.  As such, NEPSG will only make repairs that are necessary to protect the property from any further damage once damage has been confirmed to be more than a single occurrence.  NEPSG will document the area prior to any emergency repair to have that information to share as needed, with the Insurance Carrier.  No other work will be performed, until all of the potential inspections are completed by the Insurance Carrier, which in a typical claim, would be when the Appraisal Process has been completed and payment issued by the Insurance Carrier confirming the completion of the Appraisal Process.  The same shall apply if a subsequent / second Appraisal is requested by the Insurance Carrier and/or NEPSG to resolve the Amount of Loss that may still be in dispute after the initial Appraisal process was undertaken.  Until the Scope of Work is agreed to by NEPSG and the

**New England Property Services Group, LLC**
1822 North Main Street, Second Floor Annex Suite 001
Fall River, Massachusetts 02720
**Cell:** (401) 419-1781 **Office:** (508) 567-5738

**Email:** Steven@NewEnglandPropertyServicesGroup.com
**Website:** www.NewEnglandPropertyServicesGroup.com
*MA HIC Reg # 186957 - Expiration February 7, 2025
*RI Contractor Reg # 41504 - Expiration October 1, 2023
*CT HIC Reg # 0650997 - Expiration March 31, 2024



Insurance Carrier and/or is otherwise determined through the Appraisal Process, of which the Appraisal Process must provide for NEPSG's acceptance the agreed upon and paid in full Scope of Work based on the Appraisal Award, it is NEPSG's position that the amount necessary to complete the Scope of Work is equal to the policy limits for Coverage A.

In summary, if NEPSG is not in agreement with the Approved Insurance Estimate for the Scope of Work (i.e. Roof Scope of Work, Exterior Siding Scope of Work, Attic Scope of Work, and/or any specifically identified room), NEPSG will not undertake that particular portion of the project until an acceptable Approved Insurance Estimate is obtained or where NEPSG releases that portion of the project to the Insured to address separately from other services or work that NEPSG is contracted to perform as outlined in this Contract.

With regard to work for which the Responsible Insurance Carrier(s) has/have agreed to pay as a result of Contractor's efforts, Customer expressly agrees that he/she/they will not have any other person or entity perform any of the work that the Contractor has identified and already has prepared a written estimate and/or intends to provide a written estimate for that has or will become part of the claim(s) for which Contractor was exclusively requested to assist with as detailed herein. An exception to this may be allowed by the Contractor and, if so, the exception must be agreed upon in writing and signed by both the Customer and Contractor prior to the commencement of said work or services.

In the performance of the Work required by this Contract, Contractor may employ subcontractors. Contractor shall be as responsible for the work performed by subcontractors as it is for work by its own forces. All work performed pursuant to this Contract shall be performed under Contractor's supervision and control.

Upon completion of any agreed upon Mitigation Services (also known as, Emergency Services), the Contractor shall provide a Mitigation Invoice directly to the Customer, but shall also supply a copy of the same Mitigation Invoice or other project related documentation to the Responsible Insurance Carrier for payment to be released by the Carrier if applicable. An insurance company's failure to pay for Contractor's Mitigations Services for any reason does not excuse Customer's obligation to make payment under this Contract for any Mitigation Services work that has been both agreed to by Customer and Contractor and substantially performed by Contractor. Regarding any ancillary work, Mitigation Services, and/or Emergency Services that have been both agreed to by Customer and Contractor, Customer understands and fully agrees to compensate Contractor at agreed upon intervals during the project and agrees to pay any outstanding amount due on or before the project completion

AH

Jh

**New England Property Services Group, LLC**
1822 North Main Street, Second Floor Annex Suite 001
Fall River, Massachusetts 02720
**Cell:** (401) 419-1781 **Office:** (508) 567-5738

**Email:** Steven@NewEnglandPropertyServicesGroup.com
**Website:** www.NewEnglandPropertyServicesGroup.com
*MA HIC Reg # 186957 - Expiration February 7, 2025
*RI Contractor Reg # 41504 - Expiration October 1, 2023
*CT HIC Reg # 0650997 - Expiration March 31, 2024



day (last day of work). Mitigation Services (aka Emergency Services) are services that consist generally of, but not limited to, the services and work related to areas of primary and secondary damage, which include components and/or materials that need to be cleaned, disposed of, and/or dried, as well as the providing the necessary equipment and labor to perform the required services to protect the property from further damage.

## DIRECTION OF PAYMENT TO CONTRACTOR FROM INSURER:

If the Customer has a Responsible Insurance Carrier or Carriers, Customer does agree and hereby authorize Responsible Insurance Carrier or Carriers, if any, to pay all sums due under the insurance claims referenced herein directly to the New England Property Services Group, LLC -Tax ID # 82-1729769 for the services described herein and performed hereunder. Customer directs that New England Property Services Group, LLC be listed as a Payee on the check along with possible mortgage holder, and Customer hereby directs any and all supplemental payments to be made to New England Property Services Group, LLC as a listed Payee. **As provided for in most Insurance Policies in the Conditions Section under the typical heading titled "Loss Payment", Customer does hereby direct Responsible Insurance Carrier to list New England Property Services Group, LLC as a Payee on all payments being issued, which is pursuant to the language that may be the same or closely worded to the following:** *"We will pay you unless some other person is named in the policy or is legally entitled to receive payment".*

All checks issued by the Responsible Insurance Carrier(s) and/or Mortgage Company in payment for the services provided by Contractor shall be requested for issuance as stated above. Customer agrees to release all monies allotted by the Responsible Insurance Carrier(s) where Customer's name may be listed on the payment instrument and where Contractor's Name is or is not also listed immediately upon receipt if the payment was delivered to the Customer and/or to be available to endorse the payment instrument over to Contractor for deposit into Contractor's account for work completed and/or work still yet to be completed. Customer shall not deposit any payment instrument into Customer's own account as all payments must be issued to Contractor to account for receipt of all funds associated with the Carrier's Approved Claim so as to have proper documentation to obtain the Recoverable Depreciation that is attached to most insurance claims. Customer further agrees to provide all necessary documentation needed to facilitate payment from the Responsible Insurance Carrier(s) and/or Mortgage Company.

AH
AH

Jh
Jh

**New England Property Services Group, LLC**
1822 North Main Street, Second Floor Annex Suite 001
Fall River, Massachusetts 02720
**Cell:** (401) 419-1781 **Office:** (508) 567-5738
**Email:** Steven@NewEnglandPropertyServicesGroup.com
**Website:** www.NewEnglandPropertyServicesGroup.com
*MA HIC Reg # 186957 - Expiration February 7, 2025
*RI Contractor Reg # 41504 - Expiration October 1, 2023
*CT HIC Reg # 0650997 - Expiration March 31, 2024



## TERMINATION FOR CONVENIENCE

Contractor at its sole discretion may allow Customer to Terminate this Contract for Convenience thereby allowing Customer to perform and/or select another contractor to perform any of the items included in the Approved Carrier's Estimate. If a Termination For Convenience is approved by Contractor, Contractor shall be entitled to a Convenience Fee equal to $500.00 per day, calculated beginning on the date noted as the Contract Start Date referenced herein. This Fee shall be implemented if Contractor is not allowed to perform any of the work-related items that the Insurance Carrier approves and where the Termination For Convenience is approved after the time frame allowed as noted in the Notice of Cancellation included within this Contract. **This Termination For Convenience shall not alter the Contractor's rights that the Customer has assigned herein under the heading "IRREVOCABLE ASSIGNMENT OF INSURANCE CLAIM BENEFITS & RIGHTS".**

## PAYMENTS AND COLLECTION TERMS:

If Customer fails to make any payment when due, or to perform any other obligation hereunder, Contractor is entitled to recover all damages, costs and expenses associated with the enforcement of this Contract, including, but not limited to, accrued interest, the recovery of its attorneys' fees, and cost of litigation.

Claims by either party must be in writing and sent to the other party within thirty (30) days following the occurrence of an event giving rise to the claim or within thirty (30) days after the claimant first acquires knowledge of or information concerning the claim, whichever occurs later to the extent that such knowledge or information could not have been reasonably obtained earlier. Claims must be made in writing and sent to the other party at the address(es) listed herein and shall describe the nature of the claim, the events or circumstances that gave rise to the claim with reasonable detail, and the amount thereof to the best of the claimant's information.

Within ten (10) days of receipt of a claim, the party receiving the claim shall send its initial response to the claimant. Said initial response shall state whether the responding party disputes or agrees with the claim, in whole or in part, and the factual basis for the stated position. Thereafter, the parties shall schedule a meeting where the parties shall participate in good faith negotiations to resolve the claim.

If the parties are unable to negotiate a settlement, the parties shall submit the dispute to nonbinding mediation. Said mediation shall be conducted by a mediator acceptable to both parties.

AH

Jh

**New England Property Services Group, LLC**
1822 North Main Street, Second Floor Annex Suite 001
Fall River, Massachusetts 02720
**Cell:** (401) 419-1781 **Office:** (508) 567-5738
**Email:** Steven@NewEnglandPropertyServicesGroup.com
**Website:** www.NewEnglandPropertyServicesGroup.com
*MA HIC Reg # 186957 - Expiration February 7, 2025
*RI Contractor Reg # 41504 - Expiration October 1, 2023
*CT HIC Reg # 0650997 - Expiration March 31, 2024



Each party shall be responsible for one-half the cost of the mediation.  The parties shall participate in the mediation in good faith.

If the claim is not resolved through negotiation or mediation as described above or if any party to this Agreement refuses to negotiate or mediate in good faith, then any controversy, claim or dispute of any nature arising out of or relating to this Agreement shall be submitted to the American Dispute Resolution Center for binding arbitration.  The Construction Industry Rules of that institution shall apply.  Notice of the demand for arbitration shall be filed in writing with the other party to this Agreement and with the American Dispute Resolution Center within a reasonable time after the dispute has arisen, but in no event shall a claim be made more than one (1) year after the Completion Day (last day of work) listed herein, or any mutually agreed upon extension thereof.

**This Agreement shall be construed in accordance with the laws of the State of Massachusetts.**

## OTHER RELATED ENTITIES IN HOME IMPROVEMENT CONTRACTOR/NEW HOME CONTRACTOR:

Contractor hereby gives notice that the following corporation, limited liability company, partnership, sole proprietorship, or other legal entity is or has been a home improvement or new home construction contractor in which the same owner/owners of Contractor was/is a shareholder, member, partner, or owners within the past five years.

## CONTRACT CANCELLATION PROVISION:

**YOU, THE CUSTOMER, MAY CANCEL THIS TRANSACTION AT ANY TIME PRIOR TO MIDNIGHT OF THE THIRD BUSINESS DAY AFTER THE EXECUTION DATE OF THIS AGREEMENT.  SEE THE ATTACHED NOTICE OF CANCELLATION FORM FOR AN EXPLANATION OF THIS RIGHT.**

AH
AH

Jh
Jh

**New England Property Services Group, LLC**
1822 North Main Street, Second Floor Annex Suite 001
Fall River, Massachusetts 02720
**Cell:** (401) 419-1781 **Office:** (508) 567-5738

**Email:** Steven@NewEnglandPropertyServicesGroup.com
**Website:** www.NewEnglandPropertyServicesGroup.com
*MA HIC Reg # 186957 - Expiration February 7, 2025
*RI Contractor Reg # 41504 - Expiration October 1, 2023
*CT HIC Reg # 0650997 - Expiration March 31, 2024



## ACCEPTANCE OF CONTRACT TERMS AND CLAIM INFORMATION REFERENCE

My/Our Signature(s) below indicates acceptance of all terms and conditions outlined in this Contract.

| | | *Avrom Honig* | |
|---|---|---|---|
| | | Avrom Honig (Jul 11, 2023 15:59 EDT) | |
| Avrom Honig | Owner | | |
| **Printed Name of Customer** | **Title of Customer** | **Signature of Customer** | **Signature Date** |

| | | *Jessica Honig* | |
|---|---|---|---|
| | | Jessica Honig (Jul 11, 2023 16:01 EDT) | |
| Jessica Rose Waterman Honig | Owner | | |
| **Printed Name of Customer** | **Title of Customer** | **Signature of Customer** | **Signature Date** |

| 41 Pleasant Street | Bellingham | MA | 02019 | Norfolk |
|---|---|---|---|---|
| **Street Address of Property Loss** | **City/Town** | **State** | **Zip Code** | **County** |

| Travelers Insurance | IMV8022 | 614262907 633 1 | July 10, 2023 |
|---|---|---|---|
| **Primary Insurance Co.** | **Claim Number** | **Policy Number** | **Date of Loss** |

| My Phan | (774) 527-0251 | MYPHAN@travelers.com |
|---|---|---|
| **Contact / Representative** | **Direct Number** | **Email Address** |

**New England Property Services Group, LLC**
**1822 North Main Street, South Floor Annex Suite 001**
**Fall River, MA 02720**
**Direct: (401) 419-1781**
**Email: Steven@NewEnglandPropertyServicesGroup.com**

**Accepted By:** *Steven Ceceri*
Steven Ceceri (Jul 11, 2023 16:02 EDT)

Steven Ceceri          Accepted Date

*AH*
AH

*Jh*
Jh

**New England Property Services Group, LLC**
1822 North Main Street, Second Floor Annex Suite 001
Fall River, Massachusetts 02720
**Cell:** (401) 419-1781 **Office:** (508) 567-5738

**Email:** Steven@NewEnglandPropertyServicesGroup.com
**Website:** www.NewEnglandPropertyServicesGroup.com
*MA HIC Reg # 186957 - Expiration February 7, 2025
*RI Contractor Reg # 41504 - Expiration October 1, 2023
*CT HIC Reg # 0650997 - Expiration March 31, 2024



## NOTICE OF CANCELLATION

### NOTICE OF CANCELLATION

_____ (Date of Transaction)

YOU MAY CANCEL THIS TRANSACTION, WITHOUT ANY PENALTY OR OBLIGATION, WITHIN THREE BUSINESS DAYS FROM THE DATE YOU SIGNED THE CONTRACT.

IF YOU CANCEL, ANY PROPERTY TRADED IN, ANY PAYMENTS MADE BY YOU UNDER THE CONTRACT OR SALE, AND ANY NEGOTIABLE INSTRUMENT EXECUTED BY YOU WILL BE RETURNED WITHIN TEN BUSINESS DAYS FOLLOWING RECEIPT BY NEPSG OF YOUR CANCELLATION NOTICE, AND ANY SECURITY INTEREST ARISING OUT OF THE TRANSACTION WILL BE CANCELLED.

IF YOU CANCEL, YOU MUST MAKE AVAILABLE TO NEPSG AT YOUR RESIDENCE, IN SUBSTANTIALLY AS GOOD CONDITION AS WHEN RECEIVED, ANY GOODS DELIVERED TO YOU UNDER THIS CONTRACT OR SALE; OR YOU MAY, IF YOU WISH, COMPLY WITH THE INSTRUCTIONS OF NEPSG REGARDING THE RETURN SHIPMENT OF THE GOODS AT NEPSG'S EXPENSE AND RISK.

IF YOU DO MAKE THE GOODS AVAILABLE TO NEPSG AND NEPSG DOES NOT PICK THEM UP WITHIN TWENTY DAYS OF THE DATE OF CANCELLATION, YOU MAY RETAIN OR DISPOSE OF THE GOODS WITHOUT ANY FURTHER OBLIGATION. IF YOU FAIL TO MAKE THE GOODS AVAILABLE TO NEPSG, OR IF YOU AGREE TO RETURN THE GOODS TO NEPSG AND FAIL TO DO SO, THEN YOU REMAIN LIABLE FOR PERFORMANCE OF ALL OBLIGATIONS UNDER THE CONTRACT.

TO CANCEL THIS TRANSACTION, MAIL OR DELIVER A SIGNED AND DATED COPY OF THIS CANCELLATION NOTICE OR ANY OTHER WRITTEN NOTICE, OR SEND AN EMAIL TO New England Property Services Group, LLC ("NEPSG" or "Contractor"), 1822 North Main Street, Suite 001 ~ Fall River, Massachusetts 02720, NOT LATER THAN MIDNIGHT OF _____ [This Date is subject to the Date on which you sign the Contract, so the 3rd Business Day after you sign the Contract will be the date by which you must send this Notice of Cancellation to Contractor]

I HEREBY CANCEL THIS TRANSACTION.

_____ (Date)

_____ (Customer's Signature)

AH

Jh

**New England Property Services Group, LLC**
1822 North Main Street, Second Floor Annex Suite 001
Fall River, Massachusetts 02720
**Cell:** (401) 419-1781 **Office:** (508) 567-5738

**Email:** Steven@NewEnglandPropertyServicesGroup.com
**Website:** www.NewEnglandPropertyServicesGroup.com
*MA HIC Reg # 186957 - Expiration February 7, 2025
*RI Contractor Reg # 41504 - Expiration October 1, 2023
*CT HIC Reg # 0650997 - Expiration March 31, 2024



## NOTICE OF CANCELLATION

### NOTICE OF CANCELLATION

_____ (Date of Transaction)

YOU MAY CANCEL THIS TRANSACTION, WITHOUT ANY PENALTY OR OBLIGATION, WITHIN THREE BUSINESS DAYS FROM THE DATE YOU SIGNED THE CONTRACT.

IF YOU CANCEL, ANY PROPERTY TRADED IN, ANY PAYMENTS MADE BY YOU UNDER THE CONTRACT OR SALE, AND ANY NEGOTIABLE INSTRUMENT EXECUTED BY YOU WILL BE RETURNED WITHIN TEN BUSINESS DAYS FOLLOWING RECEIPT BY NEPSG OF YOUR CANCELLATION NOTICE, AND ANY SECURITY INTEREST ARISING OUT OF THE TRANSACTION WILL BE CANCELLED.

IF YOU CANCEL, YOU MUST MAKE AVAILABLE TO NEPSG AT YOUR RESIDENCE, IN SUBSTANTIALLY AS GOOD CONDITION AS WHEN RECEIVED, ANY GOODS DELIVERED TO YOU UNDER THIS CONTRACT OR SALE; OR YOU MAY, IF YOU WISH, COMPLY WITH THE INSTRUCTIONS OF NEPSG REGARDING THE RETURN SHIPMENT OF THE GOODS AT NEPSG'S EXPENSE AND RISK.

IF YOU DO MAKE THE GOODS AVAILABLE TO NEPSG AND NEPSG DOES NOT PICK THEM UP WITHIN TWENTY DAYS OF THE DATE OF CANCELLATION, YOU MAY RETAIN OR DISPOSE OF THE GOODS WITHOUT ANY FURTHER OBLIGATION. IF YOU FAIL TO MAKE THE GOODS AVAILABLE TO NEPSG, OR IF YOU AGREE TO RETURN THE GOODS TO NEPSG AND FAIL TO DO SO, THEN YOU REMAIN LIABLE FOR PERFORMANCE OF ALL OBLIGATIONS UNDER THE CONTRACT.

TO CANCEL THIS TRANSACTION, MAIL OR DELIVER A SIGNED AND DATED COPY OF THIS CANCELLATION NOTICE OR ANY OTHER WRITTEN NOTICE, OR SEND AN EMAIL TO New England Property Services Group, LLC ("NEPSG" or "Contractor"), 1822 North Main Street, Suite 001 ~ Fall River, Massachusetts 02720, NOT LATER THAN MIDNIGHT OF _____ [This Date is subject to the Date on which you sign the Contract, so the 3rd Business Day after you sign the Contract will be the date by which you must send this Notice of Cancellation to Contractor]

I HEREBY CANCEL THIS TRANSACTION.

_____ (Date)

_____ (Customer's Signature)

**Page 13**

AH

Jh

**New England Property Services Group, LLC**
1822 North Main Street, Second Floor Annex Suite 001
Fall River, Massachusetts 02720
**Cell:** (401) 419-1781 **Office:** (508) 567-5738
**Email:** Steven@NewEnglandPropertyServicesGroup.com
**Website:** www.NewEnglandPropertyServicesGroup.com
*MA HIC Reg # 186957 - Expiration February 7, 2025
*RI Contractor Reg # 41504 - Expiration October 1, 2023
*CT HIC Reg # 0650997 - Expiration March 31, 2024



<div style="background:black;color:white">

**ATTENTION MASSACHUSETTS CUSTOMERS:**
**INFORMATION REGARDING POSSIBLE MECHANIC'S LIEN PURSUANT TO**
**MASSACHUSETTS GENERAL LAWS – PART III – TITLE IV – CHAPTER 254 - SECTION 2.**
**HTTPS://MALEGISLATURE.GOV/LAWS/GENERALLAWS/PARTIII/TITLEIV/CHAPTER254/**
**SECTION2**

</div>

**To: Avrom Honig, Owner of Record,**

New England Property Services Group, LLC. (aka the Contractor) is about to perform work and/or furnish materials for the construction, erection, alterations, or repair upon the premises at **41 Pleasant Street Bellingham, MA 02019,** under contract with you. This is a notice that New England Property Services Group, LLC, and any other persons who provide labor and materials for the improvement under contract (which may be either verbal or written) with New England Property Services Group, LLC may file a mechanic's lien upon the premises in the event of nonpayment to them. It is your responsibility to assure yourself that New England Property Services Group, LLC, as well as those other persons under contract with New England Property Services Group, LLC receive payment for their work performed and materials furnished for the construction, erection, alteration, or repair upon the premises. This shall be regardless of if payment is expected from any source other than direct payment from you, such as, but not limited to, a draw from a bank loan such as a line of credit, a disbursement from a Lender or Mortgage Company, or payment being issued from an Insurance Company due to an Insurance Claim you filed, where the Contractor was engaged to provide work and/or services to your property.

The following information regarding Massachusetts Mechanic's Liens for Contractors was copied from the website shown in the above header. As of February 6, 2019, said information was current. Said information is provided here for your reference, but please note, it is your responsibility to confirm that this information is still accurate and up to date.

Section 2: Written Contract; Notice; Time for Filing; Form

Section 2. A person entering into a written contract with the owner of any interest in real property, or with any person acting for, on behalf of, or with the consent of such owner for the whole or part of the erection, alteration, repair or removal of a building, structure, or other improvement to real property, or for furnishing material or rental equipment, appliances, or tools therefor, shall have a lien upon such real property, land, building, structure or improvement owned by the party with whom

AH

Jh

**New England Property Services Group, LLC**
1822 North Main Street, Second Floor Annex Suite 001
Fall River, Massachusetts 02720
**Cell:** (401) 419-1781 **Office:** (508) 567-5738

**Email:** Steven@NewEnglandPropertyServicesGroup.com
**Website:** www.NewEnglandPropertyServicesGroup.com
*MA HIC Reg # 186957 - Expiration February 7, 2025
*RI Contractor Reg # 41504 - Expiration October 1, 2023
*CT HIC Reg # 0650997 - Expiration March 31, 2024



or on behalf of whom the contract was entered into, as appears of record on the date when notice of said contract is filed or recorded in the registry of deeds for the county or district where such land lies, to secure the payment of all labor, including construction management and general contractor services, and material or rental equipment, appliances, or tools which shall be furnished by virtue of said contract.  Said notice may be filed or recorded in the registry of deeds in the county or registry district where the land lies by any person entitled under this section to enforce a lien, and shall be in substantially the following form:

Notice is hereby given that by virtue of a written contract dated, between, owner, and contractor, said contractor is to furnish or has furnished labor and material or rental equipment, appliances or tools for the erection, alteration, repair or removal of a building, structure, or other improvement on a lot of land or other interest in real property described as follows:

### Town of Bellingham Parcel ID of 0094 - 0135 - 0000

### aka 41 Pleasant Street Bellingham, MA 02019

Such person may file or record the notice of contract at any time after execution of the written contract whether or not the date for performance stated in such written contract has passed and whether or not the work under such written contract has been performed, but not later than the earliest of: (i) sixty days after filing or recording of the notice of substantial completion under section two A; or (ii) ninety days after filing or recording of the notice of termination under section two B; or (iii) ninety days after such person or any person by, through or under him last performed or furnished labor or materials or both labor and materials.

My/Our Signature(s) below indicates acknowledgement and understanding of the information regarding a possible Mechanic's Lien pursuant to Massachusetts General Laws Part III-Title IV-Chapter 254-Section 2.

| | | *Avrom Honig* | |
| --- | --- | --- | --- |
| | | Avrom Honig (Jul 11, 2023 15:59 EDT) | |
| Avrom Honig | Owner | | |
| **Printed Name of Customer** | **Title of Customer** | **Signature of Customer** | **Signature Date** |

| | | *Jessica Honig* | |
| --- | --- | --- | --- |
| | | Jessica Honig (Jul 11, 2023 16:01 EDT) | |
| Jessica Rose Waterman Honig | Owner | | |
| **Printed Name of Customer** | **Title of Customer** | **Signature of Customer** | **Signature Date** |

*AH*
AH

*Jh*
Jh

**New England Property Services Group, LLC**
1822 North Main Street, Second Floor Annex Suite 001
Fall River, Massachusetts 02720
Cell: (401) 419-1781 Office: (508) 567-5738

**Email:** Steven@NewEnglandPropertyServicesGroup.com
**Website:** www.NewEnglandPropertyServicesGroup.com
*MA HIC Reg # 186957 - Expiration February 7, 2025
*RI Contractor Reg # 41504 - Expiration October 1, 2023
*CT HIC Reg # 0650997 - Expiration March 31, 2024



| DIRECTION TO PAY FORM | 7.11.2023 |
|---|---|

HOMEOWNER/S                                        PROPERTY PHOTO

Avrom Honig

Jessica Rose Waterman Honig

41 Pleasant Street

Bellingham, MA 02019

Avrom's Cell: (508) 735-8452

Avrom's Email: Avrom18@gmail.com

Jessica's Email: JRoseWaterman@gmail.com



## DIRECTION TO PAY:

I/We authorize and direct **Travelers Insurance** to **DIRECTLY** pay my/our chose-in-action assignee, NEW ENGLAND PROPERTY SERVICES GROUP, LLC, all insurance proceeds issued as payments relating to **Claim Number IMV8022 (hereinafter "Claim")**, which includes any payments issued, but which have not been deposited by me/us, and of which NEW ENGLAND PROPERTY SERVICES GROUP, LLC requests to have the payment(s) issued to them in accordance with the Loss Payment Provision within my/our Policy which offers the ability to direct **Travelers Insurance** to pay someone that "is legally entitled to receive payment", which in this case, NEW ENGLAND PROPERTY SERVICES GROUP, LLC is legally entitled to receive payment. Please further note, payment issued to NEW ENGLAND PROPERTY SERVICES GROUP, LLC should be not list my/our name(s) as this DIRECTION TO PAY does hereby remove me/us from being named as a Payee with my/our full understanding.

I/We acknowledge that I/We have not assigned my/our insurance policy to NEW ENGLAND PROPERTY SERVICES GROUP, LLC. Instead, I/We have only assigned my/our rights, title, benefits, choses in action, as well as any and all proceeds related to the Claim to NEW ENGLAND PROPERTY SERVICES GROUP, LLC. The Irrevocable Assignment of Insurance Claim Benefits & Rights that follows, and that is hereby incorporated by reference hereto, will further elaborate on the rights, title, choses in actions and benefits assigned to NEW ENGLAND PROPERTY SERVICES GROUP, LLC.

[Continued on next page]

Page 16

AH
AH

Jh
Jh

**New England Property Services Group, LLC**
1822 North Main Street, Second Floor Annex Suite 001
Fall River, Massachusetts 02720
**Cell:** (401) 419-1781 **Office:** (508) 567-5738

**Email:** Steven@NewEnglandPropertyServicesGroup.com
**Website:** www.NewEnglandPropertyServicesGroup.com
*MA HIC Reg # 186957 - Expiration February 7, 2025
*RI Contractor Reg # 41504 - Expiration October 1, 2023
*CT HIC Reg # 0650997 - Expiration March 31, 2024



## DIRECTION TO PAY - CONTINUED

In the event the insurance or adjustment company, for whatever reason, mails the settlement check and/or insurance proceeds to me/us, I/we hereby agree to notify NEW ENGLAND PROPERTY SERVICES GROUP, LLC immediately and deliver the settlement check and/or proceeds to NEW ENGLAND PROPERTY SERVICES GROUP, LLC within twenty-four (24) hours of my/our receipt of said settlement check and/or insurance proceeds.

I/We recognize that NEPSG, LLC is NOT a Public Adjuster working on my/our behalf. Rather, I/We understand that NEPSG, LLC is the assignee and equitable owner of this Claim and that NEPSG, LLC works on its own behalf.

| Avrom Honig | Owner | *Avrom Honig* | |
|---|---|---|---|
| | | Avrom Honig (Jul 11, 2023 15:59 EDT) | |
| **Printed Name of Customer** | **Title of Customer** | **Signature of Customer** | **Signature Date** |

| Jessica Rose Waterman Honig | Owner | *Jessica Honig* | |
|---|---|---|---|
| | | Jessica Honig (Jul 11, 2023 16:01 EDT) | |
| **Printed Name of Customer** | **Title of Customer** | **Signature of Customer** | **Signature Date** |

**New England Property Services Group, LLC**
**1822 North Main Street, Suite 001**
**Fall River, MA 02720**
**Direct:** (401) 419-1781
**Email:** **Steven@NewEnglandPropertyServicesGroup.com**

**Accepted By:** *Steven Ceceri*
Steven Ceceri (Jul 11, 2023 16:02 EDT)

**Steven Ceceri**     **Accepted Date**

Chose-in-action Assignee:_____ NEW ENGLAND PROPERTY SERVICES GROUP, LLC

Chose-in-action Assignee Tax ID:___ 82-1729769

Chose-in-action Assignee Address:___ 1822 North Main Street, Suite 001 ~ Fall River, MA 02720

Chose-in-action Assignee Phone:___ (401) 419-1781

Chose-in-action Assignee Contact:___ Steven Ceceri / Owner & Operator

AH
AH

Jh
Jh

**New England Property Services Group, LLC**
1822 North Main Street, Second Floor Annex Suite 001
Fall River, Massachusetts 02720
**Cell:** (401) 419-1781 **Office:** (508) 567-5738
**Email:** Steven@NewEnglandPropertyServicesGroup.com
**Website:** www.NewEnglandPropertyServicesGroup.com
*MA HIC Reg # 186957 - Expiration February 7, 2025
*RI Contractor Reg # 41504 - Expiration October 1, 2023
*CT HIC Reg # 0650997 - Expiration March 31, 2024



## IRREVOCABLE ASSIGNMENT OF INSURANCE CLAIM BENEFITS & RIGHTS

### 1.  DESCRIPTION OF RIGHTS ASSIGNED

The undersigned Assignor(s) and the Assignee, New England Property Services Group, LLC, hereinafter referred to as "NEPSG", for and in consideration of the performance of the work pursuant to the Work Authorization (aka the Contract) already executed by Assignor(s) and NEPSG, as well as any change orders executed thereafter, and for other good and valuable consideration, the receipt and sufficiency whereof is hereby mutually acknowledged, and intending to be legally bound, does hereby irrevocably transfer, assign and set over to NEPSG, all of the lawful rights, title and interest of the Assignor(s) in any claim, proceeds, benefits, chose in action, and/or interest Assignor(s) has under any insurance policy, including any 3rd party insurance policy, regarding the loss and/or damage to the property located at **41 Pleasant Street Bellingham, MA 02019**, relating to the certain insurance claim(s) officially reported and/or referenced to **Travelers Home and Marine Insurance Company**, hereinafter referred to as "**Insurance Company**", with a Date of Loss of **July 10, 2023** as **Claim Number IMV8022** , regarding **Policy Number 614262907 633 1,** covering insurable property damage sustained during Assignor(s)' ownership thereof.

Assignor(s) hereby irrevocably assigns all Assignor(s)' lawful rights, title, benefits, and/or proceeds with regard to **Claim Number IMV8022** to NEPSG.  If the Claim(s) and/or Policy Number(s) are not available upon the initial signing of this Assignment, said Claim(s) and/or Policy Number(s) shall be provided by the Assignor(s) to NEPSG, once said information is made available to the Assignor(s).  Once Assignor(s) provides the said Claim and/or Policy Number(s) to NEPSG, said NEPSG may, in its sole discretion, update this Assignment through amendment, whereby said Claim and/or Policy Number(s) will be effectively added and incorporated hereto.  In any case, this Assignment shall not be considered void or voidable due to the fact that said Claim(s) and/or Policy Number(s) have not been included in this Assignment.

Assignor(s) intends to and does hereby irrevocably transfer, assign and set over all lawful rights, title and interest in any insurance proceeds, benefits, chose in action, cause of action, and/or claim, at law and/or equity, relating to the above referenced insurance claim(s), including, but not limited to, any and all claims Assignor(s) has or may have against any insurance company regarding the above referenced insurance claim(s), including, but not limited to, Assignor(s)' claim or claims for breach of contract, breach of good faith and fair dealing, and/or acts of bad faith, as well as any other violation(s) of or noncompliance with laws, regulations, and/or statutes that may be related to any issues involved

**Page 18**

*AH*
AH

*Jh*
Jh

**New England Property Services Group, LLC**
1822 North Main Street, Second Floor Annex Suite 001
Fall River, Massachusetts 02720
**Cell:** (401) 419-1781 **Office:** (508) 567-5738
**Email:** Steven@NewEnglandPropertyServicesGroup.com
**Website:** www.NewEnglandPropertyServicesGroup.com
*MA HIC Reg # 186957 - Expiration February 7, 2025
*RI Contractor Reg # 41504 - Expiration October 1, 2023
*CT HIC Reg # 0650997 - Expiration March 31, 2024



## IRREVOCABLE ASSIGNMENT OF INSURANCE CLAIM BENEFITS & RIGHTS - CONTINUED

in the resolution of the above referenced insurance claim(s). Assignor(s) agrees and understands that this transfer and assignment of all lawful rights, title and interest in any insurance proceeds, chose in action, and/or claim(s) as referenced above related to the loss and/or damage to Assignor(s)' property referenced above to NEPSG constitutes a complete relinquishment of the Assignor(s)' rights and control over the relevant insurance proceeds, benefits, chose in action, and/or claim(s) and that the Assignor(s) will have no right to revoke and/or control the disposition thereof.

2.  **ASSIGNMENT OF POST-LOSS CLAIM(S) IS NOT AN ASSIGNMENT OF POLICY**

    <u>**THE ASSIGNOR(S) RETAINS FULL OWNERSHIP OF ANY AND ALL ABOVE REFERENCED INSURANCE POLICY/POLICIES.**</u> THIS CONTRACT IS <u>NOT</u> AN ASSIGNMENT OF THE ABOVE REFERENCED POLICY/POLICIES. THE ASSIGNOR(S) IS HEREBY IRREVOCABLY ASSIGNING <u>ONLY</u> THE LAWFUL, POST-LOSS RIGHTS, INSURANCE PROCEEDS, BENEFITS, CHOSE IN ACTION, AND/OR CLAIMS AT LAW AND/OR EQUITY INVOLVING THE ABOVE REFERENCED INSURANCE CLAIM(S) AND/OR THE RESOLUTION OF SAID INSURANCE CLAIM(S). THE ASSIGNOR RECOGNIZES THAT SUCH POST-LOSS ASSIGNMENTS ARE VALID, PURSUANT TO THE M.A. SUPREME COURT'S RULING IN <u>BLOOM V. NEW BRUNSWICK FIRE INS. CO.</u>, 268 MASS. 28 (MASS. 1929), WHICH STATES, "THE ASSIGNEE OF A NON-NEGOTIABLE CHOSE IN ACTION, *SUCH AS THE CLAIM FOR THE LOSS, IF ANY, PAYABLE ON A POLICY OF INSURANCE*, CAN MAINTAIN AN ACTION IN HIS OWN NAME". ASSIGNOR RECOGNIZES THAT THIS ASSIGNMENT IS VALID PURSUANT TO THE ASSIGNMENT VALIDITY TESTS DELINEATED IN <u>BOSTON V. AETNA LIFE INS. CO.</u>, 399 MASS. 569 (MASS. 1987) AND <u>COSMOPOLITAN TR. CO. V. LEONARD WATCH CO.</u>, 249 MASS. 14, 19 (MASS. 1924), WHICH STATES, "A VALID ASSIGNMENT MAY BE MADE BY ANY WORDS OR ACTS WHICH FAIRLY INDICATE AN INTENTION TO MAKE THE ASSIGNEE THE OWNER OF A CLAIM," SINCE THIS ASSIGNMENT CLEARLY EVIDENCES ASSIGNOR(S)' INTENT TO TRANSFER ALL ASSIGNOR(S)' RIGHTS, TITLE, AND INTEREST IN ANY INSURANCE PROCEEDS, BENEFITS, CHOSE IN ACTION, CAUSE OF ACTION, AND/OR CLAIM, AT LAW AND/OR EQUITY, RELATING TO THE ABOVE REFERENCED INSURANCE CLAIM(S). ASSIGNOR(S) UNDERSTANDS, PURSUANT TO <u>BOSTON SAFE DEPOSIT TRUST CO. V. ADAMS, 224 MASS. 442 (MASS. 1916)</u> AND <u>GRAVES EQUIPMENT, INC. V. M. DEMATTEO CONSTRUCTION CO.</u>, 397 MASS. 110 (MASS. 1986), THAT ONCE THIS ASSIGNMENT IS COMPLETE, NEPSG LEGALLY "STANDS IN THE SHOES OF THE ASSIGNOR" AND "IN CASE OF THE ASSIGNMENT OF AN EQUITY OR OF A CHOSE IN ACTION, AN ASSIGNEE GETS AND CAN GET NO GREATER RIGHTS THAN HIS ASSIGNOR HAD." THE ASSIGNOR(S) RECOGNIZES THAT NEPSG HEREBY LEGALLY STANDS IN ASSIGNOR(S)' SHOES AND IS THE REAL PARTY IN INTEREST WITH REGARD TO THE ABOVE REFERENCED INSURANCE CLAIM(S), PURSUANT TO THE M.A. SUPREME COURT'S RULING IN <u>BLOOM V. NEW BRUNSWICK FIRE INS. CO.</u>, 268 MASS. 28

AH

Jh

**New England Property Services Group, LLC**
1822 North Main Street, Second Floor Annex Suite 001
Fall River, Massachusetts 02720
**Cell:** (401) 419-1781 **Office:** (508) 567-5738
**Email:** Steven@NewEnglandPropertyServicesGroup.com
**Website:** www.NewEnglandPropertyServicesGroup.com
*MA HIC Reg # 186957 - Expiration February 7, 2025
*RI Contractor Reg # 41504 - Expiration October 1, 2023
*CT HIC Reg # 0650997 - Expiration March 31, 2024



(MASS. 1929), THE UNITED STATES SUPREME COURT'S RULING IN SPRINT COMMUNICATIONS CO. V. APCC SERVICES, INC., 554 U.S. 269 (2008), AND MASS. R. CIV. P. 17.

## IRREVOCABLE ASSIGNMENT OF INSURANCE CLAIM BENEFITS & RIGHTS - CONTINUED

### 3. NEPSG IS NOT ACTING AS A PUBLIC ADJUSTER UNDER MASS. GEN. LAWS CH. 175 § 162

THE ASSIGNOR(S) FURTHER RECOGNIZES THAT NEPSG IS NOT A PUBLIC ADJUSTER, WHICH MASS. GEN. LAWS CH. 175 § 162 DEFINES AS: "*WHOEVER, FOR COMPENSATION, NOT BEING AN ATTORNEY AT LAW ACTING IN THE USUAL COURSE OF HIS PROFESSION, DIRECTLY OR INDIRECTLY SOLICITS FROM AN INSURED OR THE REPRESENTATIVE OF THE INSURED, OR PERFORMS SERVICES PURSUANT TO AN AGREEMENT, ENGAGEMENT OR UNDERTAKING TO REPRESENT THE INSURED IN CONNECTION WITH THE ASSESSMENT OF DAMAGES, NEGOTIATION, SETTLEMENT, APPRAISAL OR REFERENCE OF A LOSS UNDER A FIRE INSURANCE POLICY, HOMEOWNERS INSURANCE POLICY, COMMERCIAL MULTI-PERIL INSURANCE POLICY, BUSINESS INTERRUPTION INSURANCE POLICY, FIDELITY BOND OR CRIME INSURANCE POLICY, INLAND OR OCEAN MARINE INSURANCE POLICY, OR OTHER PROPERTY DAMAGE INSURANCE COVERAGE OF ANY SORT, SHALL BE A PUBLIC INSURANCE ADJUSTER.*" THE ASSIGNOR UNDERSTANDS THAT NEPSG IS NOT ASSIGNOR(S)' AGENT AND/OR FIDUCIARY AND DOES NOT ACT ON BEHALF OF THE ASSIGNOR(S) SINCE NEPSG HAS RECEIVED AN IRREVOCABLE ASSIGNMENT OF INSURANCE CLAIM BENEFITS & RIGHTS AND IS NOW STANDING IN PLACE OF THE ASSIGNOR(S); OR, IN OTHER WORDS, NEPSG HAS REPLACED THE ASSIGNOR WITH REGARD TO THE AFOREMENTIONED CLAIM(S) AND, ACCORDINGLY, NEPSG WILL BE SOLEY WORKING ON ITS OWN BEHALF.

### 4. INSURANCE COMPANY SHALL COMMUNICATE EXCLUSIVELY WITH NEPSG REGARDING THE ASSIGNED CLAIM(S)

Assignor(s) hereby directs the **Insurance Company** to communicate **EXCLUSIVELY** with NEPSG as the **SOLE POINT OF CONTACT** regarding the negotiation, settlement, and/or resolution of the aforementioned claim(s), since Assignor(s) has assigned to NEPSG all Assignor(s)' lawful rights, title and interest in any insurance proceeds, benefits, chose in action, cause of action, and/or claim, at law and/or equity, relating to the above referenced insurance claim(s) – with such assignment being expressly upheld and authorized by the M.A. Supreme Court's rulings in Bloom v. New Brunswick Fire Ins. Co., 268 Mass. 28 (Mass. 1929) and Graves Equipment, Inc. v. M. Dematteo Construction Co., 397 Mass. 110 (Mass. 1986). Assignor(s) hereby further directs the **Insurance Company** to communicate **EXCLUSIVELY** with NEPSG as the **SOLE POINT OF CONTACT** regarding the negotiation, settlement, and/or resolution of the aforementioned claim(s), since NEPSG is now legally standing in the shoes of Assignor(s) as the real party in interest and Assignor(s) has no authority to control the disposition of the

**Page 20**

AH
AH

Jh
Jh

**New England Property Services Group, LLC**
1822 North Main Street, Second Floor Annex Suite 001
Fall River, Massachusetts 02720
**Cell:** (401) 419-1781 **Office:** (508) 567-5738
**Email:** Steven@NewEnglandPropertyServicesGroup.com
**Website:** www.NewEnglandPropertyServicesGroup.com
*MA HIC Reg # 186957 - Expiration February 7, 2025
*RI Contractor Reg # 41504 - Expiration October 1, 2023
*CT HIC Reg # 0650997 - Expiration March 31, 2024



aforementioned claim(s).  In any future communications with **Insurance Company**, Assignor(s) hereby agrees to notify **Insurance Company** to communicate **EXCLUSIVELY** with NEPSG as the **SOLE POINT OF CONTACT** regarding the negotiation, settlement, and/or resolution of the aforementioned claim(s).

## IRREVOCABLE ASSIGNMENT OF INSURANCE CLAIM BENEFITS & RIGHTS - CONTINUED

Assignor(s) understands that any contact with Assignor(s) that is initiated by Assignor(s)' **Insurance Company** regarding the assigned claim(s) constitutes a potential interference with this Assignment and potentially tortious interference, in violation of the M.A. Supreme Court's ruling in Psy-Ed Corp. v. Klein, 459 Mass. 697, 715-16 (Mass. 2011).  Assignor(s) recognizes that any refusal, in whole or in part, by Assignor(s)' **Insurance Company** to accept the terms and/or validity of this lawful Assignment constitutes potential evidence of bad faith and/or breach of contract on the part of Assignor(s)' **Insurance Company**.  For these reasons, Assignor(s) agrees to notify NEPSG within twenty-four (24) hours of any contact and/or communication involving Assignor(s) and Assignor(s)' **Insurance Company** that is initiated by Assignor(s)' **Insurance Company**, whether it be by phone, email, mail, text, in-person conversation, and/or any other type of communication.  Assignor(s) will then promptly provide a copy of said communication to NEPSG or, if said communication can't be copied, then Assignor(s) will promptly provide a description of said communication.  NEPSG will, in its sole discretion and at intervals during the claim process, keep Assignor(s) informed regarding the resolution and/or settlement of the above referenced insurance claim.

5. **INSURNACE COMPANY HAS AN OBLIGATION TO NEPSG AS ASSIGNEE TO PROVIDE NEPSG WITH A DUTY OF GOOD FAITH AND FAIR DEALING**

Assignor(s) hereby directs the **Insurance Company** to take notice that **Assignor(s) has hereby assigned the duty of good faith and fair dealing** that the **Insurance Company** owed to Assignor(s) prior to this Assignment and that such an assignment of the duty of good faith and fair dealing is recognized as valid and enforceable by the M.A. Appeals Court in Gore v. Arbella Mutual Insurance Company, 77 Mass. App. Ct. 518 (Mass. App. Ct. 2010).  Assignor(s) hereby directs the **Insurance Company** to take notice that, pursuant to Gore v. Arbella Mutual Insurance Company, 77 Mass. App. Ct. 518 (Mass. App. Ct. 2010), this duty of good faith and fair dealing is a fiduciary obligation that includes a duty to consider seriously NEPSG's reasonable offer to settle within the policy limits and to refrain from acts that demonstrate greater concern for the **Insurance Company's** monetary interest than the financial risk attendant to NEPSG's situation.  Assignor(s) hereby directs the **Insurance Company** to take notice that, pursuant to said duty of good faith and fair dealing, the **Insurance Company** must communicate **EXCLUSIVELY** with NEPSG as the **SOLE POINT OF CONTACT** and real party in interest regarding the negotiation, settlement, and/or resolution of the aforementioned claim(s) and must list New England

**New England Property Services Group, LLC**
1822 North Main Street, Second Floor Annex Suite 001
Fall River, Massachusetts 02720
**Cell:** (401) 419-1781 **Office:** (508) 567-5738

**Email:** Steven@NewEnglandPropertyServicesGroup.com
**Website:** www.NewEnglandPropertyServicesGroup.com
*MA HIC Reg # 186957 - Expiration February 7, 2025
*RI Contractor Reg # 41504 - Expiration October 1, 2023
*CT HIC Reg # 0650997 - Expiration March 31, 2024



Property Services Group, LLC as payee on all payments made by the **Insurance Company** regarding the aforementioned claim(s), with said payments being made by <u>check</u> and mailed to NEPSG at 429 Plymouth Street, Middleboro, MA 02346.

## IRREVOCABLE ASSIGNMENT OF INSURANCE CLAIM BENEFITS & RIGHTS - CONTINUED

### 6.   NEPSG'S RIGHT TO RECEIVE ALL INSURANCE CLAIM PROCEEDS AND BE NAMED AS A PAYEE

With regard to the processing and/or payment of any proceeds being issued by the **Insurance Company** related to the above referenced claim(s), so as not to delay said processing and/or payment, Assignor(s) hereby authorizes and directs NEPSG to endorse any and all documents related to the aforementioned claim(s), as if NEPSG were in fact Assignor(s), even if said documents pertain to Assignor(s).  Assignor(s) hereby directs the **Insurance Company** to release any and all information requested by NEPSG, NEPSG's representative, and/or NEPSG's attorney for the purpose of obtaining actual benefits to be paid by the **Insurance Company** for services rendered or to be rendered. Assignor(s) hereby directs the **Insurance Company** to list New England Property Services Group, LLC as payee on all payments made by the **Insurance Company** regarding the aforementioned claim(s) and directs that said payments being made by <u>check</u> and mailed to NEPSG at 429 Plymouth Street, Middleboro, MA 02346.

Assignor(s) understands that Assignor(s)' **Insurance Company** and/or a 3rd party insurance company may mistakenly or intentionally pay the insurance proceeds directly to the Assignor(s) and/or Assignor(s)' mortgage lender.  In such a circumstance where Assignor(s)' **Insurance Company** and/or a 3rd party insurance company mistakenly or intentionally pays the insurance proceeds directly to the Assignor(s) and/or Assignor(s)' mortgage lender, Assignor(s) will fully cooperate with NEPSG to have said insurance proceeds directed, made payable to, and/or released to NEPSG in full and without delay, as further described within the Direction of Payment section of the Contract.

### 7.   INSURER'S DUTY MAKE A PROMPT AND FAIR SETTLEMENT OFFER

Assignor(s) recognizes that, pursuant to Mass. Gen. Laws ch. 176D § 3(f), the **Insurance Company** has the duty to "effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear."  Assignor(s) recognizes that, pursuant to Mass. Gen. Laws ch. 176D § 3(g), the **Insurance Company** acts in bad faith if it compels, "insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds."

**Page 22**

*AH*
AH

*Jh*
Jh

**New England Property Services Group, LLC**
1822 North Main Street, Second Floor Annex Suite 001
Fall River, Massachusetts 02720
**Cell:** (401) 419-1781 **Office:** (508) 567-5738

**Email:** Steven@NewEnglandPropertyServicesGroup.com
**Website:** www.NewEnglandPropertyServicesGroup.com
*MA HIC Reg # 186957 - Expiration February 7, 2025
*RI Contractor Reg # 41504 - Expiration October 1, 2023
*CT HIC Reg # 0650997 - Expiration March 31, 2024



## 8. NEPSG'S RIGHT TO DEMAND REFERENCE FOR THE ASSIGNED CLAIM(S) UNDER THE POLICY

Assignor(s) agrees to cooperate with NEPSG should NEPSG need to resort to legal proceedings to enforce its rights under this Assignment. Such cooperation shall include, but not be limited to, recognizing NEPSG's right to initiate any Reference and/or other legal and/or contractual proceedings involving the assigned insurance claim(s). Assignor(s) agrees to sign any additional documentation, including an engagement letter with legal counsel, which will allow NEPSG to pursue said Reference and/or other legal proceedings, at NEPSG's expense. Assignor(s) acknowledges that Assignor(s) may be named as a party along with NEPSG in said Reference and/or legal proceedings.

With regard to any Reference process involving the assigned insurance claim(s), Assignor(s) understands and recognizes that said Appraisal will be governed pursuant to Mass. Gen. Laws ch. 175 § 99 and Ch. of Christ v. St. Paul Surplus Lines Ins. Co., 22 Mass. App. Ct. 407, 409 (Mass. App. Ct. 1986) and shall include an award of interest, "The company shall be liable for the payment of interest to the insured at a rate of one per cent over the prime interest rate on the agreed figure commencing thirty days after the date an executed proof of loss for such figure is received by the company, said interest to continue so long as the claim remains unpaid." Assignor(s) agrees to never knowingly interfere, in any way, with NEPSG's right to such an award of interest.

## 9. SAVINGS CLAUSE

If any section, paragraph, term, or set of terms of this Contract is to any extent illegal, otherwise invalid, or incapable of being legally enforced, such section, paragraph, term, or set of terms shall be excluded to the extent of such invalidity or unenforceability; every other section, paragraph, term, or set of terms contained herein shall remain in full force and effect; and, to the extent permitted and possible, the invalid or unenforceable section, paragraph, term, or set of terms shall be deemed replaced by a term that is valid and enforceable and that comes closest to expressing the intention of such invalid or unenforceable section, paragraph, term, or set of terms.

**New England Property Services Group, LLC**
1822 North Main Street, Second Floor Annex Suite 001
Fall River, Massachusetts 02720
**Cell:** (401) 419-1781 **Office:** (508) 567-5738

**Email:** Steven@NewEnglandPropertyServicesGroup.com
**Website:** www.NewEnglandPropertyServicesGroup.com
*MA HIC Reg # 186957 - Expiration February 7, 2025
*RI Contractor Reg # 41504 - Expiration October 1, 2023
*CT HIC Reg # 0650997 - Expiration March 31, 2024



## IRREVOCABLE ASSIGNMENT OF INSURANCE CLAIM BENEFITS & RIGHTS - CONTINUED

### 10. ACKNOWLEDGEMENT OF IRREVOCABLE ASSIGNMENT

IN WITNESS WHEREOF, the undersigned(s) has caused this transfer and irrevocable assignment of any and all lawful insurance proceeds, chose in action, and/or claims regarding the **Travelers Insurance** insurance claim officially reported and referenced by **Claim Number IMV8022**, covering insurable property located at **51 Pleasant Street Bellingham, MA  02019**, to be duly executed this **11th day of July 2023**.  This Assignment and Contract, if signed electronically as opposed to manually, remains valid and enforceable pursuant to Mass. Gen. Laws ch. 110G, § 7, its successors, and/or the common law of Massachusetts.

**ASSIGNOR(S):**

*Avrom Honig*
Avrom Honig (Jul 11, 2023 15:59 EDT)
Signature

Avrom Honig
Printed Name

Dated:

**ASSIGNOR(S):**

*Jessica Honig*
Jessica Honig (Jul 11, 2023 16:01 EDT)
Signature

Jessica Rose Waterman Honig
Printed Name

Dated:

**ASSIGNEE:    New England Property Services Group, LLC**

*Steven Ceceri*
Steven Ceceri (Jul 11, 2023 16:02 EDT)
Signature

Steven Ceceri / Owner & Operator
Printed Name

Dated:

Page 24

# Honig - Project Documentation to be Signed - 7-11-23

Final Audit Report                                                                 2023-07-11

| | |
|---|---|
| Created: | 2023-07-11 |
| By: | Steven Ceceri (steven@newenglandpropertyservicesgroup.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAA7ze9GAlHrn5uufMuntiSQe7Iq6TqJHg6 |

## "Honig - Project Documentation to be Signed - 7-11-23" History

Document created by Steven Ceceri (steven@newenglandpropertyservicesgroup.com)
2023-07-11 - 6:06:02 PM GMT- IP address: 24.61.136.21

Document emailed to avrom18@gmail.com for signature
2023-07-11 - 6:08:11 PM GMT

Email viewed by avrom18@gmail.com
2023-07-11 - 7:45:10 PM GMT- IP address: 174.196.200.154

Signer avrom18@gmail.com entered name at signing as Avrom Honig
2023-07-11 - 7:59:50 PM GMT- IP address: 174.196.200.154

Document e-signed by Avrom Honig (avrom18@gmail.com)
Signature Date: 2023-07-11 - 7:59:52 PM GMT - Time Source: server- IP address: 174.196.200.154

Document emailed to jrosewaterman@gmail.com for signature
2023-07-11 - 7:59:53 PM GMT

Email viewed by jrosewaterman@gmail.com
2023-07-11 - 8:00:00 PM GMT- IP address: 66.102.8.128

Signer jrosewaterman@gmail.com entered name at signing as Jessica Honig
2023-07-11 - 8:01:50 PM GMT- IP address: 172.58.222.177

Document e-signed by Jessica Honig (jrosewaterman@gmail.com)
Signature Date: 2023-07-11 - 8:01:52 PM GMT - Time Source: server- IP address: 172.58.222.177

Document emailed to Steven Ceceri (steven@newenglandpropertyservicesgroup.com) for signature
2023-07-11 - 8:01:53 PM GMT

**Adobe Acrobat Sign**

Email viewed by Steven Ceceri (steven@newenglandpropertyservicesgroup.com)
2023-07-11 - 8:02:24 PM GMT- IP address: 12.190.236.21

Document e-signed by Steven Ceceri (steven@newenglandpropertyservicesgroup.com)
Signature Date: 2023-07-11 - 8:02:47 PM GMT - Time Source: server- IP address: 12.190.236.21

Agreement completed.
2023-07-11 - 8:02:47 PM GMT

**Adobe Acrobat Sign**

# EXHIBIT 3

3:53

79%

 **Mass text** 2 ⌄

Tuesday, July 11

Avrom Honig - Thumbtack

My this is Steven the person I told you about the contractor Steven this is My from Travelers. We would like to find a time when everyone is available asap to continue this process.

4:04 PM

Avrom Honig - Thumbtack



Claims

**IMV8022**

This is in reference to

4:05 PM

Hi My

    

3:53

79%

< 　 **Mass text** 2 ⌄　　　⋮

This is in reference to
4:05 PM

Hi My,

We have now been assigned the claim legally so I will send you that paperwork later today through email. Please do confirm your email address and also provide me with your availability for an in-person inspection with several days and times as options.

I'm going to be setting up a dehumidif

View all 　　　　　　>



3:54

79%

**Me**
4:06 PM, Jul 11

**(No subject)**

Hi My,

We have now been assigned the claim legally so I will send you that paperwork later today through email. Please do confirm your email address and also provide me with your availability for an in-person inspection with several days and times as options.

I'm going to be setting up a dehumidifier and one fan in the bathroom on the first level which will be closed off and not being used for the time being just so you are aware.

I am in the process of working on a temporary emergency repair for the exterior to prevent additional water coming in to the bathroom and the kitchen where we identified it during my visit yesterday.

Please confirm. Thank you!

Copy text          Share          More

# EXHIBIT 4



Avrom Honig
41 Pleasant St
Bellingham, MA 02019



YOUR CLAIM
PROFESSIONAL

**MY PHAN**
mphan@travelers.com
Call **(774) 527-0251**

Claim number: **IMV8022**



Date of loss: **July 10, 2023**



Loss location:
**41 PLEASANT ST
BELLINGHAM MA 02019**



Insured name:    **AVROM HONIG**
Policy number:    **614262907-633-1**
Underwriting      **THE TRAVELERS**
Company:          **HOME AND**
                  **MARINE**
                  **INSURANCE**
                  **COMPANY**

July 13, 2023

Dear Avrom Honig,

# We're still looking into whether your claim is covered by your policy

We're following up on our recent conversation. You reported that your roof was damaged by a heavy rainstorm on July 10, 2023. We're continuing to look into the facts of your claim to determine whether coverage is provided by your policy for this loss.

While we research the claim and coverage, THE TRAVELERS HOME AND MARINE INSURANCE COMPANY reserves its rights under the policy and law, including the right to deny all or part of your claim that is not covered. We've included the relevant policy wording, which begins on the next page(s).

## Please review your policy

Refer to page(s) 14 of your HQ-P03 MA (05-17)[], which states:

**PROPERTY - CONDITIONS**
...
**2. Duties After Loss.** In case of a loss to covered property, we have no duty to provide coverage under this policy if the following duties are not performed. These duties must be performed either by you, an "insured" seeking coverage or a representative of either.

...
**e.** Cooperate with us in the investigation of a claim;
...



REPORTED

We ask that you review and comply with all conditions of the policy. Below you will find some of those duties that are relevant to this loss.

**HQ-300 MA (07-22)**
**PROPERTY – CONDITIONS**
When this Special Provision – Massachusetts is used with forms HQ-P02 MA, HQ-P03 MA, HQ-P04 MA and HQ-P06 MA, 2. Duties After Loss paragraphs d., f., g. and h. are replaced by the following:
2. Duties After Loss.
d. Protect the property from further damage; make reasonable and necessary repairs required to protect the property; keep an accurate record of repair expenditures. Some or all of these expenses may be reimbursable under this policy;
...
g. We may reasonable require you to:
(1) Exhibit the damaged property;
(2) Provide us with records and documents pertinent to the loss and permit us to make copies; and
(3) Submit to an examination under oath, while not in the presence of another "insured", and sign the same;
...
We'll continue to research your claim under a full reservation of rights until coverage is determined. In the meantime, we'll keep you updated on the status of your claim.

## Other things you should know

Your policy may have other terms, conditions and exclusions that apply to this claim. We do not waive any rights, including our right to deny coverage, for any other valid reason under the policy or law.

## Questions?

If you have any questions, please contact us.

P2176 7/21

 **TRAVELERS**

Avrom Honig
41 Pleasant St
Bellingham, MA 02019

**YOUR CLAIM PROFESSIONAL**

**MY PHAN**
mphan@travelers.com
Call **(774) 527-0251**

Claim number: **IMV8022**



Date of loss: **July 10, 2023**



Loss location:
**41 PLEASANT ST
BELLINGHAM MA 02019**

July 17, 2023

Dear Avrom Honig,

# We're making a payment of $3,266.83

We're following up on our recent email. This payment is based on everything we know about your claim and the terms of your policy, including any applicable deductible. We've also included an explanation about the portion of your claim that is not covered under your policy.

We estimated how much it would cost to repair or replace the damage or loss, and then subtracted depreciation to calculate your actual cash value.

We may pay up to $0.00 of the depreciation once you repair or replace the damaged items and send us the receipts or invoices.

If anything has changed or you have any questions about the estimate, let us know before you or your contractor(s) get started.



| Insured name: | **AVROM HONIG** |
| Policy number: | **614262907-633-1** |
| Underwriting Company: | **THE TRAVELERS HOME AND MARINE INSURANCE COMPANY** |

# Here's a breakdown of your payment

**Building Damages**

| | |
|---|---:|
| Full cost to repair or replace | $4,166.83 |
| Recoverable depreciation | - $0.00 |
| Non-recoverable depreciation | $0.00 |
| Your actual cash value | = $0.00 |
| Your deductible | - $900.00 |
| Previous payments we've made | $0.00 |
| What we're paying | = $3,266.83 |

**KEEP TRACK OF YOUR CLAIM WITH MYTRAVELERS**

There's no need to wait for the mail – get real-time updates online with **MyTravelers**

Log in to **MyTravelers.com** or download the app.

| REPORTED | IN PROCESS | WRAPPING UP |

P2286 7/21



## An Explanation of our coverage decision

You reported a claim that your roof was leaking due to a heavy rainstorm. We inspected the damages with you, Scott Chase, and Steven Ceceri on 07/14/2023. Our research found the damages to your roof are caused by wear and tear and/or deterioration of the roof caulking.

## What your policy says about this loss

The following section(s) from your policy apply to your loss.

HQ-P03 MA (05-17)
PERILS INSURED AGAINST
PROPERTY COVERAGE A – DWELLING PROPERTY
COVERAGE B – OTHER STRUCTURES
1. We insure against direct physical loss to property described in Property Coverages A and B.
2. We do not insure for loss:
a. Excluded under Property - Exclusions;
...
c. Caused by:
...
(6) Any of the following:
(a) Wear and tear, marring, scratching or deterioration;
(b) Mechanical breakdown, latent defect, inherent vice or any quality in property that causes it to damage or destroy itself;
(c) Smog, rot, rust or other corrosion;
...
Because the damages to your roof are caused by wear and tear, and/or deterioration, your policy does not provide coverage for this loss.

## If you have new information

Our decision is based on information and documentation currently known to us. If you have new information or documentation for us to consider, let us know as soon as possible.

## Other things you should know

Your policy may have other terms, conditions and exclusions that apply to this claim. We do not waive any rights, including our right to deny coverage, for any other valid reason under the policy or law.

## Suit Limitation

Please review the Suit Against Us condition of your policy as it contains important information about the period of time in which you may bring legal action.

## Information about expected electricity expenses

We've included expected electricity expenses from the mitigation work in the estimate. This amount belongs to you and not the contractor. The separate cost of the repairs set forth in your estimate does not include additional utility costs. If you believe your utility costs increased as a result of the repair of the covered damages, please let us know.

## Questions?

P2286 7/21

**New England Property Services Group, LLC**
1822 North Main Street, Second Floor Annex, Suite 001
Fall River, Massachusetts 02720
**Cell:** (401) 419-1781 **Fax:** (401) 566-4423
**Email:** Steven@NewEnglandPropertyServicesGroup.com
**Website:** www.NewEnglandPropertyServicesGroup.com
*MA HIC Reg # 186957 - Expiration February 7, 2025
*RI Contractor Reg # 41504 - Expiration October 1, 2023
*CT HIC Reg # 0650997 - Expiration March 31, 2024



| NEPSG REPLY TO TRAVELERS COVERAGE LETTER, ESTIMATE, AND RESERVATION OF RIGHTS LETTER DATED BETWEEN 7-14-2023 TO 7-17-2023 REGARDING CLAIM # IMV8022 | 7.24.2023 |
| --- | --- |

Dear My Phan and Stephen O'Leary,

It was nice meeting with you at 41 Pleasant Street in Bellingham, MA on July 14, 2023.  I wanted to follow up as I did get a number of emails forwarded to me from Avrom Honig, the Policyholder who assigned all Rights, Title, and Interest in Claim # IMV8022 to New England Property Services Group, LLC (NEPSG), to which My Phan, was directly handed a signed printed copy of this Assignment of Claim with Direction to Pay.

Please allow this email to make the following requests:

1. Place a stop payment on the check # 32024482 made payable to Avrom Honig on July 14, 2023. This payment was issued after you were notified that NEPSG had a legal Assignment of Claim in place with Direction of Payment included, a copy of which is attached again for your reference. This provided Travelers with instructions on paying NEPSG and not including Avrom Honig, which is also provided for in Policy Number which can be referenced below:

   **6. Loss Payment is replaced by the following:**
   **6. Loss Payment. We will adjust all losses with you.** We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable within 30 days after we receive your proof of loss.

   **All applicable sales taxes are considered a part of any loss under this policy.**

   **We will pay you interest at the rate of one percent over the prime interest rate on the agreed figure commencing 30 days after the date of an executed proof of loss for such figure is received by us. This interest is to continue as long as the claim remains unpaid.**


   **CONTINUED ON THE NEXT PAGE**

**Page 1**

**New England Property Services Group, LLC**
1822 North Main Street, Second Floor Annex, Suite 001
Fall River, Massachusetts 02720
**Cell:** (401) 419-1781 **Fax:** (401) 566-4423
**Email:** Steven@NewEnglandPropertyServicesGroup.com
**Website:** www.NewEnglandPropertyServicesGroup.com
*MA HIC Reg # 186957 - Expiration February 7, 2025
*RI Contractor Reg # 41504 - Expiration October 1, 2023
*CT HIC Reg # 0650997 - Expiration March 31, 2024



2. The above is what we understand to be a Breach of Contract and an act of Bad Faith as the premium that Avrom Honig provided to Travelers provided him with responsibilities as to what to do "after a loss" as well as the benefits he would receive and be able to use, such as having Travelers issue payment to someone other than himself, as the word "OR" is included, which does not have the same meaning as the word "AND" in this context.

3. Regarding the Estimate you drafted, approved, and had a payment issued based on the information contained in this estimate, I would like to know why industry standard Overhead & Profit was excluded? The policy notes that both Overhead & Profit may be subject to depreciation, along with listed Materials, Labor, and applicable Sales Tax, so I would believe that Travelers believes that Overhead & Profit are to be included in all RCV Policies issued, which is the case for this Policy, so please advise why both Overhead & Profit were excluded.

4. Regarding the Estimate for the Kitchen portion, please confirm exactly where your 4 Square Feet of Ceiling Material will be removed showing a diagram that includes the kitchen light and wall cabinets.

5. Regarding the Estimate for the Bathroom portion, please confirm why the flooring material was not included for removal and replacement as I documented elevated moisture and it appears the floating floor needs to be replaced to ensure that any trapped moisture below the flooring is removed.

6. Regarding the Estimate for both Bathroom and Kitchen areas, can you please confirm that you have a Contractor that would be ready, willing, and able to complete the work that you provided in your "scope of work" which appears in your Estimate, including a contractor that will come out to patch up to 4 square feet of drywall, patch, and make ready for painting for the amount of $86.04, such as is included for Line Item # 3 on Page 3 of your Estimate which relates to the Kitchen area?

7. Provide all photos of your Moisture Meter Readings from the Bathroom & Kitchen areas to which you wrote an Estimate.

**CONTINUED ON THE NEXT PAGE**

**New England Property Services Group, LLC**
1822 North Main Street, Second Floor Annex, Suite 001
Fall River, Massachusetts 02720
**Cell:** (401) 419-1781 **Fax:** (401) 566-4423
**Email:** Steven@NewEnglandPropertyServicesGroup.com
**Website:** www.NewEnglandPropertyServicesGroup.com
*MA HIC Reg # 186957 - Expiration February 7, 2025
*RI Contractor Reg # 41504 - Expiration October 1, 2023
*CT HIC Reg # 0650997 - Expiration March 31, 2024



8.  Provide all relevant documentation to confirm your Training and Education with industry training organizations, such as the Institute of Inspection Cleaning and Restoration Certification, also known as the IICRC.

9.  Regarding the "roof" portion of the area of damage, please advise why the roof was not included in the scope of work.  Assuming Scott Chase provides commentary on why the damage that began on the roof and ended up in the interior living space should not be covered under this policy.

10. Provide NEPSG with the Scott Chase inspection reports from his 2 inspections conducted on July 13, 2023, between 7AM and 8:30AM EST as well as the inspection report from the date he was in my presence as well as yours on July 14, 2023.

11. Provide NEPSG with Scott Chase's OSHA Training Certification, which at a minimum should be OSHA 10, which would provide education on Ladder Safety.

12. Provide Stephen O'Leary's OSHA Training Certification, which at a minimum should be OSHA 10, which would provide education on Ladder Safety.

I ask that you please provide a reply to my questions above no later than Wednesday July 26, 2023, at 5PM EST.  Thank you!

Sincerely,

Steven V. Ceceri
Owner & Operator
New England Property Services Group, LLC

Page 3

**New England Property Services Group, LLC**

1822 North Main Street, Second Floor Annex Suite 001
Fall River, Massachusetts 02720
**Cell:** (401) 419-1781 **Office:** (508) 567-5738
**Email:** Steven@NewEnglandPropertyServicesGroup.com
**Website:** www.NewEnglandPropertyServicesGroup.com
*MA HIC Reg # 186957 - Expiration February 7, 2025
*RI Contractor Reg # 41504 - Expiration October 1, 2023
*CT HIC Reg # 0650997 - Expiration March 31, 2024



| DIRECTION TO PAY FORM | 7.11.2023 |
|---|---|

HOMEOWNER/S                                                           PROPERTY PHOTO

Avrom Honig
Jessica Rose Waterman Honig
41 Pleasant Street
Bellingham, MA  02019
Avrom's Cell: (508) 735-8452
Avrom's Email: Avrom18@gmail.com
Jessica's Email: JRoseWaterman@gmail.com



## DIRECTION TO PAY:

I/We authorize and direct **Travelers Insurance** to **DIRECTLY** pay my/our chose-in-action assignee, NEW ENGLAND PROPERTY SERVICES GROUP, LLC, all insurance proceeds issued as payments relating to **Claim Number IMV8022 (hereinafter "Claim")**, which includes any payments issued, but which have not been deposited by me/us, and of which NEW ENGLAND PROPERTY SERVICES GROUP, LLC requests to have the payment(s) issued to them in accordance with the Loss Payment Provision within my/our Policy which offers the ability to direct **Travelers Insurance** to pay someone that "is legally entitled to receive payment", which in this case, NEW ENGLAND PROPERTY SERVICES GROUP, LLC is legally entitled to receive payment. Please further note, payment issued to NEW ENGLAND PROPERTY SERVICES GROUP, LLC should be not list my/our name(s) as this DIRECTION TO PAY does hereby remove me/us from being named as a Payee with my/our full understanding.

I/We acknowledge that I/We have not assigned my/our insurance policy to NEW ENGLAND PROPERTY SERVICES GROUP, LLC. Instead, I/We have only assigned my/our rights, title, benefits, choses in action, as well as any and all proceeds related to the Claim to NEW ENGLAND PROPERTY SERVICES GROUP, LLC. The Irrevocable Assignment of Insurance Claim Benefits & Rights that follows, and that is hereby incorporated by reference hereto, will further elaborate on the rights, title, choses in actions and benefits assigned to NEW ENGLAND PROPERTY SERVICES GROUP, LLC.

[Continued on next page]

**Page 16**

AH
AH

Jh
Jh

**New England Property Services Group, LLC**
1822 North Main Street, Second Floor Annex Suite 001
Fall River, Massachusetts 02720
**Cell:** (401) 419-1781 **Office:** (508) 567-5738
**Email:** Steven@NewEnglandPropertyServicesGroup.com
**Website:** www.NewEnglandPropertyServicesGroup.com
*MA HIC Reg # 186957 - Expiration February 7, 2025
*RI Contractor Reg # 41504 - Expiration October 1, 2023
*CT HIC Reg # 0650997 - Expiration March 31, 2024



## DIRECTION TO PAY - CONTINUED

In the event the insurance or adjustment company, for whatever reason, mails the settlement check and/or insurance proceeds to me/us, I/we hereby agree to notify NEW ENGLAND PROPERTY SERVICES GROUP, LLC immediately and deliver the settlement check and/or proceeds to NEW ENGLAND PROPERTY SERVICES GROUP, LLC within twenty-four (24) hours of my/our receipt of said settlement check and/or insurance proceeds.

I/We recognize that NEPSG, LLC is NOT a Public Adjuster working on my/our behalf. Rather, I/We understand that NEPSG, LLC is the assignee and equitable owner of this Claim and that NEPSG, LLC works on its own behalf.

| | | | |
|---|---|---|---|
| **Avrom Honig** | **Owner** | *Avrom Honig* (Jul 11, 2023 15:59 EDT) | |
| Printed Name of Customer | Title of Customer | Signature of Customer | Signature Date |
| **Jessica Rose Waterman Honig** | **Owner** | *Jessica Honig* (Jul 11, 2023 16:01 EDT) | |
| Printed Name of Customer | Title of Customer | Signature of Customer | Signature Date |

**New England Property Services Group, LLC**        **Accepted By:** *Steven Ceceri* (Jul 11, 2023 16:02 EDT)
**1822 North Main Street, Suite 001**                                Steven Ceceri          Accepted Date
**Fall River, MA 02720**
**Direct: (401) 419-1781**
**Email: Steven@NewEnglandPropertyServicesGroup.com**

Chose-in-action Assignee:    NEW ENGLAND PROPERTY SERVICES GROUP, LLC

Chose-in-action Assignee Tax ID:    82-1729769

Chose-in-action Assignee Address:    1822 North Main Street, Suite 001 ~ Fall River, MA 02720

Chose-in-action Assignee Phone:    (401) 419-1781

Chose-in-action Assignee Contact:    Steven Ceceri  / Owner & Operator

AH

Jh

**New England Property Services Group, LLC**
1822 North Main Street, Second Floor Annex Suite 001
Fall River, Massachusetts 02720
**Cell:** (401) 419-1781 **Office:** (508) 567-5738
**Email:** Steven@NewEnglandPropertyServicesGroup.com
**Website:** www.NewEnglandPropertyServicesGroup.com
*MA HIC Reg # 186957 - Expiration February 7, 2025
*RI Contractor Reg # 41504 - Expiration October 1, 2023
*CT HIC Reg # 0650997 - Expiration March 31, 2024



## IRREVOCABLE ASSIGNMENT OF INSURANCE CLAIM BENEFITS & RIGHTS

### 1. DESCRIPTION OF RIGHTS ASSIGNED

The undersigned Assignor(s) and the Assignee, New England Property Services Group, LLC, hereinafter referred to as "NEPSG", for and in consideration of the performance of the work pursuant to the Work Authorization (aka the Contract) already executed by Assignor(s) and NEPSG, as well as any change orders executed thereafter, and for other good and valuable consideration, the receipt and sufficiency whereof is hereby mutually acknowledged, and intending to be legally bound, does hereby irrevocably transfer, assign and set over to NEPSG, all of the lawful rights, title and interest of the Assignor(s) in any claim, proceeds, benefits, chose in action, and/or interest Assignor(s) has under any insurance policy, including any 3rd party insurance policy, regarding the loss and/or damage to the property located at **41 Pleasant Street Bellingham, MA 02019**, relating to the certain insurance claim(s) officially reported and/or referenced to **Travelers Home and Marine Insurance Company**, hereinafter referred to as "**Insurance Company**", with a Date of Loss of **July 10, 2023** as **Claim Number IMV8022** , regarding **Policy Number 614262907 633 1,** covering insurable property damage sustained during Assignor(s)' ownership thereof.

Assignor(s) hereby irrevocably assigns all Assignor(s)' lawful rights, title, benefits, and/or proceeds with regard to **Claim Number IMV8022** to NEPSG. If the Claim(s) and/or Policy Number(s) are not available upon the initial signing of this Assignment, said Claim(s) and/or Policy Number(s) shall be provided by the Assignor(s) to NEPSG, once said information is made available to the Assignor(s).  Once Assignor(s) provides the said Claim and/or Policy Number(s) to NEPSG, said NEPSG may, in its sole discretion, update this Assignment through amendment, whereby said Claim and Policy Number(s) will be effectively added and incorporated hereto.  In any case, this Assignment shall not be considered void or voidable due to the fact that said Claim(s) and/or Policy Number(s) have not been included in this Assignment.

Assignor(s) intends to and does hereby irrevocably transfer, assign and set over all lawful rights, title and interest in any insurance proceeds, benefits, chose in action, cause of action, and/or claim, at law and/or equity, relating to the above referenced insurance claim(s), including, but not limited to, any and all claims Assignor(s) has or may have against any insurance company regarding the above referenced insurance claim(s), including, but not limited to, Assignor(s)' claim or claims for breach of contract, breach of good faith and fair dealing, and/or acts of bad faith, as well as any other violation(s) of or noncompliance with laws, regulations, and/or statutes that may be related to any issues involved

AH

JH



**New England Property Services Group, LLC**
1822 North Main Street, Second Floor Annex Suite 001
Fall River, Massachusetts 02720
**Cell:** (401) 419-1781 **Office:** (508) 567-5738
**Email:** Steven@NewEnglandPropertyServicesGroup.com
**Website:** www.NewEnglandPropertyServicesGroup.com
*MA HIC Reg # 186957 - Expiration February 7, 2025
*RI Contractor Reg # 41504 - Expiration October 1, 2023
*CT HIC Reg # 0650997 - Expiration March 31, 2024



## IRREVOCABLE ASSIGNMENT OF INSURANCE CLAIM BENEFITS & RIGHTS - CONTINUED

in the resolution of the above referenced insurance claim(s). Assignor(s) agrees and understands that this transfer and assignment of all lawful rights, title and interest in any insurance proceeds, chose in action, and/or claim(s) as referenced above related to the loss and/or damage to Assignor(s)' property referenced above to NEPSG constitutes a complete relinquishment of the Assignor(s)' rights and control over the relevant insurance proceeds, benefits, chose in action, and/or claim(s) and that the Assignor(s) will have no right to revoke and/or control the disposition thereof.

2. **ASSIGNMENT OF POST-LOSS CLAIM(S) IS NOT AN ASSIGNMENT OF POLICY**

<u>THE ASSIGNOR(S) RETAINS FULL OWNERSHIP OF ANY AND ALL ABOVE REFERENCED INSURANCE POLICY/POLICIES.</u> THIS CONTRACT IS <u>NOT</u> AN ASSIGNMENT OF THE ABOVE REFERENCED POLICY/POLICIES. THE ASSIGNOR(S) IS HEREBY IRREVOCABLY ASSIGNING <u>ONLY</u> THE LAWFUL, POST-LOSS RIGHTS, INSURANCE PROCEEDS, BENEFITS, CHOSE IN ACTION, AND/OR CLAIMS AT LAW AND/OR EQUITY INVOLVING THE ABOVE REFERENCED INSURANCE CLAIM(S) AND/OR THE RESOLUTION OF SAID INSURANCE CLAIM(S). THE ASSIGNOR RECOGNIZES THAT SUCH POST-LOSS ASSIGNMENTS ARE VALID, PURSUANT TO THE M.A. SUPREME COURT'S RULING IN <u>BLOOM V. NEW BRUNSWICK FIRE INS. CO.</u>, 268 MASS. 28 (MASS. 1929), WHICH STATES, "THE ASSIGNEE OF A NON-NEGOTIABLE CHOSE IN ACTION, *SUCH AS THE CLAIM FOR THE LOSS, IF ANY, PAYABLE ON A POLICY OF INSURANCE*, CAN MAINTAIN AN ACTION IN HIS OWN NAME". ASSIGNOR RECOGNIZES THAT THIS ASSIGNMENT IS VALID PURSUANT TO THE ASSIGNMENT VALIDITY TESTS DELINEATED IN <u>BOSTON V. AETNA LIFE INS. CO.</u>, 399 MASS. 569 (MASS. 1987) AND <u>COSMOPOLITAN TR. CO. V. LEONARD WATCH CO.</u>, 249 MASS. 14, 19 (MASS. 1924), WHICH STATES, "A VALID ASSIGNMENT MAY BE MADE BY ANY WORDS OR ACTS WHICH FAIRLY INDICATE AN INTENTION TO MAKE THE ASSIGNEE THE OWNER OF A CLAIM," SINCE THIS ASSIGNMENT CLEARLY EVIDENCES ASSIGNOR(S)' INTENT TO TRANSFER ALL ASSIGNOR(S)' RIGHTS, TITLE, AND INTEREST IN ANY INSURANCE PROCEEDS, BENEFITS, CHOSE IN ACTION, CAUSE OF ACTION, AND/OR CLAIM, AT LAW AND/OR EQUITY, RELATING TO THE ABOVE REFERENCED INSURANCE CLAIM(S). ASSIGNOR(S) UNDERSTANDS, PURSUANT TO <u>BOSTON SAFE DEPOSIT TRUST CO. V. ADAMS, 224 MASS. 442 (MASS. 1916)</u> AND <u>GRAVES EQUIPMENT, INC. V. M. DEMATTEO CONSTRUCTION CO.</u>, 397 MASS. 110 (MASS. 1986), THAT ONCE THIS ASSIGNMENT IS COMPLETE, NEPSG LEGALLY "STANDS IN THE SHOES OF THE ASSIGNOR" AND "IN CASE OF THE ASSIGNMENT OF AN EQUITY OR OF A CHOSE IN ACTION, AN ASSIGNEE GETS AND CAN GET NO GREATER RIGHTS THAN HIS ASSIGNOR HAD." THE ASSIGNOR(S) RECOGNIZES THAT NEPSG HEREBY LEGALLY STANDS IN ASSIGNOR(S)' SHOES AND IS THE REAL PARTY IN INTEREST WITH REGARD TO THE ABOVE REFERENCED INSURANCE CLAIM(S), PURSUANT TO THE M.A. SUPREME COURT'S RULING IN <u>BLOOM V. NEW BRUNSWICK FIRE INS. CO.</u>, 268 MASS. 28

AH

JH

**New England Property Services Group, LLC**
1822 North Main Street, Second Floor Annex Suite 001
Fall River, Massachusetts 02720
**Cell:** (401) 419-1781 **Office:** (508) 567-5738
**Email:** Steven@NewEnglandPropertyServicesGroup.com
**Website:** www.NewEnglandPropertyServicesGroup.com
*MA HIC Reg # 186957 - Expiration February 7, 2025
*RI Contractor Reg # 41504 - Expiration October 1, 2023
*CT HIC Reg # 0650997 - Expiration March 31, 2024



(MASS. 1929), THE UNITED STATES SUPREME COURT'S RULING IN <u>SPRINT COMMUNICATIONS CO. V. APCC SERVICES, INC.</u>, 554 U.S. 269 (2008), AND MASS. R. CIV. P. 17.

## IRREVOCABLE ASSIGNMENT OF INSURANCE CLAIM BENEFITS & RIGHTS - CONTINUED

### 3.  NEPSG IS NOT ACTING AS A PUBLIC ADJUSTER UNDER MASS. GEN. LAWS CH. 175 § 162

THE ASSIGNOR(S) FURTHER RECOGNIZES THAT <u>NEPSG IS NOT A PUBLIC ADJUSTER</u>, WHICH MASS. GEN. LAWS CH. 175 § 162 DEFINES AS: "*WHOEVER, FOR COMPENSATION, NOT BEING AN ATTORNEY AT LAW ACTING IN THE USUAL COURSE OF HIS PROFESSION, DIRECTLY OR INDIRECTLY SOLICITS FROM AN INSURED OR THE REPRESENTATIVE OF THE INSURED, OR PERFORMS SERVICES PURSUANT TO AN AGREEMENT, ENGAGEMENT OR UNDERTAKING TO REPRESENT THE INSURED IN CONNECTION WITH THE ASSESSMENT OF DAMAGES, NEGOTIATION, SETTLEMENT, APPRAISAL OR REFERENCE OF A LOSS UNDER A FIRE INSURANCE POLICY, HOMEOWNERS INSURANCE POLICY, COMMERCIAL MULTI-PERIL INSURANCE POLICY, BUSINESS INTERRUPTION INSURANCE POLICY, FIDELITY BOND OR CRIME INSURANCE POLICY, INLAND OR OCEAN MARINE INSURANCE POLICY, OR OTHER PROPERTY DAMAGE INSURANCE COVERAGE OF ANY SORT, SHALL BE A PUBLIC INSURANCE ADJUSTER.*" THE ASSIGNOR UNDERSTANDS THAT NEPSG IS NOT ASSIGNOR(S)' AGENT AND/OR FIDUCIARY AND DOES NOT ACT ON BEHALF OF THE ASSIGNOR(S) SINCE NEPSG HAS RECEIVED AN IRREVOCABLE ASSIGNMENT OF INSURANCE CLAIM BENEFITS & RIGHTS AND IS NOW STANDING IN PLACE OF THE ASSIGNOR(S); OR, IN OTHER WORDS, NEPSG HAS REPLACED THE ASSIGNOR WITH REGARD TO THE AFOREMENTIONED CLAIM(S) AND, ACCORDINGLY, NEPSG WILL BE SOLEY WORKING ON ITS OWN BEHALF.

### 4.  INSURANCE COMPANY SHALL COMMUNICATE EXCLUSIVELY WITH NEPSG REGARDING THE ASSIGNED CLAIM(S)

Assignor(s) hereby directs the **Insurance Company** to communicate **EXCLUSIVELY** with NEPSG as the **SOLE POINT OF CONTACT** regarding the negotiation, settlement, and/or resolution of the aforementioned claim(s), since Assignor(s) has assigned to NEPSG all Assignor(s)' lawful rights, title and interest in any insurance proceeds, benefits, chose in action, cause of action, and/or claim, at law and/or equity, relating to the above referenced insurance claim(s) — with such assignment being expressly upheld and authorized by the M.A. Supreme Court's rulings in <u>Bloom v. New Brunswick Fire Ins. Co.</u>, 268 Mass. 28 (Mass. 1929) and <u>Graves Equipment, Inc. v. M. Dematteo Construction Co.</u>, 397 Mass. 110 (Mass. 1986). Assignor(s) hereby further directs the **Insurance Company** to communicate **EXCLUSIVELY** with NEPSG as the **SOLE POINT OF CONTACT** regarding the negotiation, settlement, and/or resolution of the aforementioned claim(s), since NEPSG is now legally standing in the shoes of Assignor(s) as the real party in interest and Assignor(s) has no authority to control the disposition of the

AH

**New England Property Services Group, LLC**
1822 North Main Street, Second Floor Annex Suite 001
Fall River, Massachusetts 02720
**Cell:** (401) 419-1781 **Office:** (508) 567-5738

**Email:** Steven@NewEnglandPropertyServicesGroup.com
**Website:** www.NewEnglandPropertyServicesGroup.com
*MA HIC Reg # 186957 - Expiration February 7, 2025
*RI Contractor Reg # 41504 - Expiration October 1, 2023
*CT HIC Reg # 0650997 - Expiration March 31, 2024



aforementioned claim(s). In any future communications with **Insurance Company**, Assignor(s) hereby agrees to notify **Insurance Company** to communicate **EXCLUSIVELY** with NEPSG as the **SOLE POINT OF CONTACT** regarding the negotiation, settlement, and/or resolution of the aforementioned claim(s).

## IRREVOCABLE ASSIGNMENT OF INSURANCE CLAIM BENEFITS & RIGHTS - CONTINUED

Assignor(s) understands that any contact with Assignor(s) that is initiated by Assignor(s)' **Insurance Company** regarding the assigned claim(s) constitutes a potential interference with this Assignment and potentially tortious interference, in violation of the M.A. Supreme Court's ruling in Psy-Ed Corp. v. Klein, 459 Mass. 697, 715-16 (Mass. 2011). Assignor(s) recognizes that any refusal, in whole or in part, by Assignor(s)' **Insurance Company** to accept the terms and/or validity of this lawful Assignment constitutes potential evidence of bad faith and/or breach of contract on the part of Assignor(s)' **Insurance Company**. For these reasons, Assignor(s) agrees to notify NEPSG within twenty-four (24) hours of any contact and/or communication involving Assignor(s) and Assignor(s)' **Insurance Company** that is initiated by Assignor(s)' **Insurance Company**, whether it be by phone, email, mail, text, in-person conversation, and/or any other type of communication. Assignor(s) will then promptly provide a copy of said communication to NEPSG or, if said communication can't be copied, then Assignor(s) will promptly provide a description of said communication. NEPSG will, in its sole discretion and at intervals during the claim process, keep Assignor(s) informed regarding the resolution and/or settlement of the above referenced insurance claim.

5. **INSURNACE COMPANY HAS AN OBLIGATION TO NEPSG AS ASSIGNEE TO PROVIDE NEPSG WITH A DUTY OF GOOD FAITH AND FAIR DEALING**

Assignor(s) hereby directs the **Insurance Company** to take notice that **Assignor(s) has hereby assigned the duty of good faith and fair dealing** that the **Insurance Company** owed to Assignor(s) prior to this Assignment and that such an assignment of the duty of good faith and fair dealing is recognized as valid and enforceable by the M.A. Appeals Court in Gore v. Arbella Mutual Insurance Company, 77 Mass. App. Ct. 518 (Mass. App. Ct. 2010). Assignor(s) hereby directs the **Insurance Company** to take notice that, pursuant to Gore v. Arbella Mutual Insurance Company, 77 Mass. App. Ct. 518 (Mass. App. Ct. 2010), this duty of good faith and fair dealing is a fiduciary obligation that includes a duty to consider seriously NEPSG's reasonable offer to settle within the policy limits and to refrain from acts that demonstrate greater concern for the **Insurance Company's** monetary interest than the financial risk attendant to Assignor(s)' situation. Assignor(s) hereby directs the **Insurance Company** to take notice that, pursuant to said duty of good faith and fair dealing, the **Insurance Company** must communicate **EXCLUSIVELY** with NEPSG as the **SOLE POINT OF CONTACT** and real party in interest regarding the negotiation, settlement, and/or resolution of the aforementioned claim(s) and must list New England

**Page 21**

AH

Jh



**New England Property Services Group, LLC**
1822 North Main Street,,Second Floor Annex Suite 001
Fall River, Massachusetts 02720
**Cell:** (401) 419-1781 **Office:** (508) 567-5738
**Email:** Steven@NewEnglandPropertyServicesGroup.com
**Website:** www.NewEnglandPropertyServicesGroup.com
*MA HIC Reg # 186957 - Expiration February 7, 2025
*RI Contractor Reg # 41504 - Expiration October 1, 2023
*CT HIC Reg # 0650997 - Expiration March 31, 2024



Property Services Group, LLC as payee on all payments made by the **Insurance Company** regarding the aforementioned claim(s), with said payments being made by <u>check</u> and mailed to NEPSG at 429 Plymouth Street, Middleboro, MA 02346.

## IRREVOCABLE ASSIGNMENT OF INSURANCE CLAIM BENEFITS & RIGHTS - CONTINUED

### 6. NEPSG'S RIGHT TO RECEIVE ALL INSURANCE CLAIM PROCEEDS AND BE NAMED AS A PAYEE

With regard to the processing and/or payment of any proceeds being issued by the **Insurance Company** related to the above referenced claim(s), so as not to delay said processing and/or payment, Assignor(s) hereby authorizes and directs NEPSG to endorse any and all documents related to the aforementioned claim(s), as if NEPSG were in fact Assignor(s), even if said documents pertain to Assignor(s). Assignor(s) hereby directs the **Insurance Company** to release any and all information requested by NEPSG, NEPSG's representative, and/or NEPSG's attorney for the purpose of obtaining actual benefits to be paid by the **Insurance Company** for services rendered or to be rendered. Assignor(s) hereby directs the **Insurance Company** to list New England Property Services Group, LLC as payee on all payments made by the **Insurance Company** regarding the aforementioned claim(s) and directs that said payments being made by <u>check</u> and mailed to NEPSG at 429 Plymouth Street, Middleboro, MA 02346.

Assignor(s) understands that Assignor(s)' **Insurance Company** and/or a 3rd party insurance company may mistakenly or intentionally pay the insurance proceeds directly to the Assignor(s) and/or Assignor(s)' mortgage lender. In such a circumstance where Assignor(s)' **Insurance Company** and/or a 3rd party insurance company mistakenly or intentionally pays the insurance proceeds directly to the Assignor(s) and/or Assignor(s)' mortgage lender, Assignor(s) will fully cooperate with NEPSG to have said insurance proceeds directed, made payable to, and/or released to NEPSG in full and without delay, as further described within the Direction of Payment section of the Contract.

### 7. INSURER'S DUTY MAKE A PROMPT AND FAIR SETTLEMENT OFFER

Assignor(s) recognizes that, pursuant to Mass. Gen. Laws ch. 176D § 3(f), the **Insurance Company** has the duty to "effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." Assignor(s) recognizes that, pursuant to Mass. Gen. Laws ch. 176D § 3(g), the **Insurance Company** acts in bad faith if it compels, "insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds."

AH
JH

**New England Property Services Group, LLC**
1822 North Main Street, Second Floor Annex Suite 001
Fall River, Massachusetts 02720
**Cell:** (401) 419-1781 **Office:** (508) 567-5738
**Email:** Steven@NewEnglandPropertyServicesGroup.com
**Website:** www.NewEnglandPropertyServicesGroup.com
*MA HIC Reg # 186957 - Expiration February 7, 2025
*RI Contractor Reg # 41504 - Expiration October 1, 2023
*CT HIC Reg # 0650997 - Expiration March 31, 2024



### 8. NEPSG'S RIGHT TO DEMAND REFERENCE FOR THE ASSIGNED CLAIM(S) UNDER THE POLICY

Assignor(s) agrees to cooperate with NEPSG should NEPSG need to resort to legal proceedings to enforce its rights under this Assignment. Such cooperation shall include, but not be limited to, recognizing NEPSG's right to initiate any Reference and/or other legal and/or contractual proceedings involving the assigned insurance claim(s). Assignor(s) agrees to sign any additional documentation, including an engagement letter with legal counsel, which will allow NEPSG to pursue said Reference and/or other legal proceedings, at NEPSG's expense. Assignor(s) acknowledges that Assignor(s) may be named as a party along with NEPSG in said Reference and/or legal proceedings.

With regard to any Reference process involving the assigned insurance claim(s), Assignor(s) understands and recognizes that said Appraisal will be governed pursuant to Mass. Gen. Laws ch. 175 § 99 and Ch. of Christ v. St. Paul Surplus Lines Ins. Co., 22 Mass. App. Ct. 407, 409 (Mass. App. Ct. 1986) and shall include an award of interest, "The company shall be liable for the payment of interest to the insured at a rate of one per cent over the prime interest rate on the agreed figure commencing thirty days after the date an executed proof of loss for such figure is received by the company, said interest to continue so long as the claim remains unpaid." Assignor(s) agrees to never knowingly interfere, in any way, with NEPSG's right to such an award of interest.

### 9. SAVINGS CLAUSE

If any section, paragraph, term, or set of terms of this Contract is to any extent illegal, otherwise invalid, or incapable of being legally enforced, such section, paragraph, term, or set of terms shall be excluded to the extent of such invalidity or unenforceability; every other section, paragraph, term, or set of terms contained herein shall remain in full force and effect; and, to the extent permitted and possible, the invalid or unenforceable section, paragraph, term, or set of terms shall be deemed replaced by a term that is valid and enforceable and that comes closest to expressing the intention of such invalid or unenforceable section, paragraph, term, or set of terms.

AH
AH

Jh
Jh



New England Property Services Group, LLC
1822 North Main Street, Second Floor Annex Suite 001
Fall River, Massachusetts 02720
**Cell:** (401) 419-1781 **Office:** (508) 567-5738
**Email:** Steven@NewEnglandPropertyServicesGroup.com
**Website:** www.NewEnglandPropertyServicesGroup.com
*MA HIC Reg # 186957 - Expiration February 7, 2025
*RI Contractor Reg # 41504 - Expiration October 1, 2023
*CT HIC Reg # 0650997 - Expiration March 31, 2024



## IRREVOCABLE ASSIGNMENT OF INSURANCE CLAIM BENEFITS & RIGHTS - CONTINUED

### 10. ACKNOWLEDGEMENT OF IRREVOCABLE ASSIGNMENT

IN WITNESS WHEREOF, the undersigned(s) has caused this transfer and irrevocable assignment of any and all lawful insurance proceeds, chose in action, and/or claims regarding the **Travelers Insurance** insurance claim officially reported and referenced by **Claim Number IMV8022**, covering insurable property located at **51 Pleasant Street Bellingham, MA 02019**, to be duly executed this **11th day of July 2023**. This Assignment and Contract, if signed electronically as opposed to manually, remains valid and enforceable pursuant to Mass. Gen. Laws ch. 110G, § 7, its successors, and/or the common law of Massachusetts.

**ASSIGNOR(S):**

*Avrom Honig*
Avrom Honig (Jul 11, 2023 15:59 EDT)
Signature

Avrom Honig
Printed Name

Dated:

**ASSIGNOR(S):**

*Jessica Honig*
Jessica Honig (Jul 11, 2023 16:01 EDT)
Signature

Jessica Rose Waterman Honig
Printed Name

Dated:

**ASSIGNEE:    New England Property Services Group, LLC**

*Steven Ceceri*
Steven Ceceri (Jul 11, 2023 16:02 EDT)
Signature

Steven Ceceri / Owner & Operator
Printed Name

Dated:

Page 24

AH

JH

**Steven Ceceri**

| | |
|---|---|
| **From:** | Steven Ceceri |
| **Sent:** | Monday, August 14, 2023 12:47 PM |
| **To:** | Phan, My S; O'Leary, Stephen |
| **Cc:** | Tom Alves; Michael Brady; Angela Tieng; Athena Arruda |
| **Subject:** | Travelers Claim #: IMV8022001H - 41 Pleasant Street Bellingham, MA - Demand For Reference under M.G.L. c. 175 § 99 |

| **Tracking:** | **Recipient** | **Delivery** |
|---|---|---|
| | Phan, My S | |
| | O'Leary, Stephen | |
| | Tom Alves | Delivered: 8/14/2023 12:47 PM |
| | Michael Brady | Delivered: 8/14/2023 12:47 PM |
| | Angela Tieng | Delivered: 8/14/2023 12:47 PM |
| | Athena Arruda | Delivered: 8/14/2023 12:47 PM |

Good Afternoon Travelers Insurance,

Please allow this email to serve as New England Property Services Group, LLC's (NEPSG) Demand For Reference under M.G.L. c. 175 § 99, et seq., due a present disagreement as to the Amount of Loss related to these claims. Reference to the pertinent Policy Provision included in Policy Number 0DJW34614262907633 1 is below:

**Paragraph 7. Appraisal is replaced by the following:**
**7. Arbitration. If there is a disagreement as to the dollar amount of loss under the Property Coverage Section, Massachusetts law provides a method for settling the disagreement. If requested, the dispute shall be referred to a three member board of referees. They are selected and must act according to procedures set by the law. Their decision as to the amount of loss will be binding. This board does not make decisions about matters of coverage or fault.**

As you are aware based on documentation already in the Claim Files, NEPSG is the lawful Chose in Action Assignee of the Claims and as such, has the legal rights to Demand Reference in compliance with the Conditions of the Policy and to use any other remedy available to resolve the dispute over the Amount of Loss.

With the Demand for Reference now in place from NEPSG, please be advised that in accordance with M.G.L. c. 175 § 99, we await your timely reply.

**Additionally, NEPSG would like to have the following policy language defined with citation as to where we can further reference the definition that NEPSG is seeking your response of:**

1. The phrase "dollar amount of Loss"
2. The word "Loss"
3. The phrase "If requested"
4. the phrase "legally entitled to receive payment" as noted under the Policy Condition # 6, unless the Loss Payment Section under Section I - Property Conditions

Thank you!

Steven V. Ceceri

1

Owner & Operator
New England Property Services Group, LLC
Office: 1822 North Main Street, Second Floor Annex, Suite 001 ~ Fall River, MA 02720
Direct: 401-419-1781 ~ Office: 508-567-5738 Ext. 102 ~ Fax: 401-566-4423
Email: Steven@NewEnglandPropertyServicesGroup.com



August 14, 2023

Dear Mr. Ceceri,

Insured: Honig
DOL: 7.10.23
Claim #IMV8022
UW Company: The Travelers Home and Marine Insurance Company
Loss Location: 41 Pleasant St., Bellingham, MA 02019

The Travelers Home and Marine Insurance Company ("Travelers") acknowledges receipt of your demand
for reference and in accordance with M.G.L.c.175, §§ 99, et seq.

On behalf of Travelers, the following three nominees are offered for your consideration:

Ed Odell
E. J. Odell
PO Box 822
Groton, MA 01450
Phone: 978.448.9800

Josh Trudeau
Trudeau Adjustment Service Inc
PO Box 7
Gardner, MA 01440
Phone: 978.549.8200

Mark McVey
17 Stoneybrook Road
North Grafton, MA 01536
Phone 508.259.6662

We are relying on the portions of the policy that we have reasonably been able to conclude are applicable
to the facts of this loss. We do not intend to waive, but rather expressly reserve, our right to assert any
other policy terms, conditions, exclusions, exceptions, or legal defenses to coverage that we later learn
may be applicable to this loss.

Please advise which of these nominees you select and provide your three nominees for your review.

Sincerely,

Stephen S. O'Leary
Claim Manager
PO Box 430
Buffalo, NY 14240
508.726.7271

Angela M. Tieng, Esq.
In-House Legal Counsel
New England Property Services Group, LLC
1822 North Main Street, Second Floor, Suite 001~ Fall
River, MA 02720
**Office:** (508) 567-5738 ~ **Fax:** (401) 566-4423
**Email:**
Angela@NewEnglandPropertyServicesGroup.com
**Website:**
www.NewEnglandPropertyServicesGroup.com



August 18, 2023

**Via Email and Certified Mail (#7022333000022495877)**

The Travelers Home and Marine Insurance Company
PO Box 430
Buffalo, NY 14240-8430

Re:    **M.G.L. c. 93A Demand Letter**

|  |  |
|---|---|
| **Claimant:** | New England Property Services Group, LLC |
| **Insured:** | Avrom Honig |
| **Insurer:** | The Travelers Home and Marine Insurance Company |
| **Loss Location:** | 41 Pleasant St., Bellingham, MA 02019 |
| **Claim Number:** | IMV8022 |
| **Policy Number:** | 6142629076331 |
| **Date of Loss:** | July 10, 2023 |

Dear Travelers Home and Marine Insurance Company:

**This is a written Demand for Relief pursuant to the Massachusetts Consumer Protection Act, M.G.L. c. 93A §§2 and 9.** Claimant, New England Property Services Group, LLC ("NEPSG") located at 1822 North Main Street, Second Floor-Suite 001, Fall River, MA, was injured by the unfair and deceptive acts or practices committed by The Travelers Home and Marine Insurance Company ("TRAVELERS"), in violation of c. 93A §§2 and 9 and M.G.L. c. 176D §3(9) et seq.

The Insured purchased and paid the premium for TRAVELERS insurance Policy number 6142629076331 ("Policy"). The Policy's coverage term was June 27, 2023 to June 27, 2024. On July 10, 2023, Avrom Honig ("Insured") reported to TRAVELERS that the insured property, located at 41 Pleasant St., Bellingham, Massachusetts ("Subject Premises"/"Property"), had sustained damage to its roof and interior, consequential to a forceful, heavy rainstorm. The casualty loss clearly occurred during the coverage period and was therefore assigned claim number IMV8022 ("Claim"), with a July 10, 2023 Date of Loss. TRAVELERS' Claim Representative, My Phan ("Ms. Phan"), directly handled the adjustment of the Claim. Claim Manager, Stephen O'Leary ("Mr. O'Leary"), was also directly involved.

1

41 Pleasant St., Bellingham, MA
M.G.L. c. 93A Demand Letter

On or about July 11, 2023, at the request of the Insured, Mr. Ceceri visited the Subject Premises to observe the reported wind damage. Mr. Ceceri documented his observations of the storm-related damage sustained to the roof and interior (kitchen and bathroom). Mr. Ceceri also took multiple pictures of the damage, including but not limited to, pictures of the shingles that indicate clear signs of direct wind damage.

The Insured executed a written Irrevocable Assignment of Insurance Claim Benefits and Rights Contract ("Assignment Contract") with NEPSG, whereby Insured assigned all rights, title, and interest regarding the Claim to NEPSG, lawfully establishing NEPSG as rightful Chose in Action, Assignee of the Claim (Another copy of the Assignment Contract is attached hereto for reference as "Exhibit 1"). The Assignment Contract expressly states:

## 4. INSURANCE COMPANY SHALL COMMUNICATE EXCLUSIVELY WITH NEPSG REGARDING THE ASSIGNED CLAIM(S)

Assignor(s) hereby directs the Insurance Company to communicate EXCLUSIVELY with NEPSG as the SOLE POINT OF CONTACT regarding the negotiation, settlement, and/or resolution of the aforementioned claim(s), since Assignor(s) has assigned to NEPSG all Assignor(s)' lawful rights, title and interest in any insurance proceeds, benefits, chose in action, cause of action, and/or claim, at law and/or equity, relating to the above referenced insurance claim(s) – with such assignment being expressly upheld and authorized by the M.A. Supreme Court's rulings in *Bloom v. New Brunswick Fire Ins. Co.*, 268 Mass. 28 (Mass. 1929) and *Graves Equipment, Inc. v. M. Dematteo Construction Co.*, 397 Mass. 110 (Mass. 1986).

Assignor(s) hereby further directs the Insurance Company to communicate EXCLUSIVELY with NEPSG as the SOLE POINT OF CONTACT regarding the negotiation, settlement, and/or resolution of the aforementioned claim(s), since NEPSG is now legally standing in the shoes of Assignor(s) as the real party in interest and Assignor(s) has no authority to control the disposition of the aforementioned claim(s)...Assignor(s) understands that any contact with Assignor(s) that is initiated by Assignor(s)' Insurance Company regarding the assigned claim(s) constitutes potential interference with this Assignment and potentially tortious interference, in violation of the M.A. Supreme Court's ruling in *Psy-Ed Corp. v. Klein*, 459 Mass. 697, 715-16 (Mass. 2011). Assignor(s) recognizes that any refusal, in whole or in part, by Assignor(s)' Insurance Company to accept the terms and/or validity of this lawful Assignment, constitutes potential evidence of bad faith and/or breach of contract on the part of Assignor(s)' Insurance Company.

With the Assignment Contract, was an explicit Direction to Pay. (See, "Direction to Pay" included within the attached Assignment Contract). The Insured expressly directed TRAVELERS to solely pay NEPSG, as lawful Assignee of the Claim, and to not include the Insured as named payee. The following language was expressly included in the Insured's Direction to Pay:

2

41 Pleasant St., Bellingham, MA
M.G.L. c. 93A Demand Letter

...in accordance with **the Loss Payment Provision within my/our Policy, which offers the ability to direct TRAVELERS Insurance to pay someone that 'is legally entitled to receive payment,' which in this case, NEW ENGLAND PROPERTY SERVICES GROUP, LLC is legally entitled to receive payment. Please further note, payment issued to NEW ENGLAND PROPERTY SERVICES GROUP, LLC should not list my/our name(s) as this DIRECTION TO PAY does hereby remove me/us from being named as a Payee with my/our full understanding.** I/We acknowledge that I/We have not assigned my/our insurance policy to NEW ENGLAND PROPERTY SERVICES GROUP, LLC. Instead, I/We have only assigned my/our rights, title, benefits, choses in action, as well as any and all proceeds related to the Claim to NEW ENGLAND PROPERTY SERVICES GROUP, LLC. (See page "16" of the attached Direction to Pay and Assignment Contract).

TRAVELERS was notified of the lawful Assignment, at minimum, four (5) different times and in (4) four different ways:

- TRAVELERS was notified of the lawful Assignment verbally on July 11, 2023 during a phone conversation with the Insured;

- TRAVELERS was notified of the lawful Assignment via text message in a group chat, also on July 11;

- TRAVELERS was notified of the lawful Assignment, and was expressly directed, by the Insured, to forward the full inspection report to Mr. Ceceri, as he had been assigned the Claim legally, in another group text conversation on July 13;

- TRAVELERS was notified of the lawful Assignment, with Direction to Pay, when it was hand-delivered to My Phan, on July 14th, 2023; and,

- TRAVELERS was also notified of the lawful Assignment verbally in person.

On Tuesday, July 11th at 4:04 pm, the Insured initiated a group text that included Mr. Honig, Mr. Ceceri, and My Phan. Mr. Honig started the conversation by introducing Steven Ceceri to My Phan. Mr. Ceceri entered the conversation immediately and made Ms. Phan aware of the fact that he was legally assigned the Claim and asked Ms. Phan to confirm her email and provide her availability for an in-person inspection.

Mr. Ceceri also notified Ms. Phan of his plans to have a dehumidifier put in place, to prevent further water damage to the interior, as is required per the Policy. My Phan indicated that TRAVELERS would need to send a roofer for an inspection and suggested 8 am the next morning on July 12, but that she would not be available for the inspection herself, and requested that Mr. Ceceri confirm whether he would be able to meet the roof inspector at 8 am. My Phan was expressly made aware by Mr. Ceceri that her suggested time of 8 am the next morning would not work. His text to Ms. Phan specifically stated:

3

41 Pleasant St., Bellingham, MA
M.G.L. c. 93A Demand Letter

Please note, no inspections are to take place without my physical presence unless I approve that in advance, which I am not at this point. Also, anyone that is going to the property, I would like their full contact information in advance and what their scope of work is…I have commitments in Jamestown, RI, tomorrow at 8 am, and then I have a 10 am inspection with the engineer in Tiverton, RI, and a meeting in Cranston at 12 pm, which will tie me up for several hours, so tomorrow is out.

No date or time for the roof inspection was ever finalized at that point.

Notwithstanding, on July 13th, the Homeowners disclosed to Mr. Ceceri in a phone conversation, and confirmed in an email sent to NEPSG, notifying Mr. Ceceri that TRAVELERS' vendor, Scott Chase, of Chase Building and Remodeling, trespassed onto their Property without prior permission while the family was still asleep. (A copy of the email is attached hereto as "Exhibit 2" for your reference).

On July 12, the Insured checked his voicemail around 8:32 pm and discovered that Mr. Chase left a voicemail at 7:19 am that morning. Mr. Chase indicated he was present on the Property and was going to inspect the roof.

When the Insured was able to do so, he called Mr. Chase back and offered Mr. Ceceri's contact information to arrange a time to inspect the Property in his presence, as was agreed upon. In the July 13th email to Mr. Ceceri, the Insured indicated she was told, by Mr. Chase, that TRAVELERS had sent him and he had already been on the roof. He indicated the only "Steve" he knew was a manager on the team and explained the reason for his expedited arrival was a fear that the roof might be compromised before TRAVELERS had an opportunity to see it. During their conversation, Mr. Chase also accused the Insured of taking advantage of the situation and made the statement, "what are you trying to pull here?"

Subsequently, Mr. Chase determined there were no issues with the roof and told the Insured that the roof did not need to be touched, a determination he came to following his unlawful trespass and a purported inspection that took place without any representation for NEPSG or the Homeowners. Mr. Ceceri was not present during this "inspection" and TRAVELERS failed to provide NEPSG with the inspection report or any of the findings therein. Consequently, NEPSG has had no way of knowing exactly what procedures, if any, were actually conducted during Mr. Chase's "inspection" on July 13. To date, TRAVELERS has not provided any inspection reports, pictures, or any other documents or information requested by NEPSG.

Additionally, there are concerns regarding the roof being compromised as Mr. Chase's movements and actions were not observed by any other party, and as the above-mentioned video from July 14th indicates, Scott Chase's roof inspection practices are questionable at best, where it is evidenced that even the most simple of OSHA safety Protocols was not correctly followed; including, but not limited to, improper ladder set-up. Improper walking and foot placement in the furtherance of the roof inspection was also indicated in the above-mentioned video.

4

41 Pleasant St., Bellingham, MA
M.G.L. c. 93A Demand Letter

On Wednesday, July 12th at 12:53 pm, My Phan, via text, suggested 11 am on July 14th for the interior inspection, and weather permitting, the exterior inspection as well. The Insured and Mr. Ceceri confirmed that time and date would work, not yet aware of the fact that Scott Chase had already been on the roof and inspected the damage without the knowledge and permission of NEPSG nor the insured.

It can be inferred that because My Phan suggested July 14th at 11 am for the interior inspection, and weather permitting, the exterior, that she intentionally or negligently failed to get permission from, and/or give notice to, NEPSG and/or the Insured, regarding Scott Chase's July 13th roof inspection at 7:19 in the morning, that resulted in an unlawful trespass.

On July 13th, Mr. Ceceri sent a group text confirming the 11 am interior inspection scheduled for July 14th. Mr. Ceceri also noted that Scott Chase had already inspected the roof and inquired as to when Mr. Chase's write-up and photos would be forwarded to NEPSG. Ms. Phan did not indicate, in any way, that she was unaware of the 7:19 am roof "inspection." In fact, Ms. Phan stated in her text reply, precisely, "once the write-up is complete, I will forward it to Avrom and it can be sent to you." Mr. Honig explicitly requested in the group-chat response, that the full report be forwarded directly to Mr. Ceceri as he was assigned the claim legally. However, in complete disregard of both her own statement, and the explicit requests made by both NEPSG and the Insured, My Phan never sent a "write-up," a report, or any photos of the damage taken by Scott Chase during the July 12th trespass and "inspection."

The "second" inspection took place on July 14, 2023, in the presence of Mr. Ceceri, Mr. O'Leary, My Phan, and the Insured. Remarkably, Mr. Chase's July 12th statement to the Insured, that there were no issues with the roof, was in clear contradiction to the statement he made on video, the very next day, when Mr. Chase confirmed he had, in fact, already been on the roof and stated, "I know exactly where it's leaking...I took pictures and assessed the damage...I took pictures of issues that should be addressed...Once I send my report to TRAVELERS, they can send you my photos and tell you exactly what's going on...so everyone's on the same page." Notably, NEPSG never received any pictures, or any other documents or findings, related to Mr. Chase's unauthorized roof "inspection" on July 13th.

On or about July 14, 2023, TRAVELERS intentionally interfered with the contractual relationship between NEPSG and the Insured when it completely ignored the valid and enforceable Assignment Contract and sent its "scope of work" estimate directly and solely to Avrom Honig. TRAVELERS also unequivocally disregarded the Insured's Direction to Pay, when it endorsed and issued payment in the amount of $3,266.83, solely payable to the Insured.

Notably, the estimate sent to the Insured, included the following statement: "a letter that explains your coverage and benefits is being sent to you separately." As of the date of this Demand, neither NEPSG or the Insured has received further explanation. Similarly, although TRAVELERS encourages questions regarding the estimate by stating, "let us know immediately if you have any questions regarding the estimate," NEPSG has received zero followup with regard to the issues raised in an email sent to Mr. O'Leary on July 24, 2023.

5

41 Pleasant St., Bellingham, MA
M.G.L. c. 93A Demand Letter

Although Mr. O'Leary acknowledged receipt of the email, not one of the issues raised have been acted upon, addressed, or even responded to. Mr. O'Leary's acknowledgement email merely stated, "Your email is acknowledged. Your artificial response date of 7-26-2023 will not be met. We will respond after a thorough review of it." Not only did TRAVELERS fail to address any of the issues by NEPSG's requested response date of 7-26-2023, twenty four (24) calendar days have now passed since NEPSG originally brought its concerns regarding TRAVELERS' estimate and payment to the attention of Mr. O'Leary. As a courtesy here, I reiterate the issues raised by NEPSG:

1. Consequent to the payment issued incorrectly, directly. and solely to the Insured, in disregard of the lawful Assignment and express Direction to Pay, NEPSG requested that TRAVELERS place a stop payment on check number 32024482, per the Assignment Contract and the Policy provision, written by TRAVELERS itself, that states, **"Loss Payment": "we will pay you <u>unless</u> some other person is named in the policy or is legally entitled to receive payment..."**;

2. NEPSG inquired as to why industry standard Overhead & Profit were excluded from the TRAVELERS' estimate, when the Policy clearly notes both Overhead & Profit, in addition to listed Materials, Labor, and Sales Tax, may be subject to depreciation;

3. NEPSG requested an explanation as to why the roof damages were excluded from the scope of work and estimate, where the damage sustained by the interior living space began on the roof and the interior was covered under the Policy as indicated by the payment TRAVELERS endorsed;

4. NEPSG requested confirmation as to why the flooring material was excluded from removal and replacement with respect to the bathroom estimate, when elevated moisture was documented and the floating floor appeared to need replacement to ensure trapped moisture below the flooring would be removed;

5. NEPSG asked TRAVELERS to confirm exactly where the 4 square-feet of ceiling material would be removed, showing a diagram that included the kitchen light and wall cabinets;

6. TRAVELERS was asked to confirm a Contractor who would actually be willing and able to complete the necessary work, provided in TRAVELERS' estimate, for a payment of $86.04, as is indicated in Line Item # 3, on Page 3, with respect to the kitchen;

7. NEPSG requested photos of any Moisture Meter Readings from the Bathroom and Kitchen;

6

41 Pleasant St., Bellingham, MA
M.G.L. c. 93A Demand Letter

8.  NEPSG kindly requested that TRAVELERS provide any relevant documentation confirming Stephen O'Leary's Training and Education in the insurance industry, as well as any OSHA training certification; and,

9.  Similarly, NEPSG requested Scott Chase's OSHA training certificate as well as copies of any inspection reports submitted following the "two" inspections conducted by Scott Chase, on behalf of TRAVELERS: the first on July 13, 2023, in the presence of no one else, around 7:19 am that morning, and the second on July 14th, in the presence of the Steven Ceceri and Stephen O'Leary.

As of the date of this Demand, twenty five (25) calendar days have passed since NEPSG raised the above issues with TRAVELERS; notwithstanding, TRAVELERS has failed to acknowledge and act reasonably promptly upon NEPSG's communications with respect to the aforementioned issues.

On or about August 14, 2023, NEPSG sent TRAVELERS its Demand for Reference, pursuant to M.G.L. c. 175 § 99 and the Policy provisions. On August 16, 2023, TRAVELERS finally reached out to NEPSG and agreed to participate in Reference by naming its three potential referee candidates. However, its reply was completely void of any attempt to address the aforementioned issues, and TRAVELERS actions described above are nevertheless a breach of the terms of the Policy, and the Implied covenant of Good Faith and Fair Dealing, inherent in every contract.

Moreover, TRAVELERS actions are in violation of the regulations set forth by the National Association of Insurance Commissioners (NAIC). In the NAIC Model Laws, Regulations, Guidelines and Other Resources—July 1997, NAIC sets forth the following:

**Unfair Property/Casualty Claims Settlement Practices Model Regulations - Section 6. - Failure to Acknowledge Pertinent Communications**

A. Every insurer, upon receiving notification of a claim shall, within fifteen (15) days, acknowledge the receipt of such notice unless payment is made within that period of time. If an acknowledgement is made by means other than writing, an appropriate notation of the acknowledgement shall be made in the claim file of the insurer and dated. Notification given to an agent of an insurer shall be notification to the insurer.

B. Every insurer, upon receipt of any inquiry from the insurance department respecting a claim shall, within twenty-one (21) days of receipt of such inquiry, furnish the department with an adequate response to the inquiry in duplicate.

**C. An appropriate reply shall be made within fifteen (15) days on all other pertinent communications from a claimant which reasonably suggest that a response is expected.**

41 Pleasant St., Bellingham, MA
M.G.L. c. 93A Demand Letter

D. Every insurer, upon receiving notification of claim, shall promptly provide necessary claim forms, instructions and reasonable assistance so that first party claimants can comply with the policy conditions and the insurer's reasonable requirements. Compliance with this paragraph within fifteen (15) days of notification of a claim shall constitute compliance with Subsection A of this section.

Certainly, the issues raised in the July 24th written communication to TRAVELERS at least "reasonably suggested that a response was expected." However, the only reply NEPSG received was hardly "appropriate" and offered no substance with regard to any of the issues raised. It solely stated, "Your email is acknowledged. Your artificial response date of 7-26-2023 will not be met. We will respond after a thorough review of it." The response did, however, imply that a further reply was forthcoming.

Although NEPSG acknowledges that it raised a number of issues, some of which may have required more time to address; nevertheless, even issues raised that would not require much time, have not been addressed; to wit, taking and sending a picture of an OSHA ID card, or emailing or faxing a training certification. As of the date of this letter, nearly four (4) weeks have now elapsed since July 24th and TRAVELERS has failed to follow NAIC regulations regarding acknowledging "Pertinent Communications," which provides that "an appropriate reply shall be made within fifteen (15) days.

More significantly, TRAVELERS' conduct, as described, was in Bad Faith, pursuant to M.G.L. c. 93A §§ 2 and 9 and c. 176D §3(9) et seq. As a result of TRAVELERS' unfair or deceptive acts or practices, NEPSG has suffered injury and damages, including but not limited to being denied proceeds due under the Policy for Covered Perils.

Massachusetts has adopted a version of the Unfair Claims Settlement Practices Act and recognizes a common law cause of action for Bad Faith against an insurer. See, *Green v. Blue Cross and Blue Shield*, 713 N.E.2d 992 (Mass. App. Ct). An insured may bring a collateral action against an insurer for unfair or deceptive business practices pursuant to Mass.Gen. Laws c. 93A and ch. 176D §3(9).

Chapter 93A § 9 establishes a statutory cause of action for any person "who has been injured by another person's use or employment of any method, act or practice declared to be unlawful by c. 176D § 3(9) et seq., a violation which may give rise to civil liability under c. 93A § 9. *Hopkins v. Liberty Mutual Insurance Co.*, 750 N.E.2d 943, 949-50 (Mass. 2001). Chapter 176D § 3(9) identifies and includes, but is not limited to, the following unfair methods and deceptive acts:

(b) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

8

41 Pleasant St., Bellingham, MA
M.G.L. c. 93A Demand Letter

(c) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

(d) Refusing to pay claims without conducting a reasonable investigation based upon all available information;

(f) Failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear; and,

(n) Failing to provide promptly a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

TRAVELERS has failed to acknowledge and act reasonably promptly upon NEPSG's communications with respect to the Claim; particularly by failing to address even one of NEPSG's aforementioned requests and concerns, in violation of c. 176D § 3(9)(b) and Section 6 of the National Association of Insurance Commissioners Model Laws, Regulations, Guidelines and Other Resources for "Unfair Property/Casualty Claims Settlement Practices - Failure to Acknowledge Pertinent Communications."

TRAVELERS has failed to act reasonably with regard to the investigation of the Claim, in violation of c. 176D § 3(9)(c). Particularly, TRAVELERS not only failed to get permission from NEPSG and/or the Insured prior to Scott Chase's entry upon the property, resulting in his unlawful Trespass, but My Phan outright disregarded the fact that Mr. Ceceri explicitly stated an inspection was not to take place in his absence and that he had a number of other commitments that morning. Therefore, he was not available for an inspection that day. Scott Chase's "inspection" was conducted at 7:19 am in the morning, when the homeowners were still asleep, in the presence of no one but himself; more significantly, without a representative present on behalf of NEPSG and/or the Homeowners. Because TRAVELERS failed to provide NEPSG with an inspection report, pictures, or any findings therein, and no one else was present as a witness, Mr. Chase's observations of damage and procedures implemented on July 12th are unknown to NEPSG.

TRAVELERS has failed to conduct a reasonable investigation based upon all of the information available, in violation of c. 176D § 3(9)(d) and TRAVELERS has failed to settle the Claim fairly and equitably where liability has become reasonably clear, in violation of c. 176D § 3(9)(f). The Roof Claim was outright denied and the damages completely excluded from TRAVELERS' estimate and payment, despite its acceptance

41 Pleasant St., Bellingham, MA
M.G.L. c. 93A Demand Letter

and payout for the interior damage which began on the roof. TRAVELERS never provided inspection reports, any photos taken of the damage observed by Mr. Chase, or any of his findings therein. TRAVELERS has failed to provide any reasonable explanation for the exclusions and complete denial of the Roof Claim, in violation of c. 176D § 3(9)(n).

The acts, omissions, and practices of TRAVELERS, described herein, constitute deceptive acts or practices, conducted in Bad Faith, within the meaning of c. 93A and c. 176D §3(9); a breach of contract; a breach of the Implied Covenant of Good Faith and Fair Dealing inherent in every contract; and, Tortious Interference. Moreover, certain of the acts, omissions, and practices described herein were willfully and knowingly caused to be made.

NEPSG rightfully issues this c. 93A Demand Letter pursuant to c. 93A §9 and not §11, as it is indisputable that the Insured is a private citizen and not a "person engaged in trade or commerce." NEPSG, as Assignee, is not asserting any commercial transaction exists between it and MAPFRE, and no such transaction does exist. Instead, NEPSG's claim against TRAVELERS involves the settlement of a casualty loss to the Insured's Property as lawful Assignee and Chose in Action.

The Massachusetts Court of Appeals in *Pacific Indemnity Company & Others v. Lampros*, 123 N.E. 3d 1037, 1041 (Mass. App. 2014) held, "the law distinguishes between consumer and business claims, the former actionable under §9, the latter actionable under §11." *Frullo v. Landenberger*, 61 Mass.App.Ct. 814, 821, 814 N.E.2d 1105 (2004). The plaintiffs' complaint failed to specify whether Pacific's c. 93A claim against Preferred fell under §9 or §11...Pacific did not bring any claims, in its capacity as an insurance company, against Preferred. See, *Frost v. Porter Leasing Corp.*, 386 Mass. 425, 427, 436 N.E.2d 387 (1982) (discussing if a subrogee pays an obligation, "it succeeds to the rights of the party it has paid"). The "bad faith" Pacific alleged concerned the settlement of the Levkoffs' subrogation claim, a matter related to the damage to their land, not any business activity. Because the Levkoffs were not "engaged in trade or commerce," the Court treated the claim as one arising under §9, not §11. *See Szalla v. Locke*, 421 Mass. 448, 451, 657 N.E.2d 1267 (1995). Appropriately, the Demand being asserted by NEPSG here, is brought pursuant to §9.

As a result of TRAVELERS' willful and intentional, unfair and deceptive acts or practices, NEPSG has sustained the injuries and damages described above. Demand is hereby made upon TRAVELERS to pay NEPSG the sum of $250,000.00 to compensate for injury and damages suffered. You have thirty (30) days to respond under MG.L. c. 93A.

**41 Pleasant St., Bellingham, MA**
**M.G.L. c. 93A Demand Letter**

Unless a reasonable offer of settlement is tendered within thirty (30) days from the date of this letter, NEPSG will seek damages against TRAVELERS pursuant to M.G.L. c. 93A, including interest, attorney's fees, and any other allowable costs. In addition, please be advised that as a result of TRAVELERS' knowing and willful conduct, NEPSG may be awarded at least two times its actual damages, up to a maximum recovery of three times the actual damages.

Please note that this correspondence does not constitute a waiver or release by NEPSG of any of its rights, claims and/or defenses which are now available, or which may subsequently become available, to NEPSG including, but not limited to, any and all statutory, contractual and/or common law rights, claims and/or defenses. Indeed, all such rights, claims and/or defenses are expressly reserved by NEPSG.

Very truly yours,

/s/ Angela M. Tieng
Angela M. Tieng, Esq.
In-House Legal Counsel

11

# MORRISON MAHONEY LLP

COUNSELLORS AT LAW

250 SUMMER STREET
BOSTON, MA 02210-1181
617-439-7500

| | |
|---|---|
| MASSACHUSETTS | NEW HAMPSHIRE |
| BOSTON | MANCHESTER |
| FALL RIVER | |
| SPRINGFIELD | NEW JERSEY |
| WORCESTER | PARSIPPANY |
| | |
| CONNECTICUT | NEW YORK |
| BRIDGEPORT | NEW YORK |
| HARTFORD | |
| | RHODE ISLAND |
| ENGLAND | PROVIDENCE |
| LONDON | |

William A. Schneider
Phone: 617-439-7573
Fax:   617-342-4951
wschneider@morrisonmahoney.com

September 18, 2023

**Via Email:**    angela@NewEnglandPropertyServicesGroup.com

Angela M. Tieng, Esq.
**New England Property Services Group, LLC**
1822 North Main Street, 2nd Fl., Suite 001
Fall River, MA 02720

Re:    **Response to M.G.L. c. 93A Demand Letter**

| | |
|---|---|
| **Claimant:** | **New England Property Services Group, LLC** |
| **Insured:** | **Avrom Honig** |
| **Loss Location:** | **41 Pleasant St., Bellingham, MA 02019** |
| **Claim No.:** | **IMV8022** |
| **Policy No.:** | **6142629076331** |
| **Date of Loss:** | **July 10, 2023** |
| **Our File No.:** | **10099028** |

Dear Ms. Tieng:

The Travelers Home and Marine Insurance Company ("Travelers") has retained this law firm in connection the matter referenced above. Please direct all claim-related communications to our office moving forward.

We write on behalf of Travelers in response to your August 18, 2023, letter, which you erroneously consider "a written Demand for Relief pursuant to the Massachusetts Consumer Protection Act, M.G.L. c. 93A §§2 and 9," sent on behalf of your employer, New England Property Services Group, LLC ("NEPSG"). Following our receipt of this matter we undertook to review the insurance company's handling of this claim in light of your various allegations. Based on this undertaking, we find not only that Travelers has complied fully with its contractual and statutory obligations, but that NEPSG, as the putative assignee, appears to be acting as an unlicensed public insurance adjuster that may constitute unfair and deceptive insurance claim settlement practices.

**MORRISON MAHONEY LLP**

Angela M. Tieng, Esq.
September 18, 2023
Page 2

At the outset, Travelers does not accept your letter as a proper or necessary demand pursuant to the provisions of G.L. c. 93A. As you know, an adequate demand letter is a prerequisite to any claim brought under G.L. c. 93A, §9. However, because NEPSG and Travelers are each engaged in trade and commerce, any claim arising under G.L. c. 93A is governed by the provisions of Section 11, which does not, as a condition precedent to bringing suit, require a demand letter. Consequently, Travelers is under no statutory obligation to issue a response to your letter. Further, since Section 11 applies to the matter, an aggrieved party may not automatically recover damages under G.L. c. 93A based upon proving a violation of G.L. c. 176D. Rather, Section 11 requires proof of some immoral, unethical, oppressive, or unscrupulous conduct that falls within a recognized conception of unfairness which, as discussed below, is not established from your letter.

Even if a response were required, we observe that your letter fails to satisfy the basic requirements of G.L. c. 93A, and thus does not constitute a proper demand for relief. A c. 93A demand letter must describe the alleged unfair and deceptive practices. *See Casavant v. Norwegian Cruise Line Ltd.*, 460 Mass. 500, 506 (2011). Demand letters which do not describe the unfair or deceptive practice are considered inadequate under c. 93A. *See Clegg v. Butler*, 424 Mass. 413 (1997). "Merely chanting the statutory mantra of" the provisions of c. 176D does not suffice to assert a claim, either that any subsection of G.L., c. 176D, §3(9), or that G.L. c. 93A, §9, has been violated. *Alan Corp. v. International Surplus Lines Ins. Co.*, 823 F.Supp. 33, 43 (D. Mass. 1993), *aff'd.* 22 F.3d 339 (1st Cir. 1994). Further, mere disputes or disagreements over coverage or the amount of loss do not qualify as grounds for relief under c. 93A; especially Section 11.

The facts are far more straightforward than as alleged in your letter. The claim was received by Travelers on July 10, 2023, and the claim was assigned to My Phan. Contact was made with the insured on July 11, 2023, at which time the insured reported there was water damage to the kitchen and bathroom ceilings. The cause of loss was reported to be water entering from the outside due to rain. The customer indicated he already had a contractor; presumably NEPSG. The assigned claim professional indicated a site inspection for both the roof and interior would be coordinated with the customer and the contractor. Since the dwelling was a two-story house, Travelers informed the insured that a roofing consultant would be used to access the roof. During the initial call, the insured advised he had purchased the house about two weeks prior. He confirmed he had a home inspection done and the claim professional asked for a copy of the home inspection report.

Travelers attempted to schedule a roof inspection for July 12, 2023, and contacted Scott Chase with S. Chase Building and Remodeling LLC to complete the inspection. Travelers anticipated attending the inspection as well. Steven Ceceri indicated he would

**MORRISON MAHONEY LLP**

Angela M. Tieng, Esq.
September 18, 2023
Page 3

not be able to attend the site inspection and insisted he be present for any and all inspections. Travelers attempted to reach Mr. Chase to reschedule, but he did not timely receive the message and arrived as originally scheduled. We find the insured's e-mail to Mr. Ceceri on July 13, 2023, to contain many false statements in addition to hyperbole and embellishment over a simple, routine roof inspection. Travelers may address these issues directly with the insured through an examination under oath.

Nevertheless, the parties subsequently completed a joint roof inspection on July 14, 2023. Present were Mr. Ceceri, the insured, the roofing consultant, Mr. Chase, as well as Stephen O'Leary and Ms. Phan from Travelers. The inspection revealed there was no storm damage to the roof or siding. The inspection did show there was deteriorated caulking where the shed roof meets the siding. This caulking had deteriorated over time and had been caused by weather, deterioration and wear and tear. The inspection further disclosed limited interior damage that consisted of a stain on both the kitchen and the bathroom ceiling. Travelers performed moisture mapping which revealed there was a small amount of ceiling that was reading wet. A scope was completed which included diagrams and measurements of the affected areas.

An estimate of repairs was written. This included removing and replacing the area of wet ceiling and the insulation above this area. The bathroom ceiling and walls were then repainted. Only the affected area of kitchen ceiling was repainted. Drying equipment was allowed to ensure the affected area was dry before the reconstruction took place. The breakdown of the loss and estimated costs of repair reflects a Net Claim $596.80 for the dwelling and $2,670.03 for mitigation. At the time of the inspection, Travelers had not received a direction to pay and, consequently, payment issued to the insured for the undisputed amount. It is Travelers policy and practice, even with a direction to pay, to list the insured as an additional payee, and the payments are mailed to the insured. The initial payment has been stopped and no replacement check has been issued.

NEPSG (or the insured) never presented a formal claim or estimate of loss to Travelers, which may constitute unfair and deceptive acts and practices by NEPSG. Rather, NEPSG demanded Reference where it has no legal right to even do so. Travelers, in good faith, responded to the wrongful demand for Reference and a Panel has been selected. If NEPSG has any concerns about the Referees, please raise those immediately given your employer's practice of disputing Reference Awards after the fact based on false claims of bias or other technicalities.

Travelers expressly reserves all rights on matters affecting its liability and coverage under the insurance policy and at law, and does not and will not consent to have any matter of or concerning coverage decided at Reference. *See* G.L. c. 175, § 101E and *Audubon Hill South Condominium Ass'n v. Community Ass'n Underwriters of America,*

Morrison Mahoney LLP

Angela M. Tieng, Esq.
September 18, 2023
Page 4

*Inc.*, 82 Mass. App. Ct. 461 (2012). Since neither the insured nor NEPSG has presented any supports for the claim, Travelers is compelled to proceed with handling of this matter subject to a full reservation of rights.

NEPSG refuses to recognize the limitations surrounding its assignment, and we observe that you did not address this in your letter. Travelers does not dispute that the insured has assigned NEPSG any rights with respect to the claim. However, the insured could not effectuate an assignment of policy, as that required the insurance company's written consent, which has occurred. NEPSG continues to conflate the assignment of the claim with the assignment of the policy seemingly for its own financial benefit.

It is important to note that NEPSG is neither a public insurance adjuster nor an attorney authorized to represent others' interests in accordance with the law. In an apparent effort to circumvent these limitations, NEPSG has utilized an assignment of benefits to assume, in its entirety, not simply the insured's rights and benefits with regards to the claim, but also supplant the insured's rights, duties and obligations under the insurance policy. In this capacity, NEPSG is, regrettably, advancing its own interests.

Turning to your specific allegations that Travelers violated G.L. c. 176D, these lack all legal and factual merit. The letter contains subjective and unsupported allegations concerning the conduct of Travelers, and includes a gallimaufry of inapposite statutory and case law citations. Your reliance on the National Association of Insurance Commissioners (NAIC) Model Laws, Regulations, Guidelines and Other Resources—July 1997 is misguided as they have no bearing since the Section 6 does not reflect or embody Massachusetts law. Indeed, your assertion that these govern is without any support and is itself a misrepresentation.

You first claim Travelers failed to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies in violation of G.L. c. 176D, §3(9)(b). To the contrary, our review of the file reflects that Travelers did acknowledge and respond reasonably promptly to communications related to the claim. Perhaps this is why your letter fails to identify any communication that Travelers or its representatives failed to acknowledge or act reasonably promptly upon. The NAIC regulations cited do not reflect the standard for communicating in Massachusetts about claims. As such, Travelers rejects this claim as grounds for relief under c. 93A.

NEPSG next asserts Travelers violated G.L. c. 176D, §3(9)(c) because it failed to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies. The factual basis for such an allegation is not reflected in your letter. NEPSG should rest assured that Travelers indeed has implemented reasonable standards for the prompt investigation of claims arising under its insurance policies. To

**MORRISON MAHONEY LLP**

Angela M. Tieng, Esq.
September 18, 2023
Page 5

this end, Travelers has an absolute right under the insurance contract, to which NEPSG is not a party, to the insured's cooperation and access to the property during its investigation, free from interference from contractors hired by the insured. Travelers was not required to get permission from NEPSG prior to Scott Chase's to inspect the property. There has been no unlawful trespass, and your claim to the contract is another misrepresentation of the law. Consequently, this allegation provides no grounds to demand relief under G.L. c. 93A.

The next accusation is that Travelers has refused to pay the claim without conducting a reasonable investigation based upon all available information policies in violation of G.L. c. 176D, §3(9)(d). This claim has no merit. Nowhere in your letter do you identify any information that Travelers failed, refused, or neglected to consider. To the contrary, Travelers conducted a reasonable investigation and considered all available information. Consequently, the company is compelled to reject your claim for relief based on a violation of G.L. c. 176D, § 3(9)(d).

We also observe that to prevail on a claim under Section 3(9)(d), a claimant must show what the insurer actually failed to do or what additional steps the insurer could have taken. *O'Sullivan v. Hingham Mut. Fire Ins. Co.,* 2009 WL 2438329, at *3 (Mass. App. Ct. July 30, 2009). "In other words, [a claimant must detail] what a reasonable investigation should have entailed." *Id.* No such showing is made in your letter. Instead, you simply conclude that the insurer's investigation of the claim was inadequate because NEPSG disputes the adjustment. This type of reasoning is not an adequate basis alleging bad faith on the part of Travelers. *See Alan Corp.,* 823 F.Supp. at 43.

Mr. Chase's finspection identified no wind or storm related damage. There were no shingles are out of place. The flashing along the vinyl siding is in poor condition, and Mr. Chase identified this as the possible source of the water intrusion. As for any concerns about Mr. Chase's inspection of the property without Mr. Ceceri present, far more concerning is Mr. Ceceri's ex parte inspection on July 11, 2023. He never produced any documents concerning his observations, or any of the alleged pictures of the damage, including, but not limited to, pictures of the shingles that indicate clear signs of direct wind damage consequential to a forceful, heavy rainstorm. Consequently, your criticism is both unfounded and hypocritical.

The claim that Travelers violated of G.L. c. 176D, §3(9)(f) because it has failed to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear in without merit because there is no support submitted to Travelers for NEPSG's alleged damages or the insured's loss,. Genuine disputes over the amount and scope of covered loss do not give rise to liability under the provisions of G.L. c. 93A or otherwise. *River Farm Realty Trust v. Farm Family Cas. Ins. Co.,* 360 F.Supp.3d 31 (D.

**MORRISON MAHONEY LLP**

Angela M. Tieng, Esq.
September 18, 2023
Page 6

Mass. 2019); *New England Envtl. Techs. v. Am. Commerce Risk Retention Grp., Inc.*, 738 F. Supp.2d 249, 259 (D. Mass. 2010). This is because Massachusetts law rejects the notion that 93A claims lie as the result of a genuine difference of opinion concerning the parties' legal obligations. *See Premier Ins. Co. v. Furtado*, 428 Mass. 507 (1998); *Duclersaint v. Federal Nat'l Mortgage Ass'n*, 427 Mass. 809, 814-15 (1998). Additionally, a mere breach of contract, which does not exist here, is not a violation of G.L. c. 93A. *See Massachusetts Employers Ins. Exchange v. Propac-Mass., Inc.*, 420 Mass. 39, 42-43 (1995). If anything, this matter is no more than a mere contract dispute "without conduct that was unethical, immoral, [or] oppressive.'" *Hawley v. Preferred Mut. Ins. Co.*, 88 Mass. App. Ct. 360, 368 (2015)(*citing Kobayashi v. Orion Ventures, Inc.*, 42 Mass. App. Ct. 492, 505 (1997)). "A good faith dispute as to whether money is owed, or performance of some kind is due, is not the stuff of which a c. 93A claim is made." *Duclersaint*, 427 Mass. at 814.

In our view, Travelers' alleged liability for some undisclosed loss is the subject to a genuine, good faith dispute. Where there is a plausible basis for the company's position that is based on objective facts and the terms of coverage, liability is not reasonably clear as a matter of law. *See Pacific Indem. Co. v. Lampro*, 86 Mass. App. Ct. 60, 68 (2014). While you may disagree with Travelers' decisions and claim positions, Massachusetts law rejects the notion that 93A claims lie as the result of a genuine difference of opinion concerning the parties' legal obligations. *See Premier Ins. Co. v. Furtado*, 428 Mass. 507 (1998). Indeed, even if a finder of fact disagrees with Travelers' view on the amount of loss, its position is, for the reasons expressed herein, based on a plausible and reasonable interpretation of the insurance policy and the impressions of experienced and reputable consultants. Such circumstances have, time and time again, not justified imposing liability in the context of a G.L. c. 93A claim because it is well settled that " a plausible, reasoned legal position that may ultimately turn out to be mistaken . . . is outside the punitive aspects of G.L. c. 93A and c. 176D." *Guity v. Nautilus Ins. Co.*, 339 Mass. App. Ct. 339, 344 (1994). *See also Gulezian v. Lincoln Ins. Co.*, 399 Mass. 606, 613 (1987); *Lumberman's Mut. Cas. v. Y.C.N. Transport Co.*, 46 Mass. App. Ct. 209 (1999). We simply do not view the parties' disagreement as actionable under c. 93A.

Lastly, you claim Travelers violated G.L. c. 176D, §3(9)(n) when it failed to provide promptly a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement. We trust that NEPSG received and reviewed the estimate of loss prepared by Travelers, and understands the scope of loss it reflects. We have included another copy just in case NEPSG needs this information. If you or Mr. Ceceri require further explanation of the estimate, then by all means feel free to contact us to discuss.

**MORRISON MAHONEY LLP**

Angela M. Tieng, Esq.
September 18, 2023
Page 7

Our firm will represent Travelers at Reference. Where, as here, NEPSG has (1) appear to be acting as a public insurance adjuster without a license; (2) may be without the right to demand Reference based on a seemingly invalid assignment; (3) unfairly leverage as purported c. 93A claim containing misrepresentations of the law; and (4) failed to factually establish the jurisdictional requirement for Reference by failing and or refusing to provide any basis for the demand, we will ask the Referees for procedural orders to address these circumstances. Of course, we invite NEPSG to withdraw its demand for Reference and share with Travelers its loss supports so the company can consider if further adjustments are warranted in light of the policy coverage.

Additionally, please accept this correspondence as our formal **Litigation Hold Notice**. NEPSG, including its staff of in-house legal counsel and Mr. Ceceri, are hereby instructed to ensure that all sources of potentially relevant information are identified and placed "on hold." To the extent that document retention now in effect at NEPSG perform automatic destruction or deletion of documents, information, or data, you are hereby advised of your duty to immediately commence a litigation hold on these systems to prevent the spoliation, deletion, or destruction of potentially relevant electronic materials, whether in digital or electronic form or hard copy. We further request that NEPSG discontinue any activities, implementation of policies or other acts, the result of which would inadvertently or intentionally result in the deletion or destruction of materials which may be the subject of a discovery request or may be potentially relevant. Upon receipt of this notice, an immediate back-up of any relevant documents or data should be made on personal computers, smart phones, laptops, work devices, and data and back-up tapes should be preserved and not recycled.

Travelers reserves all rights under the policy and at law to raise any other applicable defense to coverage in any future review of this matter. If you become aware of any information that you believe may provide cause for us to reconsider this position, please contact me immediately. In the meantime, all rights are reserved.

We trust the foregoing resolves your concerns. If you have any questions, please do not hesitate to call or write.

Regards,

*William A. Schneider*

William A. Schneider

WAS/AP
Enclosure

# MORRISON MAHONEY LLP

### COUNSELLORS AT LAW

William A. Schneider
Phone: 617-439-7573
Fax:    617-342-4951
wschneider@morrisonmahoney.com

250 SUMMER STREET
BOSTON, MA 02210-1181
617-439-7500

MASSACHUSETTS
BOSTON
FALL RIVER
SPRINGFIELD
WORCESTER

CONNECTICUT
BRIDGEPORT
HARTFORD

ENGLAND
LONDON

NEW HAMPSHIRE
MANCHESTER

NEW JERSEY
PARSIPPANY

NEW YORK
NEW YORK

RHODE ISLAND
PROVIDENCE

December 1, 2023

**Via Certified Mail**
**Return Receipt No. 9589 0710 5270 1238 0821 79**
**And First-Class Mail**

Gary D. Anderson
Commissioner
Division of Insurance
1000 Washington Street, Suite 810
Boston, MA 02118

| Re: | Claimant: | **New England Property Services Group, LLC** |
|---|---|---|
| | Insured: | **Avrom Honig** |
| | Loss Location: | **41 Pleasant St., Bellingham, MA 02019** |
| | Claim No.: | **IMV8022** |
| | Policy No.: | **6142629076331** |
| | Date of Loss: | **July 10, 2023** |
| | Our File No.: | **10099028** |

### <u>INSURER'S APPLICATION TO REPLACE REFEREES</u>

Dear Commissioner Anderson:

This law firm represents the Travelers Home and Marine Insurance Company ("Travelers") in connection with the claim referenced above.  We write on behalf of Travelers pursuant to the provisions of Massachusetts General Laws Chapter 175, § 101A to make a written application, under oath, for you to exercise your statutory authority and discretion to replace two of the three lawfully selected referees who have recently resigned and recused themselves from the Reference proceedings initiated by New England Property Services Group, LLC ("NEPSG").

By way of background, this homeowner's insurance claim arises from a loss that occurred at the insured's property located at 41 Pleasant Street, Bellingham, Massachusetts on July 10, 2023. The insured, Avram Honig, reportedly assigned the claim to NEPSG. Prior to our engagement, NEPSG sent Travelers a demand for Reference. Through the procedures delineated in the policy and as reflected in the

**MORRISON MAHONEY LLP**

Gary D. Anderson, Commissioner
Division of Insurance
December 1, 2023
Page 2

provisions of Massachusetts General Laws Chapter 175, §100, et seq., Travelers selected Chris Yerkes and NEPSG selected Edward Odell and to serve as the parties' respective Referees. Mr. Yerkes and Mr. Odell, in turn, selected James Trudeau to serve as the third referee.

In his capacity as third referee, Mr. Trudeau wrote to the parties to inquire, amongst other things, whether the parties would agree to waive the 10-day hearing requirement set forth in G.L. Chapter 175, §100. **Exhibit A**. On September 19, 2023, our firm, on behalf of Travelers, waived the 10-day hearing requirement. **Exhibit A**. Mr. Trudeau followed up with legal counsel for NEPSG in order to secure a waiver of the 10-day hearing requirement. **Exhibit A**. On Friday, September 22, 2023, Mr. Trudeau informed the parties that due to a lack of cooperation from parties associated with the reference, he was recusing himself from the proceeding because he did not want to chase down parties who refused to respond to his scheduling inquiries. **Exhibit A**. Shortly after Mr. Trudeau recused himself, Mr. Yerkes wrote to recuse himself, as well, because he was not receiving any cooperation. **Exhibit A**. Mr. Odell is the only lawfully chosen referee who remains associated with the reference.

NEPSG, for its part, purported to issue formal notice that NEPSG is temporarily holding the Honig reference proceeding in abeyance to determine the scope of rights legally afforded to NEPSG as an assignee via a declaratory judgment. A copy of this correspondence is attached at **Exhibit B**.

Pursuant to the provisions of Massachusetts General Laws Chapter 175, § 00, Travelers requests that the Commissioner exercise his statutory authority to appoint replacement referees. The provisions of § 100 state as follows:

Section 100A: Reference of amount of loss under policy of fire insurance to referees; appointment of replacement referee

Section 100A. If, before an award is determined upon by the referees, any referee, including a referee appointed under this section, dies, resigns, is incapacitated, removes from the commonwealth or for any other reason is unable or refuses to serve, the company, if such referee was chosen by the insured, or the insured, if such referee was chosen by the company, or the company, the insured or the two referees chosen by the insured and the company, if such referee is a third referee chosen by the said two referees, or the company, the insured or either of said two referees, if such referee is the third referee appointed by the commissioner, shall forthwith make written application on oath to the commissioner in such form as he may

**MORRISON MAHONEY LLP**

Gary D. Anderson, Commissioner
Division of Insurance
December 1, 2023
Page 3

prescribe for the appointment of another referee. The application, unless it seeks the appointment of a third referee to succeed a third referee appointed by the commissioner, shall specify the full names and addresses of three persons. The commissioner shall, after such summary inquiry or hearing, if any, as he may deem expedient, appoint a referee to fill the vacancy, but if the application specifies names as aforesaid, he shall appoint one of the persons so specified. The commissioner shall give written notice of the appointment to the appointee, to the parties and to the other referees. Nothing in this section shall be construed to prohibit the insured and the company from filling any vacancy by mutual agreement.

The circumstances that led to the recusal of Mr. Trudeau, the third referee, and then Mr. Yerkes, the referee for NEPSG, were unfortunate. However, NEPSG, as the party who initiated reference proceedings, does not have the right to temporarily hold those proceedings in abeyance. The Travelers, as the insurer, is entitled to advance this claim to closure given the putative dispute between it and NEPSG over the amount of loss. The claims asserted by NEPSG that it must file a declaratory judgment action to determine the scope of rights legally afforded to it as an assignee has no bearing on the statutory obligations of the duly selected referees to resolve the parties' dispute of and concerning the amount of loss. Given that the recusal of these two referees were the direct result of a lack of responsiveness and/or cooperation by NEPSG, the party that demanded reference, Travelers requests that the Commissioner intervene to exercise your statutory authority to appoint a replacement referee. Travelers nominates the following persons for your consideration as replacement Referees:

Michael L. Snyder, Esq.
85 Clay Street
Quincy, MA 02170

Christopher M. Reilly, Esq.
One Boston Place
201 Washington Street, Suite 1600
Boston, MA 02108

Nicholas B. Kosiavelon, Esq.
695 Atlantic Ave.
Boston, MA 02111

**MORRISON MAHONEY LLP**

Gary D. Anderson, Commissioner
Division of Insurance
December 1, 2023
Page 4

With regards to the Third Referee, please consider a replacement from the Commissioner's List.

Thank you for your anticipated cooperation. If you have any questions or require further information, please do not hesitate to call or write.

Signed and sworn to under the pains and penalties of perjury.

Regards,

*William A. Schneider*

William A. Schneider

WAS/AP
Enclosures

cc:

Angela McDonough Tieng, Esq.
E-Mail: angela@newenglandpropertyservicesgroup.com

Tom Alves, Esq.
E-Mail: tom@newenglandpropertyservicesgroup.com

Michael Brady, Esq.
E-Mail: michael@newenglandpropertyservicesgroup.com

# EXHIBIT A

**Schneider, William**



| | |
|---|---|
| **From:** | James Trudeau <james@sjpship.com> |
| **Sent:** | Friday, September 22, 2023 8:30 PM |
| **To:** | Chris Yerkes |
| Cc: | Schneider, William; fire2rest@aol.com; SOleary@travelers.com; Phan, My S; angela@newenglandpropertyservicesgroup.com |
| **Subject:** | Re: IMV8022    Honig Reference    THE TRAVELERS HOME AND MARINE INSURANCE COMPANY |

External Email from James Trudeau <james@sjpship.com>. Do not click on links, open attachments, or reply before confirming this is a valid email.

Chris,

Understood.

Regards,

James Trudeau

James A Trudeau Adjustment Services

Sent from my iPhone

On Sep 22, 2023, at 4:28 PM, Chris Yerkes <chris@cedarworksonline.com> wrote:

Mr. Trudeau, I understand your position. I have also not been able to get any cooperation. I am recusing myself as well. Thanks and have a nice weekend.
Regards, Chris Yerkes

Get Outlook for iOS

**From:** James Trudeau <james@sjpship.com>
**Sent:** Friday, September 22, 2023 3:48:19 PM
**To:** Schneider, William <WSchneider@morrisonmahoney.com>
**Cc:** fire2rest@aol.com <fire2rest@aol.com>; Chris Yerkes <chris@cedarworksonline.com>; SOleary@travelers.com <SOleary@travelers.com>; Phan, My S <MPHAN@travelers.com>; angela@newenglandpropertyservicesgroup.com <angela@newenglandpropertyservicesgroup.com>
**Subject:** Re: IMV8022 Honig Reference THE TRAVELERS HOME AND MARINE INSURANCE COMPANY

To all,
Due to the lack of cooperation from parties associated with this reference, I am recusing myself from this proceeding.

My calendar is not lending to having to chase down parties who refuse to respond to proposed dates as outlined in prior emails requesting same.

1

I apologize for having to take this course of action. I have never had a situation like this and I am of the opinion it is very unprofessional.

Regards,

James Trudeau

James A Trudeau Adjustment Services

Sent from my iPhone

> On Sep 19, 2023, at 1:01 PM, James Trudeau <james@sjpship.com> wrote:

> Thank you, Mr. Schneider.

> Angela, will the insured waive the 10-day requirement for panel review of evidence?  If not, I am requesting submission of both parties' positions prior to 9-22-2023 @ 4:30 PM.  Please advise relative to the waiver.

> Sincerely,

> James A Trudeau
> S&J Partnership, LLC
> 47 Foster Court
> Gardner, MA 01440

> Cell 978 549-3200
> FAX 978 632-2662
> james@sjpship.com

> CONFIDENTIALITY NOTICE: This is an e-mail transmission and the information is privileged and/or confidential. It is intended only for the use of the individual or entity to which it is addressed. If you have received this communication in error, please notify the sender at the reply e-mail address and delete it from your system without copying or forwarding it. If you are not the intended recipient, you are hereby notified that any retention, distribution, or dissemination of this information is strictly prohibited. Thank you.

> **From:** Schneider, William <WSchneider@morrisonmahoney.com>
> **Sent:** Tuesday, September 19, 2023 12:53 PM
> **To:** James Trudeau <james@sjpship.com>
> **Cc:** fire2rest@aol.com; Chris@CedarWorksOnline.com; soleary@travelers.com; Phan, My S <MPHAN@travelers.com>; angela@newenglandpropertyservicesgroup.com; Schneider, William <WSchneider@morrisonmahoney.com>

2

**Subject:** RE: IMV8022 Honig Reference THE TRAVELERS HOME AND MARINE INSURANCE COMPANY

Mr. Trudeau –

Travelers waives the 10 day hearing requirement.

-- Bill Schneider

**William A. Schneider, JD, CPCU**
Partner
MORRISON MAHONEY LLP
250 Summer Street, Boston, MA 02210
T 617.439.7573    |    F 617.342.4951
wschneider@morrisonmahoney.com  |  www.morrisonmahoney.com

CONNECTICUT  |  ENGLAND  |  MASSACHUSETTS  |  NEW HAMPSHIRE  |  NEW JERSEY  |  NEW YORK  |  RHODE ISLAND

The information and or documents included with this electronic mail transmission contain information from the law firm of Morrison Mahoney LLP which is confidential and/or privileged. This information is intended to be for the use of the addressee only. Note that any disclosure, printing, photocopying, distribution or use of the contents of this e-mailed information by persons other than the addressee or an agent of the addressee, is unauthorized and prohibited. If you have received this electronic mail in error, please notify us via electronic mail reply to the sender or by telephone (collect 617-439-7500) immediately.

**From:** Schneider, William <WSchneider@morrisonmahoney.com>
**Sent:** Tuesday, September 19, 2023 12:34 PM
**To:** James Trudeau <james@sjpship.com>
**Cc:** fire2rest@aol.com; Chris@CedarWorksOnline.com; soleary@travelers.com; Phan, My S <MPHAN@travelers.com>; angela@newenglandpropertyservicesgroup.com; Schneider, William <WSchneider@morrisonmahoney.com>
**Subject:** RE: IMV8022 Honig Reference THE TRAVELERS HOME AND MARINE INSURANCE COMPANY

Mr. Trudeau –

Thank you.

Subject to witness availability, we can hold 10/13, 10/17 and 10/25.

I expect the view will take some time. Neither the insured nor NEPSG have shared with Travelers any documentation to support whatever amount of loss is being claimed. Of course, we invite NEPSG to do so promptly to avoid delay. Otherwise, we ask for a meeting with the Panel at its earliest convenience to discuss pre-hearing procedural orders concerning the exchange of information and the appearance of witnesses.

Travelers also expects to have a stenographer present.

-- Bill Schneider

3

**William A. Schneider, JD, CPCU**
Partner
MORRISON MAHONEY LLP
250 Summer Street, Boston, MA  02210
T 617.439.7573   |   F 617.342.4951
wschneider@morrisonmahoney.com   |   www.morrisonmahoney.com

CONNECTICUT   |   ENGLAND   |   MASSACHUSETTS   |   NEW HAMPSHIRE   |   NEW JERSEY   |   NEW YORK   |   RHODE ISLAND

The information and or documents included with this electronic mail transmission contain information from the law firm of Morrison Mahoney LLP which is confidential and/or privileged. This information is intended to be for the use of the addressee only. Note that any disclosure, printing, photocopying, distribution or use of the contents of this e-mailed information by persons other than the addressee or an agent of the addressee, is unauthorized and prohibited. If you have received this electronic mail in error, please notify us via electronic mail reply to the sender or by telephone (collect 617-439-7500) immediately.

**From:** James Trudeau <james@sjpship.com>
**Sent:** Tuesday, September 19, 2023 12:27 PM
**To:** Schneider, William <WSchneider@morrisonmahoney.com>
**Cc:** fire2rest@aol.com; Chris@CedarWorksOnline.com; soleary@travelers.com; Phan, My S <MPHAN@travelers.com>; angela@newenglandpropertyservicesgroup.com
**Subject:** FW: IMV8022 Honig Reference THE TRAVELERS HOME AND MARINE INSURANCE COMPANY

External Email from James Trudeau <james@sjpship.com>. Do not click on links, open attachments, or reply before confirming this is a valid email.

Mr. Schneider,

Please see the email correspondence below.  Currently the only response received is from Ed O'Dell.

Sincerely,

James A Trudeau
S&J Partnership, LLC
47 Foster Court
Gardner, MA 01440

Cell 978 549-3200
FAX 978 632-2662
james@sjpship.com

CONFIDENTIALITY NOTICE: This is an e-mail transmission and the information is privileged and/or confidential. It is intended only for the use of the individual or entity to which it is addressed. If you have received this communication in error, please notify the sender at

the reply e-mail address and delete it from your system without copying or forwarding it. If you are not the intended recipient, you are hereby notified that any retention, distribution, or dissemination of this information is strictly prohibited. Thank you.

**From:** Ed <fire2rest@aol.com>
**Sent:** Monday, September 18, 2023 2:17 PM
**To:** James Trudeau <james@sjpship.com>; O'Leary, Stephen <SOLEARY@travelers.com>; Chris@CedarWorksOnline.com
**Cc:** Phan, My S <MPHAN@travelers.com>
**Subject:** RE: IMV8022 Honig Reference THE TRAVELERS HOME AND MARINE INSURANCE COMPANY

10/16 and 10/17 work for me

Sent from AOL on Android

On Mon, Sep 18, 2023 at 2:12 PM, James Trudeau <james@sjpship.com> wrote:

2nd request.

**From:** James Trudeau
**Sent:** Wednesday, September 13, 2023 2:33 PM
**To:** O'Leary, Stephen <SOLEARY@travelers.com>; fire2rest@aol.com; Chris@CedarWorksOnline.com
**Cc:** Phan, My S <MPHAN@travelers.com>
**Subject:** Re: IMV8022 Honig Reference THE TRAVELERS HOME AND MARINE INSURANCE COMPANY

Chris,

Please share with Steve Ceceri as his email address is not provided

Regards,

James Trudeau

James A Trudeau Adjustment Services

5

Sent from my iPhone

On Sep 13, 2023, at 11:16 AM, James Trudeau <james@sjpship.com> wrote:

To all,

First, I want to thank you for choosing me as the umpire for this proceeding. With that being said, I am asking if both parties waive the 10-day requirement for the viewing of evidence by the panel. Please acknowledge and reply to all when doing so.

Please check your calendars for availability on the following dates: 9-27 thru 9-29, 10-2 thru 10-4, 10-10 thru 10-13, 10-16 and 10-17, and 10-23 thru 10-25. Also, will there be a need for more than one day to view the location and to have the hearing following the site visit?

Please forward your positions along with estimates and documents in support of the positions prior 5 days prior to the day of inspection for panel review.

I look forward to working with all of you.

Sincerely,

James A Trudeau

S&J Partnership, LLC

47 Foster Court

6

Gardner, MA 01440

Cell 978 549-3200

FAX 978 632-2662

james@sjpship.com

CONFIDENTIALITY NOTICE: This is an e-mail transmission and the information is privileged and/or confidential. It is intended only for the use of the individual or entity to which it is addressed. If you have received this communication in error, please notify the sender at the reply e-mail address and delete it from your system without copying or forwarding it. If you are not the intended recipient, you are hereby notified that any retention, distribution, or dissemination of this information is strictly prohibited. Thank you.

From: O'Leary, Stephen <SOLEARY@travelers.com>
Sent: Tuesday, September 12, 2023 1:38 PM
To: James Trudeau <james@sjpship.com>; the2rex@aol.com
Cc: O'Leary, Stephen <SOLEARY@travelers.com>; Phan, My S <MPHAN@travelers.com>
Subject: IMV8022 Honig Reference THE TRAVELERS HOME AND MARINE INSURANCE COMPANY

Gents,

Here is the information on the reference:

Our Customer:

Avrom Honig

41 Pleasant St

Bellingham, MA 02019


Claim #: IMV8022

DOL:   7.10.23

COL:   Water Weather


The customer's representative


Steve Ceceri

New England Property Services Group LLC

1822 No Main St

Suite 001

Fall River MA 02720

401.419.1781


As the third referee, we selected:


Chris Yerkes

Cedarworks, Inc.

32 Beechtree Drive

Brewster, MA 02631

508-648-6117

Chris@CedarWorksOnline.com


Let me know if you need anything else from us right now.

8

Regards,

 Stephen O'Leary | Claim Manager

Travelers

West Bridgewater, MA

W: 508.726.7271 | F: 877.786.5584

TF: 800.422.3340


**Mailing Address:**

Travelers

PO Box 430

Buffalo, NY 14240-0430


If further assistance is needed, please contact my manager, Mark Perry,  at mperry3@travelers.com


<image001.jpg>

---

This message (including any attachments) may contain confidential, proprietary, privileged and/or private information. The information is intended to be for the use of the individual or entity designated above. If you are not the intended recipient of this message, please notify the sender immediately, and delete the message and any attachments. Any disclosure, reproduction, distribution or other use of this message or any attachments by an individual or entity other than the intended recipient is prohibited.

# EXHIBIT B

**Schneider, William**

| | |
|---|---|
| **From:** | Angela Tieng <angela@newenglandpropertyservicesgroup.com> |
| **Sent:** | Thursday, September 21, 2023 3:13 PM |
| **To:** | Schneider, William |
| **Cc:** | soleary@travelers.com; mphan@travelers.com; Steven Ceceri; Tom Alves; Michael Brady; Makenzie Scott |
| **Subject:** | TRAVELERS Claim # IMV8022 – Honig Reference - Notice of Abeyance |

External Email from angela@newenglandpropertyservicesgroup.com <angela@newenglandpropertyservicesgroup.com>. Do not click on links, open attachments, or reply before confirming this is a valid email.

Good afternoon Bill:

Please accept this email as <u>formal notice that NEPSG is temporarily holding the Honig Reference Proceeding in Abeyance</u> to determine the scope of rights legally afforded to NEPSG as Assignee via a Declaratory Judgment.

As of Monday, Sept. 18, NEPSG is in receipt of your response to its c.93A Demand Letter, sent to TRAVELERS on Aug. 18, via email and certified mail. Due to the contents of your reply, it is clear that there are a number of disputed issues regarding the validity of the Assignment and the scope of rights (or lack thereof) afforded to NEPSG therein, in relation to the Claim at issue.

NEPSG fully anticipates that the scope of its rights under the Claim will be favorably determined upon judgment of the court. As such, pending the court's decision and final declaration of rights, we are placing this Reference process on hold.  We anticipate the action will be filed with the court within the next ten days or so.

Please note that NEPSG objects to any further action being taken with respect to this Reference proceeding. Notwithstanding, if the Panel decides to take any further action going forward with Reference, rest assured that any such conduct will be noted as additional Bad Faith conduct on the part of TRAVELERS. Thank you for your attention to this matter.

Best,
Angela

Angela McDonough Tieng, Esq.
In-House Legal Counsel
New England Property Services Group, LLC
1822 North Main Street
Second Floor, Annex Suite #001
Fall River, MA 02720
Office: (508) 567-5738 Ext. 105 ~ Fax: (401) 566-4423
Angela@newenglandpropertyservicesgroup.com
Bar Admissions: MA

*Disclaimer: The contents of this email communication and any attachments herein may contain confidential and/or privileged information and are solely intended for the above named recipient(s). If you have inadvertently received this email communication, kindly notify the sender forthwith. Any disclosure, distribution, and/or reproduction of the contents herein is prohibited.*

1

Jessica (Leah) Honig
41 Pleasant St
Bellingham, MA 02019

Claim Number: IMV8022
Policy Number: 614262907-633-1
Underwriting Company: The Travelers Home and Marine Insurance Company

December 19, 2023

My Phan
mphan@travelers.com
Claim Professional
(774) 527-0251

Dear My Phan,

To put it frankly, I am pissed. Last night and into most of today, December 18, 2023, as I'm sure you're well aware, we experienced a very intense nor'easter in our area. Thank goodness, no tree limbs fell onto our house, or trailer (where we have been sleeping while waiting for you to do the right thing and permanently repair/match our orange roof, as our policy requires you to do). Thank goodness, we didn't suffer major losses to personal belongings or bodily injuries, as so many others did today. And thank goodness, shingles were replaced on our kitchen roof a few weeks ago in a more permanent manner, although they are black and do not remotely match the original orange ones that currently cover the rest of our roof (note that our policy requires you to pay for matching), after the kitchen ceiling had leaked yet again during the last storm because the roof had been only temporarily repaired as per your advice, and in order that you would have been able to reinspect it, which you refused to do... so it did not leak today. But we lost our day, and you, because you refused to permanently replace our roof promptly before another major storm like this one could come by again and thus neglected our home, which we ourselves have done our due diligence to maintain, made this claim significantly more complicated for yourself. I will now walk you through my day. I know you're getting ready for Christmas right now and probably preparing yourselves for a relaxing holiday vacation, but your negligence caused us to spend our Thanksgiving, Chanukkah, and both of our kids' birthdays sleeping in our trailer instead of in the house we purchased almost six months ago now, which we bought, using a chunk of our 401k, with penalties, with the intention of enjoying and using as our sole dwelling. I do not feel bad for walking you through the painful intricacies of this. Here we go.

I woke up this morning in our trailer (which was warm, dry, and free of water damage, by the way) to the sound of heavy rain and wind outside. The storm had been going all night but as I watched the sturdy tree outside our window sway in the wind, I knew that this was more than an average storm, perhaps even more than an average nor'easter. Everyone else was fast asleep, as usual. I got dressed and went outside. The wind was brutal. I noticed branches down everywhere. I was relieved to see that none had fallen on the trailer (a medium size one had landed several feet away) or the house. A rather large one had fallen on the guy ropes of the bell tent, where we had been sleeping earlier this fall until the weather got too cold, but the tent itself is strong and

durable (especially because we maintain and waterproof it regularly) and survived without a scratch or even a tilt. With a little effort, braving the wind and rain, I removed the branch and tightened the ropes (I noticed later in the day that a few of the stakes had come out of the ground due to the soft mud, but the tent was otherwise intact and warm and dry inside). I proceeded to enter the house, and after quickly getting ready for my day I did a walk through.

The kitchen was surviving the storm beautifully, for once, having received a more permanent (though definitely not matching) repair a few weeks ago. No new puddles on the floor, unlike during the last few storms, pre-permanent repair. I checked the first floor bathroom, which has been taped off due to mold for the last few months, the floor around the toilet felt damp to the touch, despite the fact that its seal had been replaced by a plumber at our expense just a month or two ago and nobody has used it since. The room still smelled incredibly musty, and I noticed what appeared to be active damp spots on the underside of the roof (the room still hasn't been remediated for mold, which showed up in surface sample mold tests completed by a mold hygienist after the initial water damage was discovered, and the ceiling has still not been replaced; our kids are still having to bathe in the collapsible toddler bathtub in the shower stall upstairs), when my husband woke up I had him climb a ladder and feel the damp spots, and they were definitely damp to the touch. As the day wore on we checked the room a few more times, re-sealing it after each time in order to prevent the musty air from entering the rest of the house, and the dampness in the subfloor felt to the touch as though it had spread across the floor. Our moisture meter validated this. Next I went upstairs and checked the bedrooms and hallway. I noticed that a long, dark brown trail of liquid was seeping out of the switch on the wall that connects to the attic light, all the way down to the floor below, where it pooled under the baseboard. I assumed that this corresponded with the chimney, and when we opened up the attic door right above it a short while later with ladder in tow, I noticed (without setting foot in the attic) that the roof around the chimney, which is located directly next to the attic door, was leaking pretty severely. I recalled later in the day that it reminded me of another house we turned down during our search earlier this year; the house was incredibly whimsical and built in the 1700s—we went to see it more for entertainment than anything else. But one of its chimneys had water actively leaking down in streams on all sides. We swore to ourselves that we wouldn't let ourselves get caught purchasing a house with such an issue…and here we are, now owning one due to Travelers' neglect of and refusal to properly inspect (i.e. in its entirety, despite the fact that the initial water leak was discovered on a different section of our roof) and permanently replace our roof proactively when we initially submitted our claim. As the day wore on the long brown trail, likely full of contaminants from the roofing materials it had seeped through, spread, leaving a stain on the upstairs hallway ceiling, then the bedroom ceiling. By the time the storm wound down at the end of the afternoon, a giant patch of paint was bubbling at the top of our bedroom wall on the opposite side of the chimney, and the water had leaked all the way down the chimney, past the first floor, and into the recently repainted basement where it culminated in a few giant brown streams—much wider than the one upstairs—running down the base of the chimney, then a wide splatter all over the adjacent door and floor. After documenting this I put a towel down on the basement floor to collect and stop the splatter, thus doing my due diligence to prevent further damage. But that wasn't the end of my torment.

Back in the morning, I also noticed that our bedroom window, which had received temporary flashing at Travelers' advice, had developed a damp spot under it on the wall yet again.

Fortunately, the kids' bedroom did not share the same fate this time, as we had done our own due diligence to ensure that its broken seal (unrelated to the roof) had been properly caulked at our expense since the last time it had leaked. I also noticed that a wooden beam above our laundry room window in the basement was dripping water at a pretty fast pace. I put a large absorbent bath towel, on top of a plastic bag, under the drips; within a few hours it was fully saturated, so I added a bucket on top, which collected what I estimate to be over half a cup of additional water from that point until the end of the storm. Heard enough? Sorry, my adventures did not end there.

Mid afternoon, my husband went down to the basement to put something away and noticed that about half of the floor was covered in a large quantity of pooling and spreading water. This is highly unusual for our house; generally when big storms come through, all of our neighbors' basements get flooded, from what we hear, but ours stays dry. Thank goodness we had had the foresight to only put things down there in plastic tubs, and the basement has a sump pump. With a little finagling we got it up and running (it was already plugged in, but hadn't run in a long time, if ever; we had been told by the sellers' agent that the basement had never required use of it before) and with the help of a broom and the good dehumidifier that we keep just feet away, we got the situation under control pretty quickly and sustained no significant additional damage. That's what happens when someone thinks ahead and puts a preventative system in place to prevent potential damage to a home. Why can't you, as an insurance company that sees these issues all the time, complete a similar permanent and proactive repair for our roof, as our policy, which we are paying for, requires, to prevent even further damage? It makes no sense to me.

So this was my day: running around the house, documenting water leaks everywhere, placing towels everywhere, cleaning up water, worrying about new mold growth AGAIN, wondering if we will still be sleeping in our trailer, waiting for you to do the right thing, in snow in January. I had no time for my work or basic everyday chores, like washing dishes or preparing a good meal for my family (we all picked on bits of leftovers all day, whenever we remembered to eat), and didn't even manage to fit in proper homeschooling time for my 6 year old son, to whom I owe it. Instead, he likewise spent his day learning all about how water leaks spread in a house, the process for documenting them, and the consequences of not fixing leaky roofs properly and permanently the first time damage occurs.

I can't believe I have to write this type of message again, but here I go. I spent my Chanukkah wondering when we will finally be able to sleep in our house again, lighting our candles in the dining room, in the midst of the contents of the first floor bathroom and other rooms that are still unlivable, and then proceeding outside to our trailer to sleep a short while later once the candles had burnt out, regardless of the temperatures and weather we had to walk through to get there. Our Thanksgiving was much the same, as were our kids' birthdays (both the same week). In a few days, you will spend your Christmas with your families, or however you celebrate comfortably, without a care in the world. You will share extravagant gifts and tuck yourselves into your comfortable bedrooms at the end of the night, looking forward to a few dazzling snowstorms as the winter continues and maybe some winter recreation. I'm sure some of you are parents. I don't understand why you think it's ok to deny us the proper roof repairs that our policy with Travelers guarantees us, especially with little kids under six years of age in tow who could suffer the consequences of mold exposure if this neglect at your hand goes on too long. We

have done our due diligence as homeowners in maintaining our home, despite the stressful circumstances you are imposing on us, and we have been more than patient with you the last six months, despite your neglect and, frankly, abuse. Our businesses have suffered on account of this, as has our budget (we have had to buy more prepared food than we normally buy, which isn't the healthiest, despite our best efforts—we normally buy none and make everything from scratch to save money—because our kitchen has been out of order and uninhabitable so often due to your neglect of our roof. We have also been unable to fully move in and still have some of our belongings in a storage unit, because our top floor is still unlivable. We were not anticipating this extra and burdensome expense, which increases monthly, as we had initially planned to be moved into our home by the end of summer, at least four months ago now.) What are we paying for when we dutifully make our insurance payments?? And don't you realize that now, because you never thoroughly and properly inspected and permanently addressed our roof as you should have when we first submitted our claim, the amount of damage has increased significantly, and you have increased your own costs for remedying this situation immensely??

**NOTE: at this point in my writing, our older son, who is six years old—just kindergarten age—and was as exhausted by the day as we were, came to find me in a panic. He informed me that he and his little brother (3 years old) had gone down to the basement to find something and had discovered that it was, once again, filling with water. My husband was frantically attempting to sweep the basement dry yet again. When I followed him downstairs I observed that the sump pump was running at full tilt; I took over the broom and spent the next hour or so, at least (it felt like an eternity), sweeping water (this time more of it than what was present earlier in the day) into the sump pump until my hands were nearly blistered (I know how to use a broom, by the way; I worked in restaurants when I was younger, and one of my jobs was to sweep the floor daily) while my husband made every effort to find the source of the water and stop it from coming in. Eventually we finally got it under control. When I went in to shower, in preparation for going to bed, I discovered upon entering the upstairs bathroom that the towel bar had fallen out of the wall. Very odd. Late at night, utterly exhausted and gathering ourselves to go outside to sleep in our trailer (which had survived the entire storm without so much as a scratch, by the way), we noticed another long, floor to ceiling trail of dark brown liquid running down our living room wall just under the spot where it was doing the same thing on the top floor, directly above it, which appeared to also have run down a corresponding beam in the middle of the living room ceiling, based on a dark brown drip and evidence of caulk separation on the edge of it. We documented it and, feeling a sense of utter despair and not at all sure what the future will bring, based on Travelers' pattern of lack of dependability in getting this whole situation straightened out over the last several months in a timely manner or at all, packed ourselves off to bed. This morning NEPSG, who had been bombarded with similar water damage calls yesterday, came by with a moisture meter and confirmed that new water damage had definitely taken place from our roof, which is the subject of our existing claim with Travelers, thus why we are not opening a new claim to get this fixed once and for all. Travelers had told us during your official visit to our property shortly after our claim was initially submitted that our roof was fine. Therefore, any new damage that has occurred to our "perfectly fine" (as per your estimation, not ours) roof since that point, especially considering that Travelers neglected to inspect the entire roof thoroughly and properly when you came by and still hasn't agreed to fix it permanently, is attributed to your neglect, not ours, and is part of this claim and Travelers' responsibility to fix properly.

Enough is enough

Merry Christmas. May Santa bring you the gift of empathy, and a willingness to do your job ethically, swiftly, and responsibly, so you do not continue to neglect and abuse humble homes and innocent young families like ours in the new year. It's now too late for us to make requests of "Chanukkah Harry," thanks to your neglect in dragging out the proper resolution of this claim way, way too long, but we're hoping to have a livable house one of these days, as we had when we initially purchased this house and before the first incident of water damage, which we reported to you and acted on immediately, took place. Is that too much to ask...?

Thank you.
Jessica (Leah) Honig



**Robert M. Tucker**
*Claim Manager*

(800) 422-3340
(877) 786-5584 (fax)

PO Box 430
Buffalo, NY 14240-0430

January 9, 2024

Avrom Honig
41 Pleasant Street
Bellingham MA 02019

Insured: Avrom Honig
Policy number: 614262907- 633- 1
Claim number: IMV8022
Date of loss: 7/10/2023
Insurance Company Name: The Travelers Home And Marine Insurance Company

Dear Mr. Honig,

This letter is in regard to the above referenced claim and the reinspection that took place at your home on January 5, 2024.

At this time, we are awaiting the findings and report from Leonard Morse-Fortier and Stephen Condren from Simpson, Gumpertz and Heger regarding their evaluation into the causation of the interior water damage sustained in your home. Upon receipt, coverage will be further reviewed for damages to your home. However, until that time, we maintain our previously communicated position that there has been no physical damage identified on the exterior of the home that resulted from a covered cause of loss through which the rainwater entered, and therefore, there is no coverage granted for the claimed exterior damage.

Based on the information provided at the reinspection, it appears that the exterior envelope of your home has leaked on multiple occasions since the initial reported date of loss of July 10, 2023. You identified two (2) separate, specific dates of additional water intrusion on or about November 22, 2023, and December 18, 2023, which damaged previously repaired areas and/or damaged new areas. As the water intrusion that occurred on or about November 22, 2023, and December 18, 2023 are subsequent occurrences, Travelers would need to open separate claims to evaluate coverage under the policy. Please contact us to advise if you would like Travelers to open claims and evaluate coverage for the November 22 and December 18, 2023 water intrusion events.

Please see the below language from HQ-300 MA (07-22) – SPECIAL PROVISIONS – MASSACHUSETTS endorsement, which amends the Property – Conditions:

...
PROPERTY – CONDITIONS

When this Special Provision – Massachusetts is used with forms HQ-P02 MA, HQ-P03 MA, HQ-P04 MA and HQ-P06 MA, 2. Duties After Loss paragraphs d., f., g. and h. are replaced by the following:

2. Duties After Loss.

d. Protect the property from further damage; make reasonable and necessary repairs required to protect the property; keep an accurate record of repair expenditures. Some or all of these expenses may be reimbursable under this policy;

f. Prepare an inventory of damaged personal property; show in detail, the quantity, description, actual cash value and amount of loss. Attach to the inventory when available all pertinent bills and documents that substantiate the figures in the inventory;

g. We may reasonable require you to: (1) Exhibit the damaged property; (2) Provide us with records and documents pertinent to the loss and permit us to make copies; and (3) Submit to an examination under oath, while not in the presence of another "insured", and sign the same;

h. Submit to us, within 60 days after we request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

(1) The time and cause of loss;
(2) The interest of all "insureds" and all others in the property involved and all encumbrances on the property;
(3) Other insurance which may cover the loss;
(4) Changes in title or occupancy of the property during the term of the policy;
(5) Detailed estimates for repair of the damage;
(6) An inventory of damaged personal property described in 2.f.;
(7) Receipts for additional living expenses incurred and records supporting the fair rental value loss; and
(8) Evidence or affidavit supporting a claim under Property – Additional Coverage 7. Credit Card, Electronic Fund Transfer Card or Access Device, Forgery and Counterfeit Money, stating the amount and cause of loss.

Although coverage has not been affirmed at this time for the exterior of the home, it is your duty under the policy to take the appropriate steps to protect the property from further damage and to make reasonable and necessary repairs required to protect the home from further water intrusion, at your expense, as well as proceed to mitigate the water damage on the inside of the home.

Although previously requested, we are still waiting for you to present estimates and/or repair contracts for the claimed damage to your home. At this time, based on the above Conditions provisions, we request that you Submit to us, within 60 days, a signed, Sworn Proof of Loss. A blank form is provided with this letter for you to complete.

Our company continues to reserve its rights under the policy and law. Your policy may have other terms, conditions and exclusions that apply to this claim. We do not waive any rights, including our right to deny coverage, for any other valid reason under the policy or law.

If you have any questions or to discuss this matter further, please do not hesitate to contact me. I can be reached at (508) 717-2159.

Sincerely,

*Robert M. Tucker*

Robert M. Tucker
Claim Manager
The Travelers Home And Marine Insurance Company

PO Box 430
Buffalo, NY 14240-0430


cc:

Steven V. Ceceri
New England Property Services Group, LLC
1822 North Main Street, Second Floor Annex, Suite 001
Fall River, MA 02720



Robert M. Tucker
*Claim Manager*

(800) 422-3340
(877) 786-5584 (fax)

PO Box 430
Buffalo, NY 14240-0430

January 12, 2024

Steven V. Cerceri
New England Property Services Group, LLC
1822 North Main Street, Second Floor Annex, Suite 001
Fall River, MA 02720

Insured: Avrom Honig
Policy number: 614262907- 633- 1
Claim number: IMV8022
Date of loss: 7/10/2023
Insurance Company Name: The Travelers Home and Marine Insurance Company

Dear Mr. Ceceri,

This letter is in regard to the above referenced claim and your e-mail of January 9, 2024.

We acknowledge the insured's assignment of this claim to New England Property Services Group, LLC. However, the assignment does not prevent us from communicating with our policyholder about the claim or any additional losses. We have a right under the policy to communicate with our customer, so we cannot honor your demand that we communicate solely with your company to the exclusion of the policyholder. This is especially true when new or additional claims for subsequent damage may need to be opened.

During the reinspection that took place at the insured's home on January 5, 2024, the insured reported damage from water intrusion on dates different than the date of loss for this claim. He identified areas of more recent that were not shown as damaged or otherwise claimed as damaged during the investigation of this claim. Pending the result of our engineer's findings, we raised the possibility that these separate events causing distinct damages could warrant consideration as separate claims. We certainly have the right to investigate these concerns, which are in no way motivated by the goal of assessing multiple deductibles. If you or the insureds have information that you believe will address and resolve this concern, we request its submission for our consideration.

Based on the recent rainstorms in the area, we again raise the insured's duty under the policy to take the appropriate steps to protect the property from further damage and to make reasonable and necessary repairs required to protect the home from further water intrusion; as well as proceed to mitigate the water damage on the inside of the home. This is a duty of the policy holder per the conditions section of the policy, but one that may impact the scope of covered damage. We expect to contact you shortly to arrange for a reinspection of the home due to the recent weather events.

We look forward to the presentation of estimates and/or repair contracts for the claimed damage to the home, as required by the policy, as well as the executed Proof of Loss.

Attached is a copy of the policy.

Our company continues to reserve its rights under the policy and law. The policy may have other terms, conditions and exclusions that apply to this claim. We do not waive any rights, including our right to deny coverage, for any other valid reason under the policy or law.

If you have any questions or to discuss this matter further, please do not hesitate to contact me. I can be reached at (508) 717-2159.

Sincerely,

*Robert M. Tucker*

Robert M. Tucker
Claim Manager
The Travelers Home And Marine Insurance Company
PO Box 430
Buffalo, NY 14240-0430

cc:

Avrom Honig
41 Pleasant Street
Bellingham MA 02019



Robert M. Tucker
*Claim Manager*

(800) 422-3340
(877) 786-5584 (fax)

PO Box 430
Buffalo, NY 14240-0430

February 9, 2024

Steven V. Ceceri
Owner & Operator
New England Property Services Group, LLC
1822 North Main Street
Second Floor Annex, Suite 001
Fall River, MA 02720

Insured: Avrom Honig
Policy number:  614262907- 633- 1
Claim number: IMV8022
Date of loss: 7/10/2023
Insurance Company Name: The Travelers Home And Marine Insurance Company

Dear Mr. Ceceri,

This letter is in regard to the above referenced claim and your request for a copy of the report prepared on our behalf by Leonard Morse-Fortier and Stephen Condren from Simpson, Gumpertz and Heger following the reinspection that took place at our customer's home on January 5, 2024.

At this time our investigation of coverage remains ongoing, and we will not provide a copy of our engineer's report as we await additional information from the insured to determine if there is any impact on the findings. Despite repeated requests, we have still not received copies of the estimates, details, supports, photographs or other documents that you rely on for your claim. We are entitled to this information as established in the insurance contract with Avrom Honig. Please send these outstanding items as well as the executed Sworn Statement in Proof of Loss we sent you on January 9, 2024. We will agree to revisit your request for the engineer's report once we receive all of the requested materials from the insured and or NEPSG.

We request a response to our request to further re-inspect the insured's dwelling. Please provide some dates in the next two weeks for the inspection.

Our company continues to reserve its rights under the policy and law. Your policy may have other terms, conditions and exclusions that apply to this claim. We do not waive any rights, including our right to deny coverage, for any other valid reason under the policy or law.

If you have any questions or to discuss this matter further, please do not hesitate to contact me. I can be reached at (508) 717-2159.

Sincerely,

*Robert M. Tucker*

Robert M. Tucker
Claim Manager

The Travelers Home And Marine Insurance Company
PO Box 430
Buffalo, NY 14240-0430

cc:
Avrom Honig
41 Pleasant Street
Bellingham MA 02019



**Robert M. Tucker**
*Claim Manager*

(800) 422-3340
(877) 786-5584 (fax)

PO Box 430
Buffalo, NY 14240-0430

March 5, 2024

Steven V. Ceceri
Owner & Operator
New England Property Services Group, LLC
1822 North Main Street
Second Floor Annex, Suite 001
Fall River, MA 02720

Insured: Avrom Honig
Policy number:  614262907- 633- 1
Claim number: IMV8022
Date of loss: 7/10/2023
Insurance Company Name: The Travelers Home And Marine Insurance Company

Dear Mr. Ceceri,

This letter is in regard to the above referenced claim and the Sworn Statement in Proof of Loss (With Reservation of Rights by Claimant, New England Property Services Group, LLC) you signed on February 14, 2024. We have reviewed the Sworn Statement in Proof of Loss in the amount of $202,909.76, along with the supporting estimate, and are compelled to reject your proof of loss. The grounds for this decision include, but are not necessarily limited to, the following:

- NEPSG is not the insured. It is the insured's obligation under the policy conditions to submit a signed sworn statement in proof of loss. You appear to recognize that since you refer to NEPSG as the "Claimant" and Avrom Honig as the "insured"; and

- Travelers' investigation has not confirmed direct physical damage occurred on 07/10/2023; and

- Travelers investigation has not confirmed that any direct physical loss resulted from "Storm Related Events" as alleged in your Sworn Statement in Proof of Loss; and

- Travelers disputes that the Actual Cash Value of the property at the time of loss was $202,909.76; and

- Travelers investigation has revealed damage from multiple events at different times and, consequently, does not agree that all of the loss or damage claimed occurred on 07/10/2023; and

- Travelers' investigation has yet to confirm that all of the loss or damage claimed did not originate by any act, design or procurement on the part of the insured and or NEPSG and or either of their agents, representatives, or contractors; and

- Travelers' rejects the claim that the whole loss or damage is $202,909.76; and

- Travelers rejects the amount claimed since it fails to account for the deductible; and

- Travelers disputes that coverage applies to all of the loss or damage described in your estimate of loss.

Travelers initial estimated the amount to repair damage at the insured's home in the amount of $4,089.14. The scope of repairs set forth in your estimate is unsupported by our investigation. This investigation, which involved several experienced claim professionals and loss consultants, including Leonard Morse-Fortier and Stephen Condren from Simpson, Gumpertz and Heger ("SGH"), did not reveal any "storm related damage" to the roof. Travelers does not accept coverage for the costs claimed to replace the roof, or reside the house. The investigation also did not reveal and "storm related damage" to the detached garage. For this reason, we reject liability for costs claimed for any work on the garage.

Please provide dates for the reinspection requested previously. We will review coverage for the costs reflected in your estimate. Our company continues to reserve its rights under the policy and law. The insured's policy may have other terms, conditions and exclusions that apply to this claim. We do not waive any rights, including our right to deny coverage, for any other valid reason under the policy or law.

If you have any questions or to discuss this matter further, please do not hesitate to contact me. I can be reached at (508) 717-2159.

Sincerely,

*Robert M. Tucker*

Robert M. Tucker
Claim Manager
The Travelers Home And Marine Insurance Company
PO Box 430
Buffalo, NY 14240-0430

cc:
Avrom Honig
41 Pleasant Street
Bellingham MA 02019

# EXHIBIT 5

**TRAVELERS**

| | |
|---|---|
| Customer: | AVROM HONIG |
| Property: | 41 PLEASANT ST |
| | BELLINGHAM, MA 02019 |
| Home: | 41 PLEASANT ST |
| | BELLINGHAM, MA 02019 |

Home:  (508) 735-8452
Cell:   (508) 735-8452

| | |
|---|---|
| Claim Rep.: | My Phan |
| Company: | THE TRAVELERS HOME AND MARINE INSURANCE COMPANY |
| Business: | PO BOX 430 |
| | BUFFALO, NY 14240-0430 |

Business:  (774) 527-0251

**Claim Number:** IMV8022001H      **Policy Number:** 0DJW34614262907633 1      **Type of Loss:** WATER DAMAGE - WEATHER RELATED

**Date of Loss:** 7/10/2023 12:00 AM      **Date Completed:**      **Price List:** MAEM8X_JUL23

| Coverage | Deductible* | Policy Limit |
|---|---|---|
| Dwelling | $900.00 | $450,000.00 |
| Other Structures | $0.00 | $45,000.00 |
| Contents | $0.00 | $225,000.00 |

*100 worth of deductible credit(s) has been applied to your policy deductible(s).

Dear AVROM HONIG:

We have prepared this estimate regarding your loss or damage.  A letter that explains your coverage and benefits is being sent to you separately.  Because the information in an estimate serves as the basis for a determination of your benefits, you (and if applicable, your contractor) should review this estimate carefully.  Let us know immediately (and prior to beginning any work) if you have any questions regarding the estimate.

Under most insurance policies, claim settlement begins with an initial payment for the actual cash value of the covered loss or damage.  To determine actual cash value, we estimate the item's replacement cost, and then, if appropriate, take a deduction for depreciation.  Depreciation represents a loss in value that occurs over time.  In determining the amount to deduct for depreciation, if any, to apply to an item, we consider not just the age of the item immediately prior to the loss or damage but also its condition at that time.  For each line item included in this estimate, the estimate shows not only the estimated replacement cost value, but also the amount of depreciation (if any) applied to the item, the item age and item condition upon which the depreciation (if any) was based and the item's actual cash value.

Thank you for allowing us to be of service, and thank you for choosing THE TRAVELERS HOME AND MARINE INSURANCE COMPANY for your insurance needs.

You can check the status of your claim, view your policy and much more at www.mytravelers.com.

Answers to commonly asked questions can be found at https://www.travelers.com/claims/manage-claim/property-claim-process

You can also upload documents directly to your claim at www.travelers.com/claimuploadcenter.

*For more information about how the claim process works and where to find services to help you recover, visit travelers.com/claim.*



**Common Units of Measure**

| | |
|---|---|
| EA – Each | CY – Cubic Yard |
| LF – Linear Foot | SQ – Square |
| SF – Square Foot | HR – Hour |
| SY – Square Yard | DA – Day |
| CF – Cubic Foot | RM – Room |

# Guide to Understanding Your Property Estimate

## Your Estimate Cover Sheet ··············································▶

The cover sheet of your estimate includes important information such as:

- (A) Your Travelers claim professional's contact information
- (B) Your claim number
- (C) The types of coverage under your policy, including the applicable deductibles and policy limits.
- (D) Your estimate may include policy sublimits for specific items, such as money. Each sublimit has a unique ID tag. That ID tag will appear next to any line item subject to the sublimit.

## Your Estimate Detail ·······················································▶

This is where the details about your lost or damaged property can be found.

- (E) Description – Details describing the activity or items being estimated.
- (F) Quantity – The number of units (for example, square feet) for an item.
- (G) Unit – The cost of a single unit.
- (H) Replacement Cost Value (RCV) – The estimated cost of repairing a damaged item or replacing an item with a similar one. RCV is calculated by multiplying Quantity x Unit Cost.
- (I) Age – The age of the item.
- (J) Life – The item's expected life assuming normal wear and tear and proper maintenance.
- (K) Condition – The item's condition relative to the expected condition of an item of that age. (New, Above Average, Average, Below Average, Replaced)
- (L) Depreciation % – The percentage of the loss of value that has occurred over time based on factors such as age, life expectancy, condition, and obsolescence.
- (M) Depreciation – Loss of value that has occurred over time based on factors such as age, life expectancy, condition, and obsolescence. If depreciation is recoverable, the amount is shown in ( ). If depreciation is not recoverable, the amount is shown in < >.
- (N) Actual Cash Value (ACV) – The estimated value of the item or damage at the time of the loss. Generally, ACV is calculated as Replacement Cost Value (RCV) minus Depreciation.
- (O) Labor Minimums – The cost of labor associated with drive time, setup time and applicable administrative tasks required to perform a minor repair.

## Your Estimate Summary ···················································▶

For each type of coverage involved in your estimate there is a summary section that shows the total estimated costs (RCV and ACV) and net claim amount for the coverage type. The example to the right depicts a Dwelling coverage summary.

- (P) Line Item Total – The sum of all the line items for that particular coverage.
- (Q) Total Replacement Cost Value – The total RCV of all items for that coverage.
- (R) Total Actual Cash Value – The total ACV of all items for that coverage.
- (S) Deductible – The amount of the loss paid by you. A deductible is generally a specified dollar amount or a percentage of your policy limit.
- (T) Net Claim – The amount payable to you after depreciation and deductible have been applied. This amount can never be greater than your coverage limit.
- (U) Total Recoverable Depreciation – The total amount of depreciation you can potentially recover.

We encourage you to contact us if you have additional questions regarding your claim or anything in this guide.

For information about how the claim process works and where to find services to help you recover, visit travelers.com/claim.



travelers.com

The Travelers Indemnity Company and its property casualty affiliates. One Tower Square, Hartford, CT 06183

This material is for informational purposes only. All statements herein are subject to the provisions, exclusions and conditions of the applicable policy. For an actual description of all coverages, terms and conditions, refer to the insurance policy. Coverages are subject to individual insureds meeting our underwriting qualifications and to state availability.

© 2020 The Travelers Indemnity Company. All rights reserved. Travelers and the Travelers Umbrella logo are registered trademarks of The Travelers Indemnity Company in the U.S. and other countries.
C-26501 Rev. 4-20

**TRAVELERS**

### AVROM_HONIG

### Main Level



**Kitchen**                                                                    **Height: 7' 9"**

| | |
|---|---|
| 193.10 SF Walls | 72.46 SF Ceiling |
| 265.56 SF Walls & Ceiling | 72.46 SF Floor |
| 8.05 SY Flooring | 24.92 LF Floor Perimeter |
| 24.92 LF Ceil. Perimeter | |

| | | |
|---|---|---|
| **Missing Wall** | 9' 3" X 7' 9" | Opens into Exterior |
| **Window** | 3' 8" X 4' 2" | Opens into Exterior |

| | QUANTITY | UNIT | TAX | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|
| 6. Contents - move out then reset | | | | | | | | | |
| | 1.00 EA | 84.11 | 0.00 | 84.11 | 0/NA | Avg. | 0% | (0.00) | 84.11 |
| 38. Floor protection - self-adhesive plastic film | | | | | | | | | |
| | 72.46 SF | 0.55 | 0.63 | 40.48 | 0/NA | Avg. | 0% | (0.00) | 40.48 |
| 8. Containment Barrier/Airlock/Decon. Chamber | | | | | | | | | |
| | 275.00 SF | 1.08 | 2.75 | 299.75 | 0/NA | Avg. | 0% | (0.00) | 299.75 |
| mask walls and cabinets | | | | | | | | | |
| 9. Peel & seal zipper | | | | | | | | | |
| | 1.00 EA | 13.84 | 0.58 | 14.42 | 0/NA | Avg. | 0% | (0.00) | 14.42 |
| 10. Containment Barrier - tension post (per day) | | | | | | | | | |
| | 12.00 DA | 3.35 | 0.00 | 40.20 | 0/NA | Avg. | 0% | (0.00) | 40.20 |
| 11. Dehumidifier (per 24 hr period)- up to 69 ppd- No monitor. | | | | | | | | | |
| | 3.00 EA | 52.00 | 0.00 | 156.00 | 0/NA | Avg. | 0% | (0.00) | 156.00 |
| 12. Air mover axial fan (per 24 hour period) - No monitoring | | | | | | | | | |
| | 6.00 EA | 28.75 | 0.00 | 172.50 | 0/NA | Avg. | 0% | (0.00) | 172.50 |
| 1. Tear out wet drywall, cleanup, bag for disposal | | | | | | | | | |
| | 4.00 SF | 1.25 | 0.06 | 5.06 | 0/NA | Avg. | NA | (0.00) | 5.06 |
| 13. Tear out and bag wet insulation | | | | | | | | | |
| | 4.00 SF | 0.90 | 0.02 | 3.62 | 0/NA | Avg. | NA | (0.00) | 3.62 |
| 18. Apply anti-microbial agent to the surface area | | | | | | | | | |
| | 4.00 SF | 0.34 | 0.01 | 1.37 | 0/NA | Avg. | 0% | (0.00) | 1.37 |
| 16. R&R Light fixture - High grade | | | | | | | | | |
| | 1.00 EA | 125.36 | 3.47 | 128.83 | 0/20 yrs | Avg. | 0% | (0.00) | 128.83 |
| 19. Batt insulation - 10" - R30 - paper / foil faced | | | | | | | | | |
| | 4.00 SF | 2.39 | 0.41 | 9.97 | 0/150 yrs | Avg. | 0% | (0.00) | 9.97 |
| 3. Drywall patch / small repair, ready for paint | | | | | | | | | |
| | 1.00 EA | 85.75 | 0.29 | 86.04 | 0/150 yrs | Avg. | 0% | (0.00) | 86.04 |
| 14. Paint the ceiling - two coats | | | | | | | | | |
| | 72.46 SF | 1.21 | 1.45 | 89.13 | 0/15 yrs | Avg. | 0% | (0.00) | 89.13 |
| 33. Final cleaning - construction - Residential | | | | | | | | | |
| | 72.46 SF | 0.35 | 0.00 | 25.36 | 0/NA | Avg. | 0% | (0.00) | 25.36 |

**TRAVELERS**

**CONTINUED - Kitchen**

| | QUANTITY | UNIT | TAX | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|
| Totals: Kitchen | | | 9.67 | 1,156.84 | | | | 0.00 | 1,156.84 |

**Bathroom**                                                                    **Height: 7' 7"**

| | |
|---|---|
| 230.61 SF Walls | 65.63 SF Ceiling |
| 296.24 SF Walls & Ceiling | 53.33 SF Floor |
| 5.93 SY Flooring | 24.42 LF Floor Perimeter |
| 34.33 LF Ceil. Perimeter | |

| | | |
|---|---|---|
| Door | 2' 6" X 6' 8" | Opens into Exterior |
| Window | 3' 2" X 2' 3" | Opens into Exterior |

| | QUANTITY | UNIT | TAX | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|
| 37. Floor protection - self-adhesive plastic film | | | | | | | | | |
| | 53.33 SF | 0.55 | 0.47 | 29.80 | 0/NA | Avg. | 0% | (0.00) | 29.80 |
| 28. Tear out wet drywall, cleanup, bag for disposal | | | | | | | | | |
| | 32.00 SF | 1.25 | 0.44 | 40.44 | 0/NA | Avg. | NA | (0.00) | 40.44 |
| 39. Mask per square foot for drywall work | | | | | | | | | |
| | 100.00 SF | 0.26 | 0.38 | 26.38 | 0/150 yrs | Avg. | 0% | (0.00) | 26.38 |
| mask cabinets, vanity, tub, and toilet for demo | | | | | | | | | |
| 31. Air mover axial fan (per 24 hour period) - No monitoring | | | | | | | | | |
| | 6.00 EA | 28.75 | 0.00 | 172.50 | 0/NA | Avg. | 0% | (0.00) | 172.50 |
| 32. Dehumidifier (per 24 hr period)- up to 69 ppd- No monitor. | | | | | | | | | |
| | 3.00 EA | 52.00 | 0.00 | 156.00 | 0/NA | Avg. | 0% | (0.00) | 156.00 |
| 29. Tear out and bag wet insulation | | | | | | | | | |
| | 32.00 SF | 0.90 | 0.16 | 28.96 | 0/NA | Avg. | NA | (0.00) | 28.96 |
| 30. Apply anti-microbial agent to the surface area | | | | | | | | | |
| | 32.00 SF | 0.34 | 0.10 | 10.98 | 0/NA | Avg. | 0% | (0.00) | 10.98 |
| 26. R&R Bathroom ventilation fan w/light | | | | | | | | | |
| | 1.00 EA | 229.72 | 8.74 | 238.46 | 0/10 yrs | Avg. | 0% | (0.00) | 238.46 |
| 48. Detach & Reset Light bar - 4 lights | | | | | | | | | |
| | 1.00 EA | 58.91 | 0.00 | 58.91 | 0/20 yrs | Avg. | 0% | (0.00) | 58.91 |
| 35. Shower curtain rod - Detach & reset | | | | | | | | | |
| | 1.00 EA | 21.89 | 0.00 | 21.89 | 0/NA | Avg. | 0% | (0.00) | 21.89 |
| 46. Batt insulation - 10" - R30 - paper / foil faced | | | | | | | | | |
| | 32.00 SF | 2.39 | 3.30 | 79.78 | 0/150 yrs | Avg. | 0% | (0.00) | 79.78 |

**TRAVELERS**

CONTINUED - Bathroom

| | QUANTITY | UNIT | TAX | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|
| 40. 1/2" drywall - hung, taped, floated, ready for paint | | | | | | | | | |
| | 32.00 SF | 2.85 | 1.64 | 92.84 | 0/150 yrs | Avg. | 0% | (0.00) | 92.84 |
| 41. Tape joint for new to existing drywall - per LF | | | | | | | | | |
| | 16.00 LF | 9.54 | 0.54 | 153.18 | 0/150 yrs | Avg. | 0% | (0.00) | 153.18 |
| 42. Seal the surface area w/PVA primer - one coat | | | | | | | | | |
| | 32.00 SF | 0.71 | 0.12 | 22.84 | 0/15 yrs | Avg. | 0% | (0.00) | 22.84 |
| 43. Paint the walls and ceiling - two coats | | | | | | | | | |
| | 296.24 SF | 1.21 | 5.93 | 364.38 | 0/15 yrs | Avg. | 0% | (0.00) | 364.38 |
| 44. Final cleaning - construction - Residential | | | | | | | | | |
| | 53.33 SF | 0.35 | 0.00 | 18.67 | 0/NA | Avg. | 0% | (0.00) | 18.67 |
| **Totals: Bathroom** | | | **21.82** | **1,516.01** | | | | **0.00** | **1,516.01** |
| **Total: Main Level** | | | **31.49** | **2,672.85** | | | | **0.00** | **2,672.85** |

General

| | QUANTITY | UNIT | TAX | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|
| 22. Asbestos test fee - full service survey - base fee | | | | | | | | | |
| | 1.00 EA | 525.00 | 0.00 | 525.00 | 0/NA | Avg. | 0% | (0.00) | 525.00 |
| 23. Asbestos test fee - full service survey - per sample | | | | | | | | | |
| | 6.00 EA | 59.00 | 0.00 | 354.00 | 0/NA | Avg. | 0% | (0.00) | 354.00 |
| 25. Haul debris - per pickup truck load - including dump fees | | | | | | | | | |
| | 1.00 EA | 255.62 | 0.00 | 255.62 | 0/NA | Avg. | NA | (0.00) | 255.62 |
| 45. Equipment setup, take down, and monitoring (hourly charge) | | | | | | | | | |
| | 3.00 HR | 68.88 | 0.00 | 206.64 | 0/NA | Avg. | 0% | (0.00) | 206.64 |
| 24. Taxes, insurance, permits & fees (Bid Item) | | | | | | | | | |
| | 1.00 EA | 50.00 | 0.00 | 50.00 | 0/NA | Avg. | 0% | (0.00) | 50.00 |
| https://www.bellinghamma.org/sites/g/files/vyhlif2796/f/uploads/building_fees_2021_0.pdf | | | | | | | | | |
| **Totals: General** | | | **0.00** | **1,391.26** | | | | **0.00** | **1,391.26** |

Labor Minimums Applied

| | QUANTITY | UNIT | TAX | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|
| 17. Electrical labor minimum | | | | | | | | | |
| | 1.00 EA | 56.52 | 0.00 | 56.52 | 0/NA | Avg. | 0% | (0.00) | 56.52 |

**TRAVELERS**

_____

## CONTINUED - Labor Minimums Applied

| | QUANTITY | UNIT | TAX | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|
| **Totals: Labor Minimums Applied** | | | 0.00 | 56.52 | | | | 0.00 | 56.52 |
| **Line Item Totals: AVROM_HONIG** | | | 31.49 | 4,120.63 | | | | 0.00 | 4,120.63 |

[%] - Indicates that depreciate by percent was used for this item
[M] - Indicates that the depreciation percentage was limited by the maximum allowable depreciation for this item

| Additional Charges | Charge |
|---|---|
| Electrical Consumption | 46.20 |
| **Additional Charges Total** | **$46.20** |

## Grand Total Areas:

| | | | | | |
|---|---|---|---|---|---|
| 423.72 | SF Walls | 138.08 | SF Ceiling | 561.80 | SF Walls and Ceiling |
| 125.79 | SF Floor | 13.98 | SY Flooring | 49.33 | LF Floor Perimeter |
| 0.00 | SF Long Wall | 0.00 | SF Short Wall | 59.25 | LF Ceil. Perimeter |
| 125.79 | Floor Area | 158.50 | Total Area | 423.72 | Interior Wall Area |
| 556.52 | Exterior Wall Area | 72.50 | Exterior Perimeter of Walls | | |
| 0.00 | Surface Area | 0.00 | Number of Squares | 0.00 | Total Perimeter Length |
| 0.00 | Total Ridge Length | 0.00 | Total Hip Length | | |

| Coverage | Item Total | % | ACV Total | % |
|---|---|---|---|---|
| Dwelling | 1,496.80 | 36.32% | 1,496.80 | 35.92% |
| Other Structures | 0.00 | 0.00% | 0.00 | 0.00% |
| Contents | 0.00 | 0.00% | 0.00 | 0.00% |
| Mitigation | 2,623.83 | 63.68% | 2,670.03 | 64.08% |
| Total | 4,120.63 | 100.00% | 4,166.83 | 100.00% |

**TRAVELERS**

### Summary for
### Dwelling

#### Summary for All Items

| | | |
|---|---:|---:|
| Line Item Total | | 1,470.91 |
| Material Sales Tax | | 25.89 |
| **Replacement Cost Value** | | **$1,496.80** |
| **Actual Cash Value** | | **$1,496.80** |
| Deductible | $1,000.00 | |
| Deductible Credit | $100.00 | |
| Less Deductible | | (900.00) |
| **Net Claim** | | **$596.80** |

My Phan

7/14/2023          Page: 7

**TRAVELERS**

## Summary for
## Mitigation

### Summary for All Items

| | | |
|---|---|---|
| Line Item Total | | 2,618.23 |
| Electrical Consumption | | 46.20 |
| Material Sales Tax | | 5.60 |
| **Replacement Cost Value** | | **$2,670.03** |
| **Actual Cash Value** | | **$2,670.03** |
| Deductible | $0.00 | |
| Deductible Credit | $100.00 | |
| **Net Claim** | | **$2,670.03** |

My Phan

**TRAVELERS**

## Recap of Taxes

|  | Material Sales Tax (6.25%) | Clothing Sales Tax (6.25%) | Storage Tax (6.25%) |
|---|---|---|---|
| Line Items | 31.49 | 0.00 | 0.00 |
| Additional Charges | 0.00 | 0.00 | 0.00 |
| **Total** | **31.49** | **0.00** | **0.00** |

**TRAVELERS**

<div align="center">

## Recap by Room

</div>

**Estimate: AVROM_HONIG**

**Area: Main Level**

| | | | |
|---|---|---:|---:|
| **Kitchen** | | **1,147.17** | **28.05%** |
| Coverage: Dwelling | 29.09% = | 333.71 | |
| Coverage: Mitigation | 70.91% = | 813.46 | |
| **Bathroom** | | **1,494.19** | **36.54%** |
| Coverage: Dwelling | 68.98% = | 1,030.68 | |
| Coverage: Mitigation | 31.02% = | 463.51 | |
| **Area Subtotal:  Main Level** | | **2,641.36** | **64.59%** |
| Coverage: Dwelling | 51.65% = | 1,364.39 | |
| Coverage: Mitigation | 48.35% = | 1,276.97 | |
| **General** | | **1,391.26** | **34.02%** |
| Coverage: Dwelling | 3.59% = | 50.00 | |
| Coverage: Mitigation | 96.41% = | 1,341.26 | |
| **Labor Minimums Applied** | | **56.52** | **1.38%** |
| Coverage: Dwelling | 100.00% = | 56.52 | |
| **Subtotal of Areas** | | **4,089.14** | **100.00%** |
| Coverage: Dwelling | 35.97% = | 1,470.91 | |
| Coverage: Mitigation | 64.03% = | 2,618.23 | |
| **Total** | | **4,089.14** | **100.00%** |

**TRAVELERS**

# Recap by Category

| Items | | | Total | % |
|---|---|---|---|---|
| **CLEANING** | | | **44.03** | **1.06%** |
| Coverage: Dwelling | @ | 100.00% = | 44.03 | |
| **CONTENT MANIPULATION** | | | **84.11** | **2.02%** |
| Coverage: Mitigation | @ | 100.00% = | 84.11 | |
| **GENERAL DEMOLITION** | | | **372.80** | **8.95%** |
| Coverage: Dwelling | @ | 10.67% = | 39.78 | |
| Coverage: Mitigation | @ | 89.33% = | 333.02 | |
| **DRYWALL** | | | **355.59** | **8.53%** |
| Coverage: Dwelling | @ | 92.69% = | 329.59 | |
| Coverage: Mitigation | @ | 7.31% = | 26.00 | |
| **ELECTRICAL** | | | **56.52** | **1.36%** |
| Coverage: Dwelling | @ | 100.00% = | 56.52 | |
| **PERMITS AND FEES** | | | **929.00** | **22.30%** |
| Coverage: Dwelling | @ | 5.38% = | 50.00 | |
| Coverage: Mitigation | @ | 94.62% = | 879.00 | |
| **FINISH HARDWARE** | | | **21.89** | **0.53%** |
| Coverage: Dwelling | @ | 100.00% = | 21.89 | |
| **HEAT, VENT & AIR CONDITIONING** | | | **202.72** | **4.87%** |
| Coverage: Dwelling | @ | 100.00% = | 202.72 | |
| **INSULATION** | | | **86.04** | **2.06%** |
| Coverage: Dwelling | @ | 100.00% = | 86.04 | |
| **LIGHT FIXTURES** | | | **171.49** | **4.12%** |
| Coverage: Dwelling | @ | 100.00% = | 171.49 | |
| **PAINTING** | | | **468.85** | **11.25%** |
| Coverage: Dwelling | @ | 100.00% = | 468.85 | |
| **WATER EXTRACTION & REMEDIATION** | | | **1,296.10** | **31.11%** |
| Coverage: Mitigation | @ | 100.00% = | 1,296.10 | |
| **Subtotal** | | | **4,089.14** | **98.14%** |
| **Permits and Fees** | | | **46.20** | **1.11%** |
| Coverage: Mitigation | @ | 100.00% = | 46.20 | |
| **Material Sales Tax** | | | **31.49** | **0.76%** |
| Coverage: Dwelling | @ | 82.22% = | 25.89 | |
| Coverage: Mitigation | @ | 17.78% = | 5.60 | |
| **Total** | | | **4,166.83** | **100.00%** |

Main Level



N

Main Level

# EXHIBIT 6

## Steven Ceceri

| | |
|---|---|
| **From:** | Steven Ceceri |
| **Sent:** | Monday, August 21, 2023 12:53 PM |
| **To:** | O'Leary, Stephen; Phan, My S |
| **Cc:** | Angela Tieng; Tom Alves; Michael Brady |
| **Subject:** | RE: Travelers Claim #: IMV8022001H - 41 Pleasant Street Bellingham, MA - Demand For Reference under M.G.L. c. 175 § 99 |

Good Afternoon Stephen,

Thank you for the email and sending over the list of Referees on August 16, 2023, as I do appreciate your reply. With that said, I will select Ed Odell of E. J. Odell from your list and request an email address for Ed please to provide along with the other contact information you shared.

As to my list, please see below and kindly let me know of your selection:

Paul F. Heywood
2 Highridge Road
Westport, MA 02790
508-636-4461
PaulFHeywood@HeywoodandCompany.com

Jose Medeiros
Medeiros & Daughters, LLC
38 Beechwood Drive
Dartmouth, MA 02748
508-989-0681
MedeirosAndDaughters@gmail.com

Chris Yerkes
Cedarworks, Inc.
32 Beechtree Drive
Brewster, MA 02631
508-648-6117
Chris@CedarWorksOnline.com

As we move forward in consideration of resolving the amount of loss through Reference, my requests for information and documentation still remain unanswered, which stem from a communication request from my email to Travelers on July 24, 2023 as well as the information I requested in my Demand For Reference Email to Travelers on August 14, 2023. Please advise when I will receive this information in total.

If Travelers feel a global settlement for a release of claim is on the table, I would be looking to include the interior as well as the exterior and this would take into account what I believe to be issues that we have documented to date, which in turn, I believe that Travelers has breached the insurance contract, has not acted in good faith and fair dealing, and has acted in bad faith in the handling of this claim. We have documented this file with conversations both in text and in person, as well as having video documentation of the inspection that was completed by Travelers, which will account for how this claim has been handled to date.

1

With that said, I am confident that we can prove each of the allegations I made above as well as those included in the 93a Demand Letter that NEPSG's In-House Legal Counsel submitted to Traveler's on August 18, 2023 via email and also sent via Certified Mail. So, please advise if you are open to discussion of a global confidential settlement for "negotiation purposes only" and I will work with my In-House Legal Counsel Team (Attorney Angela Tieng, Attorney Thomas Alves, and Attorney Michael Brady) to discuss this in more detail and to be in a position to expedite discussions assuming there is a meaningful attempt to settle this claim by Travelers.

Thank you!

Steven V. Ceceri
Owner & Operator
New England Property Services Group, LLC
Office: 1822 North Main Street, Second Floor Annex, Suite 001 ~ Fall River, MA 02720
Direct: 401-419-1781 ~ Office: 508-567-5738 Ext. 102 ~ Fax: 401-566-4423
Email: Steven@NewEnglandPropertyServicesGroup.com

**From:** O'Leary, Stephen <SOLEARY@travelers.com>
**Sent:** Wednesday, August 16, 2023 9:56 AM
**To:** Steven Ceceri <steven@newenglandpropertyservicesgroup.com>
**Cc:** Phan, My S <MPHAN@travelers.com>; O'Leary, Stephen <SOLEARY@travelers.com>
**Subject:** RE: Travelers Claim #: IMV8022001H - 41 Pleasant Street Bellingham, MA - Demand For Reference under M.G.L. c. 175 § 99

Mr. Ceceri,

Attached please find our response to your request for reference.

To date, you have not presented a repair proposal for our review. If you would like to send one, we will certainly review it in an effort to preclude the reference process.

Regards,

**Stephen O'Leary | Claim Manager**
The Travelers Home and Marine Insurance Company
West Bridgewater, MA
W: 508.726.7271  | F: 877.786.5584
TF: 800.422.3340

**Mailing Address:**
Travelers
PO Box 430
Buffalo, NY 14240-0430

If further assistance is needed, please contact my manager, Mark Perry,  at mperry3@travelers.com



**From:** Steven Ceceri <steven@newenglandpropertyservicesgroup.com>
**Sent:** Monday, August 14, 2023 12:47 PM
**To:** Phan, My S <MPHAN@travelers.com>; O'Leary, Stephen <SOLEARY@travelers.com>
**Cc:** Tom Alves <tom@newenglandpropertyservicesgroup.com>; Michael Brady

2

<michael@newenglandpropertyservicesgroup.com>; Angela Tieng <angela@newenglandpropertyservicesgroup.com>;
Athena Arruda <athena@newenglandpropertyservicesgroup.com>
**Subject:** [External] Travelers Claim #: IMV8022001H - 41 Pleasant Street Bellingham, MA - Demand For Reference under
M.G.L. c. 175 § 99

**CAUTION: This email came from outside of the company.
Please exercise caution when opening attachments, clicking links or responding to this
email. The original sender of this email is steven@newenglandpropertyservicesgroup.com.**

Good Afternoon Travelers Insurance,

Please allow this email to serve as New England Property Services Group, LLC's (NEPSG) Demand For Reference
under M.G.L. c. 175 § 99, et seq., due a present disagreement as to the Amount of Loss related to these
claims.  Reference to the pertinent Policy Provision included in Policy Number 0DJW34614262907633 1 is below:

**Paragraph 7. Appraisal is replaced by the following:**
**7. Arbitration.  If there is a disagreement as to the dollar amount of loss under the Property Coverage Section,**
**Massachusetts law provides a method for settling the disagreement. If requested, the dispute shall be referred to a**
**three member board of referees. They are selected and must act according to procedures set by the law.  Their**
**decision as to the amount of loss will be binding. This board does not make decisions about matters of coverage or**
**fault.**

As you are aware based on documentation already in the Claim Files, NEPSG is the lawful Chose in Action Assignee of the
Claims and as such, has the legal rights to Demand Reference in compliance with the Conditions of the Policy and to use
any other remedy available to resolve the dispute over the Amount of Loss.

With the Demand for Reference now in place from NEPSG, please be advised that in accordance with M.G.L. c. 175 § 99,
we await your timely reply.

**Additionally, NEPSG would like to have the following policy language defined with citation as to where we can further**
**reference the definition that NEPSG is seeking your response of:**

1. The phrase "dollar amount of Loss"
2. The word "Loss"
3. The phrase "If requested"
4. the phrase "legally entitled to receive payment" as noted under the Policy Condition # 6, unless the Loss Payment
Section under Section I - Property Conditions

Thank you!

Steven V. Ceceri
Owner & Operator
New England Property Services Group, LLC
Office: 1822 North Main Street, Second Floor Annex, Suite 001 ~ Fall River, MA 02720
Direct: 401-419-1781 ~ Office: 508-567-5738 Ext. 102 ~ Fax: 401-566-4423
Email: Steven@NewEnglandPropertyServicesGroup.com

This message (including any attachments) may contain confidential, proprietary, privileged and/or private information. The information is intended to be for the use
of the individual or entity designated above. If you are not the intended recipient of this message, please notify the sender immediately, and delete the message
and any attachments. Any disclosure, reproduction, distribution or other use of this message or any attachments by an individual or entity other than the intended
recipient is prohibited.

3

# EXHIBIT 7



**CLS MOLD TESTING, LLC**
Client: New England Property Service Group, LLC
Address: 99 South Main Street, Suite 354
Fall River, MA 02721

CLS Lab#: 23467-LAS
Date of Report: August 30, 2023
CLS-CRMI, CCMI: LAS

Re: Air sample collection @ 41 Pleasant Street, Bellingham, MA 02019







1st Floor Bathroom Ceiling-Water Damage     Kitchen Ceiling Light-Water damage     Kitchen Above Cabinets-High Moisture readings >30%

## Mold Analysis Report

Thank you for using CLS Mold Testing's services. CLS Mold Testing collected air samples at 41 Pleasant Street, Bellingham, MA on August 24, 2023.

**Scope of Work/Area(s) Tested: Kitchen (visible water damage was apparent on the ceiling and in the light, high moisture readings were collected from the ceiling above the kitchen cabinets), Bathroom (visible signs of water damage were apparent on the ceiling and wall on the side of the shower), Living Room and 2nd Floor Bedroom**

**Description of Collected Samples: Five** AllergencoD air samples were collected using one Zefon Bio-Pump air sampler (see p8 for results). This method allows for the collection of viable and non-viable mold spores. The Zefon Bio-Pump air sampler was calibrated prior to its use (15L). The samples were drawn at 15L/min for 5 minutes (75L/m). For comparison purposes an outdoor sample was collected (75L/m).

**Condition 1:** (Normal Fungal Ecology) An indoor environment that may have settled spores, fungal fragments or traces of actual growth whose identity, location and quantity are reflective of a normal fungal ecology for a similar indoor environment.

**Condition 2:** (Settled Spores) An indoor environment which is primarily contaminated with settled spores that were dispersed directly or indirectly from a condition 3 area, and which may have traces of actual growth.

**Condition 3:** (Visible Growth) An indoor environment contaminated with the presence of actual mold growth and associated spores. Actual growth includes growth that is active or dormant, visible or hidden.

**Clearance requirements: Return Home to Condition 1: (Normal Fungal Ecology)** An indoor environment that may have settled spores, fungal fragments or traces of actual growth whose identity, location and quantity are reflective of a normal fungal ecology for a similar indoor environment.

**The clearance standards for tested areas are:**
1. ***Fix Moisture/Humidity/Leak Problem
2. No visible sources of mold growth
3. No accumulation of dust/debris or visible signs of water damage
4. Total bioaerosols concentrations should be comparable or equal to the background levels (air samples).
5. No detectable indoor levels of airborne *Stachybotrys/Chaetomium*

**RESULTS:**
**Air Sample Results (please see air sample results, page 8).**

**Description of Mold Spores: Please see Table1 (p.6): Specific Mold Characteristics.**

All molds have the potential to cause health effects. Molds produce allergens, irritants and in some cases toxins that may cause reaction in humans. The types and severity of symptoms depend, in part, on the types of molds present, the extent of an individual's exposure, the ages of the individuals and their existing sensitivities or allergies. Specific reactions to mold can include allergic reactions, asthma, hypersensitivity pneumonitis, irritant effects and opportunistic infections. All health questions should be addressed to a physician.

**Moisture Readings: (LAS)** Moisture readings were collected using the TRAMEX Moisture Encounter Plus (ME5230213307). This meter collects non-destructive moisture readings from Wood, Timber, Dry Wall, Roofing, Plaster and Brick. The depth of field penetration depends on the density of the material that is being tested. The instrument field can penetrate approximately 30mm (1 1/4 inches) below the surface. The ANSI, IICRC S520 (Institute of Inspection Cleaning and Restoration) recommends wood products (hard wood, plywood, OSB and engineered wood products) to be <16%. Drywall loses its structural integrity when saturated, but regains it if dried properly. It should be classified as porous when making decisions about removal on the category of water. Drywall should be removed to allow remediation contractor's access to pockets of saturation for thorough cleaning and drying to acceptable moisture content. Paper faced gypsum readily supports mold growth if left wet for a sufficient period of time (IICRC Reference Guide for Professional Mold Remediation). High moisture readings (>30%) were collected from the kitchen ceiling above the kitchen cabinets (see photo on page 1).

**Conclusion:** The air samples collected from the **Kitchen, 1st Floor Bathroom and Living Room** were **within acceptable levels/PASS** in comparison to the outdoor sample at the time of sample collection. The air sample collected from the **Bedroom on the 2nd Floor** was higher/**FAIL** *(Chaetomium)* in

Page 2

CLS Mold Testing, LLC
635 Arnold Road
Coventry, RI 02816

CLS Lab #: 23467

comparison to the outdoor control sample at the time of sample collection (see page 8 for air sample results).

**Recommendations:** Address all water intrusion issues. Containment should be placed in the appropriate locations before the remediation process begins. Professional remediation of the **Kitchen-** remove water damaged wall(s)/ceiling (visible water damage and high moisture readings), **1st Floor Bathroom-**remove water damaged ceiling/shower wall (visible water damage) and **2nd Floor Bedroom** remove wall below the window (history of water leak, *Chaetomium* present in air sample, see page 8) is recommended. **During removal further water damage and/or visible fungal growth may be discovered. This could increase the scope of work for the professional mold remediation contractor.** Upon removal of the wallboard, visible signs of fungal growth may be apparent on the studs/joist, etc. Encapsulation may be applied to any/all-exposed wood/studs/joists ONLY after proper sanding or wire brushing and cleaning, HEPA vacuuming and drying. HEPA vacuuming and air scrubbing of the remediated and adjacent areas is recommended. For this process, it is recommended that a professional mold remediation contractor be contacted/consulted. Post remediation verification is recommended upon completion of the remediation process. Removal of **ALL** dust and debris is required for Post Remediation Verification Testing. For health-related information, this report should be discussed with a medical physician.

**Mold Analysis:** Mold samples are analyzed in-house by Lynn A. Serpa, CLS Mold Testing's Microbiologist (B.S. Microbiology), certified by the McCrone Research Institute in Advanced Fungal Spore Identification (Chicago, IL) and by the Professional Mold Inspection Institute (PMII) as a Certified Residential Mold Inspector (CRMI) and a Certified Commercial Mold Inspector (CCMI).

**Important Note:** Airborne mold concentrations (levels) and/or surfaces may change over a period of time. The sample results are a representation of the indoor air quality and/or surfaces at the time the test was performed. Mold may grow in indoor environments without producing airborne mold spores or hyphae. CLS Mold Testing cannot guarantee the identification of all/every mold growth area based on airborne testing. CLS Mold Testing, LLC is not liable for inaccessible areas, illness, allergies or damage to your property as a result of this report. CLS Mold Testing, LLC is not affiliated with any remediation company and is not liable for the outcome of the remediation process/completion as a result of this report.

**References:**
**1.** ACGIH (1999). Bioaerosols: Assessment and control. Macher J. Editor, ACGIH. Cincinnati, OH.
**2.** Mold Resources, United States Environmental Protection Agency
http://www.epa.gov/iaq/molds/moldresources.html
**3.** IICRC S520

**\*s/m³**= spores per meter cubed.
**spp.-species**

**Please feel free to contact CLS with any indoor air quality questions (401) 524-5259.**

Thank you,

Lynn A. Serpa CRMI, CCMI
Microbiologist
CLS Mold Testing, LLC

CLS Mold Testing, LLC
635 Arnold Road
Coventry, RI 02816

CLS Lab #: 23467

**Ten Things You Should Know About Mold**

1. Potential health effects and symptoms associated with mold exposures include allergic reactions, asthma, and other respiratory complaints.
2. There is no practical way to eliminate all molds and mold spores in the indoor environment; the way to control indoor mold growth is to control moisture.
3. If mold is a problem in your home or school, you must properly clean up the mold and eliminate sources of moisture.
4. Fix the source of the water problem or leak to prevent mold growth.
5. Reduce indoor humidity (to 30-50% ) to decrease mold growth by: venting bathrooms, dryers, and other moisture-generating sources to the outside; using air conditioners and de-humidifiers; increasing ventilation; and using exhaust fans whenever cooking, dishwashing, and cleaning.
6. Clean and dry any damp or wet building materials and furnishings within 24-48 hours to prevent mold growth.
7. Clean mold off hard surfaces with water and detergent, and dry completely. Absorbent materials such as ceiling tiles, that are moldy, may need to be replaced.
8. Prevent condensation: Reduce the potential for condensation on cold surfaces (i.e., windows, piping, exterior walls, roof, or floors) by adding insulation.
9. In areas where there is a perpetual moisture problem, do not install carpeting (i.e., on concrete floors with leaks or frequent condensation).
10. Molds can be found almost anywhere; they can grow on virtually any substance, providing moisture is present. There are molds that can grow on wood, paper, carpet, and foods.

Page 4

CLS Mold Testing, LLC
635 Arnold Road
Coventry, RI 02816

CLS Lab #: 23467

**There are many ways to control moisture in your home:**

- Fix leaks and seepage. If water is entering the house from the outside, your options range from simple landscaping to extensive excavation and waterproofing. (The ground should slope away from the house.) Water in the basement can result from the lack of gutters or a water flow toward the house. Water leaks in pipes or around tubs and sinks can provide a place for biological pollutants to grow.
- Put a plastic cover over dirt in crawlspaces to prevent moisture from coming in from the ground. Be sure crawlspaces are well-ventilated.
- Use exhaust fans in bathrooms and kitchens to remove moisture to the outside (not into the attic). Vent your clothes dryer to the outside.
- Turn off certain appliances (such as humidifiers or kerosene heaters) if you notice moisture on windows and other surfaces.
- Use dehumidifiers and air conditioners, especially in hot, humid climates, to reduce moisture in the air, but be sure that the appliances themselves don't become sources of biological pollutants.
- Raise the temperature of cold surfaces where moisture condenses. Use insulation or storm windows. (A storm window installed on the inside works better than one installed on the outside.) Open doors between rooms (especially doors to closets which may be colder than the rooms) to increase circulation. Circulation carries heat to the cold surfaces. Increase air circulation by using fans and by moving furniture from wall corners to promote air and heat circulation. Be sure that your house has a source of fresh air and can expel excessive moisture from the home.
- Pay special attention to carpet on concrete floors. Carpet can absorb moisture and serve as a place for biological pollutants to grow. Use area rugs which can be taken up and washed often. In certain climates, if carpet is to be installed over a concrete floor, it may be necessary to use a vapor barrier (plastic sheeting) over the concrete and cover that with sub-flooring (insulation covered with plywood) to prevent a moisture problem.
- Moisture problems and their solutions differ from one climate to another. The Northeast is cold and wet; the Southwest is hot and dry; the South is hot and wet; and the Western Mountain states are cold and dry. All of these regions can have moisture problems. For example, evaporative coolers used in the Southwest can encourage the growth of biological pollutants. In other hot regions, the use of air conditioners which cool the air too quickly may prevent the air conditioners from running long enough to remove excess moisture from the air. The types of construction and weatherization for the different climates can lead to different problems and solutions.

CLS Mold Testing, LLC
635 Arnold Road
Coventry, RI 02816

CLS Lab #: 23467

**Alternaria:** Alternaria is commonly found in outdoor samples. It can be isolated from samples of soil, seeds, and plants. Indoors it is often found in carpets, textiles and on horizontal surfaces. Some species of Alternaria can produce mycotoxins (*A. alternata*). Alternaria is also a well-known agent of allergy and asthma. Pathogenic infection is rarely reported.
**\*WI**

**Ascospores:** Ascospores are found everywhere in nature. Spores are discharged during periods of high humidity and rain. Some species are toxin producers. While some sporulate in culture, many are plant pathogens and sporulate on living host plants.
**\*WI**
**\*\*PTM**

**Aspergillus/Penicillium:** *Aspergillus* species are recognized as opportunistic pathogens usually resulting in pulmonary infections. Some of the species also produce mycotoxins. It is associated with damp houses. *Penicillium* species are common contaminants on a variety of substances. Some species are known to produce mycotoxins. This causes spoilage of food, colonizes leather objects and is also an indicator organism for dampness in buildings.
**\*WI**
**\*\*PTM**

**Aureobasidium:** Indoors this is commonly found where moisture accumulates. For example, bathrooms and kitchens on shower curtains and grout.
**\*WI**

**Basidiomycetes:** This class contains the mushrooms, shelf fungi, smuts, puffballs and various other macrofungi. Basidiospores grow mainly on grain plants. They are not a major health threat and are commonly found outdoors.

**Bispora:** – There is no current medical information regarding this mold type. In the absence of data it is reasonable to expect fungal spores to be allergenic if present indoors at high levels. This is a widespread fungus found in temperate climates. *Bispora betulina* is found in buildings on wood in wet areas.
**\*WI**

**Botrytis:** This fungi is most commonly associated with plants and can cause allergic asthma after indoor exposure. High levels are likely found in greenhouses or other locations where there are a high number of plants and high humidity levels.

**Chaetomium:** This fungi is usually found in the soil, but grows well on damp paper, fabric, wood products and straw. It will cause an allergic response in a moderate number of mold sensitive individuals. It may also contribute to a must odor smell in indoor environments.
**\*WI**
**\*\*PTM**

**Cladosporium:** This is a common fungi which is associated with plants, wood products and leather goods. It is common on windowsills, painted walls and a variety of cellulose materials. Because of its ubiquitous nature, it is not regarded as one of the important species unless it is present in high levels. It is found in areas that have high humidity levels and in areas with increased moisture.
**\*WI**

**Curvularia:** This is a fungi that is found in the soil of areas with moist tropical climates. It is found on tropical plants and agricultural crops. This includes beans, cotton, rice, barley, corn, plant matter and birds. The spores can cause respiratory problems for many people.

**Fusarium:** This fungi is distributed in plants and soils. It can attack corn and barley and can produce toxins at lower temperatures. Is know to effect water damaged carpets in schools. It can also affect immunocompromised individuals.
**\*WI**
**\*\*PTM**

**Ulocladium:** Pithomyces is found in decaying wood, plant material and soil. It is not known to cause infection in humans. Ulocladium is a contaminant found everywhere. It is isolated from wood, soil and decaying plant material. It grows on wet wallboard and particleboard. This genera is allergenic.
**\*WI**

**Smuts/myxomycetes/Rust:** These spores are commonly associated with living and decaying plants as well as decaying wood. They can be found indoors. Generally they pose no health concerns to humans or animals.

**Stachybotrys/Memnoniella:** This fungi grows on wet cellulose materials. It produces mycotoxins that can irritate the skin and mucosal membranes. These mycotoxins are toxic when inhaled. Extreme precaution should be taken when this mold is present in indoor environments.
**\*WI**
**\*\*PTM**

**Stemphylium:** This fungi is found in tropical or high relative humidity areas (bodies of water). It is found in the soil of grass and grain lands, forests, bark polluted water, decaying plant material, cotton fabric, damp paper and books. It is also reported to be allergenic.

**Trichoderma:** This fungi is found on decaying wood, dead leaves and soil. It is reported as allergenic and has been associated with disease in immunocompromised individuals.
**\*WI**
**\*\*PTM**

**\*WI=Water Indicator    \*\*PTM=Potential Toxogenic Mold**

Page 6

**CLS Mold Testing, LLC**
**635 Arnold Road**
**Coventry, RI 02816**

CLS Lab #: 23467

**CHART DEBRIS RATING –SPORE TRAP ANALYSIS USING 1000X (AllergencoD)**

| DEBRIS RATING | CONDITIONS FOR REPORTING DEBRIS RATING | SIGNIFICANCE |
|---|---|---|
| 0 | A visible trace, including particulates and debris, is not observed. | Indicates the sample was a blank or that improper sampling occurred. |
| 1 | Debris is present and <10% of the average viewing field is obscured. | Minimal amount of debris is observed. |
| 2 | Debris is present and 10% to <40% of the average viewing field is obscured. | Low amount of debris is observed.  Counts may be affected. |
| 3*** | Debris is present and 40% to 75% of the average viewing field is obscured. | Moderate amount of debris is observed, relative amounts of conidia/hyphae fragments may be underestimated. |
| 4*** | Debris is present and >75% of the average viewing field is obscured. | High amount of debris is observed. Counts are estimated. |
| 5**** | Debris is present and the entire viewing field is obscured. | Periphery of trace is the area analyzed. Presence of conidia/hyphae fragments noted. Suggest recollect. |

***A rating of 3 or greater indicates that the accuracy of the analysis is likely affected.

****A rating of 5 indicates that only the presence of conidia/hyphae fragments was noted. Recollection of the sample is suggested.

**REFERENCES**

Recommended Guidelines for Indoor Environments , Indoor Air Quality Association, Inc., 10400 Connecticut Avenue, Suite 510, Kensington, MD

20895, IAQA 01-2000.

‡ Bioaerosols Assessment and Control , Macher,J., ACGIH 1999.

**CLS Mold Testing, LLC**
**635 Arnold Road**
**Coventry, RI 02816**

CLS Lab #: 23467

**CLS MOLD TESTING, LLC**
41 Pleasant Street

**AllergencoD Cassette Analysis**
**Viable/Nonviable Mold Count**

Page 8

| | 23467-1 | | | 23467-2 | | | 23467-3 | | | 23467-4 | | | 23467-5 | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **CLS Lab ID #** | 23467-1 | | | 23467-2 | | | 23467-3 | | | 23467-4 | | | 23467-5 | | |
| **Sample ID (Location)** | Kitchen | | | 1st Fl Bath | | | Living Room | | | 2nd Fl Bed | | | Outdoor | | |
| **Volume (L/m)** | 75 | | | 75 | | | 75 | | | 75 | | | 75 | | |
| **100% of Trace Analyzed** | 1 | | | 1 | | | 1 | | | 1 | | | 1 | | |
| **Debris Rating** | 1 | | | 1 | | | 1 | | | 2 | | | 1 | | |
| **Collection Date** | 8/24/23 | | | 8/24/23 | | | 8/24/23 | | | 8/24/23 | | | 8/24/23 | | |
| **Date of Analysis** | 8/29/23 | | | 8/29/23 | | | 8/29/23 | | | 8/29/23 | | | 8/29/23 | | |
| **Microbiologist Initials** | LS | | | LS | | | LS | | | LS | | | LS | | |
| | Result | Total s/m³ | % | Result | Total s/m³ | % | Result | Total s/m³ | % | Result | Total s/m³ | % | Result | Total s/m³ | % |
| Alternaria | | | | | | | | | | 1 | 13 | 2 | | | |
| Arthrinium | | | | | | | | | | | | | | | |
| Ascospores | 1 | 13 | 4 | | | | | | | 1 | 13 | 2 | 4 | 53 | 12 |
| Aspergillus/Penicillium | 7 | 93 | 27 | 9 | 120 | 45 | 6 | 80 | 29 | 9 | 120 | 14 | 12 | 160 | 36 |
| Aureobasidium | | | | | | | | | | | | | | | |
| Basidiospores | 6 | 80 | 23 | 4 | 53 | 20 | 4 | 53 | 19 | 1 | 13 | 2 | 10 | 133 | 30 |
| Bipolaris/Dreschlera | | | | | | | | | | | | | | | |
| Botrytis | | | | | | | | | | 9 | 120 | 14 | | | |
| Chaetomium | | | | | | | | | | 9 | 120 | 14 | | | |
| Cladosporium | 8 | 107 | 31 | | | | 6 | 80 | 29 | 16 | 213 | 25 | 7 | 93 | 21 |
| Curvularia | 1 | 13 | 4 | | | | 1 | 13 | 5 | 2 | 27 | 3 | | | |
| Epicoccum | | | | | | | | | | | | | | | |
| Fusarium | | | | | | | | | | | | | | | |
| Nigrospora | | | | | | | | | | | | | | | |
| Oidium/Peronospora | | | | | | | | | | | | | | | |
| Pithomyces | | | | 2 | 27 | 10 | 1 | 13 | 5 | 10 | 133 | 16 | | | |
| Rusts | | | | | | | | | | | | | | | |
| Smuts/myxomycetes | | | | 2 | 27 | 10 | 1 | 13 | 5 | 3 | 40 | 5 | | | |
| Stachybotrys | | | | | | | | | | | | | | | |
| Stemphylium | | | | | | | | | | | | | | | |
| Torula | | | | | | | | | | | | | | | |
| Hyphae Fragments | 3 | 40 | 12 | 3 | 40 | 15 | 2 | 27 | 10 | 12 | 160 | 19 | | | |
| **Total** | 26 | 347 | 100 | 20 | 267 | 100 | 21 | 280 | 100 | 64 | 853 | 100 | 33 | 440 | 100 |

Microbiologist Signature:

# EXHIBIT 8

**Steven Ceceri**

| | |
|---|---|
| **From:** | Angela Tieng |
| **Sent:** | Thursday, September 21, 2023 3:13 PM |
| **To:** | wschneider@morrisonmahoney.com |
| **Cc:** | soleary@travelers.com; mphan@travelers.com; Steven Ceceri; Tom Alves; Michael Brady; Makenzie Scott |
| **Subject:** | TRAVELERS Claim # IMV8022 - Honig Reference - Notice of Abeyance |

Good afternoon Bill:

Please accept this email as <u>formal notice that NEPSG is temporarily holding the Honig Reference Proceeding in Abeyance</u> to determine the scope of rights legally afforded to NEPSG as Assignee via a Declaratory Judgment.

As of Monday, Sept. 18, NEPSG is in receipt of your response to its c.93A Demand Letter, sent to TRAVELERS on Aug. 18, via email and certified mail. Due to the contents of your reply, it is clear that there are a number of disputed issues regarding the validity of the Assignment and the scope of rights (or lack thereof) afforded to NEPSG therein, in relation to the Claim at issue.

NEPSG fully anticipates that the scope of its rights under the Claim will be favorably determined upon judgment of the court. As such, pending the court's decision and final declaration of rights, we are placing this Reference process on hold. We anticipate the action will be filed with the court within the next ten days or so.

Please note that NEPSG objects to any further action being taken with respect to this Reference proceeding. Notwithstanding, if the Panel decides to take any further action going forward with Reference, rest assured that any such conduct will be noted as additional Bad Faith conduct on the part of TRAVELERS. Thank you for your attention to this matter.

Best,
Angela

Angela McDonough Tieng, Esq.
In-House Legal Counsel
New England Property Services Group, LLC
1822 North Main Street
Second Floor, Annex Suite #001
Fall River, MA 02720
Office: (508) 567-5738 Ext. 105 ~ Fax: (401) 566-4423
Angela@newenglandpropertyservicesgroup.com
Bar Admissions: MA

*Disclaimer: The contents of this email communication and any attachments herein may contain confidential and/or privileged information and are solely intended for the above named recipient(s). If you have inadvertently received this email communication, kindly notify the sender forthwith. Any disclosure, distribution, and/or reproduction of the contents herein is prohibited.*

# EXHIBIT 9

**Makenzie Scott**

| | |
|---|---|
| **From:** | Schneider, William <WSchneider@morrisonmahoney.com> |
| **Sent:** | Thursday, September 21, 2023 3:44 PM |
| **To:** | Angela Tieng |
| **Cc:** | O'Leary, Stephen; mphan@travelers.com; Steven Ceceri; Tom Alves; Michael Brady; Makenzie Scott; Schneider, William; Hennessey, Richard |
| **Subject:** | RE: TRAVELERS Claim # IMV8022 - Honig Reference - Notice of Abeyance |

Dear Angela –

I'm sorry, but NEPSG does not have the right to unilaterally declare the Reference in abeyance so it can bring a declaratory judgment action. Reference is a condition precedent to any action on the policy, and the case law quite clearly includes matters of and concerning Reference. NEPSG demanded the Reference. NEPSG served a 93A the demand letter containing bogus allegations of unfair insurance claim settlement practices. Now it wants to postpone the very proceedings it commenced based on some unspecified reason. I'm not at all clear what "scope of rights" you're referring to, but this is just more gamesmanship and bad faith on the part of NEPSG.

Your "formal notice' is rejected. We will ask the Commissioner of Insurance to intervene to keep these proceedings on track.

-- Bill Schneider

**William A. Schneider, JD, CPCU**
Partner
MORRISON MAHONEY LLP
250 Summer Street, Boston, MA  02210
T 617.439.7573   |  F 617.342.4951
wschneider@morrisonmahoney.com | www.morrisonmahoney.com

CONNECTICUT  |  ENGLAND  |  MASSACHUSETTS  |  NEW HAMPSHIRE  |  NEW JERSEY  |  NEW YORK  |  RHODE ISLAND

The documents included with this electronic mail transmission contain information from the law firm of Morrison Mahoney LLP which is confidential and/or privileged. This information is intended to be for the use of the addressee only. Note that any disclosure, printing, photocopying, distribution or use of the contents of this e-mailed information by persons other than the addressee or an agent of the addressee, is unauthorized and prohibited. If you have received this electronic mail in error, please notify us via electronic mail reply to the sender or by telephone (collect 617-439-7500) immediately.

**From:** Angela Tieng <angela@newenglandpropertyservicesgroup.com>
**Sent:** Thursday, September 21, 2023 3:13 PM
**To:** Schneider, William <WSchneider@morrisonmahoney.com>
**Cc:** soleary@travelers.com; mphan@travelers.com; Steven Ceceri <steven@newenglandpropertyservicesgroup.com>; Tom Alves <tom@newenglandpropertyservicesgroup.com>; Michael Brady <michael@newenglandpropertyservicesgroup.com>; Makenzie Scott <makenzie@newenglandpropertyservicesgroup.com>
**Subject:** TRAVELERS Claim # IMV8022 - Honig Reference - Notice of Abeyance

External Email from angela@newenglandpropertyservicesgroup.com <angela@newenglandpropertyservicesgroup.com>. Do not click on links, open attachments, or reply before confirming this is a valid email.

1

Good afternoon Bill:

Please accept this email as <u>formal notice that NEPSG is temporarily holding the Honig Reference Proceeding in Abeyance</u> to determine the scope of rights legally afforded to NEPSG as Assignee via a Declaratory Judgment.

As of Monday, Sept. 18, NEPSG is in receipt of your response to its c.93A Demand Letter, sent to TRAVELERS on Aug. 18, via email and certified mail. Due to the contents of your reply, it is clear that there are a number of disputed issues regarding the validity of the Assignment and the scope of rights (or lack thereof) afforded to NEPSG therein, in relation to the Claim at issue.

NEPSG fully anticipates that the scope of its rights under the Claim will be favorably determined upon judgment of the court. As such, pending the court's decision and final declaration of rights, we are placing this Reference process on hold. We anticipate the action will be filed with the court within the next ten days or so.

Please note that NEPSG objects to any further action being taken with respect to this Reference proceeding. Notwithstanding, if the Panel decides to take any further action going forward with Reference, rest assured that any such conduct will be noted as additional Bad Faith conduct on the part of TRAVELERS. Thank you for your attention to this matter.

Best,
Angela


Angela McDonough Tieng, Esq.

In-House Legal Counsel

New England Property Services Group, LLC

1822 North Main Street

Second Floor, Annex Suite #001

Fall River, MA 02720

Office: (508) 567-5738 Ext. 105 ~ Fax: (401) 566-4423

<u>Angela@newenglandpropertyservicesgroup.com</u>

Bar Admissions: MA


*Disclaimer: The contents of this email communication and any attachments herein may contain confidential and/or privileged information and are solely intended for the above named recipient(s). If you have inadvertently received this email communication, kindly notify the sender forthwith. Any disclosure, distribution, and/or reproduction of the contents herein is prohibited.*

# EXHIBIT 10

**Makenzie Scott**

| | |
|---|---|
| **From:** | Steven Ceceri |
| **Sent:** | Wednesday, January 3, 2024 8:24 AM |
| **To:** | Leonard, John J |
| **Cc:** | Tom Alves; Michael Brady; Makenzie Scott |
| **Subject:** | RE: Travelers Claim #: IMV8022001H - 41 Pleasant Street Bellingham, MA - Update on Interior Work    THE TRAVELERS HOME AND MARINE INSURANCE COMPANY |

Good Morning John,

I appreciate your reaching out on this. With that said, it may be easier for you to share your schedule once you know who you want to bring to the house and then give me a couple of days and times if that is possible and I'll work to confirm which option works best for my schedule and the homeowners as well.

Also, if you are able to provide me with the names and company affiliations with anyone you will bring, particularly those who you suggest would be "experts" that would be appreciated in advance.

Thank you for your time and I look forward to hearing back from you soon!

Steven V. Ceceri
Owner & Operator
New England Property Services Group, LLC
Office: 1822 North Main Street, Second Floor Annex, Suite 001 ~ Fall River, MA 02720
Direct: 401-419-1781 ~ Office: 508-567-5738 Ext. 102 ~ Fax: 401-566-4423
Email: Steven@NewEnglandPropertyServicesGroup.com

**From:** Leonard, John J <JJLEONAR@travelers.com>
**Sent:** Tuesday, January 2, 2024 3:40 PM
**To:** Steven Ceceri <steven@newenglandpropertyservicesgroup.com>
**Subject:** FW: Travelers Claim #: IMV8022001H - 41 Pleasant Street Bellingham, MA - Update on Interior Work THE TRAVELERS HOME AND MARINE INSURANCE COMPANY

Good afternoon Mr. Ceceri,

I hope all is well and Happy New Year.

The claim mentioned above has been reassigned to me for further handling and I am hoping to make an additional site visit to reinspect the property for damage. Please provide me with various dates and times which will provide you with availability to meet with myself, unit manager, property field trainer, and any additional experts we may assign.

Please also provide me with a n itemized breakdown of your repair proposal for further review.

Please reach out with any additional questions or concerns.

Thanks,

John Leonard

1

**From:** O'Leary, Stephen <SOLEARY@travelers.com>
**Sent:** Tuesday, January 2, 2024 12:42 PM
**To:** Steven Ceceri <steven@newenglandpropertyservicesgroup.com>
**Cc:** Phan, My S <MPHAN@travelers.com>; Tom Alves <tom@newenglandpropertyservicesgroup.com>; Michael Brady <michael@newenglandpropertyservicesgroup.com>; Makenzie Scott <makenzie@newenglandpropertyservicesgroup.com>; O'Leary, Stephen <SOLEARY@travelers.com>
**Subject:** RE: Travelers Claim #: IMV8022001H - 41 Pleasant Street Bellingham, MA - Update on Interior Work THE TRAVELERS HOME AND MARINE INSURANCE COMPANY

Mr. Ceceri,

Thanks you for your response.

At this time. The Travelers Home and Marine Insurance Company (Travelers) is not in a position to agree to your suggestion that we agree to a scope of the repairs on the interior of the house or consider paying for the repairs you have completed to date.

Travelers is willing to reinspect the property, so you can point out any new damages that have occurred since the initial inspection. We are also willing to review and damages that were present as a result of the initial cause of loss and any charges incurred to date.

Travelers continues to handle this claim under a full reservation of rights

Regards,

**Stephen O'Leary | Claim Manager**
Travelers
West Bridgewater, MA
W: 508.726.7271  | F: 877.786.5584
TF: 800.422.3340

**Mailing Address:**
Travelers
PO Box 430
Buffalo, NY 14240-0430

If further assistance is needed, please contact my manager, Mark Perry,  at mperry3@travelers.com



**From:** Steven Ceceri <steven@newenglandpropertyservicesgroup.com>
**Sent:** Tuesday, January 2, 2024 11:21 AM
**To:** O'Leary, Stephen <SOLEARY@travelers.com>
**Cc:** Phan, My S <MPHAN@travelers.com>; Tom Alves <tom@newenglandpropertyservicesgroup.com>; Michael Brady <michael@newenglandpropertyservicesgroup.com>; Makenzie Scott <makenzie@newenglandpropertyservicesgroup.com>
**Subject:** [External] RE: Travelers Claim #: IMV8022001H - 41 Pleasant Street Bellingham, MA - Update on Interior Work THE TRAVELERS HOME AND MARINE INSURANCE COMPANY

Good Morning Stephen & My (Travelers),

2

Happy New Year to both of you and I hope you are both enjoying the start of 2024!

With that said, I am looking for a follow up to my emails that I sent to both of you on December 21, 2023 and then on December 26, 2023, which are in the string of emails below. The policyholders would like to enjoy 2024 as well, so knowing that their concerns continue to mount in a negative manner, both with issues relating to their property and health, I am seeking your immediate reply to my emails in how we can proceed to fairly resolve the claim for damages.

Please kindly reply to all on this email as soon as possible.

Thank you!

Steven V. Ceceri
Owner & Operator
New England Property Services Group, LLC
Office: 1822 North Main Street, Second Floor Annex, Suite 001 ~ Fall River, MA 02720
Direct: 401-419-1781 ~ Office: 508-567-5738 Ext. 102 ~ Fax: 401-566-4423
Email: Steven@NewEnglandPropertyServicesGroup.com

**From:** Steven Ceceri
**Sent:** Tuesday, December 26, 2023 9:17 AM
**To:** O'Leary, Stephen <SOLEARY@travelers.com>
**Cc:** Phan, My S <MPHAN@travelers.com>
**Subject:** RE: Travelers Claim #: IMV8022001H - 41 Pleasant Street Bellingham, MA - Update on Interior Work THE TRAVELERS HOME AND MARINE INSURANCE COMPANY

Good Morning Stephen & My,

I am following up from my email to both of you on 12-21-2023 (below) so please review and reply as I was contacted again today by the policyholders who I need to provide an update as to our progress and where it was indicated that the new issue is causing health issues, so I would request an immediate inspection of this roof system which as noted in my email on 12-21-2023, was not completed by Scott Chase during either of his 2 visits.

Please advise. Thank you!

Steven V. Ceceri
Owner & Operator
New England Property Services Group, LLC
Office: 1822 North Main Street, Second Floor Annex, Suite 001 ~ Fall River, MA 02720
Direct: 401-419-1781 ~ Office: 508-567-5738 Ext. 102 ~ Fax: 401-566-4423
Email: Steven@NewEnglandPropertyServicesGroup.com

**From:** Steven Ceceri
**Sent:** Thursday, December 21, 2023 2:32 PM
**To:** O'Leary, Stephen <SOLEARY@travelers.com>
**Cc:** Phan, My S <MPHAN@travelers.com>
**Subject:** RE: Travelers Claim #: IMV8022001H - 41 Pleasant Street Bellingham, MA - Update on Interior Work THE TRAVELERS HOME AND MARINE INSURANCE COMPANY

Good Afternoon Stephen & My,

3

I will be forwarding some documentation soon which would account for work that has been completed to date for both mitigation and remediation in the bedroom on the 2nd floor, as well as the kitchen and bathroom on the 1st floor. The restoration portion of the work was being planned (with flooring, painting, etc.) and with the issues related to the roof, we are not able to complete this work at this time. We've had to make multiple visits to the property to try and create a water tight roof to stop water from entering the interior and causing more issues, after the areas that you documented (bedroom, bathroom, and kitchen) were already addressed. Unfortunately, we have not had 100% success in stopping the water, but have now isolated the issue as best as possible, while still leaving the roof in a condition to inspect again if necessary.

With that said, on Sunday, a new leak location was identified around the chimney are coming into the ceiling and walls on the 2nd floor. We can't tarp every section of the roof nor is that even feasible. At this point, I ask that Travelers providing coverage for the roof replacement and we can work on an accurate scope of work to account for the roof replacement.

I am aware that Scott Chase did not access the upper roof area, and according to HAAG Training, when completing a legitimate and accurate inspection for wind damage, the entire exterior and interior areas are to be inspected. This means that inspecting only areas that had been identified as areas where leaking was confirmed, should not be the only areas of inspection. The full roof surface on the house, along with the siding, as well as the attic area should have been inspected by Scott Chase and this would be in addition to the garage.

I know Scott Chase touts his HAAG Credentials, but after going through the HCI-Wind Training that is offered online, it is 100% required to complete a full inspection as an inspection for Wind is not to be considered the same methodology that is accepted for Hail, so there are no "10 x 10 test squares" to be used. Wind hits a structure as different areas with varying strength and can cause damage from direct impact as well as from the suction force of wind as it moves around the various surfaces from low to high points. Wind borne debris can also cause impact damage that must be documented along with any and all damage to the exterior (and interior) surfaces and then commented on accordingly.

We can agree that the inspection was on Video while we were all on site and this inspection was not a full and complete inspection and now, the roof is leaking in other areas not previously inspected as they should have been.

So, I am proposing that NEPSG submits the invoices for the work to date and to have payment returned in full for all invoices, with the addition to Overhead & Profit included at a minimum. I can put an invoice together in Xactimate that includes each of these items as "Bid Items" that were Paid and then add for my time and then O&P in a cumulative calculation. I would then propose that we immediately discuss the scope of work to address the roof surfaces. I can assure you that even on the rear lower roof slope that there was a shingle (top layer of the laminated shingle) that I documented as damaged, but I believe Scott Chase did not identify for reasons I will not go into here, but just 1 damaged shingle would then lead to full roof replacement as these shingles can't be matched, which is something we should be able to agree upon without much of a debate.

Please let me know your thoughts as the next steps will likely involve much more than just our attempt to reach a mutually acceptable arrangement that provides a legitimate and necessary scope of work to restore the property so that the policyholders can move back into the house full time instead of living in a tent house outside their property, which you can confirm by asking the neighbors what has been happening since the claim began.

Lastly, the policyholders have written a letter that I will save for my reply, but it does provide many factual highlights of the claim process and their discontent with how Travelers has handled this claim to date, which would primarily focus on the reason for water introducing into their home (the roof) to which was the main focus of denial which as noted above, exists only from an improper inspection.

I look forward to hearing from you soon!

Steven V. Ceceri

4

Owner & Operator
New England Property Services Group, LLC
Office: 1822 North Main Street, Second Floor Annex, Suite 001 ~ Fall River, MA 02720
Direct: 401-419-1781 ~ Office: 508-567-5738 Ext. 102 ~ Fax: 401-566-4423
Email: Steven@NewEnglandPropertyServicesGroup.com

**From:** O'Leary, Stephen <SOLEARY@travelers.com>
**Sent:** Monday, December 11, 2023 2:33 PM
**To:** Steven Ceceri <steven@newenglandpropertyservicesgroup.com>
**Cc:** Schneider, William <WSchneider@morrisonmahoney.com>; Phan, My S <MPHAN@travelers.com>; O'Leary, Stephen <SOLEARY@travelers.com>
**Subject:** RE: Travelers Claim #: IMV8022001H - 41 Pleasant Street Bellingham, MA - Update on Interior Work THE TRAVELERS HOME AND MARINE INSURANCE COMPANY

Mr. Ceceri,

To date, nothing has been received.

If you want to submit an itemized proposal of repairs and photographs to support said proposal, they will be reviewed.

Travelers continues to handle this claim under a full reservation of rights.

Regards,

**Stephen O'Leary | Claim Manager**
Travelers
West Bridgewater, MA
W: 508.726.7271  | F: 877.786.5584
TF: 800.422.3340

**Mailing Address:**
Travelers
PO Box 430
Buffalo, NY 14240-0430

If further assistance is needed, please contact my manager, Mark Perry,  at mperry3@travelers.com



**From:** O'Leary, Stephen <SOLEARY@travelers.com>
**Sent:** Thursday, November 2, 2023 11:24 AM
**To:** Steven Ceceri <steven@newenglandpropertyservicesgroup.com>
**Cc:** Schneider, William <WSchneider@morrisonmahoney.com>; O'Leary, Stephen <SOLEARY@travelers.com>; Phan, My S <MPHAN@travelers.com>
**Subject:** RE: Travelers Claim #: IMV8022001H - 41 Pleasant Street Bellingham, MA - Update on Interior Work THE TRAVELERS HOME AND MARINE INSURANCE COMPANY

Mr. Ceceri,

If you want to submit an itemized proposal of repairs and photographs to support said proposal, they will be reviewed.

Travelers continues to handle this claim under a full reservation of rights.

5

Regards,

**Stephen O'Leary | Claim Manager**
Travelers
West Bridgewater, MA
W: 508.726.7271 | F: 877.786.5584
TF: 800.422.3340

**Mailing Address:**
Travelers
PO Box 430
Buffalo, NY 14240-0430

If further assistance is needed, please contact my manager, Mark Perry, at mperry3@travelers.com



---

**From:** O'Leary, Stephen
**Sent:** Thursday, November 2, 2023 9:17 AM
**To:** 'Steven Ceceri' <steven@newenglandpropertyservicesgroup.com>
**Cc:** 'Schneider, William' <WSchneider@morrisonmahoney.com>; O'Leary, Stephen <SOLEARY@travelers.com>
**Subject:** RE: Travelers Claim #: IMV8022001H - 41 Pleasant Street Bellingham, MA - Update on Interior Work THE TRAVELERS HOME AND MARINE INSURANCE COMPANY

Mr. Ceceri,

As you know, Travelers is represented by an attorney on this claim. I have cc'd him on this response.

All correspondence should be directed to Attorney Schneider.

Travelers continues to handle this claim under a full reservation of rights.

Regards,

**Stephen O'Leary | Claim Manager**
Travelers
West Bridgewater, MA
W: 508.726.7271 | F: 877.786.5584
TF: 800.422.3340

**Mailing Address:**
Travelers
PO Box 430
Buffalo, NY 14240-0430

If further assistance is needed, please contact my manager, Mark Perry, at mperry3@travelers.com

**From:** Steven Ceceri <steven@newenglandpropertyservicesgroup.com>
**Sent:** Wednesday, November 1, 2023 3:24 PM
**To:** O'Leary, Stephen <SOLEARY@travelers.com>
**Cc:** Phan, My S <MPHAN@travelers.com>; Tom Alves <tom@newenglandpropertyservicesgroup.com>; Michael Brady <michael@newenglandpropertyservicesgroup.com>
**Subject:** [External] Travelers Claim #: IMV8022001H - 41 Pleasant Street Bellingham, MA - Update on Interior Work

**CAUTION: This email came from outside of the company.** Please exercise caution when opening attachments, clicking links or responding to this email. The original sender of this email is steven@newenglandpropertyservicesgroup.com.

Good Afternoon Stephen,

I wanted to follow up as work has progressed at the property in the form of mitigation / remediation / and restoration. The work continues as we speak with the restoration to allow the policyholders to occupy their property free of any hazards, which the water damage caused in the kitchen, bathroom, and bedroom areas on the 2nd floor.

A mitigation company was hired to complete the mitigation work and air quality testing had been completed as well to confirm the work was successfully completed.

With that said, understanding that we have a major disagreement as to the exterior of the property which we still need to discuss and resolve, I am hoping that I can submit the documentation for the interior work and also schedule a site visit so you can take a look at where the work stands, which will depend on when you would be available. At this time, sheetrock has been hung and taped, so I imagine in the coming days, painting will be completed and then the carpeting and padding on the 2nd floor will be installed. The carpet and pad was damaged from the bedroom where the water damage was documented (on the driveway side) which then caused a need to pull the carpet from the other rooms and hallway, as it was the same carpet throughout, which I assume you have already documented from your initial visit.

So, please advise and perhaps we can resolve the interior issues based on your observation and the documentation I will submit and then we can move on to the exterior discussion or use whatever forum necessary to resolve that.

I await your reply. Thank you!

Steven V. Ceceri
Owner & Operator
New England Property Services Group, LLC
Office: 1822 North Main Street, Second Floor Annex, Suite 001 ~ Fall River, MA 02720
Direct: 401-419-1781 ~ Office: 508-567-5738 Ext. 102 ~ Fax: 401-566-4423
Email: Steven@NewEnglandPropertyServicesGroup.com

This message (including any attachments) may contain confidential, proprietary, privileged and/or private information. The information is intended to be for the use of the individual or entity designated above. If you are not the intended recipient of this message, please notify the sender immediately, and delete the message and any attachments. Any disclosure, reproduction, distribution or other use of this message or any attachments by an individual or entity other than the intended recipient is prohibited.

# EXHIBIT 11

**Makenzie Scott**

| | |
|---|---|
| **From:** | Steven Ceceri |
| **Sent:** | Friday, December 1, 2023 3:28 PM |
| **To:** | APerez@morrisonmahoney.com; Schneider, William; O'Leary, Stephen; Phan, My S; mperry3@travelers.com |
| **Cc:** | Tom Alves; Michael Brady; Makenzie Scott |
| **Subject:** | RE: Claimant: NEPSG; Insured: Avron Honig - Claim No. IMV8022 |

Good Afternoon Angelina,

I was forwarded an email from Attorney Alves in my office that you emailed to him and to which you "Authored" and of which Attorney William A. Schneider's signature is included. With that said, in my review of the letter you Authored, I took note of an email that begins on Page 12 of the 16 Page document. This email originated from Stephen O'Leary, the Claims Manager for Travelers and is dated Tuesday September 12, 2023 at 1:38PM. Additionally, this email is addressed to James Trudeau and to Ed Odell, the latter being the individual that I selected from the list of 3 Referees that Stephen O'Leary from Travelers provided to me. However, this email was also addressed to James Trudeau, who was the mutually selected third Referee by a confirmation between Chris Yerkes, who was selected by Stephen O'Leary from our list of 3 Referees and Ed Odell. What is interesting to note about this email, is the lack of Chris Yerkes being included as a recipient, thus, it appears based on the documentation that you have provided as a package sent to Gary D. Anderson, Commissioner of the MA Division of Insurance, that Travelers has engaged in Ex Parte Communications. As we are presently aware of this instance with the wording in the email cited herein suggesting that other conversations may have taken place based on the last sentence in the email from Stephen O'Leary that says "Let me know if you need anything else from us right now." Based on this inappropriate exchange of information with 2 of the 3 Referees involved in this Referee Proceeding, NEPSG believes that other Ex Parte Communications may have occurred as well.

With that said, please consider this email as NEPSG's request to disband the Reference Panel based on the above noted details. Further, NEPSG hereby issues a full Reservation of Rights under the Assigned Claim to resolve this Claim using any and all available remedies, including but not limited to filing a law suit for breach of contract, breach of the covenant of good faith and fair dealing, and bad faith.

As has been recently expressed by NEPSG to Travelers, NEPSG shall seek to work directly with Travelers to resolve the Amount of Loss in dispute through non-reference proceeding and presently, NEPSG is awaiting additional documentation to submit to Travelers for review and shall do so as quickly as possible. Lastly, please note, Attorney Angela Tieng is no longer with our office, so please remove her from any communications going forward as needed.

Regards,

Steven V. Ceceri
Owner & Operator
New England Property Services Group, LLC
Office: 1822 North Main Street, Second Floor Annex, Suite 001 ~ Fall River, MA 02720
Direct: 401-419-1781 ~ Office: 508-567-5738 Ext. 102 ~ Fax: 401-566-4423
Email: Steven@NewEnglandPropertyServicesGroup.com

---

**From:** Tom Alves <tom@newenglandpropertyservicesgroup.com>
**Sent:** Friday, December 1, 2023 2:31 PM
**To:** Steven Ceceri <steven@newenglandpropertyservicesgroup.com>
**Subject:** FW: Claimant: NEPSG; Insured: Avron Honig - Claim No. IMV8022

1

FYI

Thomas J. Alves, Esq.
In-House Legal Counsel
New England Property Services Group, LLC
1822 North Main Street
Second Floor, Annex Suite #001
Fall River, MA 02720
Mobile: 401-320-0755 ~ Fax: 401-556-4423
Tom@NewEnglandPropertyServicesGroup.com
Bar Admissions: CT, MA, and RI
R.I. Public Adjuster License No. 3001786264

This email (and attachments, if any) is intended only for the addressee shown above. It may contain information that is privileged, confidential or otherwise protected from disclosure. Any review, dissemination or use of this transmission or its contents by persons other than the said addressee is strictly prohibited.

---

**From:** Perez, Angelina <APerez@morrisonmahoney.com>
**Date:** Friday, December 1, 2023 at 2:27 PM
**To:** Angela Tieng <angela@newenglandpropertyservicesgroup.com>, Tom Alves <tom@newenglandpropertyservicesgroup.com>, Michael Brady <michael@newenglandpropertyservicesgroup.com>
**Cc:** Schneider, William <WSchneider@morrisonmahoney.com>
**Subject:** Claimant: NEPSG; Insured: Avron Honig - Claim No. IMV8022

Dear Ms. McDonough, Mr. Alves and Mr. Brady:

Attached, please find correspondence to Gary D. Anderson at the Division of Insurance.

Thank you for your attention to this matter. Please do not hesitate to contact us if you have any questions.

**Angelina Perez**
Legal Assistant
**MORRISON MAHONEY LLP**
250 Summer Street, Boston, MA  02210
T (617) 670-8932 | F
APerez@morrisonmahoney.com | www.morrisonmahoney.com

Connecticut | Massachusetts | New Hampshire | New Jersey | New York | Rhode Island | United Kingdom

The information transmitted, including attachments, is intended only for the person(s) or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmissions, dissemination or other use of, or taking of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and destroy any copies of this information.

2

# EXHIBIT 12

**Makenzie Scott**

| | |
|---|---|
| **From:** | Steven Ceceri |
| **Sent:** | Tuesday, January 9, 2024 7:17 PM |
| **To:** | Tucker, Robert M |
| **Cc:** | Tom Alves; Michael Brady; Makenzie Scott |
| **Subject:** | FW: IMV8022: Your Homeowners Claim |
| **Attachments:** | Honig.Letter.IMV8022.pdf; SWORN STATEMENT IN PROOF OF LOSS.pdf |

Good Evening Robert,

In review of your letter, it seems you are addressing Mr. Honig, but NEPSG is the legal Assignee of this claim, so anything related to this claim must be solely addressed to NEPSG. If you are questioning the validity of the Assignment, please advise.

On another note, it appears that Travelers is taking the position that with the additional areas of damage being documented recently, that Travelers believes each and every instance (i.e. each area of damage) is going to require a new claim to be submitted. With that said, I ask that you please provide me with the Policy Definition of the word "Occurrence" and provide a Certified Copy of the Insurance Policy to me upon your reply.

If Travelers is seeking to call each area of damage an "Occurrence" it would then suggest that Travelers is accepting coverage, but wanting to assess a Deductible to each of these instances. That would likely be something to be litigated later and certainly not something Travelers is going to win in court on.

Please advise and please reply to all on this email.

Thank you!

Steven V. Ceceri
Owner & Operator
New England Property Services Group, LLC
Office: 1822 North Main Street, Second Floor Annex, Suite 001 ~ Fall River, MA 02720
Direct: 401-419-1781 ~ Office: 508-567-5738 Ext. 102 ~ Fax: 401-566-4423
Email: Steven@NewEnglandPropertyServicesGroup.com

**From:** Tucker, Robert M <RMTUCKER@travelers.com>
**Sent:** Tuesday, January 9, 2024 5:49 PM
**To:** AVROMSPAM@GMAIL.COM
**Cc:** Steven Ceceri <steven@newenglandpropertyservicesgroup.com>; Tucker, Robert M <RMTUCKER@travelers.com>
**Subject:** IMV8022: Your Homeowners Claim

Mr. Honig,

Please find attached a letter and Sworn Statement in Proof of Loss in regard to your claim IMV8022.

Should you have any questions or to discuss this matter further at this time, please do not hesitate to let me know.

Regards,

**Robert M. Tucker | Claim Manager**

1

The Travelers Home And Marine Insurance Company
West Bridgewater, MA
New England Claim Center
W: 508.717.2159  TF: 800.422.3340
F: 877.786.5584

Mailing Address:
Travelers
PO Box 430
Buffalo, NY 14240-0430

If further assistance is required, please contact my manager Manny Carvalho at mcarvalh@travelers.com



This message (including any attachments) may contain confidential, proprietary, privileged and/or private information. The information is intended to be for the use of the individual or entity designated above. If you are not the intended recipient of this message, please notify the sender immediately, and delete the message and any attachments. Any disclosure, reproduction, distribution or other use of this message or any attachments by an individual or entity other than the intended recipient is prohibited.

# EXHIBIT 13

| | |
|---|---|
| Insured: | Avrom Honig |
| Property: | 41 Pleasant Street |
| | Bellingham, MA 02019 |

| | | | |
|---|---|---|---|
| Contractor: | Steven Ceceri | Business: | (401) 419-1781 |
| Company: | Steven Ceceri | E-mail: | Steven@NewEnglandProperty |
| Business: | 1822 North Main Street, Suite 001 | | ServicesGroup.com |
| | Fall River, MA 02720 | | |

**Claim Number:** IMV8022          **Policy Number:** 614262907 633 1          **Type of Loss:** Storm Damage

| | | |
|---|---|---|
| Date of Loss: | Date Received: | |
| Date Inspected: | Date Entered: | 7/10/2023 12:00 AM |

| | |
|---|---|
| Price List: | MAEM8X_FEB24 |
| | Restoration/Service/Remodel |
| Estimate: | 41PLEASANTST-HONIG |

**This Estimate has the following Parameters associated with the line items included in the Scope of Work provided:**
**Roofing Scope:**
1. Labor for Removal is being listed as RFG / Roofing for the Trade Group (not DMO / Demo as is defaulted in Xactimate)
2. Labor for the Installation is being listed as RFG / Roofing for the Trade Group (as is defaulted in Xactimate)
3. All Roofing Related Line Items, which require the Removal or Detaching of any item, is being listed as RFG / Roofing (not DMO / Demo as is defaulted in Xactimate)
**Siding Scope:**

1. Labor for Removal is being listed as SDG / Siding Installers for the Trade Group (not DMO / Demo as is defaulted in Xactimate)
2. Labor for the Installation is being listed as SDG / Siding Installers for the Trade Group (as is defaulted in Xactimate)
3. All Siding Related Line Items, which require the Removal or Detaching of any item, is being listed as SDG / Siding (not DMO / Demo as is defaulted in Xactimate)
4. Labor for Electrical Work is being attached to ELE / Electricians for all Electrical Related Work
5. Labor for Vinyl Siding Components is being factored in for the entire project and all other line items are listed as Material Only to account for the cost associated with the Materials
6. Lead Protocols are being included due to the presence of Lead under the vinyl siding materials. Additional Labor and Specialized Labor Supervision is being included to account for the oversight of the removal and replacement of the vinyl siding materials
**General:**
1. Overhead & Profit is being included as 10% for Overhead and 10% for Profit which is being calculated Cumulatively (10% Profit is calculated after Overhead is added to the Project Total)



## New England Property Services Group, LLC

New England Property Services Group, LLC
1822 North Main Street, Suite 001 ~ Fall River, MA 02720
Direct: (401) 419-1781 ~ Fax: (401) 566-4423
Steven@NewEnglandPropertyServicesGroup.com
www.NewEnglandPropertyServicesGroup.com

### 41PLEASANTST-HONIG

**41PLEASANTST-HONIG**

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 1. Residential Supervision / Project Management - per hour | 136.00 HR | 0.00 | 89.59 | 0.00 | 2,558.69 | 14,742.93 |

**Supervision for Exterior Projects:**

**1. Roof = 2 Days**
**2. Siding = 15 Days**

**Total 17 Days x 8 Hours Per Day**

| | | | | | | |
|---|---|---|---|---|---|---|
| 2. Temporary hand washing station (per month) | 2.00 MO | 0.00 | 190.00 | 0.00 | 79.80 | 459.80 |

**Estimating 2 Months of Rental based on the assumption that the projects are not going to be completed without a gap and / or consecutively**

| | | | | | | |
|---|---|---|---|---|---|---|
| 3. Temporary toilet (per month) | 2.00 MO | 0.00 | 213.00 | 0.00 | 89.46 | 515.46 |

**Estimating 2 Months of Rental based on the assumption that the projects are not going to be completed without a gap and / or consecutively**

| Total: 41PLEASANTST-HONIG | | | | 0.00 | 2,727.95 | 15,718.19 |
|---|---|---|---|---|---|---|

### Main Level



#### House Roof

| 1,716.05 Surface Area | 17.16 Number of Squares |
|---|---|
| 285.66 Total Perimeter Length | 43.94 Total Ridge Length |
| 26.41 Total Hip Length | |

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| **MAIN HOUSE ROOF SCOPE OF WORK:** | | | | | | |
| 4. Clean gutter/downspout | 402.00 LF | 0.00 | 2.26 | 0.25 | 190.85 | 1,099.62 |

Cleaning Gutter and Downspouts. It is recommended to clean the Gutters after stripping the roof to eliminate any excess weight that can cause damage to the gutter and then again at the end of the project to ensure the gutters are clean to allow water to drain without blockage.

Gutters measure ~ 106 Linear Feet
Downspouts measure ~ 95 Linear Feet

201 LF of Gutter/Downspouts

| 5. Cleaning Technician - per hour | 10.00 HR | 0.00 | 160.00 | 0.00 | 336.00 | 1,936.00 |
|---|---|---|---|---|---|---|

Labor for cleaning of debris on the ground, but also in sweeping the roof once it is stripped to allow for a clean surface before installing new roof covering materials and to conduct a final cleaning once all roof covering materials are installed to ensure no left over debris remains on the roof surface. This is not included in any line item associated with Roofing within Xactimate per any Detail / Description.

| 6. Dumpster load - Approx. 30 yards, 5-7 tons of debris | 1.00 EA | 1,093.30 | 0.00 | 0.00 | 229.59 | 1,322.89 |
|---|---|---|---|---|---|---|

 **New England Property Services Group, LLC**

New England Property Services Group, LLC
1822 North Main Street, Suite 001 ~ Fall River, MA 02720
Direct: (401) 419-1781 ~ Fax: (401) 566-4423
Steven@NewEnglandPropertyServicesGroup.com
www.NewEnglandPropertyServicesGroup.com

## CONTINUED - House Roof

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| For Roof Project for House and Garage Only | | | | | | |
| 7. Taxes, insurance, permits & fees (Bid Item) | 1.00 EA | 0.00 | 500.00 | 0.00 | 105.00 | 605.00 |
| Building Permit Estimate Only (Includes Garage Roof) | | | | | | |
| 8. Remove Laminated - High grade - comp. shingle rfg. - w/ felt | 17.16 SQ | 195.31 | 0.00 | 0.00 | 703.82 | 4,055.34 |
| 9. Laminated - comp. shingle rfg. - w/out felt | 21.67 SQ | 0.00 | 290.56 | 185.40 | 1,361.18 | 7,843.02 |
| The roof waste % is not available. The calculation contains values that may result in an inaccurate waste %. | | | | | | |
| 10. Asphalt starter - peel and stick | 314.23 LF | 0.00 | 2.54 | 13.55 | 170.46 | 982.15 |
| Starter Shingles are required to be installed on the Eaves and Rakes to allow Shingles to have the ability to adhere to the sealant strip on the Starter Shingles in addition to have nailing hold the shingles in place. | | | | | | |
| 11. R&R Drip edge | 314.23 LF | 1.15 | 3.28 | 24.55 | 297.49 | 1,714.07 |
| Installed on Eaves and Rakes. | | | | | | |
| 12. R&R Flashing - pipe jack | 2.00 EA | 24.85 | 58.16 | 2.20 | 35.33 | 203.55 |
| Located on Main Rear Slope | | | | | | |
| 13. Ice & water barrier - no material waste included | 1,887.66 SF | 0.00 | 1.92 | 56.63 | 772.99 | 4,453.93 |

R905.1.1 Underlayment.
Underlayment for asphalt shingles, clay and concrete tile, metal roof shingles, mineral-surfaced roll roofing, slate and slate-type shingles, wood shingles, wood shakes and metal roof panels shall conform to the applicable standards listed in this chapter. Underlayment materials required to comply with ASTM D 226, D 1970, D 4869 and D 6757 shall bear a label indicating compliance to the standard designation and, if applicable, type classification indicated in Table R905.1.1(1). Underlayment shall be applied in accordance with Table R905.1.1(2). Underlayment shall be attached in accordance with Table R905.1.1(3).

**Exceptions: - (This is the Contractor's Choice on how to Apply Code Required Underlayment, which is acceptable as noted herein!)**

**1. As an alternative, self-adhering polymer-modified bitumen underlayment complying with ASTM D 1970 installed in accordance with both the underlayment manufacturer's and roof covering manufacturer's instructions for the deck material, roof ventilation configuration and climate exposure for the roof covering to be installed, shall be permitted.**

| | | | | | | |
|---|---|---|---|---|---|---|
| 14. R&R Hip / Ridge cap - cut from 3 tab - composition shingles | 48.33 LF | 3.75 | 5.38 | 4.50 | 93.61 | 539.37 |
| For covering Ridge Vent listed separately. | | | | | | |
| 15. Step flashing | 28.75 LF | 0.00 | 12.20 | 3.47 | 74.39 | 428.61 |
| For use at sidewall on front right roof slope. Step Flashing is required to Overlap by 2", so with a 8" Step Flashing (as this is), only 6" are being exposed or 75% of the actual length of the flashing. As such, an additional 25% is being added to account for the actual amount of Linear Footage of Step Flashing that is required to be installed. | | | | | | |
| 16. R&R Continuous ridge vent - shingle-over style | 43.94 LF | 2.97 | 10.99 | 11.59 | 131.26 | 756.25 |
| Ridge Vent Only. Ridge Cap Shingles listed separately. | | | | | | |
| 17. R&R Tarp - all-purpose poly - per sq ft (labor and material) | 2,640.00 SF | 0.29 | 1.20 | 49.50 | 836.46 | 4,819.56 |



**New England Property Services Group, LLC**

New England Property Services Group, LLC
1822 North Main Street, Suite 001 ~ Fall River, MA 02720
Direct: (401) 419-1781 ~ Fax: (401) 566-4423
Steven@NewEnglandPropertyServicesGroup.com
www.NewEnglandPropertyServicesGroup.com

### CONTINUED - House Roof

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|

Temporary Protection during the removal of existing roofing materials, but not limited to the following: Gutters, Awnings, Windows, Siding, Bushes, Decks, Patios, and other Landscaping including Ground Plantings, etc.

Tarping is draped from eaves down to the ground laying out approximately 10' to safely collect all debris associated with stripping the roof and the installation of new roof decking as a layover as required due to the gapped planking that exists on this roof surface.

The 2 Story Roof measures approximately 33 LF x 2 Sides (66 LF). The Tarping from the roof edge to the ground is appoximately 20' and then extended out 10'. 66LF x 30 = 1,800 Square Feet

The 1 Story Roof measures approximately 21 LF x 2 sides (42 LF). The Tarping from the roof edge to the ground is appoximately 10' and then extended out 10'. 42 LF x 20 = 840 Square Feet

**2,640 Square Feet of Tarping is required.**

| | | | | | | |
|---|---|---|---|---|---|---|
| 18. Remove Additional charge for steep roof - 7/12 to 9/12 slope | 29.52 SQ | 49.36 | 0.00 | 0.00 | 305.99 | 1,763.10 |

Rear 1 Story Roof Measures Approximately 240 Square Feet or 2.4 Squares, so this amount is being deducted as this is not considered a Steep Roof (it is a 4 pitch section of the roof).

The Steep Roof Charge is based on a Per Function Basis. The removal of the laminates shingles and underlayment will be considered 1 Function, but the plywood sheathing must be removed as well, so there are 2 Functions required.

Steep Roof Charge x 2 (Shingles with Underlayment and Plywood Removal)

| | | | | | | |
|---|---|---|---|---|---|---|
| 19. Additional charge for steep roof - 7/12 to 9/12 slope | 16.24 SQ | 0.00 | 56.83 | 0.00 | 193.81 | 1,116.73 |

Rear 1 Story Roof Measures Approximately 240 Square Feet or 2.4 Squares, so this amount is being deducted as this is not considered a Steep Roof (it is a 4 pitch section of the roof).

The Steep Roof Charge is based on a Per Function Basis. The installation of new plywood sheathing, new underlayment, and new laminated shingles is required, so there are 3 independent functions.

Steep Roof Charge x 3 (Plywood, Underlayment, and Laminated Shingle Installation)

| | | | | | | |
|---|---|---|---|---|---|---|
| 20. Remove Additional charge for high roof (2 stories or greater) | 23.12 SQ | 18.65 | 0.00 | 0.00 | 90.55 | 521.74 |

The Main House Roof Measures 1,156 Square Feet or 11.56 Squares and this is the section of the roof that is 2 stories or more and being included as a High Roof Charge.

The High Roof Charge is based on a Per Function Basis. The removal of the laminates shingles and underlayment will be considered 1 Function, but the plywood sheathing must be removed as well, so there are 2 Functions required.
¬High Roof Charge x 2 (Shingles with Underlayment and Plywood Removal)

| | | | | | | |
|---|---|---|---|---|---|---|
| 21. Additional charge for high roof (2 stories or greater) | 38.15 SQ | 0.00 | 25.11 | 0.00 | 201.18 | 1,159.13 |

The Main House Roof Measures 1,156 Square Feet or 11.56 Squares and this is the section of the roof that is 2 stories or more and being included as a High Roof Charge.

The High Roof Charge is based on a Per Function Basis. The installation of new plywood sheathing, new underlayment, and new laminated shingles is required, so there are 3 independent functions.

High Roof Charge x 3 (Plywood, Underlayment, and Laminated Shingle Installation)

| | | | | | | |
|---|---|---|---|---|---|---|
| 22. R&R Siding - beveled - pine or equal (clapboard) | 196.00 SF | 1.07 | 8.01 | 48.14 | 383.85 | 2,211.67 |



**New England Property Services Group, LLC**

New England Property Services Group, LLC
1822 North Main Street, Suite 001 ~ Fall River, MA 02720
Direct: (401) 419-1781 ~ Fax: (401) 566-4423
Steven@NewEnglandPropertyServicesGroup.com
www.NewEnglandPropertyServicesGroup.com

### CONTINUED - House Roof

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| The right side roof to wall intersection where the living room meets the right gable wall of the main house must have the wood clapboards removed to allow for the roof replacement project to be completed. Removal of the material is required so that the ice and water barrier can be installed directly against the wood sheathing which will be followed by the installation of the step flashing material and the step flashing will then be covered by the weather resistive barrier. | | | | | | |
| This weather resistive barrier material will have an excessive amount of holes from pulling the clapboard material off the exterior wall sheathing, so this material will no be usable and as such, the damaged material needs to be replaced with new material. | | | | | | |
| A weather resistive barrier is required by RI Building Code and all wood siding manufacturers installation instructions, so a product such as Tyvek will be installed and we must comply with the installation instructions to install this product properly. In following that requirement, we will need to remove the wood trim corner material consisting of 4' wide pine boards that have also been painted with at least 2 coats to allow for the weather resistive barrier, such as Tyvek, to be installed around the corner at least 6" and where the material from the adjacent side will then overlap by 6" when that material is installed. This area is called a continuity area and this area must also be flashed using a material such as ice and water shield or other acceptable material to provide the best method to keep moisture away from the exterior wall sheathing. The downspouts are also in the way and must be detached and these have also been painted and not likely able to be reinstalled without having to repaint the product. The cost to paint the gutters and downspouts would be more costly than to simply replace the material with new, so our scope in the Siding portion of this estimate will include gutter and downspout replacement. | | | | | | |
| The wood clapboard has been painted with at least 2 coats of paint and has likely been in place since the house was constructed going back to 1985, according to the property assessors records. This material is not likely readily available in design and is certain to break when trying to carefully remove it. As such, this large area of detachment will require new material to be installed and then painted with 2 coats to match the existing house color, but also the material design must be like, kind, and quality as well, which is required under the RI Unfair Claims Settlement Practices and is what a Replacement Cost Insurance Policy provides coverage for. | | | | | | |
| A separate scope of work for the Residing of the House and Garage to match the new material that will be installed due to the roof damage occurring will be provided. | | | | | | |
| 23. R&R Skylight flashing kit - dome - Large | 2.00 EA | 26.48 | 170.23 | 14.22 | 85.61 | 493.25 |
| 2 Skylights located on rear roof slope of 1 story roof | | | | | | |
| 24. R&R Furnace vent - rain cap and storm collar, 8" | 1.00 EA | 33.39 | 110.73 | 3.23 | 30.94 | 178.29 |
| Located on rear roof slope of 1 story roof | | | | | | |
| 25. Remove Sheathing - plywood - 1/2" CDX | 1,716.05 SF | 1.98 | 0.00 | 0.00 | 713.54 | 4,111.32 |
| Removal of damaged 7/16" sheathing. Visible signs of moisture accessing the underside of the sheathing. Photos are in the file. | | | | | | |
| 26. Sheathing - plywood - 5/8" CDX | 1,887.66 SF | 0.00 | 3.07 | 149.83 | 1,248.43 | 7,193.38 |
| 10% waste factor used | | | | | | |
| 27. Install Sheathing - plywood - 1/2" CDX | 192.00 SF | 0.00 | 1.80 | 0.00 | 72.58 | 418.18 |
| For ground protection of 30 yard dumpster that measures 7.5' wide by 22' long. | | | | | | |
| 28. R&R Tarp - all-purpose poly - per sq ft (labor and material) | 896.00 SF | 0.29 | 1.20 | 16.80 | 283.88 | 1,635.72 |



**New England Property Services Group, LLC**

New England Property Services Group, LLC
1822 North Main Street, Suite 001 ~ Fall River, MA 02720
Direct: (401) 419-1781 ~ Fax: (401) 566-4423
Steven@NewEnglandPropertyServicesGroup.com
www.NewEnglandPropertyServicesGroup.com

## CONTINUED - House Roof

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 2 technicians are required to spread out tarp over personal belongings and the existing insulation that is presently in place prior to completing roofing work, which shall then be removed by 2 technicians after roofing work is completed.  This is required to protect the attic contents from falling debris during the roof covering stripping process as well as to protect during the new material installation and from unexpected weather events that could allow moisture into the attic space and then into the finished living areas. | | | | | | |
| Confined space price included as $1.00 per square foot for both the installation and removal of the tarp and the material for the tarp is being included as well. | | | | | | |
| https://up.codes/viewer/rhode_island/ri-one-and-two-family-dwelling-code-2019/chapter/11/re-energy-efficiency#1_1 | | | | | | |
| 29.  Emergency service call - during business hours | 2.00 EA | 0.00 | 426.66 | 0.00 | 179.20 | 1,032.52 |
| 2 Visits to the property to cover and protect the 1 story sidewall roof area.  The 1st visit requested by the policyholder was completed on 12-2-2022 to prevent leaking on the front sidewall slope area of the roof.  The 2nd visit requested by the policyholder was completed on 12-22-2022 when some water was noticed on the rear sidewall roof slope.  Grace Ice & Water Barrier was used to prevent water intrusion, and the material was secured to the roof covering and to the wood clapboard siding.  The material was attached with its self adhesive backer material and staples as well.  This attempt to prevent damage to the interior of the property did create inadvertent damage to the roof shingles and wood clapboard siding due to the makeup of the material used to prevent water and the mechanical attachment as well.
~This is an additional reason that the wood clapboard siding is being considered for full replacement as noted in the Siding Scope of Work. | | | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| Totals: House Roof | | | | 583.86 | 9,127.99 | 52,594.39 |



## Garage Roof

| | | |
|---|---|---|
| 845.00 Surface Area | | 8.45 Number of Squares |
| 116.33 Total Perimeter Length | | 30.00 Total Ridge Length |

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 30.  Clean gutter/downspout | 152.00 LF | 0.00 | 2.26 | 0.10 | 72.16 | 415.78 |
| 31.  Cleaning Technician - per hour | 4.00 HR | 0.00 | 160.00 | 0.00 | 134.40 | 774.40 |
| 32.  Asphalt starter - peel and stick | 127.97 LF | 0.00 | 2.54 | 5.52 | 69.41 | 399.97 |
| 33.  R&R Drip edge | 127.97 LF | 1.15 | 3.28 | 10.00 | 121.15 | 698.06 |
| 34.  R&R Hip / Ridge cap - cut from 3 tab - composition shingles | 33.00 LF | 3.75 | 5.38 | 3.07 | 63.92 | 368.28 |
| 35.  R&R Tarp - all-purpose poly - per sq ft (labor and material) | 2,640.00 SF | 0.13 | 1.20 | 49.50 | 747.75 | 4,308.45 |
| 36.  Remove Laminated - comp. shingle rfg. - w/ felt | 8.45 SQ | 195.31 | 0.00 | 0.00 | 346.58 | 1,996.95 |
| 37.  Laminated - comp. shingle rfg. - w/out felt | 9.33 SQ | 0.00 | 290.56 | 79.82 | 586.05 | 3,376.79 |



**New England Property Services Group, LLC**

New England Property Services Group, LLC
1822 North Main Street, Suite 001 ~ Fall River, MA 02720
Direct: (401) 419-1781 ~ Fax: (401) 566-4423
Steven@NewEnglandPropertyServicesGroup.com
www.NewEnglandPropertyServicesGroup.com

## CONTINUED - Garage Roof

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 38. Roofing felt - synthetic underlayment | 9.30 SQ | 0.00 | 52.96 | 12.03 | 105.95 | 610.51 |
| 39. Sheathing - plywood - 5/8" CDX | 929.50 SF | 0.00 | 3.07 | 73.78 | 614.75 | 3,542.10 |
| 40. R&R Tarp - all-purpose poly - per sq ft (labor and material) | 550.00 SF | 0.29 | 1.20 | 10.31 | 174.26 | 1,004.07 |
| Totals: Garage Roof | | | | 244.13 | 3,036.38 | 17,495.36 |
| Total: Main Level | | | | 827.99 | 12,164.37 | 70,089.75 |

## House Siding

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|

**VINYL SIDING SCOPE OF WORK:**

Project assumes 3 vinyl siding installers for 15 days (may not be consecutive) working 8 hours per day. The siding will need to be removed at all roof to sidewall connections and upon removal, the siding can not be reinstalled due to the backer material behind the siding not providing a smooth, flat surface, as styrofoam is not considered a rigid material, such as rigid foam and/or plywood sheathing. Removal and replacement with new material is being included, as it would be more costly to try and save the existing siding, assuming that the siding is undamaged from removal, as the siding would need to be marked for placement and then cleaned on both sides before reinstallation. ¬The materials and labor are separated in most line items.

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 41. Install Pump jack system (per week) | 12.00 WK | 0.00 | 314.50 | 0.00 | 792.54 | 4,566.54 |

4 Sets of Pump Jacks (2 poles per set) for 3 Weeks to setup around perimeter of house.

| | | | | | | |
|---|---|---|---|---|---|---|
| 42. Gutter / downspout - aluminum - up to 5" | 222.00 LF | 0.00 | 9.68 | 69.38 | 465.86 | 2,684.20 |

Gutter & Downspout Estimated Lengths below:
Gutters = 122'
Downspouts = 100'
Total = 222'

Replacement will be done by a gutter company, but Removal will be completed by the siding installers.

| | | | | | | |
|---|---|---|---|---|---|---|
| 43. Material Only Rigid foam insulation board - 1/2" | 2,800.00 SF | 0.00 | 0.66 | 115.50 | 412.34 | 2,375.84 |

Material Only with 10% waste factored in

| | | | | | | |
|---|---|---|---|---|---|---|
| 44. Siding Installer - per hour | 360.00 HR | 0.00 | 112.38 | 0.00 | 8,495.93 | 48,952.73 |

Labor only (no materials included) which includes taking all the particle board down and for all non electrician services for removal and installation of vinyl siding, accessories, and trim material. Assume 3 vinyl siding installers for 8 hours/day for 25 days)

| | | | | | | |
|---|---|---|---|---|---|---|
| 45. Material Only Siding - vinyl | 2,800.00 SF | 0.00 | 2.21 | 386.75 | 1,380.70 | 7,955.45 |
| 46. Material Only Custom bent aluminum (PER LF) | 550.00 LF | 0.00 | 3.38 | 116.19 | 414.79 | 2,389.98 |

550 LF needed



**New England Property Services Group, LLC**

New England Property Services Group, LLC
1822 North Main Street, Suite 001 ~ Fall River, MA 02720
Direct: (401) 419-1781 ~ Fax: (401) 566-4423
Steven@NewEnglandPropertyServicesGroup.com
www.NewEnglandPropertyServicesGroup.com

### CONTINUED - House Siding

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 47. Electrician - per hour | 8.00 HR | 0.00 | 200.00 | 0.00 | 336.00 | 1,936.00 |
| Allow 2 electricians for 4 hours per day for detach and resetting of all electrical connections, including meters. | | | | | | |
| 48. Dumpster load - Approx. 30 yards, 5-7 tons of debris | 1.00 EA | 1,093.30 | 0.00 | 0.00 | 229.59 | 1,322.89 |
| For Vinyl Siding Project Only! | | | | | | |
| 49. Taxes, insurance, permits & fees (Bid Item) | 1.00 EA | 0.00 | 500.00 | 0.00 | 105.00 | 605.00 |
| Estimated Building Permit cost | | | | | | |
| 50. Material Only Moisture protection - vapor barrier seam tape (per roll) | 12.00 RL | 0.00 | 25.00 | 18.75 | 66.94 | 385.69 |
| 12 rolls needed (50' rolls) | | | | | | |
| 51. Material Only Soffit - vinyl | 337.50 SF | 0.00 | 2.74 | 57.80 | 206.34 | 1,188.89 |
| 27 Panels x 12' 6" each panel | | | | | | |

**LEAD PROTOCOLS RELATIVE TO VINYL SIDING PROJECT:**

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 52. Material Only Tarp - poly - w/sandbags - per sq ft (lab & mat) | 360.00 SF | 0.00 | 0.52 | 11.70 | 41.77 | 240.67 |
| Tarp to Cover Dumpster (30' x 12') as 30 Yard Dumpster Measures 22' Long x 8' Wide x 6' High. Tarp needs to be in place at all times while the dumpster is on site. | | | | | | |
| 53. Material Only Tarp - poly - w/sandbags - per sq ft (lab & mat) | 3,480.00 SF | 0.00 | 0.52 | 113.10 | 403.77 | 2,326.47 |

Tarp materials for ground protection for Lead Protocols. Tarp / Ground Cover protection is to be in place along the foundation perimeter and extending 10' from the foundation and 10' past the corners of the structure, which causes an overlap when tarping is installing around the perimeter. The measurement used are noted below.

**Garage:**

~ 20' x 20' dimension
Requires tarps that are 40' long on each of the 4 sides for a total of 1,600 Square Feet

**House:**

` 28' x 26' dimension
Requires tarps that are 48' long on 2 sides and 46' on 2 sides for a total of 1,880 Square Feet

Total Tarping Needed = 3,480 Square Feet

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 54. Hazardous Waste/Mold Cleaning Technician - per hour | 30.00 HR | 0.00 | 85.80 | 0.00 | 540.54 | 3,114.54 |
| Allowing for 2 Hours Per Day for Detailed Cleaning with use of a HEPA Vac to clean the ground protection areas and other areas that may be subject to allowing dust / debris to enter through any windows and/or doors. 2 Hours x 25 Days | | | | | | |
| 55. Hazardous Waste/Mold Cleaning- Supervisory/Admin- per hour | 150.00 HR | 0.00 | 95.97 | 0.00 | 3,023.06 | 17,418.56 |
| Project Supervisor for Project involving Lead Safety Protocols for the Vinyl Siding removal and replacing. Vinyl Siding project is expected to take 25 Days x 8 Hours Per Day, plus Supervision of Cleaning Technician 50 Additional Hours. | | | | | | |



**New England Property Services Group, LLC**

New England Property Services Group, LLC
1822 North Main Street, Suite 001 ~ Fall River, MA 02720
Direct: (401) 419-1781 ~ Fax: (401) 566-4423
Steven@NewEnglandPropertyServicesGroup.com
www.NewEnglandPropertyServicesGroup.com

### CONTINUED - House Siding

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 56. Material Only Tarp - poly - w/sandbags - per sq ft (lab & mat) | 1,500.00 SF | 0.00 | 0.52 | 48.75 | 174.04 | 1,002.79 |

Material needed to have Vertical Tarp Protection for Left Side of house as the adjacent house is within close proximity of the work zone and Vertical Containment is necessary. 50' x 30' needed.

| | | | | | | |
|---|---|---|---|---|---|---|
| 57. Lead test fee - full service lead survey - base fee | 1.00 EA | 0.00 | 680.00 | 0.00 | 142.80 | 822.80 |

Test already completed by Lead Safe Inspections. and a copy of the report is in the file.

| | | | | | | |
|---|---|---|---|---|---|---|
| Totals: House Siding | | | | 937.92 | 17,232.01 | 99,289.04 |

### Interior Water Damage

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 58. Payments to Kamco Contracting | 1.00 EA | 0.00 | 12,696.48 | 0.00 | 2,666.26 | 15,362.74 |

**Payments to Kamco Contracting for Mitigation and Remediation of 1st & 2nd Floor Affected Areas**

1. NEPSG Payment to Kamco on 12-19-2023 - $1,600.00
2. NEPSG Payment to Kamco on 11-24-2023 - $5,745.88
3. NEPSG Payment to Kamco on 10-27-2023 - $5,350.60

**Total Payments = $12,696.48**

| | | | | | | |
|---|---|---|---|---|---|---|
| 59. Payments to Medeiros & Daughters | 1.00 EA | 0.00 | 1,504.58 | 0.00 | 315.96 | 1,820.54 |

**Payments to Medeiros & Daughters for Temporary Roof Repairs:**

1. NEPSG Payment to Medeiros on 12-27-2023 - $721.87
2. NEPSG Payment to Medeiros on 11-24-2023 - $498.29
3. NEPSG Payment to Medeiros on 10-27-2023 - $ 284.42

**Total Payments = $1,504.58**

| | | | | | | |
|---|---|---|---|---|---|---|
| Totals: Interior Water Damage | | | | 0.00 | 2,982.22 | 17,183.28 |

### Labor Minimums Applied

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 60. Heat, vent, & air cond. labor minimum | 1.00 EA | 0.00 | 260.54 | 0.00 | 54.71 | 315.25 |
| 61. Insulation labor minimum | 1.00 EA | 0.00 | 259.71 | 0.00 | 54.54 | 314.25 |
| Totals: Labor Minimums Applied | | | | 0.00 | 109.25 | 629.50 |
| **Line Item Totals: 41PLEASANTST-HONIG** | | | | **1,765.91** | **35,215.80** | **202,909.76** |

41PLEASANTST-HONIG

2/14/2024           Page: 9



**New England Property Services Group, LLC**

New England Property Services Group, LLC
1822 North Main Street, Suite 001 ~ Fall River, MA 02720
Direct: (401) 419-1781 ~ Fax: (401) 566-4423
Steven@NewEnglandPropertyServicesGroup.com
www.NewEnglandPropertyServicesGroup.com

## Grand Total Areas:

|        |                   |        |                          |          |                       |
|--------|-------------------|--------|--------------------------|----------|-----------------------|
| 0.00   | SF Walls          | 0.00   | SF Ceiling               | 0.00     | SF Walls and Ceiling  |
| 0.00   | SF Floor          | 0.00   | SY Flooring              | 0.00     | LF Floor Perimeter    |
| 0.00   | SF Long Wall      | 0.00   | SF Short Wall            | 0.00     | LF Ceil. Perimeter    |
|        |                   |        |                          |          |                       |
| 0.00   | Floor Area        | 0.00   | Total Area               | 0.00     | Interior Wall Area    |
| 4,313.02 | Exterior Wall Area | 28.67 | Exterior Perimeter of Walls |        |                       |
|        |                   |        |                          |          |                       |
| 2,561.05 | Surface Area    | 25.61  | Number of Squares        | 401.99   | Total Perimeter Length |
| 73.94  | Total Ridge Length | 26.41 | Total Hip Length         |          |                       |

 **New England Property Services Group, LLC**

New England Property Services Group, LLC
1822 North Main Street, Suite 001 ~ Fall River, MA 02720
Direct: (401) 419-1781 ~ Fax: (401) 566-4423
Steven@NewEnglandPropertyServicesGroup.com
www.NewEnglandPropertyServicesGroup.com

### Summary for Dwelling

| | |
|---|---:|
| Line Item Total | 165,928.05 |
| Material Sales Tax | 1,765.91 |
| Subtotal | 167,693.96 |
| Overhead | 16,769.41 |
| Profit | 18,446.39 |
| **Replacement Cost Value** | **$202,909.76** |
| **Net Claim** | **$202,909.76** |

41PLEASANTST-HONIG

 **New England Property Services Group, LLC**

New England Property Services Group, LLC
1822 North Main Street, Suite 001 ~ Fall River, MA 02720
Direct: (401) 419-1781 ~ Fax: (401) 566-4423
Steven@NewEnglandPropertyServicesGroup.com
www.NewEnglandPropertyServicesGroup.com

## Recap by Category

| O&P Items | Total | % |
|---|---|---|
| CLEANING | 3,492.04 | 1.72% |
| GENERAL DEMOLITION | 15,292.50 | 7.54% |
| ELECTRICAL | 1,600.00 | 0.79% |
| PERMITS AND FEES | 1,680.00 | 0.83% |
| HAZARDOUS MATERIAL REMEDIATION | 16,969.50 | 8.36% |
| HEAT, VENT & AIR CONDITIONING | 371.27 | 0.18% |
| INSULATION | 2,107.71 | 1.04% |
| LABOR ONLY | 26,385.30 | 13.00% |
| MOISTURE PROTECTION | 300.00 | 0.15% |
| ROOFING | 28,300.94 | 13.95% |
| SCAFFOLDING | 3,774.00 | 1.86% |
| SIDING | 50,073.76 | 24.68% |
| SOFFIT, FASCIA, & GUTTER | 3,073.71 | 1.51% |
| TEMPORARY REPAIRS | 11,654.00 | 5.74% |
| WATER EXTRACTION & REMEDIATION | 853.32 | 0.42% |
| O&P Items Subtotal | 165,928.05 | 81.77% |
| Material Sales Tax | 1,765.91 | 0.87% |
| Overhead | 16,769.41 | 8.26% |
| Profit | 18,446.39 | 9.09% |
| Total | 202,909.76 | 100.00% |

# EXHIBIT 14

# SWORN STATEMENT IN PROOF OF LOSS
## With Reservation of Rights by Claimant, New England Property Services Group, LLC

| | | | | |
|---|---|---|---|---|
| $450,000.00 | $N/A | $N/A | $N/A | 1MV802200111 |
| Amount of Policy at Time of Loss (Coverage A) | Coverage B | Coverage C | Coverage D | Claim Number |
| 06-27-2023 | | | | 0DJW34614262907633 1 |
| Date Issued | | | | Policy Number |
| 06-27-2024 | | | | Ins Marketing Agencies |
| Date Expires | | | | Insurance Agency |

To the **THE TRAVELERS HOME AND MARINE INSURANCE COMPANY**, At the time of loss, by the above indicated policy of insurance, you insured **AVROM HONIG** against RISKS OF PHYSICAL DAMAGE to the property described in the Insurance Policy Declarations to which the Policy Number is associated, according to the terms and conditions of the said policy and all forms, endorsements, transfers, and assignments attached thereto.

1. **Time and Origin:** A loss involving <u>DIRECT PHYSICAL DAMAGE</u> occurred on or about **07-10-2023** with an estimated time of day of <u>unknown</u>. The cause of the direct physical loss includes but is not limited to **Storm Related Events:**

2. **Occupancy:** The building described, or containing the property described, was occupied at the time of loss as follows, and for no other purpose whatever: <u>owner-occupied property</u>.

3. **Title and Interest:** At the time of the loss the interest of your insured in the property described therein was **$450,000.00**, No other person or persons had any interest therein or encumbrance thereon, except: **Mortgagee – NONE.**

4. **Changes:** Since the said policy was issued there has been no assignment thereof, or change of interest, use, occupancy, possession, location or exposure of the property described, except: N/A

5. **Total Insurance:** The total amount of the insurance upon the property described by this policy was, at the time of loss, the amounts listed above, and the claimed loss(es) involved are more particularly specified in the apportionment below, which represent the accounting of the Amount Claimed based on information available as of the signing of this Proof of Loss.

| | | | | |
|---|---|---|---|---|
| 6. The Actual Cash Value of said property at the time of loss was | $202,909.76 | $ | $ | $ |
| | Coverage A | Coverage B | Coverage C | Coverage D |
| 7. The Whole Loss or Damage was _____ | $202,909.76 | $ | $ | $ |
| | Coverage A | Coverage B | Coverage C | Coverage D |
| 8. Less Amount of the Deductible _____ | | | | $1,000.00 |
| 9. The Amount Claimed under the above numbered policy is _____ | | | | $202,909.76 |

The said loss did not originate by any act, design or procurement on the part of your insured, or this affiant; nothing has been done by or with the privity or consent of your insured or this affiant, to violate the conditions of the policy, or render it void; no articles are mentioned herein or in annexed schedules but such as were destroyed or damaged at the time of said loss; no property saved has in any manner been concealed; and no attempt to deceive the said company, as to the extent of said loss, has in any manner been made. Any other information that may be required be furnished and considered part of this proof.

New England Property Services Group, LLC ("NEPSG"), as the equitable owner of the above numbered Claim/s, hereby reserves its right to supplement this Sworn Proof of Loss form at any time in the future, if information is obtained which may change the Amount Claimed under the above numbered Claim/s and Policy. Any supplement to this Proof of Loss will be submitted to the insurer by NEPSG. NEPSG prepared any estimates attached hereto to the best of NEPSG's professional ability based on the information available.

This Statement is made under the penalty of perjury.

City or County of Bristol

State or Commonwealth of Massachusetts _____ Steven V. Sicci _____ Claimant - NEPSG

Subscribed and sworn before me this 14 day of February, 2024

_____ Notary Public

My Commission expires: 8/31/2029

Michael H. Brady
NOTARY PUBLIC
Commonwealth of
Massachusetts
My Commission Expires
August 31, 2029

# EXHIBIT 15

**Makenzie Scott**

| | |
|---|---|
| **From:** | Steven Ceceri |
| **Sent:** | Tuesday, March 5, 2024 1:34 PM |
| **To:** | Tucker, Robert M |
| **Cc:** | Tom Alves; Michael Brady; Makenzie Scott; AVROMSPAM@GMAIL.COM |
| **Subject:** | RE: IMV8022: Honig Claim |

Hi Robert,

While we formulate a more appropriate response, can you please send me the policy reference to the following term:

1. Occurrence

Also, as you have not provided a copy of your "expert's report", would you be providing this to NEPSG and if not, why?

Thank you for your help with this.

Steven V. Ceceri
Owner & Operator
New England Property Services Group, LLC
Office: 1822 North Main Street, Second Floor Annex, Suite 001 ~ Fall River, MA 02720
Direct: 401-419-1781 ~ Office: 508-567-5738 Ext. 102 ~ Fax: 401-566-4423
Email: Steven@NewEnglandPropertyServicesGroup.com

**From:** Tucker, Robert M <RMTUCKER@travelers.com>
**Sent:** Tuesday, March 5, 2024 12:23 PM
**To:** Steven Ceceri <steven@newenglandpropertyservicesgroup.com>
**Cc:** Tom Alves <tom@newenglandpropertyservicesgroup.com>; Michael Brady
<michael@newenglandpropertyservicesgroup.com>; Makenzie Scott
<makenzie@newenglandpropertyservicesgroup.com>; AVROMSPAM@GMAIL.COM
**Subject:** IMV8022: Honig Claim

Mr. Ceceri,

Please find attached a letter in regard to Mr. Honig's claim.

Should you have any questions or to discuss this matter further at this time, please do not hesitate to let me know.

Regards,

**Robert M. Tucker | Claim Manager**
The Travelers Home And Marine Insurance Company
West Bridgewater, MA
New England Claim Center
W: 508.717.2159  TF: 800.422.3340
F: 877.786.5584

Mailing Address:
Travelers
PO Box 430
Buffalo, NY 14240-0430

If further assistance is required, please contact my manager Manny Carvalho at <u>mcarvalh@travelers.com</u>



This message (including any attachments) may contain confidential, proprietary, privileged and/or private information. The information is intended to be for the use of the individual or entity designated above. If you are not the intended recipient of this message, please notify the sender immediately, and delete the message and any attachments. Any disclosure, reproduction, distribution or other use of this message or any attachments by an individual or entity other than the intended recipient is prohibited.

# EXHIBIT 16

**Makenzie Scott**

| | |
|---|---|
| **From:** | Tucker, Robert M <RMTUCKER@travelers.com> |
| **Sent:** | Thursday, March 7, 2024 10:01 AM |
| **To:** | Steven Ceceri |
| **Cc:** | Tom Alves; Michael Brady; Makenzie Scott; AVROMSPAM@GMAIL.COM |
| **Subject:** | RE: IMV8022: Honig Claim |

Dear Mr. Ceceri,

Thank you for your inquiries below. We are unclear exactly what you seek with respect to the "policy reference to" the term occurrence. You have a copy of the policy. If the terms appear in quotations, then please refer to the policy definition. If it does not, then the word is construed in accordance with its plain meaning.

Travelers remains willing to consider your request for the SGH report, contingent on the mutual exchange of information. Our requests have remained outstanding for quite some time now, including our more recent request to re-inspect the insured's dwelling. We should not have to invoke the policy conditions to obtain the information requested, but are prepared to do so to move our investigation forward. We will revisit your request for the SGH report once you and or the insured have complied with our requests.

Should you have any questions or to discuss this matter further at this time, please do not hesitate to let me know.

Regards,

**Robert M. Tucker | Claim Manager**
The Travelers Home And Marine Insurance Company
West Bridgewater, MA
New England Claim Center
W: 508.717.2159  TF: 800.422.3340
F: 877.786.5584

Mailing Address:
Travelers
PO Box 430
Buffalo, NY 14240-0430

If further assistance is required, please contact my manager Manny Carvalho at mcarvalh@travelers.com

**TRAVELERS**

**From:** Steven Ceceri <steven@newenglandpropertyservicesgroup.com>
**Sent:** Tuesday, March 5, 2024 1:34 PM
**To:** Tucker, Robert M <RMTUCKER@travelers.com>
**Cc:** Tom Alves <tom@newenglandpropertyservicesgroup.com>; Michael Brady
<michael@newenglandpropertyservicesgroup.com>; Makenzie Scott
<makenzie@newenglandpropertyservicesgroup.com>; AVROMSPAM@GMAIL.COM
**Subject:** [External] RE: IMV8022: Honig Claim

**CAUTION: This email came from outside of the company.**
**Please exercise caution when opening attachments, clicking links or responding to this**
**email. The original sender of this email is** steven@newenglandpropertyservicesgroup.com.

Hi Robert,

While we formulate a more appropriate response, can you please send me the policy reference to the following term:

1. Occurrence

Also, as you have not provided a copy of your "expert's report", would you be providing this to NEPSG and if not, why?

Thank you for your help with this.

Steven V. Ceceri
Owner & Operator
New England Property Services Group, LLC
Office: 1822 North Main Street, Second Floor Annex, Suite 001 ~ Fall River, MA 02720
Direct: 401-419-1781 ~ Office: 508-567-5738 Ext. 102 ~ Fax: 401-566-4423
Email: Steven@NewEnglandPropertyServicesGroup.com

**From:** Tucker, Robert M <RMTUCKER@travelers.com>
**Sent:** Tuesday, March 5, 2024 12:23 PM
**To:** Steven Ceceri <steven@newenglandpropertyservicesgroup.com>
**Cc:** Tom Alves <tom@newenglandpropertyservicesgroup.com>; Michael Brady
<michael@newenglandpropertyservicesgroup.com>; Makenzie Scott
<makenzie@newenglandpropertyservicesgroup.com>; AVROMSPAM@GMAIL.COM
**Subject:** IMV8022: Honig Claim

Mr. Ceceri,

Please find attached a letter in regard to Mr. Honig's claim.

Should you have any questions or to discuss this matter further at this time, please do not hesitate to let me know.

Regards,

**Robert M. Tucker | Claim Manager**
The Travelers Home And Marine Insurance Company
West Bridgewater, MA
New England Claim Center
W: 508.717.2159  TF: 800.422.3340
F: 877.786.5584

Mailing Address:
Travelers
PO Box 430
Buffalo, NY 14240-0430

If further assistance is required, please contact my manager Manny Carvalho at mcarvalh@travelers.com

**TRAVELERS**

This message (including any attachments) may contain confidential, proprietary, privileged and/or private information. The information is intended to be for the use of the individual or entity designated above. If you are not the intended recipient of this message, please notify the sender immediately, and delete the message and any attachments. Any disclosure, reproduction, distribution or other use of this message or any attachments by an individual or entity other than the intended recipient is prohibited.

# EXHIBIT 17

**Makenzie A. Scott, Esq.**
**In-House Legal Counsel**
**New England Property Services Group, LLC**
1822 North Main Street, 2nd Floor Annex Suite 001
Fall River, MA 02720
**Phone:** (508) 567-5738 **Fax:** (401) 566-4423
**Email:**
Makenzie@NewEnglandPropertyServicesGroup.com
**Website:** www.NewEnglandPropertyServicesGroup.com
Bar Admissions: MA and RI



June 7, 2024

Michael N. Lavoie
Claim Manager
The Travelers Home and Marine Insurance Company
PO Box 430
Buffalo, NY 14240

*Via email to mnlavoie@travelers.com*

*Re:*   **Avrom Honig, Insured**
      **Policy Number: 614262907-633-1**
      **Claim Number: IMV8022**
      **Date of Loss: July 10, 2023**

Dear Mr. Lavoie:

I represent New England Property Services Group ("NEPSG") in the above-mentioned claim. I am writing in response to your letter dated June 6, 2024 and previous communications on April 9, 2024, March 5, 2024 and March 7, 2024, attached to this letter for reference.

In your March 5, 2024 letter, you rejected NEPSG's Proof of Loss, in part because "Travelers disputes that the Actual Cash Value of the property at the time of loss was $202,909.76." You go on to state that NEPSG's Proof of Loss was " unsupported by [Travelers'] investigation… Which involved several experienced claim professionals and loss consultants, including Leonard Morse-Fortier and Stephen Condren from Simpson, Gumpertz and Heger ('SGH')." However, Travelers has refused to provide any reports, photographs, or any other information from this purported investigation leading to Travelers' valuation of the amount of loss. Conversely, NEPSG has provided ample information relevant to the claim to Travelers. NEPSG provided both an Estimate and Scope of Loss and a notarized Proof of Loss to Travelers on February 14, 2024 regarding claim damage.



In your March 7, 2024 email, you state that Travelers is unclear what NEPSG seeks when it asks for the simple policy definition of the word "occurrence," in response to Travelers' assertion that each instance of water intrusion into the insured property would require the submission of a separate claim. As Travelers appears to need the definition, the Policy provides in pertinent part:

> "12. **"Occurrence"** means an accident, <u>**including continuous or repeated exposure to substantially the same general harmful conditions**</u>, which <u>**results during the policy period, in**</u>:
>
> > a. "Bodily injury"; or
> > b. "**Property damage**"." (Emphasis added).

As NEPSG has stated previously, we will not be filing separate claims for continued exposure to the same damage which resulted in multiple points of water intrusion, pursuant to the policy.

Travelers further requests access to the property to conduct yet another inspection of the insured premises. NEPSG and the Policyholders have already allowed Travelers access to inspect the property on both July 14, 2023 and January 5, 2024. This is not to mention the trespass and unauthorized inspection of the insured premises by Travelers' inspector Scott Chase of Chase Building and Remodeling on July 12, 2023. At this time, NEPSG is unaware of what information a further inspection would provide.

NEPSG once again requests any expert reports and/or findings from the January 5, 2024 inspection from SGH. NEPSG has provided an Estimate and Scope of Loss and a notarized Proof of Loss to Travelers and has received no reciprocation. Once NEPSG receives the report from SGH, we are willing to consider access to the insured premises for further inspection.

Should you have any questions regarding NEPSG's position, please do not hesitate to contact me.

Regards,

*/s/Makenzie Scott*

Makenzie A. Scott
In-House Counsel
New England Property Services Group
Makenzie@newenglandpropertyservicesgroup.com