UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND PROPERTY SERVICES GROUP, LLC,<br><br>Plaintiff,<br><br>v.<br><br>THE TRAVELERS HOME AND MARINE INSURANCE COMPANY,<br><br>Defendant. | C.A. NO. 1:25-CV-10666-AK |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

The central issue in this case involves a disagreement between The Travelers Home and Marine Insurance Company ("Travelers") and the plaintiff, New England Property Services Group, LLC ("NEPSG"), the purported assignee of Avrom Honig's claim, concerning the cost to repair the covered damage to Mr. Honig's property. The plaintiff brings this contract-based action against Travelers without satisfying a condition precedent to suit, namely Appraisal, or Reference as it is known in Massachusetts. Both the terms of the insurance contract and Massachusetts law recognize that appraisal is a condition precedent to maintaining an action on the policy. Consequently, where the plaintiff has failed to satisfy a condition precedent to bringing an action on the policy, it cannot maintain the present action, and Travelers is therefore entitled to summary judgment in its favor as to both counts of the complaint.

## II. STATEMENT OF FACTS

Travelers incorporates herein the facts and documents set forth in its Statement of Undisputed Facts as if fully set forth herein.

## III. LEGAL STANDARD

### A. Summary Judgment

It is well-established that summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Barbour v. Dynamics Research Corp.*, 63 F.3d 32, 36 (1st Cir. 1995), *cert. denied*, 516 U.S. 1113 (1996); *Libertad v. Welch*, 53 F.3d 428, 433 (1st Cir. 1995); Fed.R.Civ.P. 56(c). "To succeed [on a motion for summary judgment], the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the non-moving party, who "may not rest on mere allegations or denials in the pleadings, but must set forth specific facts showing there is a genuine issue for trial." *Barbour*, 63 F.3d at 37, *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *see also* Fed.R.Civ.P. 56(e); *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995). "There must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Rogers*, 902 F.2d at 143, *quoting Anderson*, 477 U.S. at 249-50 (citations omitted). Summary judgment is appropriate where, after drawing all reasonable inferences in favor of the nonmoving party, there is no doubt as to whether

there is a genuine issue of material fact. *Kennedy v. Josephthal & Co.*, 814 F.2d 798, 804 (1st Cir. 1987).

**B. <u>Interpretation of Insurance Policies</u>**

The interpretation of an insurance policy is a question of law. *B & T Masonry Constr. Co. v. Pub. Serv. Mut. Ins. Co.*, 382 F.3d 36, 38 (1st Cir. 2004), *citing Ruggerio Ambulance Serv., Inc. v. Nat'l Grange Ins. Co.*, 430 Mass. 794-797 (2000). The general rules of contract interpretation apply to insurance contracts, and policy provisions must be construed in their “usual and ordinary sense.” *Certain Interested Underwriters at Lloyd's, London v. Stolberg*, 680 F.3d 61, 65-66 (1st Cir. 2012), *quoting Hakim v. Mass. Insurers' Insolvency Fund*, 424 Mass. 275, 280 (1997). Indeed, where the relevant policy provisions are plainly expressed, those provisions must be enforced in accordance with their terms. *Clark School for Creative Learning, Inc. v. Philadelphia Indem. Ins. Co.*, 734 F.3d 51, 55 (1st Cir. 2013), *citing Cody v. Conn. Gen. Life Ins. Co.*, 387 Mass. 142, 146 (1982).

Massachusetts law governs the issues in this insurance dispute. The interpretation of an insurance contract is a question of law. *Allmerica Fin. Corp. v. Certain Underwriters at Lloyd’s, London*, 449 Mass. 621, 628 (2007). It “is no different from the interpretation of any other contract, and [courts] must construe the words of the policy in their usual and ordinary sense.” *Hakim v. Massachusetts Insurers’ Insolvency Fund*, 424 Mass. 275, 280 (1997). Courts must “read the policy as written and ‘are not free to revise it or change the order of the words.’” *Id.* at 281, *quoting Continental Cas. Co. v. Gilbane Bldg. Co.*, 391 Mass. 143, 147 (1984). “Every word in an insurance contract ‘must be presumed to have been employed with a purpose and must be given meaning and effect whenever

practicable,'" *Allmerica Fin. Corp., supra*, (*quoting Jacobs v. United States Fid. & Guar. Co.*, 417 Mass. 75, 77 (1994)), "without according undue emphasis to any particular part over another." *Mission Ins. Co. v. United States Fire Ins. Co.*, 401 Mass. 492, 497 (1988)(*quoting Woogmaster v. Liverpool & London & Globe Ins. Co.*, 312 Mass. 479, 481 (1942)). In other words, "[t]he objective is to construe the contract as a whole, in a reasonable and practical way, consistent with its language, background and purpose." *Massachusetts Property Ins. Underwriting Assn. v. Wynn*, 60 Mass. App. Ct. 824, 827 (2004).

Application of these contract interpretation rules compels the relief sought by Travelers.

## IV. ARGUMENT

### A. Travelers Is Entitled to Summary Judgment in Its Favor as to Both the 93A and Breach of Contract Claims Since Plaintiff Failed to Satisfy a Condition Precedent to Bringing Suit

The plaintiff in this insurance dispute improperly brings forward contract-based claims against the defendant without having satisfied a condition precedent to filing suit. That is, the plaintiff failed to participate in Reference to determine the amount of loss payable under the Travelers Policy. The terms of the insurance contract and Massachusetts law recognize Reference as a condition precedent to maintaining an action on the policy. Despite the clear purpose and directives in the policy and law, plaintiff unilaterally terminated the Reference proceedings and refused at any time thereafter to participate in Reference, and instead, filed suit.

As the plaintiff disagreed with Travelers regarding the amount of loss, it was required to submit the dispute to binding Reference. While the plaintiff did initiate the Reference process in August 2023, specifically "due to a present disagreement as to the

Amount of Loss," it subsequently and unilaterally terminated the proceedings before they had begun in any meaningful fashion. The undisputed facts show that Travelers stood ready, willing and able to participate in Appraisal/Reference. The parties selected two appraisers who, in turn, chose an umpire to complete the panel. The umpire on the panel contacted the parties to schedule a site visit and to receive evidence. While Travelers responded with available dates and agreed to waive the statutory requirement to view the evidence within ten days of selecting a panel, the plaintiff simply failed and refused to communicate with the panel. Instead, plaintiff's counsel advised counsel for Travelers that the plaintiff was holding the Reference proceedings in abeyance. Due to the lack of communication and cooperation of the plaintiff, two of the panel members recused themselves. In an effort to salvage the Appraisal/Reference proceedings, counsel for Travelers wrote a letter to the Massachusetts Commissioner of Insurance and asked the Commissioner to appoint replacement referees, but the Commissioner declined to do so. The plaintiff then terminated the Appraisal/Reference proceedings entirely and filed the present action.

### i. Massachusetts Law and the Travelers Policy Require the Plaintiff to Participate in Reference to Establish the Amount of Loss

G.L. c. 175, §99 provides, in pertinent part:

> In the case of loss under this policy and a failure of the parties to agree as to the amount of loss, it is mutually agreed that the amount of such loss ***shall be referred to three disinterested men,*** the company and the insured each choosing one out of three persons to be named by the other, and the third being selected by the two so chosen; and the award in writing by a majority of the referees shall be conclusive and final upon the parties as to the amount of loss or damage, and such reference . . . ***shall be a condition precedent to any right of action in law or equity to recover for such loss***."

G.L. c. 175, §99 (emphasis added).

The purpose of the statute is to provide a summary method of establishing the amount of loss and to expedite settlement of first-party claims. *M.A.S. Realty Corp. v. Travelers Cas. & Sur. Co. of Ill.*, 196 F.Supp.2d 41, 44 (D. Mass. 2001).

In *Employer's Liability Assur. Corp. v. Traynor*, the plaintiff insurance company sought declaratory relief to determine whether it was liable for a loss by theft of the defendant's property. 354 Mass. 763 (1968). The defendant moved to dismiss the action on the grounds that any issues regarding the value of the stolen items should be resolved by reference in accordance with the provisions of G.L. c. 175, § 99. *Id.* The trial court dismissed the insurer's complaint and ordered the insurer to submit questions of value to referees. On review, the Supreme Judicial Court affirmed the trial court and held that "[t]he prime purpose of [G.L. c. 175, § 99] ... is to obviate just this type of proceeding and to expedite the equitable settlement of claims. Questions of ultimate liability are determinable following action on the reference, pending which the insurer's rights relative thereto are protected." *Traynor*, 354 Mass. at 763; *M.A.S. Realty Corp.*, 196 F.Supp.2d at 44.

Numerous decisions from the First Circuit and U.S. District Court recognize that Reference is a condition precedent to an action on the policy. *See, e.g., McCord v. Horace Mann Ins. Co.*, 390 F.3d 138, 142-43 (1st Cir. 2004)(recognizing Reference as a condition precedent to action on policy); *Kiley v. Metro. Prop. & Cas. Ins. Co.*, 159 F.Supp. 3d 135, 144 (D. Mass. 2016)(same). Where the plaintiff has failed to satisfy a condition precedent to maintaining an action on the policy, summary judgment for the defendant is warranted. *See, e.g., McCord*, 390 F.3d at 143 (insurer's motion for judgment on the

pleadings affirmed because insured failed to demand Reference, a condition precedent to filing suit under the policy).

The Travelers Policy includes the Special Provisions – Massachusetts endorsement which amends the "Appraisal" and "Suit Against Us" conditions in the main form of the policy to incorporate and align with Massachusetts law, and states as follows:

> **7.** **Appraisal** is replaced by the following:
>
> **7.** **Arbitration.** If there is a disagreement as to the dollar amount of loss under the Property Coverage Section, Massachusetts law provides a method for settling the disagreement. If requested, the dispute shall be referred to a three member board of referees. They are selected and must act according to procedures set by the law. Their decision as to the amount of loss will be binding. This board does not make decisions about matters of coverage or fault.
>
> * * * *
>
> **9.** **Suit Against Us** is replaced by the following:
>
> **9.** **Suit Against Us.** No action can be brought against us unless there has been full compliance with all of the terms under this policy and the action is started within two years after the date of loss occurs…

Accordingly, Massachusetts law provides a mechanism for the resolution of disputes over the value of loss under an insurance policy, and the homeowners insurance policy which Travelers issued to Avrom Honig incorporated the statutory requirement of Reference. Because the plaintiff, who seeks to stand in the shoes of Travelers' insured with respect to the subject claim for benefits under the Travelers Policy, failed to abide by the requirements of the statute and a condition precedent to suit under the Travelers Policy and instead unilaterally terminated the Reference proceedings, the plaintiff cannot maintain the present action, and Travelers is entitled to judgment as a matter of law.

**a. <u>Appraisal/Reference is not Arbitration</u>**

As discussed above, the Travelers Policy includes the Special Provisions – Massachusetts endorsement. The endorsement changes the title of the Appraisal condition to "Arbitration." Note, however, that although titled "Arbitration," the wording of the provision states that the "dispute shall be referred to a three member board of referees … [who] are selected and must act according to procedures set by the law." These procedures are those forth in G.L. c. 175, §99.

The Massachusetts Supreme Judicial Court long ago clarified that a reference to a third person (the appraiser) "to make an appraisement of property and the like" is not a submission to arbitration. *Palmer v. Clark*, 106 Mass. 373, 389 (1871); *see Eliot v. Coulter*, 322 Mass. 86, 89 (1947) (describing *Palmer* as the "leading case" and pointing out that there is no arbitration when there is "no existing claim to be arbitrated. There [is no arbitration when there is] ... only a valuation to be made that would in the future prevent a resort to the courts or to technical arbitration").

G.L. c. 251 et seq. (Uniform Arbitration Act for Commercial Disputes) recognizes the validity and enforceability of "a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties." G.L. c. 251, § 1. However, the appraisal provision at issue in the Travelers Policy does not constitute "arbitration" within the meaning of Chapter 251. See 6 C.J.S. Arbitration § 2 (2004) (arbitrator is more than a mere appraiser and functions as a private judge, determining rights and liabilities of parties, while appraiser conducts informal investigation and binds parties to amount of loss determined in particular way). *Cf.* G.L. c. 175, § 101E; *Wilson v. Merrimack Mut. Fire. Ins. Co.*, 66 Mass. App. Ct. 1102 (2006) (Recognizing that Chapter 251 does not apply to

insurance reference proceedings under G.L. c. 175, § 99 to determine amount of loss unless the parties so agree in writing).

The limited role of the statutory referees in determining the "amount of loss or damage" suffered by an insured is analogous to the role of the appraiser. *See Sun Microsystems, Inc. v. Electronic Services, Inc.*, 25 Mass.L.Rptr. 341 (Hinkle, J.) (Mass. Super. April 13, 2009). *See also* Couch on Ins. § 209:8 Appraisal distinguished (3d ed. 2022) ("Although the terms arbitration and appraisal are sometimes used interchangeably, appraisal is distinguished by its more limited role. In an appraisal, the parties refer some ministerial duty or some matter involving only the ascertainment of facts to selected persons for disposition. An appraisal requires neither a hearing nor the exercise of judicial discretion."); *id*. at n.3 ("[A]n appraisal determines only the amount of loss, without resolving issues such as whether the insurer is liable under the policy."); Am. Jur. Ins. § 1652 ("Appraisal establishes only the amount of a loss and not liability for the loss under an insurance contract.") "It is not of consequence whether the persons who are to fix the amount of the loss as between the insured and the insurer are called appraisers or referees, nor whether their decision is called an award or an appraisal." *Hanley v. Aetna Ins. Co.*, 215 Mass. 425, 428 (1913).

Reference only becomes an arbitration upon written agreement of the parties. In elaboration, G.L. c. 175, § 101E states that "[a] company which ... joins in reference proceedings shall not thereby be held to have waived any legal defense to the claim [subject to] the reference proceedings ... and [the] proceedings shall fix only the amount of the loss sustained by the insured ... unless both parties shall agree in writing that the reference ... shall proceed under the provisions of [G.L. c. 251, the Uniform Arbitration

Act].” There has been no such agreement in writing between the parties to proceed under the Uniform Arbitration Act, the Travelers Policy’s appraisal provision does not constitute an arbitration, and any proceedings thereunder are not subject to the Uniform Arbitration Act.

**b. Travelers Has Not Waived Appraisal**

To the extent that the plaintiff may seek to claim that Travelers waived the Appraisal condition in the policy, such an argument lacks factual and legal merit. The undisputed factual record demonstrates quite clearly that Travelers raised the issue with Plaintiff on numerous occasions. *Lancaster v. General Accident Ins. Co. of America*, 32 Mass. App. Ct. 925 (1992); *F.C.I. Realty Trust v. Aetna Cas. & Sur. Co.*, 906 F. Supp. 30, 33-34 (D. Mass. 1995) (finding no waiver where the insurer raised the reference issue as an affirmative defense in its answer and repeatedly refused to waive its rights under the policy). For waiver of Reference to exist, there must be an absence of dispute as to the amount of loss. *See, e.g., Goodman v. Quaker City Fire & Marine Ins. Co.*, 241 F.2d 432, 436 (1st Cir. 1957)(holding that an insurer's letter simply denying any liability without raising dispute as to the valuation of loss constituted a waiver of any right to require arbitration); *Moran v. Phoenix Ins. Co.*, 7 Mass. App. Ct. 822 (Mass. App. Ct. 1979) (error to allow summary judgment where the sole basis of the insurer's refusal to pay was a denial of liability and there was no evidence that insurer disputed the amount of loss). In this case, NEPSG specifically demanded Reference “due to a present disagreement as to the Amount of Loss,” therefore, the plaintiff cannot maintain that there is no dispute as to the amount of loss.

Moreover, Travelers raised the issue of Appraisal in its September 18, 2023 response to the plaintiff's purported demand for relief under G.L. c. 93A (including acknowledging that NEPSG demanded Reference, Travelers responded, a panel was selected, Morrison Mahoney would represent Travelers at Reference, and reserving all rights under the policy) and in its September 21, 2023 letter in which it rejected the plaintiff's unilateral attempt to suspend the Reference proceeding and specifically stated that "Reference is a condition precedent to any action on the policy." Travelers also preserved the issue in its second and tenth affirmative defenses to the plaintiff's Complaint (stating that plaintiff failed to comply with conditions precedent to bringing the present action). At no point during the correspondence between the parties pertaining to the Appraisal process did Travelers ever state that it would waive the condition precedent to filing suit under the policy. On the contrary, it was Travelers that sought to preserve the process by asking the Commissioner of Insurance to appoint replacement referees after two members of the original panel recused themselves due to the plaintiff's lack of cooperation.

Accordingly, any argument that Travelers waived the Appraisal condition in the policy and under Massachusetts law is unsupported by the facts in this case and must fail.

**B. <u>Plaintiff's 93A Claims Must Also Fail as Genuine Disputes Over The Amount of Loss or Scope of Coverage Do Not Give Rise to Chapter 93A Liability</u>**

General Laws c. 93A, § 2(a), inserted by St. 1967, c. 813, § 1, provides that "unfair or deceptive acts or practices in the conduct of any trade or commerce" are unlawful. General Laws c. 176D, § 2, sets forth a similar prohibition against such conduct in the insurance business. Any person whose rights have been affected by an insurance

practice that violates G.L. c. 176D, § 3(9), may sue under G.L. c. 93A. *See Van Dyke v. St. Paul Fire & Marine Ins. Co.*, 388 Mass. 671, 675 (1983).

On its website, the plaintiff, which has controlled this loss adjustment for Travelers' policyholder from the start, describes itself as "a specialized general contracting company, focusing on restoring residential properties from various types of damage". Steven Ceceri, the founder of New England Property Services Group, LLC, touts his qualifications as a "Certified Commercial & Residential Mold Inspector & Remediator" who holds contractors licenses in Massachusetts, Connecticut and Rhode Island.

It is important to note that the plaintiff took the assignment from Mr. Honig on July 11, 2023, the day after the water loss that is the subject of this lawsuit. The plaintiff has been the party adjusting this loss with Travelers since day one of the claim adjustment process. Indeed, the plaintiff's aim is twofold: to maximize recovery under the insurance policy and to perform repairs to the damaged property. The plaintiff here is not simply a purported assignee of benefits. It is a commercial contractor that intends to perform construction work on the insured property. Indeed, the contract between the plaintiff and Travelers' insured contains a Scope of Work section which provides that the plaintiff will act "as the general contractor [that] will diligently carry out the following Scope of Work, which includes mitigation, remediation, and/or restoration activities described as follows:

> 1) Repairing exterior damage, including repairing damage caused by the rear roof section over the 1st floor bathroom as as well as the roof area over the kitchen, which allowed water to enter the home from a recent storm-related event."
>
> * * * *
>
> 4) NEPSG aims to draft and/or establish a Scope of Work, utilizing Xactimate and/or other reasonable estimating methods, that ensures the property is restored to its pre-loss condition. The Scope of Work will incorporate the necessary

> materials and installation methods to ensure compliance with the applicable state Building Code. 5) NEPSG will provide General Contracting services to restore the property to its pre-loss condition, as described herein.

* * * *

The contract's Terms and Conditions section expands upon the specialized and commercial nature of services provided by the plaintiff to its clients when it states, in relevant part, as follows:

**TERMS AND CONDITIONS**

> Customer has assigned the claim/s hereinafter described to the Contractor, and in furtherance of said assignment, Customer hereby recognizes that New England Property Services Group, LLC will share its specialized knowledge with the Customer to provide Customer with an adequate education and understanding, in its sole discretion, in matters relative to the technical aspects of the mitigation/remediation and/or renovation/restoration of damages sustained to Customer's real property…

* * * *

The purpose of the purported assignment of benefits given to the plaintiff is for the plaintiff to use its knowledge and expertise in construction and loss adjusting to control the claim adjustment process and turn a profit in the bargain—the purpose of any for-profit enterprise. It seeks to complete repairs to the insured property for significantly less than the amount paid to it by the insurer under the policy. If it does not do so, it would fail to realize a return on investment.

Although the plaintiff is a purported assignee in this case, the fact remains that it is a commercial entity engaged in trade and commerce—general contracting, construction, and loss adjusting—and it controlled the loss adjustment process on behalf

of Travelers' insured from day one. Therefore, Section 11 of c. 93A, not Section 9 of c. 93A, governs its claim.

To determine if a business practice is unfair under G.L. c. 93A, § 11, the court must assess "(1) whether the practice . . . is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers (or competitors or other businessmen)." *PMP Assocs., Inc. v. Globe Newspaper Co.*, 366 Mass. 593, 596 (1975). Unlike Section 9, a violation of c. 176D is not an automatic violation of c. 93A, §11. *Polaroid Corp. v. Travelers Indem. Co.*, 414 Mass. 747, 754 (1993). Liability under G.L. c. 176D and c. 93A based on unfair claim settlement practices is generally characterized by "[a]n absence of good faith and the presence of extortionate tactics." *Guity v. Commerce Ins. Co.*, 36 Mass. App. Ct. 339, 344 (1994). In contrast, genuine disputes over the amount of loss or scope of coverage do not give rise to Chapter 93A liability. *See River Farm Realty Trust v. Farm Family Cas. Ins. Co.*, 360 F.Supp.3d 31 (D. Mass. 2019); *New England Envtl. Techs. v. Am. Safety Risk Retention Grp., Inc.*, 738 F. Supp.2d 249, 259 (D. Mass. 2010). This is because Massachusetts law rejects the notion that 93A claims lie as the result of a genuine difference of opinion concerning the parties' legal obligations. *See Premier Ins. Co. v. Furtado*, 428 Mass. 507 (1998); *Duclersaint v. Federal Natl. Mort. Assn.*, 427 Mass. 809, 814-15 (1998). Indeed, the mere breach of contract, without more, is simply not a violation of G.L. c. 93A. *See Massachusetts Employers Ins. Exchange v. Propac-Mass., Inc.*, 420 Mass. 39, 42-43 (1995).

Distilled to its essence, this case is nothing more than a contract dispute "without conduct that was unethical, immoral, [or] oppressive.'" *Hawley v. Preferred Mut. Ins. Co.*, 88 Mass. App. Ct. 360, 368 (2015)(*citing Kobayashi v. Orion Ventures, Inc*., 42 Mass. App. Ct. 492, 505 (1997)). "[A] good faith dispute as to whether money is owed, or performance of some kind is due, is not the stuff of which a c. 93A claim is made." *Duclersaint v. Federal Natl. Mort. Assn.*, 427 Mass. 809, 814 (1998). Indeed, "[a] plausible, reasoned legal position that may ultimately turn out to be mistaken [or unsuccessful] is outside the scope of the punitive aspects of the combined application of c. 93A and c. 176D." *Guity*, 36 Mass. App. Ct. at 343.

In this case, there is a disagreement over the value of the water loss that occurred on July 10, 2023. The parties engaged in an effort to determine the scope and the amount of the property damage. The mere fact that the plaintiff, a sophisticated commercial entity with specialized knowledge in the fields of insurance loss adjustment and general contracting, did not agree with Travelers' determination fails to meet the lofty standards required to establish a violation of Section 11 of Chapter 93A. Accordingly, NEPSG cannot prevail in its 93A claim.

The plaintiff's complaint alleges several violations of G.L. c. 93A § 2 and 176D §§ 3(9), which Travelers will now address. [*Docket No. 1*, p. 22 at ¶107].

First, the plaintiff alleges that Travelers violated the statutes by misrepresenting the policy definition of "occurrence" by requiring separate claims for each date of water intrusion. Travelers' investigation revealed that the insured claimed new water damage to the insured property after discrete weather events. By letter dated January 12, 2024, Travelers "raised the possibility that these separate events causing distinct damages

could warrant consideration as separate claims," and stating "[w]e certainly have the right to investigate these concerns… [so if] you or the insureds have information that you believe will address and resolve this concern, we request its submission for our consideration." Such communications do not constitute bad faith and are supported by the Travelers Policy. Moreover, while "occurrence" is defined in the Travelers Policy, it is referenced in and pertains to the liability coverage portion of the policy, which does not apply to the present matter in which the plaintiff sought coverage for the subject loss and damage under the property coverage portion of the policy.

The plaintiff also alleges that Travelers violated the statutes by failing or refusing to answer its requests for information and requests to settle. The factual record in this case is a testament to Travelers' timely responses and proactive steps to investigate and adjust the loss throughout the life of this claim. With respect to an alleged failure and refusal to settle the claim, Travelers promptly issued payment for what its investigation determined was damage covered by the policy. The fact that Travelers was unwilling to settle the plaintiff's claim for the amount sought by the plaintiff does not constitute bad faith and instead demonstrates why the plaintiff was required to participate in Reference in order to settle the dispute regarding the amount of loss prior to filing suit.

Next, the plaintiff alleges that Travelers violated the statutes by failing to adopt and implement reasonable standards for the prompt investigation of the claim by sending an inspector to the insured property without prior notification or permission. As demonstrated by the record, Travelers received notice of the loss on July 10, 2023. The next day, Travelers advised Mr. Honig and Mr. Ceceri of NEPSG that Travelers had retained Scott

Chase to inspect the roof, and the parties conducted an interior and exterior inspection of the property on July 14, 2023. Accordingly, this claim is without factual support or merit.

The plaintiff further claims Travelers violated G.L. c. 176D, § 3(9)(d) by refusing to pay its claim without conducting a reasonable investigation. Again, the factual record demonstrates that Travelers issued payment for the covered damage on July 14, 2023 and conducted a thorough investigation of the claim, including engaging Chase Building and Remodeling and also engaging the engineering firm of Simpson Gumpertz & Heger to inspect the property and opine as to the cause of the water intrusion/damage. To prevail on a claim under Section 3(9)(d), a claimant must show what the insurer actually failed to do or what additional steps the insurer could have taken. See *O'Sullivan v. Hingham Mut. Fire Ins. Co.*, 2009 WL 2438329, at *3 (Mass. App. Ct. July 30, 2009). "In other words, [a claimant must detail] what a reasonable investigation should have entailed." *Id.* Nothing in the plaintiff's complaint points to information which Travelers failed to consider in reaching its coverage decision, and there is no evidence that Travelers' investigation was deficient in any way. The plaintiff simply doesn't agree with Travelers' determination. This is inadequate to establish bad faith on the part of an insurer. See *Alan Corp*., 823 F.Supp. at 43.

The plaintiff concludes with more allegations that Travelers acted in bad faith and in violation of G.L. c. 93A § 2 and 176D § 3(9) by failing to effectuate settlement and compelling the plaintiff to institute litigation. These allegations are simply more ways of expressing dissatisfaction with Travelers' coverage determination and valuation of the covered damage. That is the essence of this case, at bottom, and the plaintiff's disagreement or subjective dissatisfaction does not rise to the level of bad faith under

G.L. c. 93A and G.L. c. 176D. "A good faith dispute as to whether money is owed, or performance of some kind is due, is not the stuff of which a c. 93A claim is made." *Duclersaint*, 427 Mass. at 814.

### C. Any Claim That Travelers Violated a Duty of Good Faith and Fair Dealing also Fails as a Matter of Law Because Such Claims Are Derivative of the Failed Breach of Contract Claim

Finally, although the two counts against Travelers sound in Breach of Contract and Violation of G.L. c. 93A, plaintiff incorporates allegations into the counts that Travelers breached a duty of good faith and fair dealing during the settlement of the claim. [Ex. B at ¶¶108, 115-116]. Such allegations cannot save plaintiff's action from the fatal flaw of failing to satisfy a condition precedent to suit.

In Massachusetts, "every contract is subject to an implied covenant of good faith and fair dealing; the purpose [of which] is to 'ensure that neither party interferes with the ability of the other to enjoy the fruits of the contract' and that 'when performing the obligations of the contract, the parties remain faithful to the intended and agreed expectations of the contract.'" *FAMM Steel, Inc. v. Sovereign Bank*, 571 F.3d 93, 100 (1st Cir. 2009) *quoting Chokel v. Genzyme Corp.*, 449 Mass. 272, 867 N.E.2d 325, 329 (2007) (internal quotation omitted). Significantly, the scope of the covenant is only as broad as the contract that governs the particular relationship. *Id.* (*quoting Ayash v. Dana-Farber Cancer Inst.*, 443 Mass. 367, 822 N.E.2d 667, 684 (2005). Therefore, any alleged claim for violation of such covenant derives from, and is part and parcel to, the contract.

The plaintiff's allegations that Travelers breached a duty of good faith and fair dealing are simply another way of restating the dispute over coverage and the amount of loss claimed under the Travelers Policy. Accordingly, such claims fail for the same reasons that the breach of contract claims fail. As the plaintiff failed to proceed with

Appraisal/Reference, a condition precedent to filing suit against Travelers was not met, and therefore plaintiff cannot maintain this action related to the settlement of the claim.

Respectfully submitted,

THE TRAVELERS HOME AND MARINE INSURANCE COMPANY

By Its Attorneys,

**MORRISON MAHONEY LLP**

/s/ *William A. Schneider*

William A. Schneider, BBO #636421
Richard R. Hennessey, BBO #680652
Thomas M. Prokop, BBO #660362
250 Summer Street
Boston, MA 02210-1181
Phone: 617-439-7500
Fax: 617-342-4951
wschneider@morrisonmahoney.com
rhennessey@morrisonmahoney.com
tprokop@morrisonmahoney.com

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 10, 2026

/s/ *William A. Schneider*