UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND PROPERTY SERVICES GROUP, LLC,<br><br>Plaintiff,<br><br>v.<br><br>THE TRAVELERS HOME AND MARINE INSURANCE COMPANY,<br><br>Defendant. | C.A. NO. 1:25-CV-10666-JCB<br><br>Leave to file reply granted July 7, 2026 |

**DEFENDANT THE TRAVELERS HOME AND MARINE INSURANCE COMPANY'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Rule 56.1, defendant, The Travelers Home and Marine Insurance Company ("Travelers") submits this reply to plaintiff, New England Property Services Group, LLC's ("NEPSG") opposition to Defendant's Motion for Summary Judgment.

**1. Plaintiff Has Failed to Raise a Genuine Issue of Material Fact**

In an attempt to circumvent the statutory and contractual condition precedent to suit, the plaintiff's opposition repeatedly asks this Court to ignore the record and credit a fictitious narrative that it "stood ready to proceed" with Reference. In addition to attempting to re-write history as to why Reference was not completed prior to filing suit, the plaintiff goes to great lengths to attempt to sell a breach of contract claim as a Chapter 93A claim. Unfortunately for the plaintiff, the summary judgment record disproves its arguments and establishes that there are no disputed genuine issues of material fact. Accordingly, the defendant is entitled to summary judgment in its favor as a matter of law.

There can be no genuine dispute that Reference is a statutory and contractual condition precedent to suit. It is also uncontroverted that the parties' dispute did not go through the Reference process before suit was filed. While the plaintiff attempts to manufacture an issue of fact as to why the Reference did not proceed, the e-mails exchanged between the parties and with the Reference panel establish that failure was due to NEPSG, and NEPSG alone, and was absolutely not due to "circumstances outside [its] control." The plaintiff attempts to recast its Chapter 93A claim as something other than derivative of the breach of contract claim in an attempt to salvage its fatally flawed suit. Such efforts are in vain, as the plaintiff seeks only contract damages and identifies no separate and distinct injury to support an independent 93A claim. Also, NEPSG has not designated an expert to establish the standard of care for an insurer's investigation.

The plaintiff's breach of contract claims cannot proceed due to its failure to satisfy a condition precedent to suit, and because the purported 93A claim is derivative of the failed breach of contract claim, it also fails as a matter of law. Accordingly, the plaintiff's claims must be dismissed in their entirety, and judgment should enter for the defendant.

**2. NEPSG's G.L. c. 93A Claim Fails Because It Seeks Only Contract Damages, Identifies No Separate and Distinct Injury, and Lacks Proof of 93A Damages**.

The plaintiff's opposition devotes substantial briefing to the abstract legal proposition that Chapters 93A and 176D create duties independent of the insurance policy's contractual provisions. While Travelers does not dispute this general proposition, the question at the summary judgment stage is not whether a 93A claim can theoretically exist independent of a contract claim, but whether NEPSG has pleaded and supported a 93A claim that is independent of its contract claim. NEPSG's opposition has not done so.

A Chapter 93A plaintiff must prove a loss or injury that is separate and distinct from the damages flowing from the alleged breach of contract. The statute does not permit a claimant to repackage its contract claim as a 93A action and thereby recover the same contract damages through a different vehicle. *See River Farm Realty Trust v. Farm Family Cas. Ins. Co.*, 360 F.Supp.3d 31 (D. Mass. 2019) (disputes over the availability of coverage or the amount of loss covered under a policy do not constitute violations of Chapter 93A). "It is well settled that the mere breach of a contract, without more, does not amount to a Chapter 93A violation." *Zurich Am. Ins. Co. v. Watts Regul. Co.*, 796 F. Supp. 2d 240, 244 (D. Mass. 2011). Where the only injury alleged is the failure to pay policy benefits, precisely what NEPSG alleges here, the 93A claim is dependent on the contract claim and fails as a matter of law. *See Callahan v. Harvest Bd. Int'l, Inc., 138 F. Supp. 2d 147, 166 (D. Mass. 2001)* (breach of contract without more, does not violate chapter 93A, and 93A claim also fails because plaintiff has not claimed injury apart from breach).

In *Gattineri v. Wynn MA, LLC*, 93 F.4th 505 (1st Cir. 2024), the First Circuit stated:

> The Chapter 93A claim is derivative, as the district court correctly held, and is not a plausible ground for relief…. the Chapter 93A claim seeks the same amount of damages as his claim for damages for his breach of contract claim, trebled as provided for by Chapter 93A. And it describes a course of conduct by the defendants identical to that supporting the breach of contract and common law fraud claims, all described in the SJC's decision.
>
> …
>
> The SJC has clearly articulated the standard that if a Chapter 93A claim is "derivative of" other claims which fail as a matter of law, the Chapter 93A claim "must also fail." *See Park Drive Towing, Inc. v. City of Revere*, 442 Mass. 80, 809 N.E.2d 1045, 1050-51 (2004). Applying that principle in *Park Drive Towing*, the SJC affirmed the dismissal of a Chapter 93A claim, reasoning that it was derivative of a breach of contract claim in that it "allege[d] 'unfair and deceptive conduct surrounding the breach of contract.' " *Id.* at 1049-51. Because the claim for breach of contract failed, as "no enforceable contract existed" between the parties, so did the Chapter 93A claim. *Id.*

> …
> This court too has applied Massachusetts law and found that a Chapter 93A claim that is derivative of other failed claims must be dismissed. See *FAMM Steel, Inc. v. Sovereign Bank*, 571 F.3d 93, 108 (1st Cir. 2009) (holding that where Chapter 93A claim "is based wholly on [ ] common-law claims" and those "underlying claims fail," the Chapter 93A claim also fails); see also *Whitman & Co., Inc. v. Longview Partners (Guernsey) Ltd.*, No. 14−cv−12047−ADB, 2015 WL 4467064, at *7 (D. Mass. July 20, 2015) ("Chapter 93A claims derivative of the [failed] breach of contract claim are also barred."); *Pimental v. Wachovia Mortg. Corp.*, 411 F. Supp. 2d 32, 40 (D. Mass. 2006) ("Since [the plaintiff] has failed to allege sustainable breach of contract or negligence claims, and the Chapter 93A claim is based upon the previous two claims, there is no basis for finding [the defendant] liable under Chapter 93A.").
> …
> Thus, because Gattineri's Chapter 93A claim is "derivative of [his] breach of contract" and fraud claims, "in that it alleges 'unfair and deceptive conduct surrounding the breach of contract,' ... this claim must also fail."

Each and every act of allegedly "unfair" conduct identified by NEPSG in its opposition—failing to conduct a reasonable investigation, undervaluing the loss, misrepresenting the scope of covered damage, and compelling litigation—is merely a restatement of the contract dispute over the amount allegedly owed by Travelers under the policy. NEPSG identifies no separate harm caused by any deceptive act: no emotional distress, no reliance injury, no consequential loss distinct from the policy proceeds it seeks. The only remedy pursued by NEPSG is payment of the disputed claim—breach of contract damages. As in *Gattineri*, NEPSG's Chapter 93A claim seeks the same amount of damages as its claim for damages for the breach of contract claim, and the 93A claim describes a course of conduct by the defendant identical to that supporting the breach of contract claims. Therefore, the Chapter 93A claim is "derivative of" the contract-based claims. The court in *Gattineri* explained that where a breach of contract claim fails, a Chapter 93A claim must also fail. *See also, Duclersaint v. Federal Natl. Mort. Assn.*, 427

Mass. 809, 814 (1998) ("good faith dispute as to whether money is owed, or performance of some kind is due, is not the stuff of which a c. 93A claim is made").

NEPSG has failed to present evidence of cognizable 93A damages. It offers no damages model, no expert testimony, and no computation that separates alleged 93A loss from the contract amount in dispute. The lack of proof warrants summary judgment. While the cases cited in NEPSG's opposition establish that an insurer *may* be independently liable under G.L. c. 93A for unfair claim-handling practices, they do not stand for the proposition that a plaintiff may recover contract damages under Chapter 93A without demonstrating a separate and distinct loss.[1]

**3. NEPSG Provides No Expert Testimony on the Standard-of-Care.**

The plaintiff's theory that Travelers violated Chapters 93A and 176D seems based on the assertion that Travelers' investigation was "unreasonable." But NEPSG has not designated an expert witness to testify about the applicable standard of care for an insurer investigating a property-damage claim. Without such testimony, there is no evidence that would allow a jury to determine the standard of care, what constitutes a "reasonable" investigation by an insurer, or whether Travelers' investigation fell below that standard.

NEPSG points to testimony from Travelers' own consultants—Dr. Leonard Morse-Fortier and Scott Chase—as creating "genuine disputes." But testimony about what Travelers' consultants observed or concluded does not establish the standard of care applicable to an insurer's investigation. The question is not whether reasonable experts disagree about the cause or scope of damage (they often do), but whether Travelers' reliance on its consultants and its investigation fell below the standard of care expected

[1] *Clegg v. Butler*, 424 Mass. 413 (1997), *Hopkins v. Liberty Mutual Ins. Co.*, 434 Mass. 556 (2001), *Rhodes v. AIG Domestic Claims, Inc.*, 461 Mass. 486 (2012).

of a reasonably prudent insurer. That question requires expert testimony, which NEPSG has not provided. Absent expert testimony to establish the standard of care for a property insurer's investigation, the plaintiff cannot create a triable issue on the central element of its Chapter 93A/176D claim—that Travelers' investigation was unreasonable. Travelers, therefore, is, entitled to summary judgment on Count I of the complaint.

**4. The Reference Panel Dissolved Due to Plaintiff's Failure to Cooperate.**

The plaintiff's opposition rests heavily on the false narrative that it "stood ready to proceed" and that the Reference process collapsed due to "circumstances beyond its control." The documentary record contradicts this position and conclusively establishes that Reference proceedings did not take place because of NEPSG alone. The undisputed record shows that counsel for NEPSG put the "Reference process on hold" and stated:

> Please note that NEPSG objects to any further action being taken with respect to this Reference proceeding. Notwithstanding, if the Panel decides to take any further action going forward with Reference, rest assured that any such conduct will be noted as additional Bad Faith conduct on the part of TRAVELERS.

The next day, the appraiser nominated by NEPSG and the third-party neutral referee/umpire recused themselves due to NEPSG's lack of cooperation. NEPSG failed to provide a new list of nominees or take steps to reconstitute the panel. Instead NEPSG unilaterally suspended Reference proceedings. While Travelers sought to have replacement referees appointed by the Massachusetts Commissioner of Insurance, NEPSG continued its deliberate actions to prevent Reference from proceeding, disbanded the panel, and never took steps to restart Reference prior to filing suit.

The emails between the parties and with the Reference panel establish that the panel members recused themselves because of NEPSG's failure to cooperate and participate in the process. SOF ¶¶ 25, 28-32. The recusals, including that of NEPSG's

own proposed appraiser, were not random events, and not caused by any conduct of Travelers or its representatives. They were the direct consequence of the plaintiff's lack of cooperation with the referees. There is no genuine issue of material fact on this point—the emails speak for themselves. It is also undisputed that NEPSG took no steps to nominate or appoint a replacement appraiser, that counsel for NEPSG advised plaintiff was "holding the Honig Reference Proceeding in Abeyance," or that it was NEPSG who requested to "disband the Reference Panel." NEPSG's actions were deliberate.

Because there is no genuine factual dispute as to the reason for the Reference panel's dissolution, the plaintiff's attempt to characterize the factual record as presenting a "genuine dispute" fails. The Court need not and should not credit the plaintiff's self-serving characterization of events when it is contradicted by the contemporaneous written record. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (nonmoving party must do more than present a "scintilla" of evidence or rest on "mere allegations").

**5. NEPSG Had the Burden to Satisfy a Condition Precedent; Travelers Did Not Waive Reference And Was Not Required to Seek Judicial Intervention.**

a. **NEPSG Bore The Burden And Had The Means To Proceed**

The plaintiff's argument that Reference "became impossible" ignores the fact that NEPSG had the ability to restart the process. Under the statutory scheme, each party appoints its own appraiser and the two appraisers select a referee. All the plaintiff needed to do to restart Reference was nominate a replacement appraiser. On December 1, 2023, NEPSG advised Travelers it wished to "disband the Reference Panel.". SOF ¶ 35.

In its effort to escape its purposeful failure to satisfy the statutory requirement of Reference, NEPSG attempts to avail itself of the impossibility doctrine. This doctrine is inapplicable, however, where a party has an available means to perform. *See Boston*

*Plate & Window Glass Co. v. John Bowen Co.*, 335 Mass. 697, 700 (1957); *Chase Precast Corp. v. John J. Paonessa Co*., 409 Mass. 371, 374–75 (1991). Those cases involved truly supervening events that made performance objectively impossible without the fault of either party—not a party's unilateral decision not to utilize an available mechanism. (Those cases also did not involve Reference or address a condition precedent to suit.) NEPSG failed and refused to respond to the duly selected panel of Referees who sought to schedule the proceedings, unilaterally disbanded the proceedings and chose not to nominate a new appraiser. That is not impossibility. Rather, it was a calculated decision.

Similarly, NEPSG's reliance on *Druker v. Roland Wm. Jutras Associates*, 370 Mass. 383, 385 (1976), is misplaced because it had nothing to do with Reference or a condition precedent to suit. The conduct of NEPSG—not Travelers—prevented the Reference condition from being satisfied. NEPSG's failure to cooperate caused two referees to recuse themselves, and NEPSG's failure to nominate a replacement referee prevented the process from restarting. SOF ¶¶ 31-32 & ¶ 35.

**b. Travelers Did Not Waive The Reference Requirement**

NEPSG's waiver argument mischaracterizes the record. NEPSG points to Travelers' September 18, 2023, response to NEPSG's Chapter 93A demand letter, in which Travelers stated that it intended to seek procedural relief from the Reference panel regarding NEPSG's authority to demand Reference. But this conduct is entirely consistent with enforcing, not waiving, the Reference requirement. Travelers preserved its right to challenge the validity of NEPSG's assignment post-appraisal while simultaneously allowing the Reference process to proceed. SOF ¶ 34.

Waiver requires the "intentional relinquishment of a known right." *Merrimack Mutual Fire Ins. Co. v. Nonaka*, 414 Mass. 187, 189 (1993). NEPSG does not and cannot contend that Travelers refused to participate in Reference or took affirmative steps to frustrate it. Rather, the record shows Travelers asked the Commissioner to appoint new appraisers so Reference could proceed. SOF ¶ 34. Travelers' conduct was consistent with an intent to enforce, not waive, the Reference condition.

The cases cited by the plaintiff involved insurers whose conduct was inconsistent with intent to enforce policy conditions.[2] Travelers' every action—including requesting the Commissioner to appoint replacement appraisers—was consistent with enforcement.

NEPSG waived Reference by failing to cooperate with the panel and failing to nominate a replacement appraiser. Having abandoned the statutory mechanism, NEPSG cannot now claim a right to a jury trial to adjudicate the amount of loss—a determination that, under the policy and statute, belongs to the Reference process. Nor can the plaintiff seek a stay of these proceedings to permit the Reference process to take place.

**6. NEPSG's Failure to Satisfy A Condition Precedent Requires Dismissal.**

NEPSG's argument that the Court should stay the action and order completion of Reference fails for multiple reasons. First, appraisal under G.L. c. 175, § 99 is a statutory condition precedent to suit. Where a condition precedent to suit has not been satisfied, the suit must be dismissed, not stayed. The statute is clear: completion of Reference is a prerequisite to maintaining an action on the policy, not contemporaneous with a suit. A court cannot "stay" an action that was not properly brought and cannot be maintained.

---

[2] *Eaton v. Globe & Rutgers Fire Insurance Co.*, 227 Mass. 354, 364 (1917), and *Nonaka*, 414 Mass. at 189

Second, a stay is inappropriate here because Reference collapsed due to NEPSG's own non-participation. SOF ¶ 31-32 & ¶ 35. NEPSG should not be allowed to sabotage the appraisal process then be permitted to maintain an action—in contravention of the meaning of a condition precedent—while the Reference proceeds. The cases NEPSG cites—*Home Gas Corp. of Mass. v. Walter's of Hadley, Inc.*, 403 Mass. 772, 774–76 (1989) and *Monahan v. Washburn*, 400 Mass. 126, 128 (1987) are inapplicable to the present matter. *Home Gas Corp.* addressed an order of stay for arbitration under the Uniform Arbitration Act. It did not involve Reference or a plaintiff's failure to satisfy a statutory or contractual condition precedent to suit. *Monahan* addressed whether dismissal of plaintiffs' complaint for want of prosecution was an appropriate sanction where the plaintiff (Monahan) was unable attend trial for medical reasons. It did not involve Reference or a failure to satisfy a condition precedent.

Third, while NEPSG could re-file the action once the condition precedent is satisfied, any future suit would be barred by the two-year suit limitation provision in the policy and G.L. c. 175, §99. That consequence flows from NEPSG's knowing and purposeful failure to satisfy its condition precedent—not from any inequity in the dismissal remedy.[3] A plaintiff that flouts the appraisal process and limitation period is not entitled to relief. Dismissal is the only remedy consistent with the statutory framework.

For the foregoing reasons, the defendant, The Travelers Home and Marine Insurance Company, respectfully requests that this Court grant its Motion for Summary Judgment and dismiss plaintiff's Complaint with prejudice.

---

[3] When NEPSG initially held the Reference in abeyance, counsel for Travelers conveyed to NEPSG's counsel that "Reference is a condition precedent to any action on the policy." [*Docket No. 1* at p. 294].

Respectfully submitted,

THE TRAVELERS HOME AND MARINE
INSURANCE COMPANY

By Its Attorneys,

**MORRISON MAHONEY LLP**

*/s/ Thomas M. Porkop*
William A. Schneider, BBO #636421
Thomas M. Prokop, BBO #660362
250 Summer Street
Boston, MA 02210-1181
Phone: 617-439-7500
Fax: 617-342-4812
wschneider@morrisonmahoney.com
tprokop@morrisonmahoney.com

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on July 17, 2026

*/s/ Thomas M. Prokop*
Thomas M. Prokop